UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOHN ROWLAND,

                              Plaintiff,

v.                                                    1:25-cv-01150
                                                      (AJB/TWD)

JEFF FERGUSON, et al.,

                              Defendants.
_____

APPEARANCES:

JOHN ROWLAND
*Plaintiff, pro se*
25-R-1918
Mohawk Correctional Facility
P.O. Box 8451
Rome, NY 13440

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

<u>**REPORT-RECOMMENDATION AND ORDER**</u>

## I.      INTRODUCTION

The Clerk has sent to the Court for review a complaint submitted by *pro se* plaintiff John

Rowland ("Plaintiff") asserting claims pursuant to 42 U.S.C. § 1983, together with an application

to proceed *in forma pauperis* ("IFP").  Dkt. Nos. 1, 2.  Plaintiff, who is incarcerated at Mohawk

Correctional Facility, has not paid the filing fee for this action.

## II.     IFP APPLICATION

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court

without prepayment of the filing fee that would ordinarily be charged."  *Cash v. Bernstein*, No.

1:09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010).[1] "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Id.* (citing 28 U.S.C. § 1915(b); *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

Upon review, Plaintiff has submitted a completed and signed IFP application which demonstrates economic need. Dkt. No. 2. Plaintiff also filed the inmate authorization form required in this District. Dkt. No. 3. Accordingly, Plaintiff's IFP application is granted.

## III.    SUFFICIENCY OF THE COMPLAINT

### A.    Governing Legal Standard

Section 1915(e) directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).[2]

Likewise, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim

---

[1] Section 1915(g) prohibits a prisoner from proceeding IFP where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions or appeals that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. 28 U.S.C. § 1915(g). Based upon the Court's review of Plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service, it does not appear that Plaintiff has accumulated three strikes for purposes of 28 U.S.C. § 1915(g).

[2] To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune

from such relief."  28 U.S.C. § 1915A; *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999)

(per curiam) (stating section 1915A applies to all actions brought by prisoners against

government officials even when plaintiff paid the filing fee); *Abbas v. Dixon*, 480 F.3d 636, 639

(2d Cir. 2007) (stating both sections 1915 and 1915A are available to evaluate prisoner *pro se*

complaints).

      In reviewing a *pro se* complaint, the court has a duty to show liberality toward *pro se*

litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and should exercise

"extreme caution . . . in ordering sua sponte dismissal of a pro se complaint *before* the adverse

party has been served and both parties (but particularly the plaintiff) have had an opportunity to

respond."  *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted;

emphasis in original).  Therefore, a court should not dismiss a complaint if the plaintiff has stated

"enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at

556).

      Although the court should construe the factual allegations in the light most favorable to

the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a

complaint is inapplicable to legal conclusions."  *Id*.  "Threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice."  *Id*. (citing *Twombly*,

550 U.S. at 555).  "[W]here the well-pleaded facts do not permit the court to infer more than the

mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the

pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  Rule 8 of the Federal

Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-

me accusation."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  Thus, a pleading that

only "tenders naked assertions devoid of further factual enhancement" will not suffice.  *Id*.

(internal quotation marks and alterations omitted).

Generally, a court should not dismiss a *pro se* complaint "without granting leave to

amend at least once when a liberal reading of the complaint gives any indication that a valid

claim might be stated."  *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)

(citation and internal quotation marks omitted).  However, an opportunity to amend is not

required where "the problem with [the plaintiff's] causes of action is substantive" such that

"better pleading will not cure it."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## B.    Summary of the Complaint [3]

Plaintiff asserts allegations of wrongdoing related to his legal representation on the

criminal charge(s) that form the basis of his confinement at Mohawk Correctional Facility.  *See*

*generally* Dkt. No. 1.  The following facts are set forth as alleged by Plaintiff in his complaint.

In September 2024, Plaintiff gave his "assigned counsel/public defender Jeff Ferguson

original documents that tied directly to [his] criminal case and was the factual evidence for [his]

entire defense."  *Id*. at 4.  "In October the Public Defender's Office recused itself under conflict

of interest."  *Id*.  Plaintiff was then "given assigned counsel" but Plaintiff "hired a private

attorney."  *Id*.  From October 2024 to mid-April 2025, Plaintiff "spoke to Jeff Ferguson in person

---

[3] Citations to Plaintiff's complaint will refer to the pagination generated by CM/ECF, the Court's
electronic filing system.  Unless otherwise indicated, excerpts from the record are reproduced
exactly as they appear in the original and errors in spelling, punctuation, and grammar have not
been corrected.

at the [Warren County] jail when he showed up to see other individuals." *Id*. Plaintiff also spoke to Ferguson several times on the telephone, the receptionist a few dozen times, and emailed Ferguson and his supervisor. *Id*. "All conversations were in regard to [Plaintiff] obtaining [his] paperwork that [Ferguson] had." *Id*. Plaintiff's attorney also "reached out." *Id*. In mid-April 2025, just before Plaintiff's "[illegible] hearing," Plaintiff was told Ferguson "lost it and feels bad." *Id*. As a result, Plaintiff "was forced to taking a plea instead of proving [his] defense for a dismissal." *Id*.

The complaint names the following defendants: (1) Jeff Ferguson, Attorney/Public Defender ("Ferguson"); (2) Warren County Public Defender's Office; and (3) Warren County New York ("Warren County").[4] *Id*. at 1-3. The complaint lists three claims: (1) "with gross negligence Jeff Ferguson, a seasoned veteran lawyer failed to place original vital documents into [Plaintiff's] file"; (2) "with gross negligence Jeff Ferguson, an officer of the court county employee failed to scan [the] documents into [Plaintiff's] electronic file"; and (3) Plaintiff "was forced to plea out and give up 9 years of living life due to the gross negligence of Jeff Ferguson, [Plaintiff's] original court appointed attorney." *Id*. at 5. Plaintiff seeks money damages. *Id*.

### C.    Analysis

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which establishes a cause of action for "'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted); *see also Myers v. Wollowitz*, No. 6:95-CV-0272

---

[4] The Court takes judicial notice that Jeffrey L. Ferguson, Esq., is an Assistant Public Defender for the Warren County Public Defender's Office. *See* https://www.warrencountyny.gov/public-defender/whoweare (last visited Oct. 20, 2025).

(TJM/RWS), 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (stating that "§ 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights") (citation omitted). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted). Although Plaintiff does not explicitly state the Constitutional amendment pursuant to which he seeks relief, liberally construed, the complaint appears to assert Sixth Amendment and Fourteenth Amendment claims.

Section 1983 requires "that the alleged deprivation [be] committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "A defendant acts under color of state law when he exercises 'some right or privilege created by the State . . . or by a person for whom the State is responsible' and is 'a person who may fairly be said to be a state actor.'" *Nicholson v. Lenczewski*, 356 F. Supp. 2d 157, 162 (D. Conn. 2005) (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)). Accordingly, "a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action." *Flagg v. Yonkers Sav. & Loan Ass'n*, 396 F.3d 178, 186 (2d Cir. 2005) (internal quotation marks and citation omitted); *Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir.2012) ("A plaintiff pressing a claim of violation of his constitutional rights under § 1983 is [ ] required to show state action." (internal quotation marks and citation omitted)). Indeed, "the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (internal quotation marks and citation omitted).

### 1.    Defendants Ferguson and Warren County Public Defender's Office

Plaintiff's complaint, liberally construed, asserts Section 1983 claims against Ferguson and the Warren County Public Defender's Office.  Dkt. No. 1 at 4-5.  However, the law is well-settled that a public defender does not act under color of state law when performing traditional advocacy functions.  *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981); *Rodriguez v. Weprin*, 116 F.3d 62, 65-66 (2d Cir. 1997) ("[I]t is well-established that court-appointed attorneys performing a lawyer's traditional functions as counsel to defendant do not act 'under color of state law' and therefore are not subject to suit under 42 U.S.C. § 1983."); *see also Shorter v. Rice*, No. 12-CV-0111, 2012 WL 1340088, at *4 (E.D.N.Y. Apr. 10, 2012) ("[I]t is axiomatic that neither public defenders, such as Legal Aid Attorneys, nor court-appointed counsel, nor private attorneys, act under the color of state law merely by virtue of their position.").

Moreover, a public defender's office is not considered a "person amendable to suit under section 1983."  *Franklin v. Chenango Cnty. Pub. Def. Off.*, No. 3:18-CV-0865 (BKS/DEP), 2018 WL 4288620, at *4 (N.D.N.Y. Sept. 7, 2018), *report and recommendation adopted*, 2018 WL 5792758 (N.D.N.Y. Nov. 5, 2018); *see also Lewis v. Essex Cnty.*, No. 8:24-CV-00100 (MAD/CFH), 2024 WL 4712530, at *16 (N.D.N.Y. June 18, 2024) ("[T]he Essex County Public Defender's Office and the Essex County Conflict Defender's Office are not considered "persons" under 42 U.S.C. § 1983."), *report and recommendation adopted sub nom. Lewis v. Essex Cnty., New York*, 2024 WL 4441730 (N.D.N.Y. Oct. 8, 2024).  Therefore, "[c]ourts routinely dismiss claims against public defenders and public defenders' offices because they are not state actors or persons under Section 1983."  *Lawrence v. Shattick*, No. 8:24-CV-656 (MAD/DJS), 2025 WL 542587, at *4 (N.D.N.Y. Feb. 19, 2025).

Furthermore, the Court has no basis to plausibly infer from the allegations in the complaint that these defendants ever engaged in any conduct on behalf of the state, and/or beyond their traditional advocacy functions.  *See, e.g.*, *Fox v. Zennamo*, No. 15-CV-0587 (LEK/ATB), 2016 WL 1090583, at *2 (N.D.N.Y. Mar. 18, 2016) ("The Supreme Court has held that public defenders only act under color of law in limited circumstances: 'for example . . . when making hiring and firing decisions on behalf of the State[,] . . . performing certain administrative and possibly investigative functions[, or] for malpractice . . . under state tort law.'") (quoting *Polk Cnty*, 454 U.S. at 325); *Khalil v. Gen. Elec. Corp.*, No. 5:22-CV-312 (GTS/ATB), 2023 WL 11921904, at *12 (N.D.N.Y. Dec. 1, 2023) ("Although a public defender and a private attorney could be held liable under section 1983 if they conspired with state actors, plaintiff here has failed to plead any plausible facts that suggests any of these named attorneys were involved in a conspiracy to inflict an unconstitutional injury."), *report and recommendation adopted*, 2024 WL 3963699 (N.D.N.Y. Aug. 28, 2024).

Rather, the allegations in the complaint suggest only Ferguson acted with incompetence by losing paperwork provided to him by Plaintiff, which hindered Plaintiff's defense.  *See* Dkt. No. 1 at 4-5.  However, allegations of malpractice and/or ineffective assistance of counsel do not satisfy the state actor requirement.  *See, e.g.*, *Welch v. Schenectady Cnty.*, No. 1:22-cv-9 (DNH/DJS), 2022 WL 3904113, at *2 (N.D.N.Y. Aug. 10, 2022) (explaining a Section 1983 action "is not the appropriate vehicle to raise a claim of ineffective assistance of counsel") (quoting *Murphy v. Feliciano*, No. 17-CV-269, 2017 WL 3699353, at *7 (D. Conn. May 31, 2017)), *report and recommendation adopted*, 2022 WL 3908798 (N.D.N.Y. Aug. 30, 2022); *Brooks v. New York State Supreme Ct., App. Div. First Dep't*, No. 02-CV-4183, 2002 WL 31528632, at *3 (E.D.N.Y. Aug. 16, 2002) ("Section 1983 'was enacted to redress civil rights

violations by persons acting under color of State law' and should not be used by clients disappointed with the performance of their attorneys.  Complaints about the behavior or performance of an attorney should be addressed to the Grievance Committee of the appropriate State Appellate Division.") (quoting *Mitchell v. Cohen*, No. 90-CV-1836 (TCP), 1990 WL 100254, at *1 (E.D.N.Y. Jun. 13, 1990)), *aff'd sub nom. Brooks v. Ross*, 76 F. App'x 356 (2d Cir. 2003).

Accordingly, the Court recommends Plaintiff's Section 1983 claims against Ferguson and the Warren County Public Defender's Office be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

### 2.    Defendant Warren County

The complaint, construed liberally, asserts Section 1983 claims against Warren County. Dkt. No. 1 at 4-5.  "To set forth a cognizable claim for municipal liability under § 1983, a plaintiff must plead that a deprivation of his constitutional rights was 'caused by a governmental custom, policy, or usage of the municipality.'"  *Dougal v. Lewicki*, No. 1:23-CV-1167 (DNH/CFH), 2023 WL 6430586, at *10 (N.D.N.Y. Oct. 3, 2023) (quoting *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012); citing *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690-91 (1978)), *report and recommendation adopted*, 2023 WL 7013384 (N.D.N.Y. Oct. 25, 2023).  "Municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right; it 'may not be held liable on a theory of respondeat superior.'"  *Id.* (quoting *Jeffes v. Barnes*, 208 F.3d 49, 56 (2d Cir. 2000)).

An "official policy or custom" of the municipality can be shown in several ways:

(1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing

>           municipal policies related to the particular deprivation in question;
>           (3) a practice so consistent and widespread that it constitutes a
>           "custom or usage" sufficient to impute constructive knowledge of
>           the practice to policymaking officials; or (4) a failure by
>           policymakers to train or supervise subordinates to such an extent
>           that it amounts to "deliberate indifference" to the rights of those who
>           come in contact with the municipal employees.

*Dorsett-Felicelli, Inc. v. Cnty. of Clinton*, 371 F. Supp. 2d 183, 194 (N.D.N.Y. 2005) (citations

omitted). "[M]ere allegations of a municipal custom, a practice of tolerating official misconduct,

or inadequate training and/or supervision are insufficient to demonstrate the existence of such a

custom unless supported by factual details." *Tieman v. City of Newburgh*, No. 13-cv-4178, 2015

WL 1379652, at *13 (S.D.N.Y. Mar. 26, 2015); *see Oklahoma City v. Tuttle*, 471 U.S. 808, 809

(1985) ("There must at the very least be an affirmative link between the municipality's policy

and the particular constitutional violation alleged.").

        Critically, "a prerequisite to municipal liability under *Monell* is an underlying

constitutional violation by a state actor." *Henry-Lee v. City of New York*, 746 F. Supp. 2d 546,

567 (S.D.N.Y. 2010). Indeed, "*Monell* does not provide a separate cause of action for the failure

by the government to train its employees; it *extends* liability to a municipal organization where

that organization's failure to train, or the policies or customs that it has sanctioned, led to an

independent constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir.

2006) (emphasis is original) (noting that once a "district court properly [finds] no underlying

constitutional violation, its decision not to address the municipal defendants' liability under

*Monell* [is] entirely correct").

        Here, as discussed above, the complaint fails to state a constitutional violation by a state

actor. Plaintiff has thus failed to plausibly allege an underlying constitutional violation sufficient

to support a municipal liability claim. *See Dees v. Zurlo*, No. 1:24-cv-0001 (MAD/DJS), 2024

WL 1053237, at *14 (N.D.N.Y. Mar. 11, 2024) ("A fundamental requirement of a *Monell* claim is the establishment of an underlying constitutional violation. . . . In the present case the Court is recommending the dismissal of all the federal claims and, as such, also recommends that any *Monell* claim be likewise dismissed.") (citations omitted), *report and recommendation adopted*, 2024 WL 2291701 (N.D.N.Y. May 21, 2024); *see also Holyoke v. S.S.I.*, No. 6:23-cv-1557 (MAD/ATB), 2024 WL 20726, at *6 (N.D.N.Y. Jan. 2, 2024) (dismissing the plaintiff's municipal liability claims against the City of Utica and Oneida County for, *inter alia*, failing to plausibly allege an underlying constitutional violation), *report and recommendation adopted*, 2024 WL 689117 (N.D.N.Y. Feb. 20, 2024).

Even if, *arguendo*, Plaintiff had plausibly alleged an underlying constitutional violation, which he has not, Plaintiff has failed to identify or allege any facts showing the existence of a municipal policy or custom of Warren County that caused the alleged constitutional violation. *See Meyers v. Becker*, No. 1:23-cv-173 (DNH/CFH), 2023 WL 4424128, at *4 (N.D.N.Y. May 31, 2023) (finding the complaint was "insufficient to allege a claim for municipal liability" because the "[p]laintiff does not state what Schoharie County's alleged policy was or how it negatively impacted [him]"). Thus, he has failed to plausibly allege a *Monell* claim against Warren County.

Accordingly, the Court recommends Plaintiff's Section 1983 claims against Warren County be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

### 3.    *Heck v. Humphrey*

Finally, the allegations of wrongdoing unquestionably seek to challenge the fact or duration of Plaintiff's current confinement. *See, e.g.*, Dkt. No. 1 at 4 ("I was forced to taking a

plea instead of proving my defense for a dismissal."); *id.* at 5 ("I was forced to plea out and give

up 9 yrs of living life due to the gross negligence of Jeff Ferguson, my original court appointed

attorney.").

In *Heck v. Humprey*, the Supreme Court established that a plaintiff may not recover

damages under Section 1983 if "a judgment in favor of the plaintiff would necessarily imply the

invalidity of his conviction or sentence . . . unless the plaintiff can demonstrate that the

conviction or sentence has already been invalidated." *Heck v. Humprey*, 512 U.S. 477, 487

(1994).  To demonstrate that his conviction or sentence has been invalidated, the plaintiff "must

prove that the conviction or sentence has been reversed on direct appeal, expunged by executive

order, declared invalid by a state tribunal authorized to make such determination, or called into

question by a federal court's issuance of a writ of habeas corpus." *Id*. at 486-87.  Indeed, a

prisoner's Section 1983 action is barred by *Heck* "(absent prior invalidation)—no matter the

relief sought (damages or equitable relief), no matter the target of the prisoner's suit . . . *if*

success in that action would necessarily demonstrate the invalidity of confinement or its

duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) (emphasis is original).

Thus, even if Ferguson and the Warren County Public Defender's Office could somehow

be considered state actors, and even if Plaintiff had plausibly alleged a *Monell* claim against

Warren County, Plaintiff's Section 1983 claims would nonetheless by barred by *Heck* and its

progeny.

### D.    Supplemental Jurisdiction

A district court may decline to exercise supplemental jurisdiction over state law claims

when it "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. §

1367(c)(3).  Generally, "when the federal-law claims have dropped out of the lawsuit in its early

stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).  Having recommended dismissal of Plaintiff's Section 1983, the undersigned also recommends that the District Court decline to exercise supplemental jurisdiction over any state law claims Plaintiff may be asserting.

### E.    Leave to Amend

Based on the foregoing, the Court recommends dismissal of the complaint in its entirety. "Generally leave to amend should be freely given, and a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Matima v. Celli*, 228 F.3d 68, 81 (2d Cir. 2000) (cleaned up).  Although the Court is highly skeptical Plaintiff might be able to state a valid Section 1983 claim against the named defendants in light of the nature of his allegations, the undersigned nonetheless recommends Plaintiff be afforded an opportunity to amend to cure the deficiencies identified herein.

The Court advises Plaintiff that should he be permitted to amend his complaint, any amended complaint he submits must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure.  Any such amended complaint, which shall supersede and replace in its entirety the original complaint, must contain sequentially numbered paragraphs containing only one act of misconduct per paragraph.  Any amended complaint submitted by Plaintiff must set forth all of the claims he intends to assert against the defendants and must demonstrate that a case or controversy exists between the Plaintiff and the defendants which Plaintiff has a legal right to pursue and over which this Court has jurisdiction.  Plaintiff is further cautioned that no portion of his original complaint shall be incorporated into his amended complaint by reference.

IV.    **CONCLUSION**

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's IFP application (Dkt. No. 2) is **GRANTED**;[5] and it is further

**ORDERED** that the Clerk shall provide the Superintendent of the facility, designated by Plaintiff as his current location, with a copy of Plaintiff's inmate authorization (Dkt. No. 3) and notify the official that this action has been filed and that Plaintiff is required to pay the Northern District of New York the statutory filing fee of $350.00 in installments, over time, pursuant to 28 U.S.C. § 1915;[6] and it is further

**ORDERED** that the Clerk shall provide a copy of Plaintiff's inmate authorization (Dkt. No. 3) to the Financial Deputy of the Clerk's Office; and it is further

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be **DISMISSED WITH LEAVE TO AMEND**; and it is further

**ORDERED** that the Clerk provide to Plaintiff a copy of this Report-Recommendation and Order, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.[7]  Such objections shall be filed with the Clerk of

---

[5] Plaintiff is advised, however, that he will be required to pay fees he may incur in this action, including copying and/or witness fees.

[6] Prisoners are not exempt from paying the filing fee, even when they have been granted permission to proceed IFP.  *See* 28 U.S.C. § 1915(b)(1).

[7] If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

   **IT IS SO ORDERED**.

Dated: October 20, 2025
       Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge

15

2010 WL 5185047
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

David J. CASH, Plaintiff,

v.

BERNSTEIN, MD, Defendant.

No. 09 Civ.1922(BSJ)(HBP).
|
Oct. 26, 2010.

*REPORT AND RECOMMENDATION* [1]

[1]
At the time the action was originally filed,
the Honorable Leonard B. Sand, United States
District Judge, granted plaintiff's application for *in
forma pauperis* status based on plaintiff's *ex parte*
submission (Docket Item 1). Although the present
application seeking to revoke plaintiff's *in forma
pauperis* status is non-dispositive, I address it by
way of a report and recommendation to eliminate
any appearance of a conflict between the decision
of a district judge and that of a magistrate judge.

PITMAN, United States Magistrate Judge.

**\*1** TO THE HONORABLE BARBARA S. JONES, United
States District Judge,

I. *Introduction*
By notice of motion dated March 4, 2010 (Docket Item 11),
defendant moves pursuant to 28 U.S.C. § 1915(g) to revoke
plaintiff's *in forma pauperis* ("IFP") status on the ground that
plaintiff has previously had at least three Section 1983 actions
dismissed as frivolous, malicious or failing to state a claim
upon which relief could be granted, and has not shown that he
is in imminent danger of serious physical injury. Defendant
further seeks an order directing that the action be dismissed
unless plaintiff pays the full filing fee within thirty (30) days.
For the reasons set forth below, I respectfully recommend that
defendant's motion be granted.

II. *Facts*

Plaintiff, a sentenced inmate in the custody of the New
York State Department of Correctional Services, commenced
this action on or about January 12, 2009 by submitting his
complaint to the Court's Pro Se office. Plaintiff alleges, in
pertinent part, that he has "a non-healing ulcer that is gane
green [*sic* ]" and that defendant Bernstein "did not want
to treat the ulcer right" (Complaint, dated March 3, 3009
(Docket Item 2) ("Compl."), at 3).

The action was originally commenced against two defendants
—Dr. Bernstein and Dr. Finkelstein. The action was dismissed
as to Dr. Finkelstein because the complaint contained no
allegations whatsoever concerning Dr. Finkelstein (Order
dated February 18, 2010 (Docket Item 9)).

On March 4, 2010, the sole remaining defendant—Dr.
Bernstein—filed the current motion. Plaintiff failed to submit
a response. Accordingly, on August 20, 2010, I issued an
Order advising plaintiff that if he wished to oppose the
motion, he must submit his opposition by September 15, 2010
and that after that date I would consider the motion fully
submitted and ripe for decision (Order dated August 20, 2010
(Docket Item 15)). The only submission plaintiff has made
in response to my Order is a multi-part form issued by the
New York State Department of Correctional Services entitled
"Disbursement or Refund Request." [2] By this form, plaintiff
appears to request that the New York State Department of
Correctional Services pay the filing fee for this action. The
form is marked "Denied."

[2]
Plaintiff sent this form directly to my chambers,
and it has not been docketed by the Clerk of the
Court. The form will be docketed at the time this
Report and Recommendation is issued.

III. *Analysis*
28 U.S.C. § 1915 permits an indigent litigant to commence
an action in a federal court without prepayment of the filing
fee that would ordinarily be charged. Although an indigent,
incarcerated individual need not prepay the filing fee at the
time at the time of filing, he must subsequently pay the fee,
to the extent he is able to do so, through periodic withdrawals
from his inmate accounts. 28 U.S.C. § 1915(b); *Harris v.
City of New York,* 607 F.3d 18, 21 (2d Cir.2010). To prevent
abuse of the judicial system by inmates, paragraph (g) of
this provision denies incarcerated individuals the right to
proceed without prepayment of the filing fee if they have
repeatedly filed meritless actions, unless such an individual
shows that he or she is in imminent danger of serious

Cash v. Bernstein, Not Reported in F.Supp.2d (2010)

2010 WL 5185047

physical injury. *See Ortiz v. McBride,* 380 F.3d 649, 658 (2d Cir.2004) ("[T]he purpose of the PLRA ... was plainly to curtail what Congress perceived to be inmate abuses of the judicial process."); *Nicholas v. Tucker,* 114 F.3d 17, 19 (2d Cir.1997). Specifically, paragraph (g) provides:

> **\*2** In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

If an inmate plaintiff seeks to avoid prepayment of the filing fee by alleging imminent danger of serious physical injury, there must be a nexus between the serious physical injury asserted and the claims alleged. *Pettus v. Morgenthau,* 554 F.3d 293, 298 (2d Cir.2009).

Section 1915(g) clearly prevents plaintiff from proceeding in this action without prepayment of the filing fee. The memorandum submitted by defendant establishes that plaintiff has had his IFP status revoked on at least four prior occasions as a result of his repeatedly filing meritless actions.

- In 2005, plaintiff commenced an action in the United States District Court for the Northern District of New York seeking to have his infected leg amputated. *Nelson[3] v. Lee,* No. 9:05–CV–1096 (NAM)(DEP), 2007 WL 4333776 (N.D.N.Y. Dec. 5, 2007). In that matter, the Honorable Norman A. Mordue, Chief United States District Judge, accepted and adopted the Report and Recommendation of the Honorable David E. Peebles, United States Magistrate Judge, that plaintiff had brought three or more prior actions that had been dismissed for failure to state a claim and that plaintiff's IFP status should, therefore, be revoked. 2007 WL 4333776 at *1–*2.

3    It appears that plaintiff uses the names David J. Cash and Dennis Nelson interchangeably. In his complaint in this matter, plaintiff states that the Departmental Identification Number, or DIN, assigned to him by the New York State Department of Correctional Services ("DOCS") is 94–B–0694 (Compl. at 7). DOCS inmate account records submitted by plaintiff in connection with his application for IFP status indicate that DIN 94–B–0694 is assigned to Dennis Nelson. In addition, the DOCS form described in footnote two bears the docket number of this action, but is signed in the name of Dennis Nelson and was sent in an envelope identifying the sender as Dennis Nelson. A subsequent action has been filed in this Court in which the plaintiff identifies himself as Dennis Nelson but lists his DIN as 94–B–0694, the same DIN used by plaintiff here. Finally, plaintiff has submitted nothing to controvert the assertion in defendant's papers that David Cash and Dennis Nelson are the same person. In light of all these facts, I conclude that David Cash and Dennis Nelson are both names used by plaintiff.

- In *Nelson v. Nesmith,* No. 9:06–CV–1177 (TJM)(DEP), 2008 WL 3836387 (N.D.N.Y. Aug. 13, 2008), plaintiff again filed an action concerning the medical care he was receiving for his left leg. The Honorable Thomas J. McAvoy, United States District Judge, accepted the Report and Recommendation of Magistrate Judge Peebles, and revoked plaintiff's IFP status and dismissed the action on the ground that plaintiff had previously commenced at least three actions that had been dismissed on the merits. 2008 WL 3836387 at *1, *7.

  - In *Nelson v. Spitzer,* No. 9:07–CV–1241 (TJM) (RFT), 2008 WL 268215 (N.D.N.Y. Jan. 29, 2008), Judge McAvoy again revoked plaintiff's IFP status on the ground that plaintiff had commenced three or more actions that constituted "strikes" under Section 1915(g) and had not shown an imminent threat of serious physical injury. 2008 WL 268215 at *1–*2.

  - Finally, in *Nelson v. Chang,* No. 08–CV–1261 (KAM)(LB), 2009 WL 367576 (E.D.N.Y. Feb. 10, 2009), the Honorable Kiyo A. Matsumoto, United

States District Judge, also found, based on the cases discussed above, that plaintiff had exhausted the three strikes permitted by Section 1915(g) and could not proceed IFP in the absence of a demonstration of an imminent threat of serious physical injury. 2009 WL 367576 at *2–*3.

**\*3** As defendant candidly admits, there is one case in which plaintiff's leg infection was found to support a finding of an imminent threat of serious physical injury sufficient to come within the exception to Section 1915(g). *Nelson v. Scoggy,* No. 9:06–CV–1146 (NAM)(DRH), 2008 WL 4401874 at *2 (N.D.N.Y. Sept. 24, 2008). Nevertheless, summary judgment was subsequently granted for defendants in that case, and the complaint was dismissed. Judge Mordue concluded that there was no genuine issue of fact that plaintiff had received adequate medical care for his leg wound and that the failure of the leg to heal was the result of plaintiff's own acts of self-mutilation and interference with the treatment provided. *Nelson v. Scoggy,* No. 9:06–CV–1146 (NAM)(DRH), 2009 WL 5216955 at *3–*4 (N.D.N.Y. Dec. 30, 2009). [4]

[4]    Although the form complaint utilized by plaintiff expressly asks about prior actions involving the same facts, plaintiff disclosed only the *Scoggy* action and expressly denied the existence of any other actions relating to his imprisonment (Compl. at 6).

In light of the foregoing, there can be no reasonable dispute that plaintiff has exceeded the three "strikes" allowed by Section 1915(g) and that he cannot, therefore, proceed here without prepaying the filing fee unless he demonstrates an imminent threat of serious physical injury. Plaintiff has declined to attempt to make this showing in response to defendant's motion, and the only suggestion in the record of serious physical injury is the bare statement in the complaint that plaintiff "need[s] to go back to a wound speci [a]list before the gane green [*sic* ] kills [him]" (Compl. at 5). "However, unsupported, vague, self-serving, conclusory speculation is not sufficient to show that Plaintiff is, in fact, in imminent danger of serious physical harm." *Merriweather v. Reynolds,* 586 F.Supp.2d 548, 552 (D.S.C.2008), *citing Ciarpaglini v. Saini,* 352 F.3d 328, 330 (7th Cir.2003) *and White v. Colorado,* 157 F.3d 1226, 1231–32 (10th Cir.1998); *see also Martin v. Shelton,* 319 F.3d 1048, 1050 (8th Cir.2003) (imminent danger exception to Section 1915(g) requires "specific fact allegations of ongoing serious physical injury, or of a pattern of misconduct evidencing the likelihood of imminent serious physical injury"). Given the plaintiff's

history, as set forth in the cases described above, I conclude that this vague statement is insufficient to support a finding that plaintiff is in imminent danger of serious physical injury. [5]

[5]    Plaintiff has sent me several letters describing his wound and its symptoms in detail, and I have no doubt that the wound is serious. However, in granting summary judgment dismissing an action last year based on the same allegations, Judge Mordue of the Northern District found that there was no genuine issue of fact that plaintiff's own conduct was responsible for the ineffectiveness of the treatment he was provided:

Furthermore, to the extent that Nelson's medical treatment was delayed, much of the delay was due to his own refusal to cooperate with medical staff and his self-mutilations. Nelson's actions to thwart the medical treatment of his wound cannot be construed as interference or indifference by anyone else.... [T]he medical treatment Nelson received complied with constitutional guarantees as it was appropriate, timely, and delayed only by Nelson's own actions.

*Nelson v. Scoggy, supra,* 2009 WL 5216955 at *4. Given plaintiff's total failure to respond to the pending motion and his failure to even deny that he is actively thwarting treatment of his wound, it would be sheer speculation for me to conclude that he is in imminent danger of a serious injury as a result of defendant's conduct.

IV. *Conclusion*

Accordingly, for all the foregoing reasons, I find that plaintiff has had three or more prior actions dismissed as being frivolous, malicious or failing to state a claim and that plaintiff's *in forma pauperis* status should, therfore, be revoked. If your Honor accepts this recommendation, I further recommend that the action be dismissed unless plaintiff pays the filing fee in full within thirty (30) days of your Honor's final resolution of this motion.

V. *OBJECTIONS*

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections. *See also* Fed.R.Civ.P. 6(a). Such objections (and

Cash v. Bernstein, Not Reported in F.Supp.2d (2010)

2010 WL 5185047

responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Barbara S. Jones, United States District Judge, 500 Pearl Street, Room 1920, and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Jones. FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW. *Thomas v. Arn,* 474 U.S. 140, 155 (1985); *United States v. Male Juvenile,* 121 F.3d 34, 38 (2d Cir.1997); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983).

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 5185047

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Myers v. Wollowitz, Not Reported in F.Supp. (1995)

1995 WL 236245

1995 WL 236245
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

James N. MYERS, Jr., Plaintiff,

v.

Heather WOLLOWITZ, Attorney, Defendant.

No. 95–CV–0272 (TJM) (RWS).
|
April 10, 1995.

**Attorneys and Law Firms**

James N. Myers, Jr., Troy, NY, pro se.

*DECISION AND ORDER*

McAVOY, Chief Judge.

*I. Background*

**\*1** Presently before this Court is the above-captioned plaintiff's application to proceed in forma pauperis and civil rights complaint. Plaintiff has not paid the partial filing fee required to maintain this action.

For the reasons stated below, plaintiff's complaint is dismissed pursuant to 28 U.S.C. § 1915(d) and Local Rule 5.4(a) of the General Rules of this Court as without arguable basis in law.

In his *pro se* complaint, plaintiff seems to claim that plaintiff was represented by defendant Wollowitz, a public defender for the County of Rensselaer, in a County Court proceeding. Plaintiff alleges that after a criminal proceeding in that Court, plaintiff was "sentenced to a illegal sentence." *Id.* at 2. Plaintiff contends that due to the ineffective assistance of his counsel, defendant Wollowitz, his constitutional rights were violated. For a more complete statement of plaintiff's claims, reference is made to the entire complaint filed herein.

*II. Discussion*

Consideration of whether a *pro se* plaintiff should be permitted to proceed in forma pauperis is a two-step process. First, the court must determine whether the plaintiff's economic status warrants waiver of fees and costs under 28 U.S.C. § 1915(a). If the plaintiff qualifies by economic status, the court must then consider whether the cause of action

stated in the complaint is frivolous or malicious. *Moreman v. Douglas,* 848 F.Supp. 332, 333 (N.D.N.Y.1994) (Scullin, J.); *Potnick v. Eastern State Hosp.,* 701 F.2d 243, 244 (2d Cir.1983) (per curiam).

In the present case, upon review of the plaintiff's inmate account statements, the Court has determined that plaintiff's financial status qualifies him to file or "commence" this action in forma pauperis. 28 U.S.C. § 1915(a). Turning to the second inquiry, a court may "dismiss the proceeding under 28 U.S.C. § 1915(d) if the court thereafter determines that ... the action is frivolous or malicious." *Moreman,* 848 F.Supp. at 333 (citation omitted).

In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact. *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). Although the court has the duty to show liberality towards *pro se* litigants, *Nance v. Kelly,* 912 F.2d 605, 606 (2d Cir.1990) (per curiam), and extreme caution should be exercised in ordering sua sponte dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir.1983), there is a responsibility on the court to determine that a claim is not frivolous before permitting a plaintiff to proceed with an action in forma pauperis. Dismissal of frivolous actions pursuant to 28 U.S.C. § 1915(d) is appropriate to prevent abuses of the process of the court, *Harkins v. Eldredge,* 505 F.2d 802, 804 (8th Cir.1974), as well as to discourage the waste of judicial resources. *Neitzke,* 490 U.S. at 327. *See generally Moreman,* 848 F.Supp. at 334.

**\*2** 42 U.S.C. § 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights. *See, e.g., Von Ritter v. Heald,* 91–CV–612, 1994 WL 688306, \*3, 1994 U.S.Dist. LEXIS 17698, \*8–9 (N.D.N.Y. Nov. 14, 1994) (McAvoy, C.J.). A party may not be held liable under this section unless it can be established that the defendant has acted under the color of state law. *See, e.g., Rounseville v. Zahl,* 13 F.3d 625, 628 (2d Cir.1994) (noting state action requirement under § 1983); *Wise v. Battistoni,* 92–Civ–4288, 1992 WL 380914, \*1, 1992 U.S.Dist. LEXIS 18864, \*2–3 (S.D.N.Y. Dec. 10, 1992) (same) (citations omitted).

In the present case, the sole defendant named by plaintiff is the Rensselaer County public defender who apparently represented plaintiff in the criminal proceeding discussed in

1995 WL 236245

his complaint. *See* Complaint at 2. However, "[i]t is well settled that an attorney's representation of a party to a court proceeding does not satisfy the Section 1983 requirement that the defendant is alleged to have acted under color of state law...." *Wise,* 1992 WL 380914 at *1, 1992 U.S.Dist. LEXIS 18864 at *2–3; *see also D'Ottavio v. Depetris,* 91–Civ–6133, 1991 WL 206278, *1, 1991 U.S.Dist. LEXIS 13526, *1–2 (S.D.N.Y. Sept. 26, 1991).

Since the plaintiff has not alleged any state action with respect to the Section 1983 claim presently before the Court, plaintiff's complaint, as presented to this Court, cannot be supported by any arguable basis in law and must therefore be dismissed pursuant to 28 U.S.C. § 1915(d). *Neitzke,* 490 U.S. at 328.

Accordingly, it is hereby

ORDERED, that leave to proceed or prosecute this action in forma pauperis is denied, and it is further

ORDERED, that this action is dismissed pursuant to 28 U.S.C. § 1915(d) and Local Rule 5.4(a) of the General Rules of this Court as lacking any arguable basis in law, and it is further

ORDERED, that the Clerk serve a copy of this Order on the plaintiff by regular mail.

I further certify that any appeal from this matter would not be taken in good faith pursuant to 28 U.S.C. § 1915(a).

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp., 1995 WL 236245

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

  © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 1340088
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Johnny F. SHORTER, Plaintiff,
v.
District Attorney Kathleen RICE, A.D.A. Irene
Angelakis, Michael D. Elbert, Esq., Defendants.

No. 12–CV–0111 (JFB)(ETB).
|
April 10, 2012.

MEMORANDUM AND ORDER

JOSEPH F. BIANCO, District Judge.

**\*1** On January 5, 2011, incarcerated *pro se* plaintiff Jo
tony F. Shorter ("plaintiff") filed a complaint pursuant to
42 U.S.C. § 1983 ("Section 1983") against the defendants,
the Nassau County District Attorney Kathleen Rice ("DA
Rice"), Nassau County Assistant District Attorney Irene
Angelakis ("ADA Angelakis"), and Michael D. Elbert, Esq.
("Elbert"), along with an application to proceed *in forma
pauperis*. Upon review of plaintiff's application to proceed *in
forma pauperis,* the Court finds that plaintiff's financial status
qualifies him to commence this action without prepayment
of the filing fee. Accordingly, the application to proceed *in
forma pauperis* is granted pursuant to 28 U.S.C. § 1915.
However, for the reasons that follow, the complaint is *sua
sponte* dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).
Specifically, plaintiff's federal claims against defendants DA
Rice and ADA Angelakis, as well as any federal claim against
defendant Elbert, are *sua sponte* dismissed in their entirety
with prejudice pursuant to 28 U.S.C. § 1915A. Further, the
Court declines to exercise supplemental jurisdiction over
plaintiff's purely state law claims in the absence of any
federal claims. Thus, any state claims are dismissed without
prejudice. Therefore, the complaint is dismissed in its entirety.

I. *THE COMPLAINT*
According to the brief complaint, submitted on the Court's
Section 1983 complaint form, plaintiff alleges that he was
arrested on October 22, 2010 and charged with criminal
possession of a weapon. Plaintiff claims that he pled guilty
to a felony charge for which he is currently serving a

three year prison term. (Compl. at ¶ IV). Relying on the
Nassau County Police Department Property Bureau Invoice
("Invoice"), which plaintiff has attached as Exhibit "A" to
the complaint, plaintiff claims that the charge should have
been brought as a non-felony. (Compl. at ¶ IV; Exhibit "A").
Plaintiff alleges that DA Rice and ADA Angelakis wrongfully
prosecuted the charge as a felony and that his criminal defense
attorney, defendant Elbert, encouraged plaintiff to enter a plea
of guilty to the felony charge. (Compl. at ¶ IV). Plaintiff
claims that Elbert withheld the Invoice from the plaintiff and,
had plaintiff had the Invoice, plaintiff would not have pleaded
guilty to the felony charge. (Compl. at ¶ IV). According to
the complaint, possession of the handgun in question is a non-
felony offense because there was no firing pin. (Compl. at ¶
IV). To support this allegation, plaintiff cites to an antiquated
section of the former New York Penal Law, N.Y. Penal Law
§§ 1897, 1897–b, [1] and a 1961 case that applied the former
statute, *People v. Grillo,* 15 A.D.2d 502, 222 N.Y.S.2d 630
(App.Div.1961). (Compl. at ¶ IV).

[1]    Penal Law § 1897, enacted in 1909 and amended
       in 1911, was repealed in 1963 and replaced with
       the current Penal Law sections governing weapons
       possessions offenses, N.Y. Penal Law §§ 265 *et
       seq. See* Note following Penal Law § 265.00
       (McKinney 2010).

In the section of the complaint that calls for injuries claimed
as a result of the events complained about, plaintiff states
that he suffers from mental anguish "due to the fact that I
was threatened to cop out to 3 years or get 15 years if I did
not cop to the 3 years." (Compl. at ¶ IV.A). Additionally,
plaintiff claims to have received no medical treatment for his
mental anguish. (Compl. at ¶ IV.A). As a result, plaintiff seeks
a damages award of five million ($5,000,000.00) dollars.
(Compl. at ¶ V).

II. *DISCUSSION*

A. *In Forma Pauperis Application*
**\*2** Upon review of the plaintiff's application, the Court finds
that plaintiff's financial status qualifies him to commence
this action without prepayment of the $350.00 filing fee. *See*
28 U.S.C. §§ 1914(a), 1915(a)(1). Accordingly, plaintiff's
application to proceed *in forma pauperis* is granted.

B. *Standard of Review for Sua Sponte Dismissal*

2012 WL 1340088

Under 28 U.S.C. § 1915A, a district court "shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or employee of a governmental entity." 28 U.S.C. § 1915A. Upon review, a district court shall dismiss a prisoner complaint *sua sponte* if the complaint is "frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915(b); 28 U.S.C. § 1915(e)(2) (B); *see Abbas v. Dixon,* 480 F.3d 636, 639 (2d Cir.2007).

It is axiomatic that district courts are required to read *Pro se* complaints liberally, *see Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)); *Chavis v. Chappius,* 618 F.3d 162, 170 (2d Cir.2010), and to construe them " 'to raise the strongest arguments that [they] suggest[ ].' " *Chavis,* 618 F.3d at 170 (quoting *Harris v. City of New York,* 607 F.3d 18, 24 (2d Cir.2010)). Moreover, at the pleadings stage of the proceeding, the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations" in the complaint. *Kiobel v. Royal Dutch Petroleum Co.,* 621 F.3d 111, 124 (2d Cir.2010); *see also Jackson v. Birmingham Bd. of Educ.,* 544 U.S. 167, 171, 125 S.Ct. 1497, 161 L.Ed.2d 361 (2005).

"[A]ny party or the court *sua sponte,* at any stage of the proceedings, may raise the question of whether the court has subject matter jurisdiction." *United Food & Commercial Workers Union, Local 919, AFL–CIO v. CenterMark Prop. Meriden Square, Inc.,* 30 F.3d 298, 301 (2d Cir.1994) (quoting *Manway Constr. Co. v. Hous. Auth. of Hartford,* 711 F.2d 501, 503 (2d Cir.1983) (internal quotation omitted)). Courts may also dismiss *sua sponte* claims that are barred by sovereign immunity or judicial immunity. *In re Camardo Law Firm, P.C. v. Dep't of the Army,* No. 5:09–CV–654 (FJS/GHL), 2010 WL 1935868, at *2 (N.D.N.Y. May 11, 2010) ("Although the parties do not address this point, the Court, at any time, can *sua sponte* raise the issue of subject matter jurisdiction or sovereign immunity." (citing *Grupo Dataflux v. Atlas Global Group, L.P.,* 541 U.S. 567, 593, 124 S.Ct. 1920, 158 L.Ed.2d 866 (2004) and *Warren v. United States,* No. 06–CV–0226S, 2009 WL 1663991, at *2 (W.D.N.Y. June 15, 2009)). Finally, it is not inappropriate for a court to dismiss a claim under Section 1983 where there is no conceivable basis to find that the defendant was a state actor. *See Sommer v. Rankin,* 449 F.Supp. 66, 67 (E.D.N.Y.1978) ("In this case, the claim of state action, which is essential to the invocation of [§ ] 1983,

is clearly frivolous. This court cannot believe that the Court of Appeals intended that *sua sponte* dismissal should be avoided even in cases such as this, where there is no conceivable basis for liability under § 1983. Accordingly, the court is of the opinion that in this particular case, such dismissal would not be inappropriate."); *see also Walton v. Breeyear,* No. 9:05–CV–0194 (LEK/DEP), 2007 WL 446010, at *5 n. 12 (N.D.N.Y. Feb.8, 2007); *Mendlow v. Seven Locks Facility,* 86 F.Supp.2d 55, 59 n. 1 (D.Conn.2000).

## C. *Prosecutorial Immunity*

**\*3** DA Rice and ADA Angelakis are entitled to absolute prosecutorial immunity from plaintiff's federal claims, which are for monetary damages. The Second Circuit has long held that:

Absolute immunity affords "complete protection from suit," *Harlow v. Fitzgerald,* 457 U.S. 800, 807, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), because it gives "public officials entrusted with sensitive tasks a protected area of discretion within which to carry out their responsibilities," *Barr v. Abrams,* 810 F.2d 358, 361 (2d Cir.1987), so that they will not feel "constrained in making every decision by the consequences in terms of [their] own potential liability in a suit for damages," *Imbler v. Pachtman,* 424 U.S. 409, 424–25, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). The doctrine's nature "is such that it 'accords protection from ... any judicial scrutiny of the motive for and reasonableness of official action,' " *Shmueli v. City of New York,* 424 F.3d 231, 237 (2d Cir.2005) (quoting *Robinson v. Via,* 821 F.2d 913, 918 (2d Cir.1987)), even where the challenged conduct was motivated by a wrongful motive or even malice, *Bernard v. County of Suffolk,* 356 F.3d 495, 503 (2d Cir.2004) (citing *Cleavinger v. Saxner,* 474 U.S. 193, 199–200, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985)).

*In re NYSE Specialists Securities Litigation,* 503 F.3d 89, 95–96 (2d Cir.2007). Under federal law, prosecutors enjoy absolute immunity from liability in suits seeking monetary damages for acts carried out in their prosecutorial capacities, *i.e.,* those acts "intimately associated with the judicial phase of the criminal process," *Imbler,* 424 U.S. at 430, 96 S.Ct. 984, 47 L.Ed.2d 128; *see also Parkinson v. Cozzolino,* 238 F.3d 145, 150 (2d Cir.2001), but not for "those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of advocate." *Imbler,* 424 U.S. at 430–31, 96 S.Ct. 984, 47 L.Ed.2d 128. Absolute prosecutorial immunity applies, *inter alia,* when a prosecutor prepares to initiate and pursues a

2012 WL 1340088

prosecution, *see, e.g., Kent v. Cardone,* 404 F. App'x 540, 542–43 (2d Cir. Jan.5, 2011); *Peay v. Ajello,* 470 F.3d 65, 68 (2d Cir.2006), or engages in administrative duties that are directly connected with the conduct of a trial, *Van de Kamp v. Goldstein,* 555 U.S. 335, 342–43, 129 S.Ct. 855, 861–62, 172 L.Ed.2d 706 (2009).

Here, the challenged actions of DA Rice and ADA Angelakis fall squarely within the scope of their prosecutorial capacities. Accordingly, Plaintiff's claims against DA Rice and ADA Angelakis are barred by absolute prosecutorial immunity and are dismissed with prejudice as frivolous pursuant to 28 U.S.C. § 1915A. *See Collazo v. Pagano,* 656 F.3d 131 (2d Cir.2011).

D. *Defendant Michael Elbert*

Plaintiff's remaining federal claim against defendant Elbert, who is alleged to have been his defense attorney in the underlying criminal, also cannot survive as a matter of law. As discussed below, any attempt to bring a Section 1983 claim against Elbert fails for lack of state action. Moreover, to the extent plaintiff seeks to bring a state law malpractice claim against defendant Elbert, the Court declines to exercise supplemental jurisdiction over that claim given the dismissal of the federal claims. [2]

[2]    There is no diversity jurisdiction over that claim because defendant Elbert, like plaintiff, is alleged to be a New York resident.

**\*4**  Although it is unclear, to the extent that plaintiff is attempting to assert a Section 1983 claim against his defense attorney in the criminal case, such claim cannot survive as a matter of law because of a lack of state action. An individual acts under color of state law when he or she exercises power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Polk Cnty. v. Dodson,* 454 U.S. 312, 317–18, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981) (quoting *United States v. Classic,* 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941)). In the instant action, it is clear from the allegations of the complaint that defendant Elbert does not qualify as a state actor within the meaning of § 1983. To that end, it is axiomatic that neither public defenders, such as Legal Aid attorneys, nor court-appointed counsel, nor private attorneys, act under the color of state law merely by virtue of their position. *Polk Cnty.,* 454 U.S. at 325 (stating that a "public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal

proceeding"); *Grant v. Hubert,* No. 09–CV–1051, 2009 WL 764559, at \*1 (E.D.N.Y. Mar. 20, 2009) ("It is well settled that private attorneys do not act under color of state law and are not state actors simply by virtue of their state-issued licenses to practice law."); *see also Rodriguez v. Weprin,* 116 F.3d 62, 65–66 (2d Cir.1997) (affirming dismissal of § 1983 claim against court-appointed appellate attorney for alleged involvement in denial of speedy appeal and noting that "it is well-established that court-appointed attorneys performing a lawyer's traditional functions as counsel to defendant do not act 'under color of state law' and therefore are not subject to suit under 42 U.S.C. § 1983" (collecting cases)). Thus, plaintiff's federal claim against Elbert is both frivolous—because the legal theory on which it is based is "indisputably meritless"—and fails to state a claim for which relief can be granted because plaintiff cannot assert a plausible § 1983 claim against his attorney. [3] *See Kash v. Honey,* 38 F. App'x 73, 75–76 (2d Cir.2002) (concluding that there was no state action by a private lawyer who plaintiff alleged "maliciously, for purpose or purposes personal to him, including the purpose of penalizing [plaintiff] for exercising his First Amendment rights ... falsely charged [plaintiff] in an accusatory instrument"); *Licari v. Voog,* No. 08–4920–pr, 2010 WL 1647456, at \*1 (2d Cir. Apr.26, 2010) (affirming district court's *sua sponte* dismissal of § 1983 claim against defense attorney because claim was frivolous under § 1915(e)(2)(B)(i)).

[3]    The Court recognizes that state action can be demonstrated if the private party is part of a conspiracy with state actors. However, plaintiff has failed to articulate any allegations that would suggest that these alleged failures in performance by his attorney, even if accepted as true, could plausibly support a claim that his attorney was part of a conspiracy with the County defendants. In fact, plaintiff failed to allege that his attorney entered into an explicit or implicit agreement with any other named party to this lawsuit. Instead, he simply asserts his lawyer was ineffective. Moreover, as the Second Circuit has noted, generalized allegations of conspiracy "ring especially hollow" where, as here, the parties alleged to be part of the same conspiracy have an "adversarial relationship." *Ciambriello v. Cnty. of Nassau,* 292 F.3d 307, 324 (2d Cir.2002). Given the complete absence of anything allegations of conspiracy, the Section 1983 claims against his attorney cannot survive a motion to dismiss. *See also Green v. Bartek,*

No. 3:05CV1851 (SRU), 2007 WL 4322780, at *3 (D.Conn. Dec.7, 2007) (dismissing Section 1983 claim against plaintiff's appointed attorney in Family Court where, "[a]lthough [plaintiff] includes several statements regarding an alleged conspiracy, he includes no facts to support this claim"); Brewster v. Nassau Cnty., 349 F.Supp.2d 540, 547 (E.D.N.Y.2004) (dismissing Section 1983 claim against Legal Aid Society where plaintiff alleged in a conclusory fashion that Legal Aid waived his rights and failed to adequately represent him in order to "benefit themselves and/or District Attorney," but did "not actually allege[ ] any facts indicating an agreement to act in concert to harm him"); Hom v. Brennan, 304 F.Supp.2d 374, 378–79 (E.D.N.Y.2004) (dismissing Section 1983 claim against supervising attorney with the Nassau–Suffolk Law Services because "plaintiff fails to allege with particularity what the alleged conspiracy is, the purpose of the conspiracy, who was involved in the conspiracy, the existence of an act in furtherance of the conspiracy, or that he was injured as a result of the conspiracy"); Braxton v. Brown, No. 96 CV 187, 1997 WL 43525, at *3 (E.D.N.Y. Jan.28, 1997) ("Notwithstanding the latitude afforded a pro se complaint, plaintiff fails to allege any facts supporting an inference that the Defense Attorney defendants colluded with the District Attorney defendants. While plaintiff's allegations might support a state law malpractice action against his former defense attorneys, they do not support a federal court's exercise of jurisdiction under Section 1983."). Moreover, based upon the allegations in the complaint, it is clear that plaintiff is alleging malpractice or ineffective assistance of counsel, rather than conspiracy. Thus, leave to re-plead would be futile.

E. *No Leave to Re–Plead*

In dismissing plaintiff's federal claims, the Court has considered whether to dismiss the federal claims with prejudice, or grant leave to re-plead. Having reviewed the complaint, the Court declines to provide plaintiff with an opportunity to re-plead, because he cannot correct the defects in the federal claims.

**\*5** The Second Circuit has emphasized that "[a] *pro se* complaint is to be read liberally. Certainly the court should not dismiss without granting leave to amend at least once

when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (internal quotation marks omitted). Under Rule 15(a) of the Federal Rules of Civil Procedure, "[t]he court should freely give leave [to amend] when justice so requires." Fed.R.Civ.P. 15(a)(2). However, even under this liberal standard, this Court finds that any attempt to amend the pleading in this case would be futile. *See Cuoco,* 222 F.3d at 112 ("The problem with [plaintiff's] cause[ ] of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied.") As discussed in detail *supra,* it is clear from the complaints that plaintiff does not have any possibility of asserting a plausible Section 1983 claim because of the application of the doctrine of absolute immunity to his federal claims against the prosecutors, and because of the lack of state action as to defendant Elbert. Thus, where any amendment to the complaints would clearly be futile, dismissal without leave to re-plead is appropriate. *See, e.g., Peterec–Tolino v. New York,* 364 F. App'x 708, 711 (2d Cir.2010) (affirming district court's *sua sponte* dismissal of § 1983 claims without leave to amend because, *inter alia,* certain defendants were not state actors and "[a]ny amendment would be futile"); *Wilson v. Wilson–Poison,* No. 09 Civ. 9810(PGG), 2010 WL 3733935, at *10 (S.D.N.Y. Sept.23, 2010) (leave to amend unwarranted because, *inter alia,* plaintiff could not allege state action under Section 1983); *Contes v. City of New York,* No. 99 Civ. 1597(SAS), 1999 WL 500140, at *11 (S.D.N.Y. July 14, 1999) ("It would be futile to grant leave to replead in this case. Without state action, which is lacking here, [plaintiff] cannot prevail on a claim pursuant to § 1983.").

F. *Declining to Exercise Supplemental Jurisdiction over State Law Claims*

Having determined that plaintiff's federal claims are *sua sponte* dismissed, the Court concludes that retaining jurisdiction over any state law claims is unwarranted. 28 U.S.C. § 1367(c)(3); *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *see also McCluskey v. N.Y. State Unified Court Sys.,* No. 10–cv–2144, 2010 WL 2558624, at *7 (E.D.N.Y. June 17, 2010). "In the interest of comity, the Second Circuit instructs that 'absent exceptional circumstances,' where federal claims can be disposed of ... courts should 'abstain from exercising pendent jurisdiction.' " *Birch v. Pioneer Credit Recovery, Inc.,* No. 06–CV–6497T, 2007 WL 1703914, at *5 (W.D.N.Y. June 8, 2007) (quoting *Walker v. Time Life Films, Inc.,* 784 F.2d 44, 53 (2d Cir.1986)).

2012 WL 1340088

Therefore, in the instant case, the Court, in its discretion, " 'decline[s] to exercise supplemental jurisdiction' " over plaintiff's state law claims because "it 'has dismissed all claims over which it has original jurisdiction.' " *Kolari v. N. Y.-Presbyterian Hosp.,* 455 F.3d 118, 122 (2d Cir.2006) (quoting 28 U.S.C. § 1367(c)(3)); *see also Cave v. E. Meadow Union Free Sch. Dist.,* 514 F.3d 240, 250 (2d Cir.2008) ("We have already found that the district court lacks subject matter jurisdiction over appellants' federal claims. It would thus be clearly inappropriate for the district court to retain jurisdiction over the state law claims when there is no basis for supplemental jurisdiction."); *Karmel v. Claiborne, Inc.,* No. 99 Civ. 3608(WK), 2002 WL 1561126, at *4 (S.D.N.Y. July 15, 2002) ("Where a court is reluctant to exercise supplemental jurisdiction because of one of the reasons put forth by § 1367(c), or when the interests of judicial economy, convenience, comity and fairness to litigants are not violated by refusing to entertain matters of state law, it should decline supplemental jurisdiction and allow the plaintiff to decide whether or not to pursue the matter in state court.").

**\*6** Accordingly, pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to retain jurisdiction over any remaining state law claims given the absence of any federal claims that survive.

### III. *CONCLUSION*

For the reasons set forth above, plaintiff's federal claims against defendants DA Rice and ADA Angelakis, as well as any federal claim against defendant Elbert, are *sua sponte* dismissed in their entirely with prejudice pursuant to 28 U.S.C. § 1915A. Further, the Court declines to exercise supplemental jurisdiction over plaintiff's purely state law claims in the absence of any federal claims. Thus, any state claims are dismissed without prejudice. Therefore, the complaint is dismissed in its entirety. The Clerk of the Court shall enter judgment accordingly and close the case.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and, thus, *in forma pauperis* status is denied for purposes of an appeal. *Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). The Clerk shall enter judgment accordingly and close this case.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 1340088

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Franklin v. Chenango County Public Defender's Office, Not Reported in Fed. Supp. (2018)

2018 WL 4288620

2018 WL 4288620
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Ernest F. FRANKLIN II., Plaintiff,

v.

CHENANGO COUNTY PUBLIC
DEFENDER'S OFFICE, et al., Defendants.

Civil Action No. 3:18-CV-0865 (BKS/DEP)
|
Signed 09/07/2018

**Attorneys and Law Firms**

FOR PLAINTIFF: ERNEST F. FRANKLIN, II, Chenango
County Jail, 279 Country Road 46 Norwich, NY 13815, Pro
se.

ORDER, REPORT, AND RECOMMENDATION

DAVID E. PEEBLES, CHIEF U.S. MAGISTRATE JUDGE

 **\*1**  *Pro se* plaintiff Ernest F. Franklin, II, who is currently
an inmate being held in a local county jail facility, has
commenced this civil rights action, pursuant to 42 U.S.C. §
1983, against the office of a public defender, three individuals
who work in that office, and the Town of Norwich. In
his complaint, plaintiff alleges that during the course of a
criminal prosecution, he was ineffectively defended by the
three individual defendants named in his complaint.

In addition to commencing this action, plaintiff has requested
that (1) he be permitted to proceed *in forma pauperis* ("IFP");
(2) he be assigned counsel to represent him in the matter
*pro bono*; and (3) this case be consolidated with two other
actions brought by him and currently pending in this court.
Plaintiff's complaint and accompanying requests have been
forwarded to me for review. Based upon my consideration of
those materials, I deny plaintiff's IFP application, deny his
motions for consolidation and appointment of counsel, and
recommend that his complaint in this action be dismissed,
with leave to replead.

I. BACKGROUND

Plaintiff commenced this action on July 25, 2018. Dkt. No.
1. As defendants, plaintiff's complaint names (1) the Office

of the Chenango County Public Defender; (2) John Cameron,
the principal public defender for the County of Chenango; (3)
Zack Wentworth, who is identified as a public defender for
the County of Chenango; (4) Karri Beckwith, a secretary with
the Office of the Chenango County Public Defender; and (5)
the Town of Norwich. *Id.* at 2. Plaintiff claims that prior to
their "being fired" by him, defendants failed to provide him
with effective representation during the course of a criminal
matter pending against him in Chenango County Court, and
that defendants were manipulated and intimidated by the
assistant district attorney who is prosecuting the case. *Id.* at
3. Plaintiff's complaint requests the issuance of declaratory
and injunctive relief, as well as an award of damages in the
amount of $10 million. *Id.*

Plaintiff's complaint in the action was accompanied by
a motion for leave to proceed IFP. Dkt. No. 2. After
that application was deemed incomplete, the matter was
administratively closed on July 25, 2018. Dkt. No. 3. The case
was subsequently reopened, however, based upon plaintiff's
submission of amended motions for leave to proceed IFP. Dkt.
Nos. 4, 5, 6, 8. The amended IFP application does not include
the required certification regarding plaintiff's inmate account,
and instead indicates that plaintiff has been unable to obtain a
signature from an authorized officer. Dkt. No. 4 at 2. In
an effort to satisfy his obligation to establish entitlement to
IFP status notwithstanding the lack of a proper certification,
plaintiff has attached a printout reflecting the amount held in
his prison account over the period from March 21, 2017 to
August 8, 2018. Dkt. No. 8 at 4-8.

After commencing this action, plaintiff moved, on August 6,
2018, for appointment of counsel. Dkt. No. 7. In that letter
request, plaintiff indicates that the application was prompted
by his frustration over the inability to obtain a signature from
an authorized officer on his IFP application. *Id.*

 **\*2**  On August 13, 2018, plaintiff submitted a request that
this matter be consolidated with two other actions brought by
him and pending in this court. Dkt. No. 9. That application
similarly appears to have been motivated based upon the
plaintiff's frustration over his inability to obtain a proper
signature on his IFP applications. *Id.*

II. DISCUSSION

A. Plaintiff's IFP Application

When a civil action is commenced in a federal district court,
the statutory filing fee, currently set at $400, must ordinarily

Franklin v. Chenango County Public Defender's Office, Not Reported in Fed. Supp. (2018)

2018 WL 4288620

be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to permit a litigant to proceed IFP if it determines that he is unable to pay the required filing fee. 28 U.S.C. § 1915(a)(1). [1]

[1]  The total cost for filing a civil action in this court is $400.00, consisting of the civil filing fee of $350.00, see 28 U.S.C. § 1914(a), and an administrative fee of $50.00. Although an inmate granted IFP status is not required to pay the $50.00 administrative fee, he is required to pay, over time, the full amount of the $350.00 filing fee regardless of the outcome of the action. See 28 U.S.C. § 1915(b)(3).

The governing federal statute provides, in pertinent part, that an application for IFP status must be accompanied by "a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing of the complaint or notice of appeal, obtained from the appropriate official of each prison at which the prisoner is confined." 28 U.S.C. § 1915(a)(2). In accordance with the local rules of practice for this court, a prisoner seeking IFP status in a civil action may satisfy this requirement by submitting a completed, signed, and certified IFP application. [2] N.D.N.Y. L.R. 5.4(b)(1)(A). Rule 5.4 of the court's local rules further provides that if the prisoner fails to fully comply with the above-described requirements after being informed by court order of what is required, "the Court shall dismiss the action." N.D.N.Y. L.R. 5.4(b)(2)(A).

[2]  A "certified" IFP application is one in which the certificate portion at the bottom of the second page has been completed and signed by an appropriate official at the plaintiff's facility. The certificate portion of the IFP application requests information regarding funds and/or securities held on account of the inmate's credit over the preceding six months.

Plaintiff's IFP application in this action is clearly incomplete, given the absence of a proper certification. Dkt Nos. 4, 8. For that reason, it must be denied. In light of plaintiff's allegation that he has attempted to secure a certified IFP application from prison officials, however, I will afford him another opportunity to submit a completed application. The clerk of the court will be respectfully directed to provide plaintiff an extra copy of this order, report, and recommendation for his use in requesting that the certification section of his IFP application be completed, signed, and returned to him by an appropriate official at his jail facility.

B. Sufficiency of Plaintiff's Complaint

1. Standard of Review

Although I am denying plaintiff's IFP application, in the interest of judicial efficiency and because I anticipate that plaintiff may submit a completed IFP request, I have proceeded to analyze the substance of plaintiff's complaint pursuant to 28 U.S.C. § 1915(e).

*3 Section 1915(e) directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2) (B). Similarly, 28 U.S.C. § 1915A(b) directs a court to review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," and to "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); see also Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007) ("[W]e have found both sections [1915 and 1915A] applicable to prisoner proceedings in forma pauperis.").

In deciding whether a complaint states a colorable claim, a court must extend a certain measure of deference in favor of pro se litigants, Nance v. Kelly, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and extreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and the parties have had an opportunity to address the sufficiency of plaintiff's allegations, Anderson v. Coughlin, 700 F.2d 37, 41 (2d Cir. 1983). The court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a pro se plaintiff's complaint to proceed. See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp., 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may sua sponte dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either

the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.' " *Aguilar v. United States*, Nos. 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) ); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory, for purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

When reviewing a complaint under section 1915(e), the court is guided by applicable requirements of the Federal Rules of Civil Procedure. Specifically, Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, J.) (quotation marks and italics omitted).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the court should construe the factual allegations of a complaint in a light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2) ).

2. Analysis

a. Defendants Cameron, Wentworth, and Beckwith

**\*4** Plaintiff's complaint names three individuals as defendants, including John Cameron, the Chenango County Public Defender; Assistant Chenango County Public Defender Zack Wentworth; and Karri Beckwith, a Secretary with the Office of the Chenango County Public Defender. The claims against those individuals are brought pursuant to 42 U.S.C. § 1983.

Section 1983 "establishes a cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983) ). It " 'is not itself a source of substantive rights[,]' ... but merely provides 'a method for vindicating federal rights elsewhere conferred[.]' " *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979) ). In order to state a claim pursuant to section 1983, a plaintiff must allege "(1) 'that some person has deprived him of a federal right,' and (2) 'that the person who has deprived him of that right acted under color of state ... law.' " *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980) ); *accord, Byng v. Delta Recovery Servs. LLC*, 568 F. App'x 65, 65-66 (2d Cir. 2014).

State action is an essential element of any section 1983 claim. *Gentile v. Republic Tobacco Co.*, No. 95-CV-1500, 1995 WL 743719, at *2 (N.D.N.Y. Dec. 6, 1995) (Pooler, J.) (citing *Velaire v. City of Schenectady*, 862 F. Supp. 774, 776 (N.D.N.Y. 1994) (McAvoy, J.) ). To survive scrutiny under section 1915(e) where a plaintiff has asserted a section 1983 claim, the complaint must allege facts that plausibly suggest state action on the part of the named defendants. *See DeMatteis v. Eastman Kodak Co.*, 511 F.2d 306, 311 (2d Cir. 1975), *modified on other grounds by* 520 F.2d 409 (2d Cir. 1975), ("A private party violates [section] 1983 only to the extent its conduct involves state action."); *see also Wilson v. King*, No. 08-CV-0509, 2008 WL 2096593, at *1 (N.D.N.Y. May 16, 2008) (Sharpe, J.).

The three defendants in this action are individuals who performed a non-governmental function in representing the plaintiff in connection with his criminal prosecution. In that capacity, while their office may be publicly funded, they were conducting themselves as private actors. It is well-established

Case 1:25-cv-01150-AJB-TWD    Document 4    Filed 10/20/25    Page 30 of 187

Franklin v. Chenango County Public Defender's Office, Not Reported in Fed. Supp. (2018)

2018 WL 4288620

that "public defenders or court-appointed defense attorneys do not act under color of law." *Housand v. Heiman*, 594 F.2d 923, 924-25 (2d Cir. 1979) (internal quotation marks omitted); *accord, Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981) ("[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding."). Accordingly, plaintiff's claims against the three individual defendants are subject to dismissal for lack of state action.

### b. Office of the Chenango County Public Defender

Nominally identified as a defendant in this case is the Office of the Chenango County Public Defender. The Office of the Chenango County Public Defender, as distinct from the Public Defender as an individual, is not a person amenable to suit under section 1983. *Fahey v. Pub. Defender's Off. of Erie Cnty. Pennsylvania*, Civil Action No. 14-295, 2015 WL 163548, at *3 (W.D. Pa. Jan. 13, 2015); *see also Newell v. Montgomery Cty. Pub. Defender's Off.*, No. Civ. A. 3 09 0440, 2009 WL 1392838, at *2 (M.D. Tenn. May 18, 2009). Accordingly, I recommend that the Office of the Chenango County Public Defender be dismissed as a defendant in this case.

### c. Town of Norwich

**\*5**  Also named as a defendant in this action is the Town of Norwich. Plaintiff's complaint, however, is devoid of any allegations of facts that would support liability on the part of the Town of Norwich. Accordingly, I recommend that plaintiffs' claims against that defendant be dismissed as well.

### C. Whether to Permit Amendment

Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also Fed. R. Civ. P.* 15(a) ("The court should freely give leave when justice so requires."); *see also Mathon v. Marine Midland Bank, N.A.*, 875 F. Supp. 986, 1003 (E.D.N.Y. 1995) (permitting leave to replead where court could not "determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy"). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of

action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, No. 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).

In this case, although seemingly implausible, plaintiff could potentially amend his complaint to assert cognizable causes of action against defendants who are amenable to suit. Accordingly, I recommend that he be granted leave to amend his complaint.

If plaintiff chooses to file an amended complaint, he must clearly and concisely set forth the facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, plaintiff is informed that any such amended complaint will replace the existing complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (internal quotation marks omitted) ).

### D. Request for Appointment of Counsel

As was previously noted, accompanying plaintiff's complaint in this action is a request for the assignment of counsel to represent him in this action *pro bono*. Dkt. No. 7.

The statute that governs IFP proceedings provides, in relevant part, that "[t]he court may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e) (1); *see Hodge v. Police Officers*, 802 F.2d 58, 61-62 (2d Cir. 1986). That section, however, does not require that counsel be appointed for every indigent civil litigant. Although the United States Constitution assures that indigent litigants have "meaningful access" to the courts, it does not guarantee that all such parties will receive the benefit of *pro bono* representation. *Hodge*, 802 F.2d at 60. Instead, section 1915(e) confers broad discretion on the courts to

Case 1:25-cv-01150-AJB-TWD    Document 4    Filed 10/20/25    Page 31 of 187

Franklin v. Chenango County Public Defender's Office, Not Reported in Fed. Supp. (2018)

2018 WL 4288620

appoint counsel to deserving indigent litigants in appropriate circumstances. *Id.* at 60-62.

**\*6** While the appointment of counsel to represent indigent parties in civil suits is authorized by statute, when that authority is exercised, the court is required to call upon attorneys to donate their time *pro bono*, to the benefit of indigent litigants and the court. In deference to the limited resources available to the court to serve the interests of the many indigent litigants who pursue claims before them, and recognizing the "thankless burden" associated with such assignments, *Miller v. Pleasure*, 296 F.2d 283, 285 (2d Cir. 1961), courts should not grant such applications indiscriminately, but instead must exercise sound judgment and restraint in doing so. *Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 172 (2d Cir. 1989).

There is no bright line test to be applied when a *pro se*, indigent civil litigant seeks appointment of counsel. *Hendrix v. Coughlin*, 114 F.3d 390, 392-93 (2d Cir. 1997). The factors informing the decision of whether to exercise discretion in favor of appointing counsel were summarized by the Second Circuit in its decision in *Hodge*:

> In deciding whether to appoint counsel ..., the district judge should first determine whether the indigent's position seems likely to be of substance. If the claim meets the threshold requirement, the court should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the factfinder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Hodge*, 802 F.3d at 61-62. In weighing these factors, each case must be decided on its own merits. *Velasquez v. O'Keefe*, 899 F. Supp. 972, 974 (N.D.N.Y. 1995) (McAvoy, J.) (citing *Hodge*, 802 F.2d at 61). Of these criteria, the Second Circuit has "stressed the importance of the apparent merits of the

indigent's claims." *Cooper*, 877 F.2d at 172. While a plaintiff need not demonstrate that he can win his case without the aid of counsel, he does have to show "likely merit." *McDowell v. State of N.Y.*, No. 91-CV-2440, 1991 WL 177271, at \*1 (S.D.N.Y. 1991).

This action was only recently commenced and, as was discussed above, I am recommending that the court dismiss plaintiff's complaint as failing to survive threshold review under 28 U.S.C. § 1915(e). This is a clear indication that the matter is not likely of substance. For that reason, plaintiff's request for the appointment of counsel is likewise denied, without prejudice to renewal in the event the action proceeds.

E. Consolidation

Plaintiff has moved to consolidate three cases pending in this district, including *Franklin v. Chenango Cnty. Sheriff's Office*, No. 9:18-CV-0794 (N.D.N.Y., filed 2018) and *Franklin v. Chenango Cnty. Sheriff's Office*, No. 9:18-CV-0896 (N.D.N.Y., filed 2018). [3] The three matters are assigned to different district judges and different magistrate judges. Plaintiff's complaint in Civil Action 9:18-CV-0794 alleges that defendants failed to provide plaintiff with proper medical treatment, and additionally complains concerning the conditions of his confinement, asserting that by their actions, defendants have violated the Eighth Amendment's prohibition against cruel and unusual punishment. *See* Civil Action No. 9:18-CV-0794, Dkt. No. 1. In Civil Action No. 9:18-CV-0896, plaintiff complains of mistreatment by officers employed at the Chenango County Correctional Facility. *See* Civil Action No. 9:18-CV-0896, Dkt. No. 1.

[3]     Although plaintiff's motion to consolidate pertains to only three case, I note that he currently has seven actions pending in this court.

**\*7** Rule 42 of the Federal Rules of Civil Procedure, which governs consolidation, provides as follows:

(a) CONSOLIDATION. If actions before the court involve a common question of law or fact, the court may:

(1) join for hearing or trial any or all matters at issue in the actions;

(2) consolidate the actions; or

(3) issue any other orders to avoid unnecessary cost or delay.

Case 1:25-cv-01150-AJB-TWD    Document 4    Filed 10/20/25    Page 32 of 187

Franklin v. Chenango County Public Defender's Office, Not Reported in Fed. Supp. (2018)
2018 WL 4288620

Fed. R. Civ. P. 42(a). In this case, a review of plaintiff's complaints in the three actions at issue fails to reveal any common questions of law or fact. Moreover, the court does not discern any efficiency or economy to be gained by consolidating plaintiff's three actions. Accordingly, plaintiff's request for consolidation is denied.

## III. SUMMARY, ORDER, AND RECOMMENDATION

Plaintiff's amended IFP application is incomplete and, accordingly, is denied. Plaintiff's motions for appointment of counsel and consolidation are also denied, without prejudice to renewal of plaintiff's application for appointment of counsel at a later date.

Turning to the merits of plaintiff's complaint, I conclude that it fails to state a cognizable cause of action against any of the defendants in this action. Accordingly, I recommend that it be dismissed.

Based upon the foregoing it is hereby

ORDERED that plaintiff's application for leave to proceed in this action *in forma pauperis* (Dkt. No. 4, 8) is DENIED, and the clerk is respectfully directed to provide plaintiff with an extra copy of this order, report, and recommendation for his use in requesting that the certification section of any future IFP application be completed, signed, and returned to him by an appropriate official at his jail facility; and it is further

ORDERED, that plaintiff's motion for appointment of counsel in the action (Dkt. No. 7) is DENIED, without prejudice to renewal; and it is further

ORDERED, that plaintiff's motion for consolidation of this action and two other cases pending in this district (Dkt. No. 9) is DENIED; and it is further hereby respectfully

RECOMMENDED that plaintiff's claims against all five named defendants be DISMISSED, with leave to replead.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. [4] FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

[4]     If you are proceeding *pro se* and are served with this order, report, and recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order, report and recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

## All Citations

Not Reported in Fed. Supp., 2018 WL 4288620

---

**End of Document**                              © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:25-cv-01150-AJB-TWD    Document 4    Filed 10/20/25    Page 33 of 187

Franklin v. Chenango County Public Defenders Office, Not Reported in Fed. Supp. (2018)

2018 WL 5792758

2018 WL 5792758
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Ernest F. FRANKLIN, II, Plaintiff,

v.

CHENANGO COUNTY PUBLIC
DEFENDERS OFFICE et al., Defendants.

3:18-cv-00865 (BKS/DEP)
|
Signed 11/05/2018

**Attorneys and Law Firms**

Ernest F. Franklin, II, Chenango County Jail, 279 County
Road 46, Norwich, NY 13815, Plaintiff pro se.

**MEMORANDUM-DECISION AND ORDER**

Hon. Brenda K. Sannes, United States District Judge

 **\*1**  Plaintiff Ernest Franklin, II, a county inmate, commenced
this civil rights action asserting claims under 42 U.S.C. §
1983. (Dkt. No. 1). This matter was referred to United States
Magistrate Judge David E. Peebles, who, on September 7,
2018, issued an Order, Report, and Recommendation (the
"Report-Recommendation") recommending that Plaintiff's
claims against all five named Defendants be dismissed, with
leave to replead. (Dkt. No. 11). Magistrate Judge Peebles
advised Plaintiff that under 28 U.S.C. § 636(b)(1) he had 14
days within which to file written objections to the Report-
Recommendation, and that the failure to object to the Report-
Recommendation within 14 days would preclude appellate
review. (Dkt. No. 11, at 19). No objections to the Report-
Recommendation have been filed.

As no objections to the Report-Recommendation have been
filed, and the time for filing objections has expired, the
Court reviews the Report-Recommendation for clear error.
*See* Petersen v. Astrue, 2 F. Supp. 3d 223, 228–29 (N.D.N.Y.
2012); Fed. R. Civ. P. 72(b) advisory committee's note to 1983
amendment. Having reviewed the Report-Recommendation
for clear error and found none, the Court adopts it in its
entirety.

For these reasons, it is

**ORDERED** that the Report-Recommendation (Dkt. No. 11)
is **ADOPTED** in its entirety; and it is further

**ORDERED** that Plaintiff's claims against all five named
Defendants are **DISMISSED**, with leave to replead; and it is
further

**ORDERED** that Plaintiff may file an amended complaint
within 30 days from the date of this Order; and it is further

**ORDERED** that, if Plaintiff fails to file an amended
complaint within 30 days from the date of this Order or to
request an extension of time to do so, the Clerk is directed to
enter judgment without further order of this Court; and it is
further

**ORDERED** that the Clerk shall serve a copy of this Order
upon Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2018 WL 5792758

---

End of Document

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 4712530
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Scott Phillip LEWIS, Plaintiff,

v.

ESSEX COUNTY, New York, et al., Defendants.

No. 8:24-CV-00100 (MAD/CFH)
|
Signed June 18, 2024

**Attorneys and Law Firms**

Scott Phillip Lewis, 1936 Saranac Avenue, #3, PMB 411, Lake Placid, New York 12946, Plaintiff pro se

**REPORT-RECOMMENDATION AND ORDER**

Christian F. Hummel, United States Magistrate Judge

**I. In Forma Pauperis**

**\*1** Plaintiff pro se Scott Lewis ("plaintiff")[1] purported to commence this action on January 19, 2024, by filing a complaint. See Dkt. No. 4 ("Compl."); see also Dkt. No. 1. In lieu of paying this Court's filing fee, he submitted an application for leave to proceed in forma pauperis ("IFP"). See Dkt. Nos. 2, 5. The undersigned has reviewed plaintiff's IFP application and determines that he financially qualifies to proceed IFP.[2]

[1]    The undersigned notes that plaintiff is a particularly litigious individual who has filed numerous other actions that are presently pending in this District, as well as others. See, e.g., Lewis v. Town of Elizabethtown, 8:24-CV-00535 (AMN/DJS) (N.D.N.Y. filed Apr. 18, 2024), Dkt. No. 5 (Report-Recommendation recommending dismissal pending review); Lewis v. Adirondack Med. Ctr., 1:24-CV-00376 (BKS/TWD) (N.D.N.Y. filed Mar. 19, 2024), Dkt. No. 4 (Report-Recommendation recommending dismissal pending review); Lewis v. Paymaster Payroll Sys., Inc., 8:24-CV-00121 (MAD/DJS) (N.D.N.Y. filed Jan. 25, 2024), Dkt. No. 9 (dismissing complaint and entering judgment in favor of the defendants); Lewis v. Walsh, 8:24-CV-00098 (GTS/CFH) (N.D.N.Y. filed Jan. 21, 2024), Dkt. No 5 (Report-Recommendation recommending dismissal with prejudice and without leave to amend pending review); Lewis v. Despos, LLC, 8:24-CV-00079 (AMN/CFH) (N.D.N.Y. filed Jan. 17, 2024), Dkt. No 7 (Report-Recommendation recommending dismissal without prejudice but without leave to amend pending review); Lewis v. R. L. Vallee, Inc., 8:24-CV-00069 (AMN/DJS) (N.D.N.Y. filed Jan. 16, 2024), Dkt. No. 17 (dismissing complaint with leave to amend); Lewis v. Affiliated Enter. Sol., LLC, 8:24-CV-00061 (BKS/DJS) (N.D.N.Y. filed Jan. 15, 2024), Dkt. No. 17 (dismissing complaint with leave to amend); Lewis v. Redline Hockey, LLC, 8:24-CV-00068 (BKS/DJS) (N.D.N.Y. filed Jan. 15, 2024), Dkt. No. 17 (dismissing complaint with leave to amend); Lewis v. Citizens United, Inc., 8:24-CV-00029 (TJM/DJS) (N.D.N.Y. filed Jan. 8, 2024), Dkt. No. 22 (dismissing complaint with leave to amend); Lewis v. Adirondack Med. Ctr., 8:24-CV-00027 (BKS/DJS) (N.D.N.Y. filed Jan. 7, 2024), Dkt. No. 17 (dismissing complaint with leave to amend); Lewis v. Onondaga Cnty., 8:24-CV-00013 (GTS/DJS) (N.D.N.Y. filed Jan. 3, 2024), Dkt. No. 21 (dismissing complaint with prejudice); Lewis v. Franklin Cnty., 8:23-CV-01647 (DNH/CFH) (N.D.N.Y. filed Dec. 28, 2023), Dkt. No. 10 (Report-Recommendation recommending partial dismissal pending review); Lewis v. Essex Cnty., 8:23-CV-01636 (TJM/CFH) (N.D.N.Y. filed Dec. 26, 2023), Dkt. No. 9 (Report-Recommendation recommending dismissal pending review); Lewis v. Williamson Cnty., 1:24-CV-00461 (ADA) (W.D. Tex. filed Apr. 25, 2024), Dkt. No. 3 (dismissing complaint with prejudice as malicious); Lewis v. Williamson Cnty., 1:24-CV-00118 (ADA) (W.D. Tex. filed Jan. 29, 2024), Dkt. No. 3 (dismissing complaint with prejudice as malicious); Lewis v. Williamson Cnty., 1:21-CV-00074 (ADA/SH) (W.D. Tex. filed Jan. 25, 2021), Dkt. No. 152 (granting summary judgment in favor of the defendants and dismissing the plaintiff's claims with prejudice). The undersigned notes that this Court has the authority under 28 U.S.C. § 1651(a) to impose a bar order. Specifically, "the filing of [multiple] duplicative or frivolous cases could

result in the entry of [such] order," which would "bar [a plaintiff] from filing new actions without prior permission of the Court." Muhammad v. Dep't of Navy, No. 14-CV-1290 (SLT), 2014 WL 1330902, at *2 (E.D.N.Y. Apr. 1, 2014); see Hong Mai Sa v. Doe, 406 F.3d 155, 158 (2d Cir. 2005) ("If a litigant has a history of filing vexatious, harassing or duplicative lawsuits, courts may impose sanctions, including restrictions on future access to the judicial system."); see also Rogers v. McMahon, No. 5:22-CV-994 (BKS/TWD), 2022 WL 16755727, at *1 (N.D.N.Y. Oct. 4, 2022) (recommending that the Court impose a bar order, given that the matter was "the sixth action [the p]laintiff ha[d] filed with this Court in recent years"; the plaintiff's prior five actions had been dismissed, two on the ground that they were frivolous; and the plaintiff had been warned that "her unwarranted litigiousness is bordering on vexatiousness" and that continued meritless submissions may result in the issuance of an order "to show cause as to why the Court should not issue an order barring ... future filings without prior leave of the Court"), report and recommendation adopted, 2022 WL 15261454 (N.D.N.Y. Oct. 27, 2022).

2    Plaintiff is advised that although he has been granted IFP status, he is still required to pay any fees and costs he may incur in this action, including but not limited to copying fees, transcript fees, and witness fees.

## II. Initial Review

### A. Legal Standard

**\*2** 28 U.S.C. § 1915 directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." [3] 28 U.S.C. § 1915(e)(2)(B). [4] "Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed further with his action." Praileau v. Fischer, 930 F. Supp. 2d 383, 394 (N.D.N.Y. 2013).

3    " 'A case is malicious if it was filed with the intention or desire to harm another.' " Tafari v. Hues, 473 F.3d 440, 442 (2d Cir. 2007) (quoting Andrews v. King, 398 F.3d 1113, 1121 (9th Cir. 2005)). A case "is frivolous when it 'lacks an arguable basis either in law or in fact' " and "advances 'inarguable legal conclusion[s]' or 'fanciful factual allegation[s].' " Id. (quoting Neitzke v. Williams, 490 U.S. 319, 325 (1989)).

4    These requirements apply equally to non-prisoner pro se litigants. See N.D.N.Y. L.R. 72.3(d) ("Unless the Court orders otherwise, any civil action that a non-prisoner pro se litigant commences shall be referred to a Magistrate Judge for the purpose of review under 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A when an application to proceed in forma pauperis is filed.").

Where, as here, the plaintiff proceeds pro se, "the court must construe his submissions liberally and interpret them to raise the strongest arguments that they suggest." Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (internal quotation marks omitted). As the Second Circuit stated,

[t]here are many cases in which we have said that a pro se litigant is entitled to special solicitude, that a pro se litigant's submissions must be construed liberally, and that such submissions must be read to raise the strongest arguments that they suggest. At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not consistent with the pro se litigant's allegations, or arguments that the submissions themselves do not suggest, that we should not excuse frivolous or vexatious filings by pro se litigants, and that pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law....

*Id.* (internal quotation marks, citations, and footnote omitted); *see also* Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds pro se, ... a court is obligated to construe his pleadings liberally.") (internal quotation marks and citations omitted). [5] Thus, the Court is not required to accept unsupported allegations that are devoid of sufficient facts or claims. Although detailed allegations are not required at the pleading stage, the complaint must still include enough facts to provide the defendants with notice of the claims against them and the grounds upon which these claims are based. *See* Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); *see also* Bell Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007). Ultimately, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; *see* Iqbal, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

[5]     The undersigned notes, however, that the Second Circuit has "occasionally endorsed some limited forms of this practice, and ha[s] suggested that it may be appropriate 'to charge a pro se litigant with knowledge of, and therefore withdraw special status in relation to, particular requirements [of the legal system] with which he is familiar as a result of his extensive prior experience in the courts.' " Tracy v. Freshwater, 623 F.3d 90, 101 (2d Cir. 2010) (quoting Sledge v. Kooi, 564 F.3d 105, 109 (2d Cir. 2009), and citing Davidson v. Flynn, 32 F.3d 27, 31 (2d Cir. 1994) (denying a pro se plaintiff an opportunity to replead on the ground that he was "an extremely litigious inmate who [wa]s quite familiar with the legal system and with pleading requirements")); *see* Shomo v. Furco, No. 18-CV-8523 (VB), 2020 WL 4194941, at *4 (S.D.N.Y. July 20, 2020) (determining that "the deference usually granted to pro se plaintiffs need not be expansively drawn in this case," given that the pro se plaintiff previously filed "at least ten lawsuits and appeals [and] was familiar with court procedure").

**\*3** "The [Second Circuit]'s 'special solicitude' for pro se pleadings has its limits, because pro se pleadings still must comply with ... the Federal Rules of Civil Procedure [('Fed. R. Civ. P.')]." Kastner v. Tri State Eye, No. 19-CV-10668 (CM),

2019 WL 6841952, at *2 (S.D.N.Y. Dec. 13, 2019) (quoting Ruotolo v. IRS, 28 F.3d 6, 8 (2d Cir. 1994)). [6] Specifically, Rule 8 provides that a pleading which sets forth a claim for relief shall contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Rule 8 also requires the pleading to include "(1) a short and plain statement of the grounds for the court's jurisdiction ... and (3) a demand for the relief sought ...." FED. R. CIV. P. 8(a). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." FED. R. CIV. P. 8(d).

[6]     All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

Further, Rule 10 provides in pertinent part that:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 55 (internal quotation marks and citations omitted). A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). As the Second Circuit has held, "[w]hen a complaint does not

comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citations omitted).

### B. Plaintiff's Complaint

Plaintiff alleges that, "on or around October 12, 2021," "Village of Lake Placid Deputy Pat Kane" ticketed him "for operating without insurance" even though "[p]laintiff believed to be insured by [The General Automobile Insurance Services, Inc.] at the time of the traffic stop[.]" Compl. at 4, ¶¶17, 19.[7] Subsequently, "[p]laintiff offered Assistant District Attorney Kenneth Borden, Jr. ('Mr. Borden') to do community service in order to ultimately dismiss the traffic violation." Id. at 4, ¶20. "Mr. Borden denied [p]laintiff's offer even though genuine material facts of why [p]laintiff did not have insurance were relevant at the time and remain to this day." Id. "Plaintiff entered a plea of 'not guilty' upon arraignment of the traffic violation in the Village of Lake Placid Court and intended to fully utilize his Constitutional rights after Mr. Borden made the choice to not accept [p]laintiff's offer." Id. at 4, ¶21.

[7]     Citations are to the pagination generated by CM/ECF, located in the header of each page.

"Plaintiff had a bench trial before former Village Justice David Coursen on November 30, 2022." Compl. at 4, ¶22. "Misrepresentations and Constitutional violations were used to secure conviction during the bench trial on November 30, 2022." Id. at 4, ¶23. "Upon information and belief, David Coursen resigned from Village Justice amid a State probe into his rulings." Id. at 4, ¶24. "Plaintiff's driving privileges were revoked for one year as a result of the unconstitutional trial in the Village of Lake Placid Court." Id. at 5, ¶25. "Plaintiff filed a Notice of Appeal regarding the decision on or around December 30, 2022." Id. at 5, ¶26. "This appeal has yet to be heard by the Essex County Court." Id.

**\*4** "On or around February 4, 2023, [p]laintiff was charged for aggravated unlicensed operator in the third degree, a misdemeanor in the State of New York ('aggravated unlicensed operator charge')." Compl. at 5, ¶27. Plaintiff "was arraigned on or around February 16, 2023 and wished

to proceed pro se, much to the dismay of th[e] Court and Mr. Borden." Id. at 5, ¶28. "In fact, Mr. Borden gave instructions to Mr. James Hyde IV ('Mr. Hyde'), an attorney of the Essex County Public Defender's Office, to give to [p]laintiff." Id. at 5, ¶29. "Plaintiff was not represented by Mr. Hyde at this time, and even if he was, it would be improper for a prosecutor to give the other party a demand to give to the party they represent." Id. at 5, ¶30. "In this situation, Mr. Borden was giving demands to an attorney who did not represent [p]laintiff." Id.

"Nonetheless, [p]laintiff was arraigned on or around February 16, 2023 in front of Alternate Village of Lake Placid Justice, Dean Dietrich." Compl. at 5, ¶31. "Plaintiff wore a kangaroo costume to the arraignment on this day." Id. "Before arraignment, Alternative Justice Dean Dietrich gave [p]laintiff the opportunity to change outfits as he stated 'I cannot take you seriously.' " Id. at 5, ¶32. "Plaintiff changed from the kangaroo costume and entered a plea of 'not guilty' without any further incident." Id. at 5, ¶33. "The only incident was Mr. Borden, a prosecutor representing the Essex County District Attorney's Office, giving demands to Mr. Hyde, who did not represent [p]laintiff." Id. at 5-6, ¶34. "Plaintiff was able to proceed pro se." Id.

"On or around March 18, 2022, [sic] [p]laintiff was arrested and spent the weekend in jail regarding the kangaroo costume."[8] Compl. at 6, ¶35. "Plaintiff was arraigned for criminal contempt in the second degree ('criminal contempt charge')." Id. "Plaintiff was represented by Mr. Hyde in the criminal contempt charge in Essex County Court." Id. at 6, ¶36. "In efforts to retaliate against [p]laintiff, unjust Orders of Protection were issued against [p]laintiff regarding Town of North Elba Court Clerk Jennifer Hayes ('Ms. Hayes') and Village of Lake Placid Court Clerk Victoria Duffy ('Ms. Duffy') during arraignment." Id. at 6, ¶37. "Mr. Hyde did nothing to protect [p]laintiff's interests and the truth." Id. "The criminal contempt charges stemming from wearing a kangaroo costume to the Village of Lake Placid arraignment were ultimately dismissed by County Court Judge Richard Mayer." Id. at 6, ¶38. "The State of New York has filed a Notice of Appeal regarding this decision." Id.

[8]     Although plaintiff states in his complaint that he was arrested "[o]n or around March 18, 2022," "regarding the kangaroo costume," this appears to be a typographical error. Compl. at 6, ¶35. Given that plaintiff presents the facts in his complaint in chronological order, it is likely that plaintiff

intended to say "[o]n or around March 18, 2023." See generally id.; see also Lewis v. Essex Cnty., 8:23-CV-01636 (TJM/CFH) (N.D.N.Y. filed Dec. 26, 2023), Dkt. No. 9 at 9 ("On or around March 18, 2023, [p]laintiff was arrested for criminal contempt in the second degree, resulting from wearing the kangaroo costume to the arraignment in the Village of Lake Placid Court in February 2023.").

"While Mr. Hyde represented [p]laintiff for the criminal contempt charge, [p]laintiff was still proceeding pro se in the Village of Lake Placid Court for the aggravated unlicensed operator charge until on or around May 2023." Compl. at 6, ¶39. "After a pressure campaign from the court, [p]laintiff obliged to being represented by Mr. Hyde, with a promise that Mr. Hyde would file a motion on [p]laintiff's behalf." Id. at 6, ¶40. "Without this promise, [p]laintiff would not have made the choice to be represented by Mr. Hyde and the Essex County Public Defender's Office." Id.

 **\*5** On November 16, 2023, during a pre-trial hearing, "Mr. Hyde had withdrawn as counsel, without providing the court with proper documentation[.]" Compl. at 6, ¶41. "Mr. Hyde did not file the motion as promised prior to his unlawful withdrawal at the November 16, 2023 pre-trial conference." Id. at 7, ¶42. "Additionally[, after Hyde's withdrawal,] new counsel was assigned as stand-by counsel in Miriam Hadden ('Ms. Hadden'), representing the Essex County Conflict Defender's Office." Id. at 6-7, ¶41. "Ms. Hadden immediately displayed an ineptitude surrounding the facts of the case." Id. at 7, ¶43. "She attempted to 'educate' [p]laintiff on the speedy trial laws of New York State, ignoring that [p]laintiff had already brought up speedy trial statutes on the record in the case she was now assigned to assist [p]laintiff with." Id. "Plaintiff found that an attorney being assigned was sharing statutes with [p]laintiff that he already included in previous motions on the record, while displaying an ineptitude of the facts at hand, as annoying and a cause of emotional disturbance." Id. at 7, ¶44. "For example on November 18, 2022, [p]laintiff was sent one hundred and eighteen emails (118) by Mirriam Hadden without any explanation of the emails relevancy to the case." Id. at 7, ¶45. "The purpose was either to overwhelm and annoy [p]laintiff or otherwise could be construed as a sinister attempt to take credit for [p]laintiff's work while she was, in fact, unwanted stand by counsel." Id. "Plaintiff wished to proceed pro se but was now receiving one hundred and eighteen (118) irrelevant emails from someone who could not display the simplest form of understanding what has already happened in the case." Id. at 7, ¶46. "Ms.

Hadden was relieved of her stand-by counsel status before trial." Id. at 7, ¶47.

"With Mr. Hyde's improper departure from the case, [p]laintiff had been left with a race against the clock to prepare for a December 11, 2023 trial." Compl. at 7, ¶48. "Plaintiff requested an adjournment of trial on November 30, 2023 which was denied by Honorable Alternate Village Justice Dean Dietrich." Id. at 7-8, ¶48. "Additionally, [p]laintiff remained without the court records from the court." Id. at 8, ¶49. "Mr. Hyde's case file did not provide information on why previous hearings were adjourned and which party was responsible for such adjournment." Id. "Without a court record request being completed and Mr. Hyde's case file being incomplete, [p]laintiff was unable to accurately compute the time in regards to a speedy trial violation by prosecution prior to trial." Id. "Since court and case record requests have remained incomplete, [p]laintiff was unduly prejudiced." Id.

"On December 4, 2023, [p]laintiff emailed Essex County Commissioner of Jurors Andrew Quinn ('Mr. Quinn') regarding 'a list of the panel of prospective jurors' in order to submit a potential challenge pursuant to CPL 270.10 before jury is selected." Compl. at 8, ¶50. "On this day, Mr. Quinn responded that '[t]he jury list is not available before the day of the trial' and that '[t]he judge does not get to see it before the day of the trial.' " Id.; see id. at 22 ("Exhibit A"). "This is utterly erroneous and was an attempt to hinder [p]laintiff's Sixth Amendment rights." Id. at 8, ¶50.

"Later, on December 4, 2023 [p]laintiff received electronic communication from Village of Lake Placid Court Clerk Victoria Duffy regarding superseding indictments [ ] signed by Assistant Chief Francis Strack of the Lake Placid Police Department." Compl. at 8, ¶51; see id. at 24-27 ("Exhibit B"). "This superseding indictment dismissed the misdemeanor aggravated unlicensed operator to a traffic violation." Id. at 8, ¶51. "The result was that [p]laintiff, by current New York State law, no longer had the right to a jury trial since the superseding indictments were traffic violations and not a misdemeanor charge." Id. at 8, ¶52. "A new arraignment for the superseding indictment was required by New York State law." Id. "Plaintiff's requests to Village of Lake Placid Court Clerk Victoria Duffy regarding the nature of the trial went unanswered[.]" Id. at 8, ¶53; see id. at 29-30 ("Exhibit C").

"On December 11, 2023 [p]laintiff was arraigned for the superseding indictment in which there was a plea of 'not guilty.' " Compl. at 9, ¶54. "Honorable Alternate Justice

Dean Dietrich ('[Justice] Dietrich') wished to proceed with a Bench Trial on the same exact day [plaintiff] was arraigned for the superseding indictment." Id. at 9, ¶55. Plaintiff "warned [Justice] Dietrich of the high probability of a mistrial and made an oral Motion to Adjourn the trial." Id. Justice "Dietrich denied [plaintiff]'s oral Motion to Adjourn at the beginning of trial on December 11, 2023." Id. at 9, ¶56. Justice "Dietrich did not wish to have a fair and lawful trial, pursuant to the Oath that he subscribed." Id. "This Oath requires [Justice] Dietrich to follow the Constitution of the United States of America, in addition to New York State." Id. "A Motion for New Trial has been filed in the Village of Lake Placid Court and is awaiting a decision from Alternative Village Justice Dean Dietrich." Id.

**\*6** Section 255-b of the New York State Judiciary law states: '[a] docket-book, kept by a clerk of a court, must be kept open, during the business hours fixed by law, for search and examination by any person.' " Compl. at 9, ¶57. "Plaintiff made a request to inspect the docket-book of the clerk of the Town of North Elba court, Ms. Jennifer Hayes, specifically seeking to view October 10, 2023." Id. at 9, ¶58. Hayes "did not make the docket-book available, and [ ] Justice ... Dietrich[ ] prohibited the book to be kept open, as required by law." Id. "The docket-book was not made available for inspection upon request." Id. at 9, ¶59. "The request was discussed during a November 16, 2023 pre-trial conference for a matter in the Village of Lake Placid Court, a completely separate court from the Town of North Elba." Id. "The Town of North Elba Justice, Dean Dietrich, is also an Alternate Justice for the Village of Lake Placid, Inc." Id. "Plaintiff was being gaslit by the Village of Lake Placid Court and the Town of North Elba Court." [9] Id. at 10, ¶60.

[9]      Plaintiff provides the following definition in support of his claims: "[g]aslighting can be defined as 'the process of making somebody believe untrue things in order to control them, especially that they have imagined or been wrong about what has really happened' or to 'manipulate (someone) using psychological methods into questioning their own sanity or powers of reasoning.' " Compl. at 10, ¶60.

"On December 20, 2023, [p]laintiff traveled to Elizabethtown, NY to inspect the docket books of the Essex County County Court." Compl. at 10, ¶61. "On this day, [p]laintiff was again gaslit about the law." Id. "Upon requesting examination of Ms. Gonzalez's docket-book, another unnamed employee of Ms. Gonzalez' office

gaslit [p]laintiff and advised that Chelsea Merrihew, the County Clerk, had the Court records being requested, which was inaccurate." [10] Id. "This is contrary to law[.]" Id. at 10, ¶62.

[10]      Plaintiff does not provide any further details regarding "Ms. Gonzalez."

Moreover, "Ms. Merrihew has had a history of acting contrary to law." Compl. at 10, ¶62. Specifically, "[p]laintiff [previously] filed a Notice of Appeal within the Village of Lake Placid Court on or around July 2023, a court within Essex County, NY." Id. "Ms. Merrihew had sent a notice to [p]laintiff stating that the notice of appeal was rejected because it was not an original." Id. Through this notice, Merrihew "made the choice to give [p]laintiff incorrect information and mail an unsigned document." Id. at 17, ¶109; see id. at 32 ("Exhibit D"). "Plaintiff followed up with the following email on or around August 10, 2023":

> Hey Chelsea, I believe a copy of my submission should have been accepted by the court. Section 200.33 of the Uniform Rules for NY State Trial Courts says: (a) When a notice of appeal is filed with a local court, a copy shall be filed with the county clerk by the person filing with the local court. I had filed a copy with the county clerk and it was rejected for not being an original, which is where my confusion stems from. Can you please let me know what I am missing? Thank you in advance. Sincerely, Scott Phillip Lewis.

Id. at 10, ¶63. "Ms. Merrihew responded on the same day stating in full":

> Good afternoon! I have reviewed 22 NYCRR 200.33 and agree that copies of a notice of appeal should have been accepted for filing. You may resubmit your papers. Please include the rejection cover page returned with your original submission. If you wish,

you may address your mailing directly to me. I apologize for the confusion and inconvenience. Sincerely, Chelsea M. Merrihew[.]

**\*7** Id. at 11, ¶64; see id. at 34-36 ("Exhibit E"). On August 23, 2023, plaintiff requested that Merrihew "mail [him] official correspondence with an actual signature asking for this." Id. at 35. Merrihew did not respond, and on October 11, 2023, plaintiff asked for a status update. See id. Later, on October 11, 2023, Merrihew responded and explained that nothing has been filed and the appeal was never commenced, as the Court never received the resubmitted paperwork. See id. at 35-36. On November 2, 2023, plaintiff responded:

Hi Chelsea, Since you erroneously rejected the papers, I do not feel the need to resubmit. Appeals have a very specific timeframe that need to be followed. Since you erroneously rejected the papers, I asked for a signed document from the court requesting the papers to be resubmitted. Why do I need to resubmit? Can you just file the papers I have filed correctly and timely the first time? I will need a letter with a signature explaining if documents need to be resubmitted again for an appeal to commence. This has taken a very long time. Sincerely, Scott Phillip Lewis.

Id. at 36. "No action has been taken on [p]laintiff's appeal." Id. at 10, ¶65. "No corrections have been made by Chelsea Merrihew." Id.

### C. Analysis

Liberally construing plaintiff's complaint, he brings claims under 42 U.S.C. § 1983 against (1) Justice Dean Dietrich; (2) Victoria Duffy; (3) Jennifer Hayes; (4) Chelsea Merrihew; (5) Commissioner Andrew Quinn; (6) Assistant District Attorney Kenneth Borden, Jr.; (7) District Attorney Kristy Sprague; (8) James Hyde, IV; (9) Mirriam Hadden; (10) the Essex County Public Defender's Office; (11) the Essex County

Conflict Defender's Office; (12) the Town of North Elba; (13) the Village of Lake Placid; and (14) Essex County, alleging violations of his Sixth and Fourteenth Amendment rights. [11] See generally Compl.; see also Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 475 (2d Cir. 2006) ("This policy of liberally construing pro se submissions is driven by the understanding that '[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training.' ") (quoting Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983)). Plaintiff also seeks to bring state law tort claims against Justice Dietrich, Hayes, Merrihew, the Town of North Elba, and Essex County for the negligent infliction of emotional distress. See Compl. at 17-19.

[11] Although plaintiff refers to Village of Lake Placid Deputy Pat Kane, Village Justice David Coursen, Assistant Chief Francis Strack of the Lake Placid Police Department, and Ms. Gonzalez within the "factual allegations" section of his complaint, see Compl. at 4, 8, 10, he does not appear to pursue any claims against these individuals in this action, as he does not raise any arguments against them within the "claims" section of his complaint. See id. at 11-19. Plaintiff also does not name these individuals as defendants in the "parties" section of his complaint. See id. at 1-3. The undersigned further notes that plaintiff has purported to bring a claim against Kane and Coursen in another, separate action. See Lewis v. Essex Cnty., 8:23-CV-01636 (TJM/CFH) (N.D.N.Y. filed Dec. 26, 2023).

### 1. Immunities

#### a. Judicial Immunity

Plaintiff names Justice Dietrich as a defendant in this action. See generally Compl. He alleges that Justice Dietrich violated his Sixth and Fourteenth Amendment rights. See id. at 5-15. However, the Eleventh Amendment to the United States Constitution states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. AMEND. XI. Thus, " '[a]s a general rule, state governments and their agencies

may not be sued in federal court unless they have waived their Eleventh Amendment immunity or there has been a valid abrogation of that immunity by Congress.' " Kisembo v. N.Y.S. Office of Children & Family Servs., 285 F. Supp. 3d 509, 519 (N.D.N.Y. 2018) (quoting Jackson v. Battaglia, 63 F. Supp. 3d 214, 219-20 (N.D.N.Y. 2014)). "This jurisdictional bar applies regardless of the nature of the relief sought." Murawski v. N.Y. State Bd. of Elections, 285 F. Supp. 3d 691, 695 (S.D.N.Y. 2018) (quoting Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984)). "This immunity 'extends beyond state agencies to state officials at those agencies working on behalf of the state (i.e., in their official capacities).' " Kisembo, 285 F. Supp. 3d at 519 (quoting Emmons v. City Univ. of N.Y., 715 F. Supp. 2d 394, 406 (E.D.N.Y. 2010)).

**\*8** "With minor exceptions, judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions." Zavalidroga v. Girouard, No. 6:17-CV-682 (BKS/ATB), 2017 WL 8777370, at \*8 (N.D.N.Y. July 7, 2017) (citing Mireles v. Waco, 502 U.S. 9, 9-10 (1991) (per curiam)). "Judicial immunity has been created for the public interest in having judges who are 'at liberty to exercise their functions with independence and without fear of consequences.' " Id. (quoting Huminski v. Corsones, 396 F.3d 53, 74 (2d Cir. 2004)). "Judicial immunity applies even when the judge is accused of acting maliciously or corruptly." Id. (citation omitted); see Positano v. New York, No. 12-CV-2288 (ADS/AKT), 2013 WL 880329, at \*4 (E.D.N.Y. Mar. 7, 2013) (explaining that the plaintiff may not bring action against a judge for actions taken in his judicial capacity, even when the actions violated the ADA). "Judicial immunity is immunity from suit, not just immunity from the assessment of damages." Zavalidroga, 2017 WL 8777370, at \*8 (citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). "The only two circumstances in which judicial immunity does not apply is when he or she takes action 'outside' his or her judicial capacity and when the judge takes action that, although judicial in nature, is taken 'in absence of jurisdiction.' " Id. (quoting Mireles, 502 U.S. at 11-12).

"In determining whether or not a judge acted in the clear absence of all jurisdiction, the judge's jurisdiction is 'to be construed broadly, and the asserted immunity will only be overcome when the judge clearly lacks jurisdiction over the subject matter.' " Pacherille v. Burns, 30 F. Supp. 3d 159, 163 (N.D.N.Y. 2014) (quoting Ceparano v. Southampton Just. Ct., 404 F. App'x 537, 539 (2d Cir. 2011) (summary order)). "Whether a judge acted in a judicial capacity depends on

the nature of the act [complained of] itself, i.e., whether it is a function normally performed by a judge, and [on] the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." Ceparano, 404 F. App'x at 539 (internal quotation marks and citation omitted). "Further, if the judge is performing in his judicial capacity," he " 'will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction.' " Ceparano, 404 F. App'x at 539 (quoting Stump v. Sparkman, 435 U.S. 349, 362 (1978)). "Judges are not, however, absolutely 'immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity.' " Bliven v. Hunt, 579 F.3d 204, 209 (2d Cir. 2009) (quoting Mireles, 502 U.S. at 11).

Plaintiff contends that Justice Dietrich violated his Sixth and Fourteenth Amendment rights. See Compl. at 5-15. Specifically, plaintiff asserts that Justice Dietrich "allowed [Mr. Hyde's] unlawful withdrawal" of representation; "assign[ed Mirriam Hadden,] an unlawful representative" to his case; denied plaintiff "a fair and lawful trial" by denying plaintiff's oral motion to adjourn on December 11, 2023; "prohibited the [docket-]book to be kept open, as required by law"; and "exacerbated emotional distress in [p]laintiff over being denied the right to review the docket-book when he made incorrect comments that [p]laintiff perceived to be gaslighting during a pre-trial hearing on or around November 16, 2023." [12] Compl. at 9, 15, 18. Liberally construing his complaint, plaintiff appears to argue that Justice Dietrich "acted ... outside the bounds of [his] judicial authority" during plaintiff's proceedings. Dougal v. Lewicki, No. 1:23-CV-1167 (DNH/CFH), 2023 WL 6430586, at \*5 (N.D.N.Y. Oct. 3, 2023), report and recommendation adopted, 2023 WL 7013384 (N.D.N.Y. Oct. 25, 2023).

12      The undersigned notes that "gaslighting" does not appear to be a constitutional violation. See, e.g., Boyd v. City of Spartanburg, No. 7:24-CV-00711 (BHH/KFM), 2024 WL 2848896, at \*6 (D.S.C. Apr. 12, 2024) (dismissing the plaintiff's complaint as frivolous, nonsensical, and lacking a basis in the law, where the plaintiff alleged, inter alia, that the defendants "have been gaslighting her"), report and recommendation adopted, 2024 WL 2763919 (D.S.C. May 29, 2024).

**\*9** However, "[t]he scope of the judge's jurisdiction must be construed broadly, such that a court acts in the absence

of all jurisdiction only when it does not have any statutory or constitutional power to adjudicate the case." Dickerson v. Siegal, No. 23-CV-3859 (EK/LB), 2023 WL 6158833, at *3 (E.D.N.Y. Sept. 21, 2023) (citations and internal quotation marks omitted). Even accepting plaintiff's allegations as true, he has not adequately alleged that Justice Dietrich acted in the "complete absence of all jurisdiction." Pacherille, 30 F. Supp. 3d at 163. Rather, even if Justice Dietrich erred by allowing Mr. Hyde's withdrawal, assigning Ms. Hadden to plaintiff's case, denying plaintiff's motion to adjourn, and declining to keep the docket-book open, these were "merely ... procedural error[s], which [are] protected by judicial immunity." Cunningham v. Dep't of Child. Serv., 842 F. App'x 959, 965 (6th Cir. 2021) (citing Stern v. Mascio, 262 F.3d 600, 607 (6th Cir. 2001) ("Even grave procedural errors or acts taken when no statute purports to confer on the court the authority purportedly exercised will not deprive a judge of judicial immunity.")); see Stump, 435 U.S. at 359 ("A judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors"); see also Olszyk v. Thorne, No. 3:20-CV-0445 (TJM/ML), 2020 WL 5634328, at *5 (N.D.N.Y. June 17, 2020) ("The Complaint is devoid of facts plausibly suggesting that Defendant [Judge] Barrasse acted in the clear absence of all jurisdiction. As a result, I recommend that the claims against Defendant Barrasse be dismissed in their entirety based on the doctrine of absolute judicial immunity."), report and recommendation adopted, 2020 WL 5633791 (N.D.N.Y. Sept. 21, 2020).

Moreover,

> [b]ecause scrutiny of a judge's state of a mind would hinder the adjudicatory process in the very manner that the judicial immunity doctrine is designed to prevent, a judge will be denied immunity only where it appears, first, that the judge acted in the clear absence of jurisdiction, and second, that the judge must have known that he or she was acting in the clear absence of jurisdiction.

Maestri v. Jutkofsky, 860 F.2d 50, 53 (2d Cir. 1988). Plaintiff has not alleged that Justice Dietrich knew, or should have known, he was acting in the clear absence of jurisdiction.

See Tucker v. Outwater, 118 F.3d 930, 934 (2d Cir. 1997). Indeed, under New York Law, it is within the trial court's sound discretion "to grant or deny permission for counsel to withdraw," Applebaum v. Einstein, 81 N.Y.S.3d 525, 526 (App. Div. 2018) (internal quotation marks and citations omitted), "to substitute [new] counsel," People v. Watson, 46 N.E.3d 1057, 1060 (2016), to "grant [or deny] an adjournment for any purpose," Matter of Anthony M., 471 N.E.2d 447, 454 (1984), and to disclose court records, see In re E. 51st St. Crane Collapse Litig., 920 N.Y.S.2d 584, 590 (Sup. Ct. 2011). Thus, it cannot be said that Justice Dietrich acted in the clear absence of jurisdiction, or should have known that he was acting in the clear absence of jurisdiction, when he allowed Mr. Hyde's withdrawal, substituted Ms. Hadden as new counsel, denied plaintiff's adjournment request, and declined to keep the docket-book open. Therefore, Justice Dietrich is entitled to absolute immunity.

To the extent plaintiff seeks to bring an action against Justice Dietrich in his official capacity, the suit is barred by the Eleventh Amendment. See Pacherille, 30 F. Supp. 3d at 163 n.5 ("The Eleventh Amendment shields judges from suit to the extent that they are sued in their official capacities."); see also Trello v. McKeighan, 624 F. Supp. 3d 150, 155-56 (N.D.N.Y. 2022). Accordingly, the undersigned recommends dismissing the claims against Justice Dietrich in his individual and official capacities as barred by both judicial immunity and Eleventh Amendment immunity.

### b. Quasi-Judicial Immunity

#### i. Claims against Duffy, Hayes, and Merrihew

Plaintiff also raises claims against Victoria Duffy, the Village of Lake Placid Court Clerk; Jennifer Hayes, the Town of North Elba Court Clerk; and Chelsea Merrihew, the Essex County Clerk, contending that they violated his Sixth and Fourteenth Amendment rights. See Compl. at 6, 8-14, 16-17. "Judicial immunity has been extended to court clerks and 'others who perform functions closely associated with the judicial process' when they are performing discretionary acts of a judicial nature' which are essential to the judicial process, especially the filing of court documents and managing a court's calendar." Calley v. Town of Cortlandt, No. 19-CV-5453 (CM), 2019 WL 11880434, at *5 (S.D.N.Y. July 8, 2019) (quoting Cleavinger v. Saxner, 474 U.S. 193, 200 (1985), and citing Rodriguez v. Weprin, 116 F.3d 62, 66 (2d Cir. 1997) (extending judicial immunity to state court

clerks who were ordered by Appellate Division judges not to provide a litigant with documents and not to expand the record on appeal), and Pikulin v. Gonzales, No. 07-CV-0412 (CBA), 2007 WL 1063353, at *2 (E.D.N.Y. Apr. 5, 2007) (extending judicial immunity to the federal court clerk with respect to claims arising out of the filing and docketing of legal documents)). In other words, "[c]ertain actors associated with the courts enjoy absolute, quasi-judicial immunity from suit because such immunity is 'necessary to protect the judicial process.' " Gross v. Rell, 695 F.3d 211, 215 (2d Cir. 2012) (quoting Burns v. Reed, 500 U.S. 478, 485 (1991)). Courts have held that "Clerk's Office activities of filing and docketing legal documents" are an "integral part of the judicial process" and are, thus, entitled to absolute immunity. McKnight v. Middleton, 699 F. Supp. 2d 507, 526 (E.D.N.Y. 2010), aff'd, 434 F. App'x 32 (2d Cir. 2011) (summary order); see Humphrey v. Court Clerk for the Second Circuit, No. 08-CV-0363 (DNH/DEP), 2008 WL 1945308, at *2 (N.D.N.Y. May 1, 2008) (explaining that court clerks enjoy absolute immunity "if the task was undertaken pursuant to the explicit direction of a judicial officer or pursuant to the established practice of the court") (citing Rodriguez, 116 F.3d at 67); see also Argentieri v. Clerk of Ct. for Judge Kmiotek, 420 F. Supp. 2d 162, 165 (W.D.N.Y. 2006) ("Inasmuch as [the] plaintiff claims that [the] defendants violated his rights by refusing to acknowledge his motions or to schedule his court proceedings, [the] defendants were assisting judges in performing essential judicial functions. As a result, [the] plaintiff's claims are barred by absolute immunity.").

 *10 Here, plaintiff claims that Duffy, as the Village of Lake Placid Court Clerk, failed to answer his requests "regarding the nature of [his] trial" and failed to "provide [p]laintiff's court records upon request." Compl. at 8, 14. Plaintiff also asserts that Hayes, as the Town of North Elba Court Clerk, "did not allow [p]laintiff to review docket-books prior to [his] trial." Id. at 13, 18. Plaintiff further alleges that Merrihew, as the Essex County Clerk, "has ... a history of acting contrary to law"; specifically, she "g[a]ve [p]laintiff incorrect information and mail[ed plaintiff] an unsigned document" and "has yet to correct her mistake or offer any clarification[.]" Id. at 10, 16-17. However, "[a]ll of [plaintiff's] allegations are based on discretionary acts performed by [Duffy, Hayes, and Merrihew] in their official capacit[ies] as Court Clerks." Albritton v. Sullivan, No. 1:22-CV-00900 (MAD/DJS), 2023 WL 3612840, at *1 (N.D.N.Y. May 24, 2023). Plaintiff does not allege that Duffy's, Hayes', and Merrihew's actions were taken outside of the scope of the functions associated with their positions as court clerks. See Muia v. Mancino, No. 1:21-

CV-1323 (GTS/DJS), 2023 WL 2631936, at *6 (N.D.N.Y. Mar. 24, 2023) ("Defendant Mancino is entitled to immunity from suit to the extent the Complaint seeks damages against him in connection with his official duties as Albany City Court Clerk"); see also Carthen v. Gonzalez, No. 19-CV-6392 (BMC/LB), 2020 WL 376569, at *2 (E.D.N.Y. Jan. 23, 2020) ("James Smoot, as the Borough Court Clerk, is entitled to absolute immunity from damages for performance of tasks which are judicial in nature and an integral part of the judicial process.").

Indeed, the very essence of plaintiff's claims triggers quasi-judicial immunity because he is complaining of Duffy's, Hayes', and Merrihew's actions that were performed in their capacities as the Village of Lake Placid Court Clerk, the Town of North Elba Court Clerk, and the Essex County Court Clerk. See Kellier v. Ross, No. 22-CV-2506 (LTS), 2022 WL 1292290, at *4 (S.D.N.Y. Apr. 29, 2022) (dismissing the plaintiff's claims against the court clerk-defendant under the doctrine of absolute judicial immunity where the plaintiff alleged "that [the clerk] told him the clerk's office could not accept his motion to disqualify the judge presiding over his criminal proceedings, and that he instead must file the motion in open court" and thus "demonstrate[d] that [the clerk] was acting pursuant to the established practice of the court, and that her acts were therefore judicial in nature and an integral part of the judicial process"); see also Bloom v. New York State Unified Ct. Sys., No. 19-CV-7115 (DRH), 2020 WL 6118828, at *5 (E.D.N.Y. Oct. 16, 2020) (holding that the court clerk's actions in allegedly failing to calendar a hearing on the plaintiff's reinstatement, losing the plaintiff's reinstatement motion, issuing an order holding the motion in abeyance, and ignoring the plaintiff's letter requests fell within the scope of her judicial duties and were protected by absolute quasi-judicial immunity); Bey v. New York, No. 11-CV-3296 (JS/WDW), 2012 WL 4370272, at *7 (E.D.N.Y. Sept. 21, 2012) (citing cases and holding that court clerks were entitled to absolute immunity in suit alleging they refused to file documents).

Moreover, to the extent plaintiff claims that Hayes and Duffy requested an "unjust Order[ ] of Protection" in efforts to retaliate against him, he does not provide any further factual allegations sufficient to state a claim. Compl. at 6. Further, any such claim appears duplicative as plaintiff advanced a similar argument before the Court in another, separate action, which the undersigned recommended to be dismissed. See Lewis v. Essex Cnty., 8:23-CV-01636 (TJM/CFH) (N.D.N.Y. filed Dec. 26, 2023), Dkt. No. 9 at 30

(construing the plaintiff's claim that Duffy requested an order of protection out of retaliation as a First Amendment claim, and recommending dismissal of such claim because plaintiff failed to state "the requisite causal connection between the protected [speech] and adverse action."). If the undersigned were to consider such a claim in this matter, which it declines to do so, such claim could be dismissed as duplicative and malicious. See, e.g., Bailey v. Johnson, 846 F.2d 1019, 1021 (5th Cir. 1988) ("[R]epetitious litigation of virtually identical causes of action is subject to dismissal under 28 U.S.C. § 1915(d) as malicious.") (quoting Robinson v. Woodfork, 834 F.2d 1023 (5th Cir. 1987)); Buckenberger v. Reed, Civ. No. 10-856, 2010 WL 1552672, at *1 (E.D. La. Mar. 16, 2010) (recommending dismissal of complaint asserting claims which were duplicative of those in a pending action as "malicious"), report and recommendation adopted, 2010 WL 1552673 (E.D. La. Apr. 14, 2010), adhered to on reconsideration, 2010 WL 1903880 (E.D. La. May 6, 2010); Williams v. Bunn, No. 06-CV-0466, 2007 WL 1703816, at *2 (W.D.N.Y. Jun. 7, 2007) (dismissing claim with prejudice because it was repetitive of a claim twice brought previously and dismissed); Hahn v. Tarnow, No. 06-CV-12814, 2006 WL 2160934, at *1 (E.D. Mich. July 31, 2006) (dismissing complaint as "repetitive, malicious and frivolous, and duplicative"); Blake v. Bentsen, No. 95-CV-2227 (SJ), 1995 WL 428694, at *2 (E.D.N.Y. Jul. 11, 1995) (directing dismissal of repetitious litigation as abusive and malicious).

**\*11**  It is, therefore, recommended that plaintiff's claims against Duffy, Hayes, and Merrihew be dismissed under the doctrine of quasi-judicial immunity.

### ii. Claims against Quinn

Plaintiff also purports to bring a claim against Andrew Quinn, the Essex County Commissioner of Jurors, alleging a violation of his Sixth Amendment rights. See Compl. at 8, 13. Similar to extending judicial immunity to court clerks, judicial immunity has also been extended to "some officials who are not judges but who perform functions closely associated with the judicial process." Dorman v. Higgins, 821 F.2d 133, 137 (2d Cir. 1987) (citation and internal quotation marks omitted); see Holland v. Morgenstern, 12-CV-4870 (ARR/VVP), 2013 WL 2237550, at *4 (E.D.N.Y. May 20, 2013) ("Absolute immunity may attach to a non-judicial officer where that individual serves as an 'arm of the court,' or acts as an 'integral part[ ] of the judicial

process.' ") (quoting Scotto v. Almenas, 143 F.3d 105, 111 (2d Cir. 1998), and Briscoe v. LaHue, 460 U.S. 325, 335 (1983)); see also T.A. v. Leff, No. 17-CV-4291 (JFB/SIL), 2018 WL 5077163, at *9 (E.D.N.Y. July 19, 2018), report and recommendation adopted sub nom Lally v. Leff, 2018 WL 4445152 (E.D.N.Y. Sept. 18, 2018). As relevant here, in New York, "[t]he Commissioner of Jurors is considered an officer of the court and performs services according to rules prescribed by the Appellate Division, which services are an integral part of the operation of the courts." Newsday, Inc. v. Sise, 507 N.Y.S.2d 182, 186 (App. Div. 1986), aff'd, 518 N.E.2d 930 (1987); see, e.g., N.Y. JUD. LAW § 502(d) ("The commissioner shall take any steps necessary to enforce the laws and rules relating to the drawing, selection, summoning and impanelling of jurors."). Thus, some courts have held that a "jury commissioner" occupation was analogous to a "court clerk" occupation, and, therefore, jury commissioners "have absolute quasi-judicial immunity from damages for civil rights violations when they perform tasks that are an integral part of the judicial process ... unless [the] acts were done in the clear absence of all jurisdiction." Carrea v. California, No. 1:10-CV-01004 (OWW), 2010 WL 4687973, at *7 (E.D. Cal. Nov. 10, 2010) (citation omitted); see also Pomerantz v. Los Angeles Cnty., 674 F.2d 1288, 1291 (9th Cir. 1982) (holding that the Los Angeles County Superior Court's jury administration personnel were entitled to quasi-judicial immunity for actions they performed in determining the eligibility of potential jurors to serve).

Plaintiff claims that "[o]n December 4, 2023, [he] emailed Essex County Commissioner of Jurors Andrew Quinn ('Mr. Quinn') regarding 'a list of the panel of prospective jurors' in order to submit a potential challenge pursuant to CPL 270.10 before jury is selected." Compl. at 8, ¶50. Plaintiff asserts that "Mr. Quinn responded that 'The jury list is not available before the day of the trial' and that '[t]he judge does not get to see it before the day of the trial.' " Id. Plaintiff contends that "Quinn was acting under the color of State law when he did not make the list of jurors available until the day of trial" and "[e]ven on the day of trial, the list of jurors were not received"; thus, "Quinn's unlawful policy injured [him.]" Id. at 13, ¶74.

**\*12**  However, plaintiff does not allege that Quinn's actions were taken outside of the scope of the functions associated with his position as Commissioner of Jurors. See Zambas v. Egitto, No. 21-CV-10157 (LTS), 2022 WL 37088, at *2 (S.D.N.Y. Jan. 3, 2022) ("Plaintiff brings claims against Myers for her role as a court employee assigned to his Family Court matter[; thus,] any tasks she performed in that capacity

are an integral part of the judicial process. Those claims, therefore, must be dismissed under the doctrine of judicial immunity and as frivolous."); see also Monte v. Vance, No. 18-CV-9595 (LLS), 2018 WL 11302546, at *5 (S.D.N.Y. Nov. 7, 2018) (granting immunity to the court administrator-defendant because his "actions were undertaken in the context of a particular case, and it therefore appears that he is immune from suit on this claim"). Moreover, plaintiff does not claim that Quinn acted "in the clear absence of all jurisdiction." Carrea, 2010 WL 4687973, at *7. Indeed, by declining to provide plaintiff with the list of prospective jurors because "[t]he jury list is not available before the day of trial," Quinn appears to have acted pursuant to the authority granted to him under New York's judiciary laws. [13] Compl. at 22; see N.Y. JUD. LAW § 502; see also Newsome v. Daley, No. 84 C 4996, 1987 WL 9311, at *1 (N.D. Ill. Apr. 7, 1987) ("[J]ury commissioners are appointed by the circuit court and are subject to its rules. They follow statutory procedures for compiling lists of prospective jurors. Their acts are in aid of the court and are an integral part of the judicial process. Plaintiffs allege not that the jury commissioners violated Illinois law but that they should supplement the voter registration list with other sources. Clearly, their failure to do so does not constitute acting outside the scope of their official duties. Therefore, the court concludes that defendant jury commissioners are entitled to quasi-judicial absolute immunity."). It is, therefore, recommended that plaintiff's claims against Quinn be dismissed under the doctrine of quasi-judicial immunity.

[13]    Contrary to plaintiff's assertions, plaintiff was not entitled to receive a list of potential jurors prior to the day of trial. See, e.g., People v. Alvarez-Hernandez, No. 1352/00, 2002 WL 31065466, at *9 (N.Y. Co. Ct. Sept. 5, 2002) ("Juror qualification questionnaires and juror records are confidential and are not to be disclosed except to the county jury board or as permitted by the Appellate Divisions. The material sought by defendant[, including a list of the names of potential jurors,] should not be disclosed as it would compromise the personal privacy of prospective jurors and could result in the harassment of prospective jurors and have a chilling effect on the jury selection process in future cases. Generalized assertions ... that defendant needs this information for trial preparation do not constitute the necessary factual predicate which would make it likely that the records would provide relevant evidence."); United States v. Gotti, No.

S8:02-CR-743 (RCC), 2004 WL 2274712, at *6 (S.D.N.Y. Oct. 7, 2004) (explaining that the defendant "is not entitled to unencumbered access to juror information").

### c. Prosecutorial Immunity

Plaintiff also raises Sixth Amendment claims against Assistant District Attorney Kenneth Borden, Jr., as well as District Attorney Kristy Sprague. See Compl. at 4-5, 12. However, "[p]rosecutors are immune from civil suit for damages in their individual capacities for acts committed within the scope of their official duties where the challenged activities are not investigative in nature but, rather, are intimately associated with the judicial phase of the criminal process." Linder v. Oneida Cnty. Dist. Att'y Off., No. 6:23-CV-01061 (GTS/TWD), 2023 WL 6810098, at *3 (N.D.N.Y. Oct. 16, 2023) (citing Simon v. City of New York, 727 F.3d 167, 171 (2d Cir. 2013), and Imbler v. Pachtman, 424 U.S. 409, 430 (1976)), report and recommendation adopted, 2023 WL 8780112 (N.D.N.Y. Dec. 19, 2023); see Imbler, 424 U.S. at 431 ("[I]n initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983."). In addition, prosecutors are immune from suit for acts that may be administrative obligations but are "directly connected with the conduct of a trial." Van de Kamp v. Goldstein, 555 U.S. 335, 344 (2009).

In short, absolute prosecutorial immunity covers "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State." Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993). This includes "the decision to bring charges against a defendant, presenting evidence to a grand jury, and the evaluation of evidence prior to trial." Moye v. City of New York, No. 11-CV-316 (PGG), 2012 WL 2569085, at *5 (S.D.N.Y. July 3, 2012) (internal quotation marks and citations omitted). "Immunity even extends to the falsification of evidence and the coercion of witnesses, the knowing use of perjured testimony, the deliberate withholding of exculpatory information, the making [of] false or defamatory statements in judicial proceedings, and conspiring to present false evidence at a criminal trial[.]" Buari v. City of New York, 530 F. Supp. 3d 356, 378-79 (S.D.N.Y. 2021) (citing Taylor v. Kavanagh, 640 F.2d 450, 452 (2d Cir. 1981), Imbler, 424 U.S. at 431 n.34, Burns, 500 U.S. at 490, and Dory v. Ryan, 25 F.3d 81, 83 (2d Cir. 1994)) (internal quotation marks omitted).

**\*13**  Moreover, " '[w]hen prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State not the county.' " Ying Jing Gan v. City of New York, 996 F.2d 522, 536 (2d Cir. 1993) (quoting Baez v. Hennessy, 853 F.2d 73, 77 (2d Cir. 1988)); see Rich v. New York, No. 21-CV-3835 (AT), 2022 WL 992885, at \*5 n.4 (S.D.N.Y. Mar. 31, 2022) ("[A]ny claims [the p]laintiff may raise against the [District Attorney] Defendants in their 'official capacity' would be precluded by immunity under the Eleventh Amendment."); see also Gentry v. New York, No. 1:21-CV-0319 (GTS/ML), 2021 WL 3037709, at \*6 (N.D.N.Y. June 14, 2021) (recommending dismissal of the plaintiff's claims against the defendant assistant district attorneys in their official capacities, which were effectively claims against the State of New York, as barred by the Eleventh Amendment), report and recommendation adopted, 2021 WL 3032691 (N.D.N.Y. July 19, 2021).

Here, plaintiff claims that Borden and Sprague "made the choice to allow [p]laintiff's right to a speedy trial be impeded." Compl. at 12, ¶73. Plaintiff specifically alleges that Borden "gave instructions [and demands] to Mr. James Hyde IV, an attorney of the Essex County Public Defender's Office, ... who did not represent [plaintiff]" during plaintiff's February 16, 2023, arraignment. [14] Id. at 5, ¶¶29-31. However, because plaintiff's allegations against Borden and Sprague [15] "relate to non-investigative actions" taken in their capacities as prosecutors, Borden and Sprague are absolutely immune from suit in their individual capacity. Linder, 2023 WL 6810098 at \*4 (citing Simon, 727 F.3d at 171); see, e.g., Golston v. Cortese, No. 1:21-CV-914 (GTS/CFH), 2022 WL 2657290, at \*5 (N.D.N.Y. Apr. 1, 2022) ("To the extent [the] plaintiff alleges actions associated with [the prosecutor's] function as an advocate ..., [the prosecutor] is absolutely immune from suit in his individual capacity."), report and recommendation adopted, 2022 WL 2071773 (N.D.N.Y. June 9, 2022).

[14]    The undersigned notes that plaintiff appears to have raised similar claims against Borden in another, separate matter. See Lewis v. Essex Cnty., 8:23-CV-01636 (TJM/CFH) (N.D.N.Y. filed Dec. 26, 2023), Dkt. No. 9 at 18 ("[P]laintiff claims that, when he appeared pro se for an arraignment before Justice Dietrich on or around February 16, 2023, Borden challenged his pro se status.... Plaintiff alleges that Borden 'wished for [p]laintiff to be assigned to an Essex County Public

Defender[,]' which 'was against [p]laintiff's wishes and Constitutional rights.' "). The undersigned similarly recommended the dismissal of such claims on the basis of prosecutorial immunity. See id.

[15]    Moreover, although plaintiff lists Sprague as a defendant, he does not specify how she was personally involved in the alleged deprivation of his constitutional rights. See generally Compl.; see also Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."); Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996) ("[A] defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because [s]he held a high position of authority.") (citations omitted).

To the extent plaintiff seeks to bring a claim against Borden and Sprague in their official capacities, such claim is without merit. As indicated above, "when a district attorney is sued for damages in his official capacity, the suit is deemed to be a suit against the state," and, thus, the official has "the Eleventh Amendment immunity belonging to the state." McKeon v. Daley, 101 F. Supp. 2d 79, 86 (N.D.N.Y. 2000), aff'd, 8 F. App'x 138 (2d Cir. 2001) (summary order). Accordingly, it is recommended that all claims alleged against Borden and Sprague, in their individual and official capacities, be dismissed.

### 2. § 1983 Claims

#### a. State Action

**\*14**  Plaintiff contends that Hyde, Hadden, the Essex County Public Defender's Office, and the Essex County Conflict Defender's Office violated his rights under the Sixth and Fourteenth Amendments. See Compl. at 5-8, 12-15. However, "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). "The traditional definition of acting under color of state law requires that the defendant ... exercise[ ] power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." Id. at

49 (internal quotation marks and citation omitted). "Because the United States Constitution regulates only the Government, not private parties, [with respect to a claim brought under § 1983,] a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.' " Flagg v. Yonkers Sav. & Loan Ass'n, 396 F.3d 178, 186 (2d Cir. 2005) (quoting United States v. Int'l Brotherhood of Teamsters, 941 F.2d 1292, 1295 (2d Cir. 1991)); see Baum v. N. Dutchess Hosp., 764 F. Supp. 2d 410, 419 (N.D.N.Y. 2011) ("State action is an essential element of any § 1983 claim.") (citing Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 934 (1982) (explaining that the "under color of any statute" language is to enforce the provisions of the Fourteenth Amendment and that if a defendant's conduct satisfies the state-action requirement then that conduct is also action under color of state law under § 1983), and Rounseville v. Zahl, 13 F.3d 625, 627-28 (2d Cir. 1994) (noting the state action requirement for § 1983)).

"Private parties generally are not state actors and therefore are not usually liable under [§] 1983." Yi Sun v. Saslovsky, No. 1:19-CV-10858 (LTS), 2020 WL 6828666, at *7 (S.D.N.Y. Aug. 6, 2020) (citing Sykes v. Bank of America, 723 F.3d 399, 406 (2d Cir. 2013)); see Basile v. Connolly, 538 F. App'x 5, 7 (2d Cir. 2013) (summary order) ("[P]rivate individuals ... cannot be sued under 42 U.S.C. § 1983 absent a plausible allegation that they acted under color of state law."). "A private party's actions can be considered state action in three situations":

> (1) the private party acts using the coercive power of the state or is controlled by the state (the "compulsion test"); (2) the private party willfully participates in joint activity with the state or its functions are entwined with state policies (the "joint action" or "close nexus" test); or (3) the state has delegated a public function to the private party (the "public function" test).

Rogers v. City of New Rochelle, No. 1:19-CV-0479 (CM), 2019 WL 5538031, at *2 (S.D.N.Y. Oct. 25, 2019) (quoting Fabrikant v. French, 691 F.3d 193, 207 (2d Cir. 2012)). "The fundamental question under each test is whether the private party's challenged actions are 'fairly attributable' to

the State." Id. (quoting Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982)). "[A] State normally can be held responsible for a private decision ... when it has ... provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." Blum v. Yaretsky, 457 U.S. 991, 1004 (1982) (citations omitted). The State's "[m]ere approval of or acquiescence in the initiatives of a private party[, however,] is not sufficient to justify holding the State responsible for those initiatives." Id. at 1004-05.

"Absent special circumstances suggesting concerted action between an attorney and a state representative," "a private attorney's legal representation of a private person, however, does not constitute state action for the purpose of stating a claim under [§] 1983 against that attorney, regardless of whether that attorney is privately retained, court-appointed, or employed as a public defender." Masri v. Liebowitz, No. 1:24-CV-1284 (LTS), 2024 WL 1639904, at *9 (S.D.N.Y. Apr. 15, 2024) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970), and Bourdon v. Loughren, 386 F.3d 88, 90 (2d Cir. 2004)); see O'Donoghue v. United States Soc. Sec. Admin., 828 F. App'x 784, 787 (2d Cir. 2020) (summary order) ("Private attorneys are generally not 'state actors' for purposes of § 1983.") (citing Rodriguez, 116 F.3d at 65-66); see also Shorter v. Rice, No. 12-CV-0111 (JFB/ETB), 2012 WL 1340088, at *4 (E.D.N.Y. Apr. 10, 2012) ("[I]t is axiomatic that neither public defenders, such as Legal Aid attorneys, nor court-appointed counsel, nor private attorneys, act under the color of state law merely by virtue of their position."); Manko v. Steinhardt, No. 11-CV-5430 (KAM/LB), 2012 WL 213715, at *4 (E.D.N.Y. Jan. 24, 2012) (collecting cases and noting that "[i]t is well-settled that private attorneys and law firms ... do not act under color of state law and are not state actors for purposes of [§] 1983 simply by virtue of their state-issued licenses to practice law").

**\*15** Here, plaintiff claims that Hyde, representing the Essex County Public Defender's Office, "did nothing to protect [his] interests and the truth" in plaintiff's case; "allowed the Court to adjourn hearings multiple times"; "did not file [a] motion as promised"; "made the choice to allow [p]laintiff's right to a speedy trial be impeded"; and improperly withdrew from representation. Compl. at 6-8, 12, 14-15. Plaintiff further alleges that Hadden was unlawfully assigned to represent plaintiff after Hyde withdrew from his case, and she, while representing the Essex County Conflict Defender's Office, "displayed an ineptitude surrounding the facts of [plaintiff's] case"; was "annoying and a cause of

emotional disturbance"; "overwhelm[ed] ... [p]laintiff" with "one hundred and eighteen emails (118)"; made a "sinister attempt to take credit for [his] work while she was, in fact, unwanted stand by counsel"; and failed to "provide full court records to [p]laintiff prior to trial." Id. at 7, 14-15.

Plaintiff claims that both Hyde and Hadden were "acting under the color of state law when" they allegedly injured him; "[h]owever, it is well-established that court-appointed attorneys performing a lawyer's traditional functions as counsel to defendant do not act 'under color of state law' and therefore are not subject to suit under 42 U.S.C. § 1983." Compl. at 14; Rodriguez, 116 F.3d at 65-66 (2d Cir. 1997) (citing Housand v. Heiman, 594 F.2d 923, 924-25 (2d Cir. 1979) (per curiam), and Polk County v. Dodson, 454 U.S. 312, 325 (1981)); see, e.g., Sash v. Rosahn, 450 F. App'x 42, 43 (2d Cir. 2011) (summary order) ("[A] court-appointed criminal defense attorney does not act under color of state law when representing a client[.]"); Rzayeva v. United States, 492 F. Supp. 2d 60, 81 (D. Conn. 2007) (dismissing § 1983 claim against a court-appointed attorney because "[t]he fact that an individual is appointed by the state and paid with state funds is insufficient to render an individual a state actor"); Oshintayo v. Krause, No. 3:19-CV-0253 (DNH/DEP), 2019 WL 1877438, at *5 (N.D.N.Y. Apr. 1, 2019) ("Defendant Baker, a public defender, is an individual who was performing a non-governmental function when representing plaintiff in connection with his criminal prosecution. While the office that employs defendant Baker may be publicly funded, he was conducting himself as a private actor. It is well-established that 'public defenders or court-appointed defense attorneys do not act under color of law.' ") (citations omitted), report and recommendation adopted, 2019 WL 1877172 (N.D.N.Y. Apr. 26, 2019); Brooks v. New York State Supreme Ct., App. Div. First Dep't, No. 02-CV-4183 (RR), 2002 WL 31528632, at *3 (E.D.N.Y. Aug. 16, 2002) ("Section 1983 'was enacted to redress civil rights violations by persons acting under color of State law' and should not be used by clients disappointed with the performance of their attorneys. Complaints about the behavior or performance of an attorney should be addressed to the Grievance Committee of the appropriate State Appellate Division.") (quoting Mitchell v. Cohen, No. 90-CV-1836 (TCP), 1990 WL 100254, at *1 (E.D.N.Y. Jun. 13, 1990)), aff'd sub nom. Brooks v. Ross, 76 F. App'x 356 (2d Cir. 2003) (summary order).

Moreover, plaintiff alleges no facts showing that Hyde or Hadden acted "using the coercive power of the state or is controlled by the state," "willfully participate[d] in joint activity with the state or ... [is] entwined with state policies," or that "the state has delegated a public function to [him or her]." Rogers, 2019 WL 5538031, at *2; see Schoch v. Scattaretico-Naber, No. 7:24-CV-2294 (CS), 2024 WL 2221383, at *4-5 (S.D.N.Y. May 16, 2024) (dismissing the plaintiff's § 1983 claims against his private attorneys because the plaintiff failed to establish that the attorneys acted as state actors); see also Jones v. Roth, No. 23-CV-9831 (LTS), 2024 WL 54160, at *3 (S.D.N.Y. Jan. 2, 2024) ("As Defendant Roth is a private attorney who is not alleged to work for any state or other government body, Plaintiff cannot state a claim against her under [§] 1983."); Eggsware v. Doe, No. 1:22-CV-54 (BKS/CFH), 2022 WL 827640, at *5 (N.D.N.Y. Feb. 7, 2022) (dismissing the plaintiff's § 1983 claims where "there is nothing in the complaint to suggest that any of the potential wrongful actors are 'state actors' or that they are 'collaborating' with state actors"), report and recommendation adopted, 2022 WL 823646 (N.D.N.Y. Mar. 18, 2022).

**\*16** With regard to plaintiff's claims against the Essex County Public Defender's Office and the Essex County Conflict Defender's Office, the complaint sets forth no specific factual allegations. See Compl. at 12-16. "Thus, it is unclear what the basis is for [p]laintiff's inclusion of the [the Essex County Public Defender's Office and the Essex County Conflict Defender's Office] as [ ] defendant[s] in this action." Washington v. Broome Cnty. Dist. Attorney's Off., No. 3:20-CV-1099 (GLS/ML), 2020 WL 9455048, at *6 (N.D.N.Y. Nov. 24, 2020), report and recommendation adopted, 2021 WL 1660480 (N.D.N.Y. Apr. 28, 2021). "However, to the extent that it is based on actions taken by employees of the [the Essex County Public Defender's Office and the Essex County Conflict Defender's Office] performing traditional functions as counsel to [p]laintiff ..., [these are] not ... state actor[s] amenable to suit pursuant to 42 U.S.C. § 1983." Id. Moreover, the Essex County Public Defender's Office and the Essex County Conflict Defender's Office are not considered "persons" under 42 U.S.C. § 1983. See Owens v. Connecticut, No. 3:24-CV-79 (VDO), 2024 WL 1576779, at *3 (D. Conn. Apr. 11, 2024) ("[T]he Connecticut Office of the Public Defender is not considered a person under 42 U.S.C. § 1983."); see also Franklin v. Chenango Cnty. Pub. Def. Off., No. 3:18-CV-0865 (BKS/DEP), 2018 WL 4288620, at *4 (N.D.N.Y. Sept. 7, 2018) ("The Office of the Chenango County Public Defender, as distinct from the Public Defender as an individual, is not a person amenable to suit under section 1983."), report and recommendation adopted, 2018 WL 5792758 (N.D.N.Y. Nov. 5, 2018).

It is, therefore, recommended that plaintiff's claims against Hyde, Hadden, the Essex County Public Defender's Office, and the Essex County Conflicts Defender's office be dismissed.

### b. Municipal Liability

Plaintiff also names the Town of North Elba, the Village of Lake Placid, and Essex County as defendants. See generally Compl. "To set forth a cognizable claim for municipal liability under § 1983, a plaintiff must plead that a deprivation of his constitutional rights was 'caused by a governmental custom, policy, or usage of the municipality.' " Dougal, 2023 WL 6430586, at *10 (quoting Jones v. Town of E. Haven, 691 F.3d 72, 80 (2d Cir. 2012), and citing Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 690-91 (1978)). "Municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right; it 'may not be held liable on a theory of respondeat superior.' " Id. (quoting Jeffes v. Barnes, 208 F.3d 49, 56 (2d Cir. 2000)). An "official policy or custom" of the municipality can be shown in several ways:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing municipal policies related to the particular deprivation in question; (3) a practice so consistent and widespread that it constitutes a "custom or usage" sufficient to impute constructive knowledge of the practice to policymaking officials; or (4) a failure by policymakers to train or supervise subordinates to such an extent that it amounts to "deliberate indifference" to the rights of those who come in contact with the municipal employees.

Dorsett-Felicelli, Inc. v. Cnty. of Clinton, 371 F. Supp. 2d 183, 194 (N.D.N.Y. 2005) (citations omitted). "[M]ere allegations of a municipal custom, a practice of tolerating official misconduct, or inadequate training and/or supervision are insufficient to demonstrate the existence of such a custom unless supported by factual details." Tieman v. City of

Newburgh, No. 13-CV-4178, 2015 WL 1379652, at *13 (S.D.N.Y. Mar. 26, 2015); see Oklahoma City v. Tuttle, 471 U.S. 808, 809 (1985) ("There must at the very least be an affirmative link between the municipality's policy and the particular constitutional violation alleged.").

Critically, "a prerequisite to municipal liability under Monell is an underlying constitutional violation by a state actor." Henry-Lee v. City of New York, 746 F. Supp. 2d 546, 567 (S.D.N.Y. 2010). As the Second Circuit has noted, "Monell does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006) (noting that once a "district court properly [finds] no underlying constitutional violation, its decision not to address the municipal defendants' liability under Monell [is] entirely correct"); see Mendes v. Cunningham, No. 3:21-CV-1527 (JAM), 2022 WL 2104515, at *4 (D. Conn. June 10, 2022) ("In any event, I need not consider whether Mendes's allegations satisfy Monell because Mendes has not alleged any plausible underlying constitutional violation").

**\*17** Plaintiff generally contends that the Town of North Elba, the Village of Lake Placid, and Essex County violated his rights under § 1983. See generally Compl. However, as discussed, plaintiff has failed to state a claim that a person, who is not entitled to absolute immunity, acted under the color of state law when they deprived him of a constitutional right. See discussion supra Subsection II.C.1,2.a; see also Mugabo v. Wagner, No. 22-CV-930-A, 2024 WL 1621534, at *4 (W.D.N.Y. Apr. 15, 2024) (citing Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993)). Thus, plaintiff has failed to state an underlying constitutional violation sufficient to support a municipal liability claim. See Dees v. Zurlo, No. 1:24-CV-0001 (MAD/DJS), 2024 WL 1053237, at *14 (N.D.N.Y. Mar. 11, 2024) ("A fundamental requirement of a Monell claim is the establishment of an underlying constitutional violation.... In the present case the Court is recommending the dismissal of all the federal claims and, as such, also recommends that any Monell claim be likewise dismissed.") (citations omitted); report and recommendation adopted, 2024 WL 2291701 (N.D.N.Y. May 21, 2024); see also Holyoke v. S.S.I., No. 6:23-CV-1557 (MAD/ATB), 2024 WL 20726, at *6 (N.D.N.Y. Jan. 2, 2024) (dismissing the plaintiff's municipal liability claims against the City of Utica and Oneida County for, inter alia, failing to plausibly

allege an underlying constitutional violation), report and recommendation adopted, 2024 WL 689117 (N.D.N.Y. Feb. 20, 2024).

Even if, arguendo, plaintiff had alleged an underlying constitutional violation, he has failed to identify or allege any facts showing the existence of a municipal policy or custom of the Town of North Elba, the Village of Lake Placid, or Essex County which caused his alleged constitutional violations. See Boyde v. New York, No. 5:16-CV-555 (LEK/TWD), 2016 WL 3573133, at *4 (N.D.N.Y. May 19, 2016) (dismissing on § 1915 review the plaintiff's complaint against Onondaga County and the City of Syracuse because the plaintiff "failed to identify or allege any facts showing the existence of a municipal policy or custom ... which caused his alleged false arrest [and other constitutional violations]"), report and recommendation adopted, 2016 WL 3580768 (N.D.N.Y. June 28, 2016); see also Meyers v. Becker, No. 1:23-CV-173 (DNH/CFH), 2023 WL 4424128, at *4 (N.D.N.Y. May 31, 2023) (concluding that the plaintiff's complaint was "insufficient to allege a claim for municipal liability" because the "[p]laintiff does not state what Schoharie County's alleged policy was or how it negatively impacted [him]").

Plaintiff also has not alleged facts plausibly showing that the Town of North Elba, the Village of Lake Placid and Essex County failed to properly hire, supervise, and train subordinates in connection with his claims. See Dougal, 2023 WL 6430586, at *10 (dismissing on § 1915 review the plaintiff's complaint against Saratoga County because the plaintiff did "not include any allegations in his complaint concerning municipal conduct that states a Monell claim"); see also Syfert v. City of Rome, No. 6:17-CV-0578 (GTS/TWD), 2018 WL 3121611, at *7 (N.D.N.Y. Feb. 12, 2018) (collecting cases dismissing Monell claims where the complaint contains no factual support for the existence of an unconstitutional policy or custom and only conclusory allegations referencing a failure to train), report and recommendation adopted, 2018 WL 2316681 (N.D.N.Y. May 22, 2018), aff'd, 768 F. App'x 66 (2d Cir. 2019) (summary order). Thus, he has failed to state a municipal liability claim against the Town of North Elba, the Village of Lake Placid, and Essex County, and it is, therefore, recommended that such claims be dismissed.

**3. State Law Claims**

Plaintiff seeks to bring state law negligent infliction of emotional distress ("NIED") claims against Justice Dietrich, Hayes, Merrihew, the Town of North Elba, and Essex County. See Compl. at 17-19. A district court has discretion to hear state law claims where the relationship between a plaintiff's federal and state claims present "but one constitutional case" and "derive from a common nucleus of operative fact." United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966); see Petaway v. City of New Haven Police Dep't, 541 F. Supp. 2d 504, 515 (D. Conn. 2008) ("Supplemental or pendent jurisdiction is a matter of discretion, not of right.") (citation omitted). "If 'plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding,' the court will generally exercise supplemental jurisdiction if 'judicial economy, [and] convenience and fairness to litigants' weigh in favor of hearing the state claims at the same time." Forbes v. City of Rochester, 612 F. Supp. 3d 159, 170-71 (W.D.N.Y. 2020) (quoting United Mine Workers, 383 U.S. at 726); see also 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."). Plaintiff's NIED claims derive from the same operative facts as the federal claims he seeks to bring. Should plaintiff successfully amend his complaint and if, following § 1915 review of the amended complaint, any federal law claims are permitted to proceed, the Court may choose to exercise supplemental jurisdiction over his state law NIED claims.

**\*18** Under New York Law, an NIED claim requires a showing that the plaintiff "suffer[ed] emotional distress caused by defendant's breach of a duty which unreasonably endangered [plaintiff's] own physical safety." Baker v. Dorfman, 239 F.3d 415, 421 (2d Cir. 2000) (internal quotation marks and citation omitted); see, e.g., De Rosa v. Stanley B. Michelman, P.C., 584 N.Y.S.2d 202, 203 (App. Div. 1992) (explaining that, to state a cognizable claim for NIED, a complaint must allege, inter alia, that the defendant's conduct "unreasonably endangers the plaintiff's physical safety"). The duty in question "must be specific to the plaintiff, and not some amorphous, free-floating duty to society." Dzwonczyk v. Syracuse City Police Dep't, 710 F. Supp. 2d 248, 272 (N.D.N.Y. 2008). "This duty is far more specific than the more generalized duty to avoid negligently injuring another." Druschke v. Banana Republic, Inc., 359 F. Supp. 2d 308, 315 (S.D.N.Y. 2005); see also Hazan v. City of New York,

No. 98-CV-1716, 1999 WL 493352, at *5 (S.D.N.Y. July 12, 1999) ("Although the City [of New York] has a general duty to prevent its police force from inflicting unreasonable harm on society at large, this duty was not a special one owed specifically to the plaintiff") (internal citations omitted).

To the extent plaintiff brings NIED claims against Dietrich, Hayes, and Merrihew, they are absolutely immune from suit. See discussion supra II.C.1.a,b. In any event, plaintiff does not allege that Dietrich, Hayes, or Merrihew placed him in any physical danger. See Nova v. Smith, No. 9:19-CV-0072 (GTS/TWD), 2019 WL 2636817, at *3 (N.D.N.Y. June 27, 2019) ("Because the amended complaint in this case does not allege that [the] defendant ... placed [the] plaintiff in any physical danger, [the] plaintiff's NIED claims are dismissed for failure to state a claim upon which relief may be granted"), on reconsideration in part, 2019 WL 5295165 (N.D.N.Y. Oct. 18, 2019); see also Waterbury v. New York City Ballet, Inc., 168 N.Y.S.3d 417, 427 (App. Div. 2022) (affirming the dismissal of the plaintiff's NIED claim because "[g]enerally, this cause of action requires that the plaintiff either be placed in physical danger or reasonably fear that she has been" and "[t]here [was] no allegation that [the plaintiff had] been placed in physical danger"). Plaintiff also does not assert any special duty Dietrich, Hayes, or Merrihew owed to him, aside from their general duties to the public as Town Justice and court clerks. See Burroughs v. Mitchell, 325 F. Supp. 3d 249, 285 (N.D.N.Y. 2018) ("Upon review, Burroughs has failed to allege any special duty owed to him by defendants aside from the general duty to all inmates not to use excessive force that violates their constitutional rights."). Accordingly, it is recommended that plaintiff's NIED claims against Dietrich, Hayes, and Merrihew be dismissed.

 *19  Plaintiff also seeks to bring an NIED claim against the Town of North Elba for Hayes' and Dietrich's conduct, as well as against Essex County for Merrihew's conduct. See Compl. at 17-19. However, " '[a] municipality cannot be sued for common law negligence unless the municipality owed a special duty to the plaintiff.' " Ellis v. Washington, 409 F. Supp. 3d 148, 155 (W.D.N.Y. 2019) (quoting Paul v. City of New York, No. 16-CV-1952 (VSB), 2017 WL 4271648, at *9 (S.D.N.Y. Sept. 25, 2017)). "Such a special duty arises when there exists a special relationship between the governmental entity and the plaintiff." Henry-Lee, 746 F. Supp. 2d at 564 ("A special relationship exists in three circumstances: (1) when the municipality violates a statutory duty enacted for the benefit of a particular class of persons; (2) when it voluntarily assumes a duty that generates justifiable

reliance by the person who benefits from the duty; or (3) when the municipality assumes positive direction and control in the face of a known, blatant and dangerous safety violation.") (citations and internal quotation marks omitted). "The duty must be more than one the municipality owed to the public generally." Paul, 2017 WL 4271648, at *9 (citing Valdez v. City of New York, 936 N.Y.S.2d 587, 593-96 (2011)).

Here, plaintiff has not asserted a special duty or relationship between himself and the Town of North Elba or Essex County. See, e.g., Karcz v. City of N. Tonawanda, No. 20-CV-9V (SR), 2023 WL 2654210, at *4 (W.D.N.Y. Feb. 24, 2023) (dismissing the plaintiff's NIED claim where the plaintiff "failed to allege a special duty as required for a negligent infliction of emotional distress claim"), report and recommendation adopted, 2023 WL 2652486 (W.D.N.Y. Mar. 27, 2023). Specifically, there are no allegations in his complaint that could support a finding of a special relationship between plaintiff and the Town of North Elba or Essex County beyond the duty owed by the Town of North Elba and Essex County to the public at large. See Bryant v. Ciminelli, 267 F. Supp. 3d 467, 479 (W.D.N.Y. 2017) (dismissing the plaintiff's NIED claim against the City of Rochester because the "[p]laintiff has not alleged any special duty between [the City] and himself[; p]laintiff only allege[d] that [the City] owed him a duty of care—the same duty which would be owed to the general public"); see also Hunter v. Cnty. of Orleans, No. 12-CV-6173, 2013 WL 6081761, at *6 (W.D.N.Y. Nov. 19, 2013) (granting summary judgment on the plaintiff's negligence claim against the county where no special relationship was established). Thus, it is recommended that any NIED claims against the Town of North Elba or Essex County be dismissed.

### III. Leave to Amend

Generally, "[a] pro se complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Nielsen v. Rabin, 746 F.3d 58, 62 (2d Cir. 2014) (citation omitted). "However, if the problems with a complaint are 'substantive' rather than the result of an 'inadequately or inartfully pleaded' complaint, an opportunity to re-plead would be 'futile' and 'should be denied.' " Edwards v. Penix, 388 F. Supp. 3d 135, 144-45 (N.D.N.Y. 2019) (quoting Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000)). Insofar as Justice Dietrich, Duffy, Hayes, Merrihew, Quinn, Borden, and Sprague are absolutely immune from suit,

it is recommended that all claims against them be dismissed with prejudice and without leave to amend. See discussion supra Subsection II.C.1. Similarly, because Hyde, Hadden, the Essex County Public Defender's Office, and the Essex County Conflict Defender's Office are not considered to be persons acting under the color of state law sufficient to state a claim under § 1983, it is recommended that the claims against them also be dismissed with prejudice and without leave to amend. See discussion supra Subsection II.C.2.a; see, e.g., Dougal, 2023 WL 6430586, at *6 (dismissing the plaintiff's § 1983 claim against his defense attorney with prejudice and without leave to amend because the defense attorney was not a state actor).

**\*20** As for the § 1983 claims against the Town of North Elba, the Village of Lake Placid, and Essex County, it is recommended that they be dismissed without prejudice and with leave to amend should plaintiff wish to attempt to plead proper Monell claims, including identifying an underlying constitutional violation giving rise to the purported municipal liability. [16] See discussion supra Subsection II.C.2.b; see also Holyoke, 2024 WL 20726, *8 ("With respect to defendants City of Utica and Oneida County, while skeptical, this court is constrained to recommend affording the pro se plaintiff an opportunity to amend his complaint.... Thus, the court recommends granting plaintiff the limited opportunity to amend his complaint to allege, if he can, that he suffered an underlying tort in violation of federal law committed by an individual municipal actor or actors, and that that their commission of the tort resulted from a custom or policy of Oneida County or the City of Utica."). Further, as for the state law tort claims against the Town of North Elba and Essex County, it is recommended that they be dismissed without prejudice and with leave to amend should plaintiff wish to plead a proper claim for NIED. See discussion supra Subsection II.C.3.

[16] Any amended pleading supersedes and replaces a prior pleading in its entirety. In the event the District Judge adopts the undersigned's recommendation and plaintiff amends his complaint, plaintiff is advised that any amended pleading cannot incorporate a prior pleading by reference. See, e.g., Anthony v. Fein, Such & Crane, LLC, No. 5:15-CV-00452 (DNH/TWD), 2015 WL 7749894, at *5 (N.D.N.Y. Sept. 22, 2015) ("[I]n the event Plaintiff is granted leave to amend, he be instructed that the amended complaint will take the place of and effectively

invalidate Plaintiff's second amended complaint"), report and recommendation adopted, 2015 WL 7738048 (N.D.N.Y. Dec. 1, 2015). Further, an amended complaint may not replead any claims or defendants dismissed by this Court with prejudice. An amended pleading must establish this Court's jurisdiction and state a claim for relief against each named defendant for which leave to replead was granted according to Rules 8 and 10 of the Federal Rules of Civil Procedure.

### IV. Conclusion

**WHEREFORE**, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff's application to proceed in forma pauperis (Dkt. Nos. 2 and 5) is **GRANTED**; and it is further

**RECOMMENDED**, that plaintiff's claims against Justice Dietrich, Duffy, Hayes, Merrihew, Quinn, Borden, Sprague, Hyde, Hadden, the Essex County Public Defender's Office, and the Essex County Conflict Defender's Office be **DISMISSED WITH PREJUDICE AND WITHOUT LEAVE TO AMEND**; and it is further

**RECOMMENDED**, that plaintiff's § 1983 municipal liability claims against the Town of North Elba, the Village of Lake Placid, and Essex County be **DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND**; and it is further

**RECOMMENDED**, that plaintiff's negligent infliction of emotional distress claims against the Town of North Elba and Essex County be **DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND**; and it is

**RECOMMENDED**, that, if the District Judge adopts this Report-Recommendation and Order, plaintiff be given thirty (30) days from the date of the Order adopting this Report-Recommendation and Order to file an amended complaint, and if plaintiff does not file an amended complaint, it will be deemed as an abandonment of all claims for which leave to replead has been granted and will result in judgment being entered against plaintiff on these claims without further order by the Court; and it is

**ORDERED**, that the Clerk serve a copy of this Report-Recommendation and Order in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 72. [17]

[17]    If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(c).

**All Citations**

Slip Copy, 2024 WL 4712530

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 4441730
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Scott Phillip LEWIS, Plaintiff,

v.

ESSEX COUNTY, NEW YORK, et al., Defendants.

8:24-CV-100 (MAD/CFH)
|
Signed October 8, 2024

**Attorneys and Law Firms**

SCOTT PHILLIP LEWIS, 1936 Saranac Avenue, #3, PMB 411, Lake Placid, New York 12946, Plaintiff, Pro se.

**ORDER**

Mae A. D'Agostino, United States District Judge:

**I. INTRODUCTION**

**\*1** On January 19, 2024, *pro se* Plaintiff Scott Lewis commenced this action, pursuant to 42 U.S.C. § 1983, claiming Sixth and Fourteenth Amendment violations. *See* Dkt. No. 1. On January 23, 2024, Plaintiff filed an amended complaint asserting nearly identical allegations against Defendants Essex County; Town of North Elba; Village of Lake Placid; Essex County Public Defender's Office; Essex County Conflict Defender's Office; Essex County Clerk Chelsea Merrihew; Town of North Elba Court Clerk Jennifer Hayes; Village of Lake Placid Court Clerk Victoria Duffy; Essex County District Attorney Kristy Sprague; Essex County Assistant District Attorney Kenneth Borden, Jr.; Essex County Public Defender James Hyde, IV; Essex County Conflict Defender Mirriam Hadden; Essex County Commissioner of Jurors Andrew Quinn; and Town of North Elba Justice and Village of Lake Placid Alternative Justice Dean Dietrich in their individual capacities. *See* Dkt. No. 4 at 1-3. Plaintiff also alleges state law tort claims for negligent infliction of emotional distress against Defendants Dietrich, Hayes, Merrihew, Town of North Elba, and Essex County. *See id.* at 17-19. Plaintiff moved to proceed *in forma pauperis* ("IFP"). *See* Dkt. No. 2.

On June 18, 2024, Magistrate Judge Christian F. Hummel issued a Report-Recommendation and Order (1) ordering that Plaintiff's IFP motion is granted; (2) recommending that Plaintiff's amended complaint be dismissed with prejudice and without leave to amend to the extent it asserts claims against Defendants Dietrich, Duffy, Hayes, Merrihew, Quinn, Borden, Sprague, Hyde, Hadden, Essex County Public Defender's Office, and Essex County Conflict Defender's Office; and (3) recommending that Plaintiff's amended complaint be dismissed without prejudice and with leave to amend to the extent that is asserts § 1983 municipal liability claims against Defendants Town of North Elba, Village of Lake Placid, and Essex County, and negligent infliction of emotional distress claims against Defendants Town of North Elba and Essex County. *See* Dkt. No. 9 at 46. Plaintiff filed objections on June 5, 2024. *See* Dkt. No. 10.

For the reasons set forth below, Magistrate Judge Hummel's Report-Recommendation and Order is adopted in its entirety and Plaintiff's amended complaint is dismissed.

**II. DISCUSSION**

**A. Standard of Review**

When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a "de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). However, when a party files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, \*1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

**\*2** "[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.' " *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted). The Court is obligated to "make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

In general, a court should not dismiss a *pro se* litigant's complaint without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009) (quotations and citation omitted). In addition, the court should exercise "extreme caution ... in ordering *sua sponte* dismissal of a *pro se* complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had the opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). An opportunity to amend, however, is not required where "the problem with plaintiff's cause of action is substantive such that better pleading will not cure it." *Townsend v. Pep Boys, Manny Moe and Jack*, No. 1:13-CV-293, 2014 WL 4826681, *2 (N.D.N.Y. Sept. 29, 2014) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)) (internal quotations marks omitted).

## B. Plaintiff's Objections
On July 5, 2024, Plaintiff objected to Magistrate Judge Hummel's Report-Recommendation and Order as follows:

> All individuals were liable under color of New York State law pursuant to § 1983. All parties are liable and not protected by actions taken in a judicial capacity. Thus, Plaintiff's claims should survive any motions to dismiss, if a summons is to be issued on Defendant's[sic].

> At the very least, Plaintiff should be awarded the opportunity to amend claims to add additional facts and context before dismissal without leave to amend is to be considered. Undoubtedly, Plaintiff should be able to amend the complaint once, especially given no party would be prejudiced.

Dkt. No. 10 at 2. Plaintiff does not object to Magistrate Judge Hummel's recitation of the allegations set forth in Plaintiff's amended complaint. *Id.* at 1-2. The Court finds no clear error in the factual background set forth in Magistrate Judge Hummel's Report-Recommendation and Order and will rely on it throughout this Order. *See* Dkt. No. 9 at 6-14.

The Court will also review the remainder of the Report-Recommendation and Order for clear error because Plaintiff's objections are conclusory and general. *See Scipio v. Keane*, No. 95-CV-2732, 1997 WL 375601, *1 (S.D.N.Y. July 7, 1997); *Brown v. Peters*, No. 95-CV-1641, 1997 WL 599355, *2 (N.D.N.Y. Sept. 22, 1997), *aff'd*, 175 F.3d 1007 (2d Cir. 1999).

## C. Judicial Immunity
Magistrate Judge Hummel first recommended dismissing Plaintiff's amended complaint against Defendant Dietrich in his capacity as Town of North Elba Justice and Village of Lake Placid Alternative Justice because judicial immunity and the Eleventh Amendment bar Plaintiff's claims. *See* Dkt. No. 9 at 15-20, 46. Magistrate Judge Hummel concluded that Plaintiff's claims should be dismissed because although Plaintiff alleges procedural errors in criminal matters, he does not allege that Defendant Dietrich "acted in the clear absence of jurisdiction, or should have known that he was acting in the clear absence of jurisdiction." *Id.* at 19 (citations omitted). The Court finds no clear error in this conclusion.

*3 The Court agrees with Magistrate Judge Hummel's determination that Plaintiff's allegations are barred by judicial immunity because the acts that Plaintiff alleges concerning Defendant Dietrich—appointing counsel, denying motions to adjourn, and refusing to keep the docket-book open—are actions typically performed by judges. *See* Dkt. No. 9 at 17-19; *see also Mireles v. Waco*, 502 U.S. 9, 11 (1991) (concluding that judges have absolute immunity for actions taken in their judicial capacity); *Ceparano v. Southampton Just. Ct.*, 404 Fed. Appx. 537, 539 (2d Cir. 2011) (determining that judicial capacity includes the "nature of the act [complained of] itself, *i.e.*, whether it is a function normally performed by a judge, and [on] the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity") (quotation and quotation marks omitted).

Likewise, the Court agrees with Magistrate Judge Hummel's conclusion that Plaintiff's claims are barred by the Eleventh Amendment because there are no facts to suggest that Defendant Dietrich waived his Eleventh Amendment immunity. *See generally* Dkt. No. 4; *see also Va. Off. for Prot. and Advoc. v. Stewart*, 536 U.S. 247, 253-54 (2011) ("Absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State."); *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006) ("The immunity recognized by the Eleventh Amendment extends beyond the states themselves to 'state agents and state instrumentalities' ") (quotation omitted).

## D. Quasi-Judicial Immunity
Magistrate Judge Hummel recommended dismissing the claims against Defendants Duffy, Hayes, and Merrihew in their capacities as court clerks, and Quinn as the

2024 WL 4441730

Commissioner of Jurors because the claims are barred by quasi-judicial immunity. *See* Dkt. No. 9 at 20-27, 46. Magistrate Judge Hummel determined that Plaintiff's claims "trigger[ ] quasi-judicial immunity because he is complaining of Duffy's, Hayes', and Merrihew's actions that were performed in their [official] capacities." Dkt. No. 9 at 22 (citing *Kellier v. Ross*, No. 22-CV-2506, 2022 WL 1292290, \*4 (S.D.N.Y. Apr. 29, 2022)). Magistrate Judge Hummel concluded that Plaintiff "does not allege that Quinn's actions were taken outside of the scope of the functions associated with his position as Commissioner of Jurors," and Plaintiff "does not claim that [Defendant] Quinn acted 'in the clear absence of all jurisdiction.' " *Id.* at 26 (citing, *inter alia, Zambas v. Egitto*, No. 21-CV-10157, 2022 WL 37088, \*2 (S.D.N.Y. Jan. 3, 2022); *Carrea v. California*, No. 1:10-CV-01004, 2010 WL 4687973, \*7 (E.D. Cal. Nov. 10, 2010)). [1]

[1]    The Report-Recommendation and Order alternatively recommended dismissal of the claims against Hayes and Duffy for "an 'unjust Order[ ] of Protection' " because Plaintiff brought a similar claim in a prior action in this court. Dkt. No. 9 at 23. Magistrate Judge Hummel determined that the present retaliation claim is not supported by sufficient factual allegations to state a claim and is "duplicative and malicious" of the prior claim. *Id.* at 23-24 (citing *Bailey v. Johnson*, 846 F.2d 1010, 1021 (5th Cir. 1988)). The Court finds no error in Magistrate Judge Hummel's analysis. *See Bester v. Taylor*, No. 9:18-CV-707, 2018 WL 3068057, \*2 (N.D.N.Y. June 21, 2018) (concluding that a suit may be "duplicative of another suit if the parties, issues and available relief do not differ significantly between the two actions"); Dkt. No. 9 at 23.

The Court finds no clear error in Magistrate Judge Hummel's conclusion that quasi-judicial immunity applies to Defendants Duffy, Hayes, Merrihew, and Quinn because judicial immunity has been extended "to court clerks and 'others who perform functions closely associated with the judicial process' when they are performing discretionary acts of a judicial nature which are essential to the judicial process[.]" *Albritton v. Sullivan*, No. 1:22-CV-00900, 2023 WL 3612840, \*1 (N.D.N.Y. May 24, 2023) (quoting *Almonte v. Geraci*, No. 21-CV-6960, 2021 WL 4776268, \*3 (S.D.N.Y. Oct. 8, 2021), *appeal dismissed*, No. 21-2813 (2d Cir. May 18, 2022)).

**\*4**  To be sure, a court clerk does not have immunity "where the clerk's refusal to accept the papers of a litigant seeking to commence an action results in the deprivation of the individual's constitutional rights." *Coon v. Merola*, No. 1:19-CV-394, 2019 WL 1981416, \*3 (N.D.N.Y. Apr. 8, 2019) (citing *Glass v. New York Sup. Ct. App. Div.*, No. 1:17-CV-226, 2017 WL 9487181, \*3 (N.D.N.Y. Apr. 26, 2017)) (citation omitted). However, courts have routinely found that court clerks are entitled to quasi-judicial immunity where such deprivations have not been alleged. *See Bey v. New York*, No. 11-CV-3296, 2012 WL 4370272, \*7 (E.D.N.Y. Sept. 21, 2012) (citing *Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997) ("[C]lerks were entitled to quasi-judicial immunity for, *inter alia*, refusing an inmate's request for records on appeal"); *Pukulin v. Gonzalez*, No. 07-CV-0412, 2007 WL 1063353, \*2 (E.D.N.Y. Apr. 5, 2007) (holding that immunity extends to "the Clerk's Office['s] activities of filling and docketing legal documents")).

The Court also agrees that the claims against Defendant Quinn should be dismissed. As Magistrate Judge Hummel thoroughly explained, quasi-judicial immunity has been extended to parties that are involved with jury selection. *See* Dkt. No. 9 at 24-27; *see also McCaw v. Winter*, 745 F.2d 533, 534 (8th Cir. 1984) ("The clerk of the court, in selecting and excusing the prospective jurors for appellant's first trial, was acting pursuant to the judge's directions and, under these narrow circumstances, is therefore absolutely immune"); *Humphrey v. Internal Revenue Serv.*, No. 22-1052, 2022 WL 17728194, \*2 (2d Cir. Dec. 16, 2022) ("Likewise, clerks of court are entitled to absolute immunity 'for performance of tasks which are judicial in nature and an integral part of the judicial process' ") (citation omitted); *but see Atherton v. Dist. of Columbia Off. of the Mayor*, 567 F.3d 672, 684 (D.C. Cir. 2009) (concluding that a juror officer does not have quasi-judicial immunity because "[t]he juror officer is primarily responsible for administrative tasks, such as determining the number of jurors needed ... each day, managing the computer systems and equipment for the Juror's Office, and overseeing juror orientation and the administration of the oath for jurors"). As jury selection is a fundamental part of the judicial process, the Court finds no clear error in Magistrate Judge Hummel's determination that quasi-judicial immunity extends to Defendant Quinn in his role as the Commissioner of Jurors.

### E. Prosecutorial Immunity

Magistrate Judge Hummel recommended dismissing the claims against Defendants Sprague and Borden as District

Attorney and Assistant District Attorney, respectively, because of prosecutorial immunity. *See* Dkt. No. 9 at 27-30, 46. Magistrate Judge Hummel concluded that Defendants Borden and Sprague are immune from suit because Plaintiff's claims " 'relate to non-investigative actions' taken in their capacities as prosecutors." Dkt. No. 9 at 29 (quoting *Linder v. Oneida Cty. Dist. Att'y Off.*, No. 6:23-CV-01061, 2023 WL 6810098, *4 (N.D.N.Y. Oct. 16, 2023)) (citation omitted). Magistrate Judge Hummel also noted that Eleventh Amendment immunity bars suit against Defendants Borden and Sprague in their official capacities. *See* Dkt. No. 9 at 30 (citing *McKeon v. Daley*, 101 F. Supp. 2d 79, 86 (N.D.N.Y. 2000), *aff'd*, 8 Fed. Appx. 138 (2d Cir. 2001)).

The Court agrees with Magistrate Judge Hummel that the claims against Defendants Borden and Sprague are barred by prosecutorial immunity because immunity extends to "prosecutors performing prosecutorial activities that are 'intimately associated with the judicial phase of the criminal process.' " *Ying Jing Gan v. City of New York*, 996 F.2d 522, 530 (2d Cir. 1993) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). Plaintiff alleges that Defendants Borden and Sprague "made the choice to allow Plaintiff's right to a speedy trial be impeded." Dkt. No. 4 at 12. However, this claim of violating Plaintiff's Sixth Amendment right arises from Defendants Borden and Sprague "performing [their] prosecutorial activities," thus making Defendants Borden and Sprague immune from suit. *Ying Jing Gan*, 996 F.2d at 530 (quoting *Imbler*, 424 U.S. at 430); *Ramsey v. Smith*, No. 1:19-CV-54, 2020 WL 4053728, *3 (S.D. Miss. July 20, 2020) ("A plaintiff's allegations that a prosecutor violated speedy trial rights, withheld exculpatory evidence, charged a defendant without probable cause, and engaged in prosecutorial misconduct have all been found to be actions that fall within the scope of prosecutorial immunity") (citations omitted); *Gadreault v. Bent*, No. 2:20-CV-83, 2022 WL 943669, *6 (D. Vt. Mar. 3, 2022) ("Gadreault's claims against State's Attorneys Barrett and Danielson remain barred by the doctrine of prosecutorial immunity ... Any actions that they allegedly undertook in connection with his prosecution—including their alleged delay of that trial—fall within the ambit of their prosecutorial duties") (citations omitted).

### F. Section 1983 Claims

#### 1. State Action

**\*5** Magistrate Judge Hummel recommended dismissing Plaintiff's § 1983 claims against Defendants Hyde and Hadden as public and conflict defenders, the Essex County

Public Defender's Office, and the Essex County Conflict Defender's Office. *See* Dkt. No. 9 at 33, 36, 46. Magistrate Judge Hummel concluded that Defendants Hyde and Hadden as "court-appointed attorneys ... do not act 'under the color of state law,' " and Plaintiff does not allege facts "that [Defendants] Hyde or Hadden acted 'using the coercive power of the state or is controlled by the state.' " *Id.* at 33, 35 (quoting, *inter alia*, *Rodriguez*, 116 F.3d at 65-66; *Rogers v. City of New Rochelle*, No. 1:19-CV-0479, 2019 WL 5538031, *2 (S.D.N.Y. Oct. 25, 2019)). Magistrate Judge Hummel also noted that Plaintiff did not allege facts against the Essex County Public Defender's Office and Essex County Conflict Defender's Office in the body of his amended complaint. *See id.* at 35. In any event, he explained that the offices are "not considered 'persons' under 42 U.S.C. § 1983." *Id.* at 36 (citing *Owens v. Connecticut*, No. 3:24-CV-79, 2024 WL 1576779, *3 (D. Conn. Apr. 11, 2024)).

The Court finds no clear error in Magistrate Judge Hummel's conclusions because courts routinely dismiss claims against public defenders and public defenders' offices because they are not state actors or persons under § 1983. *See Tapp v. Champagne*, 164 Fed. Appx. 106, 108 (2d Cir. 2006) ("A 'public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding' ")(quoting *Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981)); *Shorter v. Rice*, No. 12-CV-0111, 2012 WL 1340088, *4 (E.D.N.Y. Apr. 10, 2012) ("[I]t is axiomatic that neither public defenders, such as Legal Aid Attorneys, nor court-appointed counsel, nor private attorneys, act under the color of state law merely by virtue of their position"); *Franklin v. Chenango Cty. Pub. Defender's Off.*, No. 3:18-CV-0865, 2018 WL 4288620, *4 (N.D.N.Y. Sept. 7, 2018) ("The Office of the Chenango County Public Defender, as distinct from the Public Defender as an individual, is not a person amenable to suit under section 1983") (citation omitted).

#### 2. Municipal Liability

Magistrate Judge Hummel recommended dismissing the claims against Defendants Town of North Elba, Village of Lake Placid, and Essex County because Plaintiff "failed to state a municipal liability claim." Dkt. No. 9 at 40, 46. Magistrate Judge Hummel concluded that Plaintiff did not identify "an underlying constitutional violation sufficient to support a municipal liability claim" because "[P]laintiff has failed to state a claim that a person, who is not entitled to absolute immunity, acted under the color of state law when they deprived him of a constitutional right." *Id.* at 38

(citing, *inter alia, Dees v. Zurlo*, No. 1:24-CV-0001, 2024 WL 1053237, \*14 (N.D.N.Y. Mar. 11, 2024); *Mugabo v. Wagner*, No. 22-CV-930-A, 2024 WL 1621534, \*4 (W.D.N.Y. Apr. 15, 2024)). Magistrate Judge Hummel also determined that Plaintiff did not "identify ... the existence of a municipal policy or custom" used by Defendants and did not explain how Defendants "failed to properly hire, supervise, and train subordinates in connection with his claims." *Id.* at 39 (citing *Boyde v. New York*, No. 5:16-CV-555, 2016 WL 3573133, \*4 (N.D.N.Y. May 19, 2016); *Dougal v. Lewicki*, No. 1:23-CV-1167, 2023 WL 6430586, \*10 (N.D.N.Y. Oct. 3, 2023)). The Court finds no clear error in these determinations.

To hold a municipality liable, a plaintiff "must show the following: '(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury.' " *Maddox v. City of Syracuse*, No. 5:14-CV-1068, 2017 WL 680439, \*3 (N.D.N.Y. Feb. 21, 2017) (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008)) (additional citation omitted). However, absent an independent constitutional violation, a municipality cannot be held liable under § 1983. *See Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 694 (1978) ("A local government may not be sued under § 1983 ... [unless the] official policy [is] ... the moving force of the constitutional violation"); *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) ("Thus, our first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation"). In the present case, Plaintiff fails to allege an underlying constitutional violation because he does not explain how Defendants Town of North Elba, Village of Lake Placid, and Essex County independently violated his constitutional rights. *See generally* Dkt. No. 4. Thus, the Court agrees with Magistrate Judge Hummel that the municipal liability claims should be dismissed.

## G. State Law Claims

**\*6** Magistrate Judge Hummel next recommended dismissing Plaintiff's claims of negligent infliction of emotional distress against Defendants Dietrich, Hayes, Merrihew, Town of North Elba, and Essex County. *See* Dkt. No. 9 at 40, 44, 46. Magistrate Judge Hummel determined that the Court "may choose to exercise supplemental jurisdiction over [Plaintiff's] ... state law [negligent infliction of emotional distress] claims" if he was to successfully amend his complaint because "Plaintiff's [negligent infliction of

emotional distress] claims derive from the same operative facts as the federal claims he seeks to bring." *Id.* at 41. However, Magistrate Judge Hummel concluded that Defendants Dietrich, Hayes, or Merrihew are absolutely immune from suit, and Plaintiff did not allege facts indicating that they put Plaintiff in "any physical danger," or owed Plaintiff "any special duty." *Id.* at 42 (citing, *inter alia, Nova v. Smith*, No. 9:19-CV-0072, 2019 WL 2636817, \*3 (N.D.N.Y. June 27, 2019); *Burroughs v. Mitchell*, 325 F. Supp. 3d 249, 285 (N.D.N.Y. 2018)). Magistrate Judge Hummel also determined that Plaintiff did not allege "a special duty or relationship between himself or the Town of North Elba or Essex County." *Id.* at 43 (citing *Karcz v. City of N. Tonawanda*, No. 20-CV-9V, 2023 WL 2654210, \*4 (W.D.N.Y. Feb. 24, 2023)).

"Federal courts may exercise supplemental jurisdiction over 'claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.' " *Zhang v. Ichiban Grp., LLC*, No. 1:17-CV-148, 2023 WL 6122847, \*10 (N.D.N.Y. Sept. 19, 2023) (quoting 28 U.S.C. § 1367). As such, the Court agrees with Magistrate Judge Hummel that if Plaintiff "successfully amend[s] his complaint," then the Court may choose to exercise supplemental jurisdiction over the negligent infliction of emotional distress claims. Dkt. No. 9 at 41.

However, Magistrate Judge Hummel is also correct that Plaintiff did not sufficiently plead negligent infliction of emotional distress claims because Plaintiff did not sufficiently allege a duty owed by Defendants and a danger created by Defendants. *See* Dkt. No. 9 at 42; *see also Kinowski v. Home for Elderly Women of Montgomery Cnty., Inc.*, No. 1:22-CV-1342, 2023 WL 4865531, \*13 (N.D.N.Y. July 31, 2023) (requiring a plaintiff to " 'plead that the breach endangered his physical safety or caused him to fear for his physical safety' ") (quoting *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 81 (2d Cir. 2021)); *Leonel Cruz v. United Auto. Workers Union Loc. 2300*, No. 3:18-CV-0048, 2019 WL 3239843, \*22 (N.D.N.Y. July 18, 2019) (mandating that duty owed " 'must [also] be specific to the plaintiff' and 'is far more specific than the more generalized duty to avoid negligently injuring another' ") (quotation omitted). As such, the Court agrees that the negligent infliction of emotional distress claims must be dismissed.

## H. Opportunity to Amend

Finally, Magistrate Judge Hummel recommended dismissing the claims against Defendants Dietrich, Duffy, Hayes,

Merrihew, Quinn, Borden, and Sprague without leave to amend because those Defendants are "absolutely immune from suit." Dkt. No. 9 at 44. Magistrate Judge Hummel also recommended dismissal without leave to amend for all claims against Defendants Hyde, Hadden, Essex County Public Defender's Office, and Essex County Conflict Defender's Office because they "are not considered to be persons acting under the color of state law." *Id.* at 44. However, Magistrate Judge Hummel recommended dismissing claims against Defendants Town of North Elba, Village of Lake Placid, and Essex County with leave to amend. *Id.* The Court finds no clear error with this portion of Magistrate Judge Hummel's Report-Recommendation and Order.

In Plaintiff's objections, he specifically asks the Court to allow him leave to amend his amended complaint. *See* Dkt. No. 10 at 2. It is true that "[w]hen a *pro se* complaint fails to state a cause of action, the court generally 'should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.' " *Robinson v. Hallett*, No. 5:19-CV-406, 2020 WL 1227142, *4 (N.D.N.Y. Mar. 13, 2020) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). However, courts routinely deny an opportunity to amend where a claim is barred on immunity grounds because amendment would be futile. *See Kelly v. N.Y. State Unified Ct. Sys.*, No. 21-1633, 2022 WL 1210665, *3 (N.D.N.Y. Apr. 25, 2022) ("Kelly's complaint is deficient because state sovereign immunity bars his claims ... [t]herefore, because Kelly cannot cure his pleading deficiencies and amendment would be futile, the district court did not err in denying leave to amend"); *Humphrey v. Ct. Clerk ex rel. U.S. Sup. Ct.*, No. 5:11-CV-938, 2011 WL 7112904, *4 (N.D.N.Y. Aug. 12, 2011) ("Because the defendant would be entitled to absolute immunity, this court recommends dismissal with prejudice of plaintiff's action"). Similarly, where an entity is not a person acting under the color of law, a § 1983 claim cannot be stated. *Guillory v. Bishop Nursing Home*, No. 5:21-CV-410, 2021 WL 2431259, *3 (N.D.N.Y. June 15, 2021) ("Because Plaintiff failed to plausibly allege that the named Defendants acted under color of state law, Magistrate Judge Baxter correctly determined that the complaint fails to state any claims for relief under Section 1983.... Moreover, Magistrate Judge Baxter correctly determined that leave to re-plead should be denied"); *contra Beck v. N.Y. State Elec. and Gas Corp.*, No. 3:18-CV-1131, 2018 WL 5892708, *4 (N.D.N.Y. Oct. 11, 2018) ("In this case, though extremely skeptical, the court cannot say with complete certainly[sic] that, if permitted to amend, plaintiff would be unable to establish the requisite

state action sufficient to demonstrate a cognizable section 1983 claims[sic]. Accordingly, I recommend that leave to amend be granted").

**\*7** As such, the Court agrees with Magistrate Judge Hummel that the claims against Defendants Dietrich, Duffy, Hayes, Merrihew, Quinn, Borden, Sprague, Hyde, Hadden, Essex County Public Defender's Office, and Essex County Conflict Defender's Office should be dismissed with prejudice and without leave to amend. *See* Dkt. No. 9 at 44. The Court also agrees that Plaintiff should have an opportunity to amend the claims against Defendants Town of North Elba, Village of Lake Placid, and Essex County because it is possible that Plaintiff could cure deficiencies in his pleading. Dkt. No. 9 at 44.

If Plaintiff decides to amend his complaint, he must clearly set forth the facts that give rise to the claim, including, when possible, the dates, times, and places of the alleged underlying acts, as well as each individual who committed each alleged wrongful act. The revised pleading should allege facts demonstrating the personal involvement of any named Defendant. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994). Finally, Plaintiff is informed that any amended complaint will replace the existing complaint and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Jeanty v. Sciortino*, 669 F. Supp. 3d 96, 118-19 (N.D.N.Y. 2023).

### III. CONCLUSION

After carefully considering the Report-Recommendation and Order, the entire record in this matter, and the applicable law, the Court hereby

**ORDERS** that Magistrate Judge Hummel's Report-Recommendation and Order (Dkt. No. 9) is **ADOPTED in its entirety** for the reasons set forth herein; and the Court further

**ORDERS** that Plaintiff's amended complaint (Dkt. No. 4) is **DISMISSED without prejudice and with leave to amend** against Defendants Town of North Elba, Village of Lake Placid, and Essex County; and the Court further

**ORDERS** that Plaintiff's claims against Defendants Dietrich, Duffy, Hayes, Merrihew, Quinn, Borden, Sprague, Hyde, Hadden, Essex County Public Defender's Office, and Essex

2024 WL 4441730

County Conflict Defender's Office are **DISMISSED with prejudice and without leave to amend**; and the Court further

**ORDERS** that Plaintiff shall file his amended complaint within **thirty (30) days** of the date of this Order; and the Court further

**ORDERS** that if Plaintiff fails to file an amended complaint within thirty (30) days of the date of this Order, the Clerk of the Court shall enter judgement against Plaintiff and close this case without further order from this Court; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2024 WL 4441730

---

**End of Document** <span style="float:right">© 2025 Thomson Reuters. No claim to original U.S. Government Works.</span>

2025 WL 542587
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Patrick LAWRENCE, Plaintiff,

v.

Detective SHATTICK, et al., Defendants.

8:24-CV-656 (MAD/DJS)
|
Signed February 19, 2025

**Attorneys and Law Firms**

PATRICK LAWRENCE, 24-B-3717, Cape Vincent Correctional Facility, Route 12E, PO Box 739, Cape Vincent, New York 13618, Plaintiff, Pro se.

**MEMORANDUM-DECISION AND ORDER**

Mae A. D'Agostino, United States District Judge:

### I. INTRODUCTION

 *1 On May 14, 2024, *pro se* Plaintiff Patrick Lawrence commenced this action against Defendants Detective Shattick, St. Lawrence County Correctional Facility ("St. Lawrence C.C.F."), St. Lawrence County Sheriff's Department (the "Sheriff's Department"), Deputy Yerdon, Deputy Tate, Deputy Merria, Deputy Bundette, Sgt. G. Anderson, James Mcgahan, Bradford Reindeau, Thomas Farrell, Greg Storie, Brooks Bigwarfe, Peggy Harper, Tim Amos, Nurse Kerrigan, Chief Nurse Mayo, Chief Nurse Anita Scott, Sgt. Clary, Nurse 1-100, Correctional Officer 1-100, Kim Richards, K. Hillbourne, Yolanda Thompson, Sara Charpentier, Allison Applebe, and Deputy 1-100 (collectively, "Defendants"), bringing claims for violations of his constitutional rights pursuant to 42 U.S.C. §§ 1983, 1985, and 1986, violation of the Americans with Disabilities Act [1] ("ADA") and Rehabilitation Act [2] ("RA"), as well as state law claims. *See* Dkt. No. 1.

[1]     *See* 42 U.S.C. §§ 12101-213.

[2]     *See* 29 U.S.C. § 794.

On September 23, 2024, Magistrate Judge Daniel Stewart issued a Report-Recommendation and Order

("R&R"), recommending that (1) "Plaintiff's Complaint be DISMISSED with prejudice as to Plaintiff's fourth, fifth, seventh, fourteenth, fifteenth, and seventeenth causes of action, as well as, all Eighth Amendment claims, and Defendants Storie, Charpentier, Reindeau, Farrell, Mcgahan, and [St. Lawrence C.C.F.]"; (2) "Plaintiff's sixth, eighth, ninth, tenth, eleventh, [twelfth], and thirteenth causes of action be DISMISSED with leave to amend"; and (3) "Plaintiff's first, second, third, and sixteenth causes of action be permitted to proceed and Defendants be directed to respond." Dkt. No. 11 at 14 (emphasis omitted). Magistrate Judge Stewart also denied Plaintiff's motion for appointment of counsel. *See id.* at 12-14. On December 13, 2024, Plaintiff filed objections to the R&R, which he labels "Amendments and Objections." Dkt. No. 14. [3] On December 29, 2024, Plaintiff filed exhibits and medical records in support of his "Amendments and Objections." *See* Dkt. Nos. 15, 16. For the reasons that follow, the R&R is adopted as modified herein.

[3]     Plaintiff's objections are sixty pages. *See* Dkt. No. 14. Local Rule 71.2(c) instructs that "[o]bjections may not exceed twenty-five (25) pages without the Court's prior approval." N.D.N.Y. L.R. 72.1(c). The Court will consider the entirety of Plaintiff's objections because he is proceeding *pro se.* However, the Court warns Plaintiff that future compliance with the Federal Rules, the Court's Local Rules, and the undersigned's Individual Rules is required.

### II. BACKGROUND

For a recitation of the background, the parties are referred to the R&R. *See* Dkt. No. 11 at 4.

### III. DISCUSSION

**A. Standard of Review**

When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a "de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). However, when a party files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL

933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). The district court may also, in its discretion, review recommendations *de novo* even when a party has failed to object or merely asserts general or conclusory objections. *See U.S. v. Male Juvenile (95-CR-1074)*, 121 F.3d 34, 39 (2d Cir. 1997) ("Although [the] defendant did not object to the magistrate judge's recommendation, ... [t]he record indicates that the district court made a *de novo* determination of the Report and Recommendation .... The court's review was well within its discretion") (citing *Grassia v. Scully*, 892 F.2d 16, 19 (2d Cir. 1989)). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

**\*2** "[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.' " *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted). The Court is obligated to "make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

In general, a court should not dismiss a *pro se* litigant's complaint without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009) (quotations and citation omitted). In addition, the court should exercise "extreme caution ... in ordering *sua sponte* dismissal of a *pro se* complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had the opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). An opportunity to amend, however, is not required where "the problem with plaintiff's cause of action is substantive such that better pleading will not cure it." *Townsend v. Pep Boys, Manny Moe and Jack*, No. 1:13-CV-293, 2014 WL 4826681, *2 (N.D.N.Y. Sept. 29, 2014) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)) (internal quotations marks omitted).

### B. Amendment

Magistrate Judge Stewart recommends granting Plaintiff leave to amend his complaint as to his sixth, eighth, ninth, tenth, eleventh, twelfth, and thirteenth causes of action. *See* Dkt. No. 11 at 14. Plaintiff asserts that, through his objections, he amends some or all of these causes of action.

*See* Dkt. No. 14. A plaintiff may not amend his or her factual allegations though objections to an R&R. *See Lombardi v. Choices Women's Med. Ctr., Inc.*, No. 15-CV-05542, 2017 WL 1102678, *3 (E.D.N.Y. Mar. 23, 2017) ("Plaintiff cannot assert a new argument or amend her factual allegations through objections to an R & R") (citing *Yao Wu v. BDK DSD*, 2015 WL 5664534, *1 (E.D.N.Y. Sept. 22, 2015)). Therefore, although Plaintiff will be granted leave amend his complaint for the reasons discussed below, the Court declines to consider the proposed amendments contained within Plaintiff's objections.

### C. Plaintiff's Objections

Plaintiff does not object to Magistrate Judge Stewart's recitation of the allegations set forth in Plaintiff's complaint. *See* Dkt. No. 14. The Court finds no clear error in the factual background set forth in Magistrate Judge Stewart's R&R and will rely on it throughout this Order. *See* Dkt. No. 11 at 4.

Throughout his objections, Plaintiff reiterates and expands upon his factual allegations, however, he fails to specifically object to many of the procedural deficiencies identified by Magistrate Judge Stewart. *See* Dkt. No. 14. Thus, the majority of the R&R is subject to review for clear error because Plaintiff's objections are conclusory and general. *See Brown v. Peters*, No. 95-CV-1641, 1997 WL 599355, *2 (N.D.N.Y. Sept. 22, 1997), *aff'd*, 175 F.3d 1007 (2d Cir. 1999) ("Even affording the objections the liberal reading required for *pro se* pleadings, I find that these objections fail to state any basis whatsoever, much less a specific one, for the court not to adopt the magistrate judge's rulings. They simply re-state the relief sought and the facts on which [the plaintiff] grounds his complaint and conclude that the magistrate judge's conclusions are wrong. When the parties make only frivolous, conclusive, or general objections, the court reviews the report-recommendation for clear error") (collecting cases). The Court, however, will exercise its discretion to review the R&R *de novo*. *See Nicosia v. Amazon.com, Inc.*, 384 F. Supp. 3d 254, 263 (E.D.N.Y. 2019), *aff'd*, 815 Fed. Appx. 612 (2d Cir. 2020) ("[T]he Court, in its discretion, may also review [sections of an R&R not objected to] *de novo*") (citing *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976)).

### D. Eighth Amendment Claims

**\*3** Magistrate Judge Stewart first recommends dismissing, with prejudice, Plaintiff's claims purportedly brought pursuant to the Eighth Amendment because Plaintiff's

allegations pertain to his detention without a conviction and, therefore, do not implicate the Eighth Amendment. *See* Dkt. No. 11 at 5. Plaintiff does not raise specific objections to this recommendation. *See* Dkt. No. 14. Nevertheless, even reviewing the recommendation *de novo*, the Court finds no error.

Indeed, "the Eighth Amendment does not apply 'until after conviction and sentence.' " *Wright v. N.Y. City*, No. 09-CV-2452, 2012 WL 4057958, *3 (E.D.N.Y. Sept. 14, 2012) (quoting *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999)). Plaintiff's claims are premised on allegations related to a traffic stop, arrest, detainment, and pre-conviction court proceedings, *see* Dkt. No. 11 at 4, and, therefore, to the extent Plaintiff states claims pursuant to the Eighth Amendment, the Court adopts Magistrate Judge Stewart's recommendation that such claims be dismissed with prejudice, *see id.* at 5.

### E. Immunity and State Action

#### 1. Judicial Immunity

Magistrate Judge Stewart recommends dismissing all claims asserted against Defendant Storie because he is immune from suit for actions taken in the performance of his judicial duties. *See id.* Plaintiff objects to the application of judicial immunity to his claims against Defendant Storie, arguing that Defendant Storie violated the constitution throughout Plaintiff's criminal court proceedings. *See* Dkt. No. 14 at 54-57 (asserting that Defendant Storie, among other things, "lied on the 730 order" and "silenced [Plaintiff] in his court room in violation of the [First] Amendment"). Plaintiff's arguments merely rehash the allegations in his complaint. *See* Dkt. No. 1 at 19-20.

Exercising its discretion to review this section of the R&R *de novo*, the Court finds no error. " '[J]udges generally have absolute immunity from suits for money damages for their judicial actions' and 'even allegations of bad faith or malice cannot overcome judicial immunity.' " *Tewari v. Sattler*, No. 23-36-CV, 2024 WL 177445, *1 (2d Cir. Jan. 17, 2024) (quoting *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009)). "Judges enjoy absolute immunity from personal liability for acts committed within their judicial jurisdiction .... The absolute immunity of a judge applies however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff." *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994) (quotations and internal quotation marks omitted).

Here, Defendant Storie's alleged actions fall squarely within acts undertaken within his judicial jurisdiction and Plaintiff's claims are, thus, barred by judicial immunity. *See Tewari*, 2024 WL 177445, at *1 (affirming application of judicial immunity to claims against a defendant state court judge for alleged violation of the plaintiff's "constitutional rights in connection with various rulings she made during the course of the proceedings"). Accordingly, the Court adopts Magistrate Judge Stewart's recommendation that the claims against Defendant Storie be dismissed with prejudice. *See* Dkt. No. 11 at 5-6, 14.

#### 2. Prosecutorial Immunity

Magistrate Judge Stewart recommends dismissal of the claims against Defendant Charpentier, on the basis of prosecutorial immunity, because "Plaintiff alleges that Defendant Charpentier violated his rights during the presentation of [Plaintiff's criminal] case to the grand jury and in court proceedings." *Id.* at 6 (citing Dkt. No. 1 at 12-15). Plaintiff asserts objections to Defendant Charpentier's dismissal at various points in his sixty-page filing, including, as to his fourth cause of action for "conspiracy," that Defendant Charpentier should not be dismissed because she "attempted to take advantage of [Plaintiff's] mental health disorders and poverty when [she] did conspire to deprive [Plaintiff] of his right to freedom, travel, life, liberty, property, equal protection of the law, and due process," and because Defendant Charpentier lied to, and fabricated evidence presented to, the grand jury. Dkt. No. 14 at 35-39. [4] Despite Plaintiff's policy arguments regarding the doctrine of prosecutorial immunity, all of Defendant Charpentier's alleged conduct occurred while she performed her duties as a prosecutor. *See, e.g.*, Dkt. No. 1 at 12-15.

[4]    Plaintiff also "urges the Honorable Court to remember that[,] due to the overwhelming evidence[,] 18 U.S.C. § 242 does not allow unconstitutional conduct to go unchecked." Dkt. No. 14 at 35. Plaintiff mentions 18 U.S.C. § 242 at other points in his objections, including in his objection to the dismissal of Defendant Storie. *See id.* at 54-57. However, 18 U.S.C. § 242 is a federal criminal statute that does not create a private right of action. *See Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 511 (2d Cir. 1994). Therefore, Plaintiff is advised that he cannot bring a claim pursuant to 18 U.S.C. § 242. Plaintiff also mentions other criminal statutes throughout his objections,

such as New York State Penal Law § 20.20. *See* Dkt. No. 14 at 3. Plaintiff is advised that he cannot bring civil causes of action pursuant to federal or state criminal statutes and that, if he includes such claims in any amended pleading, they will be subject to dismissal. *See Ming v. Brouillete*, No. 6:23-CV-0086, 2023 WL 5779558, *3 (N.D.N.Y. Apr. 7, 2023*), report and recommendation adopted*, 2023 WL 5444485 (N.D.N.Y. Aug. 24, 2023) ("There is no private right of action to enforce state or federal criminal statutes") (collecting cases).

**\*4** The Court agrees with Magistrate Judge Stewart that the claims against Defendant Charpentier are barred by prosecutorial immunity because this immunity extends to "prosecutors performing prosecutorial activities that are 'intimately associated with the judicial phase of the criminal process.' " *Ying Jing Gan v. City of N.Y.*, 996 F.2d 522, 530 (2d Cir. 1993) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). "A plaintiff's allegations that a prosecutor violated speedy trial rights, withheld exculpatory evidence, charged a defendant without probable cause, and engaged in prosecutorial misconduct have all been found to be actions that fall within the scope of prosecutorial immunity." *Ramsey v. Smith*, No. 1:19-CV-54, 2020 WL 4053728, *3 (S.D. Miss. July 20, 2020) (citations omitted). Moreover, "[t]he presentation of a case to a grand jury falls squarely within the prosecutor's traditional function and is thus subject to absolute immunity." *Maglione v. Briggs*, 748 F.2d 116, 118 (2d Cir. 1984). Plaintiff's allegations regarding conspiracy between Defendant Charpentier and other defendants does not overcome Defendant Charpentier's prosecutorial immunity because "a conspiracy claim also falls within the ambit of absolute prosecutorial immunity." *Soley v. Cnty. of Nassau*, No. 18-CV-377, 2022 WL 2954055, *7 (E.D.N.Y. July 26, 2022); *see Hill v. City of N.Y.*, 45 F.3d 653, 661 (2d Cir. 1995) (holding that a prosecutor was absolutely immune from suit for "conspiring to present falsified evidence to ... a grand jury").

For these reasons, the Court finds no error in, and adopts, Magistrate Judge Stewart's recommendation that the claims against Defendant Charpentier be dismissed with prejudice.

### F. Section 1983

#### 1. State Action

Magistrate Judge Stewart recommends dismissal of Plaintiff's claims against Defendants Reindeau, Farrell, Mcgahan and

Applebe (hereinafter the "Defense Counsel Defendants"), who acted as counsel for Plaintiff during his criminal proceedings, because the Defense Counsel Defendants are not state actors. *See id.* at 6-7.[5] Plaintiff argues that the Defense Counsel Defendants should not be dismissed because "[h]ad it not been for a proceeding brought by the 'People of the State of New York' [he] never would have come across these individuals[, t]hey are licensed to 'practice' by the State Bar Association[, t]hey draw their funds and fees from State backed support[, and t]hey are regulated by the State 'Rules of Professional Conduct.' " Dkt. No. 14 at 53. Plaintiff argues that, for these reasons, "how anyone can come up with [']Public Defenders are not state actors['] is far reaching for a man of reasonable understanding." Dkt. No. 14 at 53 (quotation marks omitted).

[5]     Magistrate Judge Stewart also recommends dismissal of the fourteenth cause of action, brought against the Defense Counsel Defendants, because 42 U.S.C. § 1983 is not the appropriate vehicle to bring a claim for ineffective assistance of counsel. *See* Dkt. No. 11 at 7. The Court agrees. *See Welch v. Schenectady Cnty.*, No. 1:22-CV-9, 2022 WL 3904113, *2 (N.D.N.Y. Aug. 10, 2022), *report and recommendation adopted*, 2022 WL 3908798 (N.D.N.Y. Aug. 30, 2022) ("In addition, a section 1983 action 'is not the appropriate vehicle to raise a claim of ineffective assistance of counsel' ") (quotation omitted).

Courts routinely dismiss claims against public defenders and public defenders' offices because they are not state actors or persons under Section 1983. *See Tapp v. Champagne*, 164 Fed. Appx. 106, 108 (2d Cir 2006) ("A 'public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding' ") (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981)); *Shorter v. Rice*, No. 12-CV-0111, 2012 WL 1340088, *4 (E.D.N.Y. Apr. 10, 2012) ("[I]t is axiomatic that neither public defenders, such as Legal Aid Attorneys, nor court-appointed counsel, nor private attorneys, act under the color of state law merely by virtue of their position").

Plaintiff alleges that that the Defense Counsel Defendants violated the Sixth Amendment because they failed to provide him with adequate representation and violated the Fourteenth Amendment by conspiring to present fabricated evidence to the grand jury in his criminal proceeding. *See* Dkt. No. 1 at 12-15, 22. The Defense Counsel Defendants are not

state actors and, thus, the Court adopts Magistrate Judge Stewart's recommendation that the claims against these defendants, brought pursuant to Section 1983, be dismissed with prejudice.[6]

[6]    Specifically, the fourteenth cause of action is dismissed, as it alleges Sixth Amendment violations by the Defense Counsel Defendants. *See* Dkt. No. 1 at 22. Additionally, Defendants Charpentier, Reindeau, Farrell, Mcgahan and Applebe are the only defendants named in the fourth and fifth causes of action. *See* Dkt. No. 1 at 12-15. Because the claims against all of these attorney defendants are dismissed, as Defendant Charpentier is entitled to prosecutorial immunity and the Defense Counsel Defendants are not state actors, the fourth and fifth causes of action, which allege conspiracy to present false evidence to the grand jury, are also dismissed.

#### 2. False Arrest and False Imprisonment

**\*5**  Plaintiff's first and second causes of action allege that Defendants Shattick, Yerdon, Tate, Merria, Burdette, Anderson, and Bigwarfe violated his Fourth Amendment right to be free from unreasonable search and seizure, and that such defendants failed to intervene in the Fourth Amendment violations. *See* Dkt. No. 1 at 7-10. Magistrate Judge Stewart recommends that Plaintiff's first and second causes of action survive initial review and should be permitted to proceed. *See* Dkt. No. 11 at 7-8. The parties do not object to this recommendation and the Court, finding no error, adopts Magistrate Judge Stewart's recommendation that the first and second causes of action survive initial review.

#### 3. Deliberate Indifference

Plaintiff's third and sixteenth causes of action allege that Defendants Shattick, Yerdon, Tate, Merria, Burdette, Anderson, Bigwarfe, Harper, Amos, Mayo, Scott, Clancy, Kerrigan, and Nurse 1-100 were deliberately indifferent to his medical needs. *See* Dkt. No. 1 at 10-11, 22-23. Magistrate Judge Stewart recommends that Plaintiff's third and sixteenth causes of action survive initial review and should be permitted to proceed. *See* Dkt. No. 11 at 8. The parties do not object to this recommendation and the Court, finding no error, adopts it.

#### 4. Municipal Liability

Plaintiff alleges, through what is labelled his sixth cause of action, that the Sheriff's Department and St. Lawrence C.C.F. are subject to municipal liability, pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). *See* Dkt. No. 1 at 15. Magistrate Judge Stewart recommends that: (1) St. Lawrence C.C.F. be dismissed with prejudice, as the correctional facility is not a distinct entity from the County, and, thus, is not a proper party to a Section 1983 claim; and (2) because Plaintiff has not identified a purported policy, practice, or custom which caused his alleged constitutional violations, that the sixth cause of action be dismissed with leave to replead against St. Lawrence County. *See* Dkt. No. 11 at 9, n.5. Through his objections, Plaintiff seeks to amend his sixth cause of action. *See* Dkt. No. 14 at 1-14.

For the reasons previously discussed, Plaintiff cannot amend his complaint through his objections to the R&R. *See Lombardi*, 2017 WL 1102678, at *3. As for Magistrate Judge Stewart's recommendation that the sixth cause of action be dismissed with leave to replead as against St. Lawrence County, the Court reviews the recommendation *de novo* and adopts it as modified as follows.

To hold a municipality liable, a plaintiff "must show the following: '(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury.' " *Maddox v. City of Syracuse*, No. 5:14-CV-1068, 2017 WL 680439, *3 (N.D.N.Y. Feb. 21, 2017) (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008)) (additional citation omitted). However, absent an independent constitutional violation, a municipality cannot be held liable under § 1983. *See Monell*, 436 U.S. at 694 ("A local government may not be sued under § 1983 ... [unless the] official policy [is] ... the moving force of the constitutional violation"); *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) ("Thus, our first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation").

Federal courts apply state law to determine whether an entity has capacity to be sued. *See* Fed. R. Civ. P. 17(b). "Under New York law, a county is a municipal corporation capable of bringing suit and being sued." *Baker v. Willett*, 42 F. Supp. 2d 192, 198 (N.D.N.Y. 1999) (citing N.Y. Gen. Mun. Law § 2). However, a sheriff's department or a police department is an administrative arm of the municipal corporation and does not have a separate identity from the municipality. *See*

*id.*; *Long v. City of Orleans*, 540 F. Supp. 3d 344, 350 (W.D.N.Y. 2021). Because a sheriff's department "does not exist separate and apart from the municipality and does not have its own legal identity," it cannot sue or be sued. *Baker*, 42 F. Supp. 2d at 198; *see Jenkins v. Onondaga Cnty. Sheriff's Dep't*, No. 5:12-CV-855, 2012 WL 4491134, *2 (N.D.N.Y. June 28, 2012) ("[U]nder New York law, departments, like the Onondaga County Sheriff's Department, that are merely administrative arms of a municipality, do not have a legal identity separate from the municipality and may not sue or be sued." For these same reasons, a county correctional facility cannot be sued under Section 1983. *See Miles v. Albany Corr. Facility*, No. 9:09-CV-1279, 2010 WL 3946956, *1 (N.D.N.Y. Sept. 16, 2010), *report and recommendation adopted*, 2010 WL 3940956 (N.D.N.Y. Oct. 6, 2010) (finding that "the Albany Correctional Facility cannot be sued under 42 U.S.C. § 1983"). Therefore, the causes of action brought against the Sheriff's Department and St. Lawrence C.C.F. are dismissed with prejudice.

**\*6** Furthermore, the Court agrees with Magistrate Judge Stewart that, in his complaint, Plaintiff fails to clearly identify an unconstitutional policy that would support a claim for municipal liability. *See* Dkt. No. 11 at 9; Dkt. No. 1. Now, in his objections, Plaintiff raises various conditions that he believes constitute unconstitutional policies, practices, or customs of St. Lawrence County. *See* Dkt. No. 14 at 8-14 (alleging unconstitutional use of certain restraints, unlawful administration of controlled substances to incarcerated individuals, deprivation of outdoor recreation for pre-trial detainees, "toxic gas" emanating from shower drains at the correctional facility, and arbitrary and extended periods of segregated confinement). Plaintiff argues that these alleged policies violate New York Correction Law §§ 500-c and 137, Article I § 6 and § 11 of the New York State Constitution, and the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. *See id.* However, Plaintiff's new and re-hashed allegations do not present cognizable objections to the R&R. *See Ross v. Dempsey Unif. & Linen Supply*, No. 3:16-CV-1208, 2017 WL 1207832, *1 (N.D.N.Y. Mar. 31, 2017), *aff'd*, 739 Fed. Appx. 59 (2d Cir. 2018) (finding objections insufficient to alter report and recommendation because the "plaintiff simply states general legal principles, and repeats his allegations against the named defendants"). Accordingly, the Court adopts Magistrate Judge Stewart's recommendation that the sixth cause of action be dismissed without prejudice, that St. Lawrence C.C.F. and the Sheriff's Department be dismissed with prejudice, and that Plaintiff be granted leave

to amend his municipal liability allegations as against St. Lawrence County. *See* Dkt. No. 11 at 9.

### 5. Supervisory Liability
The seventh cause of action in Plaintiff's complaint seeks to hold Defendants Brook, Bigwarfe, Anderson, Harper, and Amos liable because "holding and acting in their respective positions as supervisors[, they] were aware of each constitutional violation and chose not to act." Dkt. No. 1 at 16. Magistrate Judge Stewart recommends that the seventh cause of action be dismissed because these Defendants "cannot be held liable simply by virtue of their supervisory position ... [and] each is named as a Defendant with respect to their own involvement in individual events." Dkt. No. 11 at 10. Plaintiff objects to the dismissal of and "re-pleads and seeks reinstatement" of his seventh cause of action. Dkt. No. 14 at 15. After conducting its own *de novo* review of this section of the R&R, the Court agrees with Magistrate Judge Stewart.

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [Section] 1983.' " *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). " 'To establish a violation of [Section] 1983 by a supervisor, as with everyone else, ... the plaintiff must establish a deliberate, intentional act on the part of the defendant to violate the plaintiff's legal rights.' " *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Porro v. Barnes*, 624 F.3d 1322, 1327-28 (10th Cir. 2010)). "[T]here is no special rule for supervisory liability. Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.' " *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).

With this well-established legal principle in mind, the Court adopts Magistrate Judge Stewart's recommendation that Plaintiff's seventh cause of action, which alleges only that the named Defendants should be held liable by virtue of their positions as supervisors, should be dismissed with prejudice. Plaintiff may include allegations regarding any of the Defendant's *own individual violations* of his constitutional rights in his amended pleading.

### G. The ADA and RA
Plaintiff alleges, in his eighth cause of action, that seventeen individual Defendants acted in violation of the ADA and

RA. *See* Dkt. No. 1 at 17-18. Magistrate Judge Stewart recommends that this cause of action "be dismissed with prejudice as to the individual Defendants, but that Plaintiff be permitted to replead those claims against a proper party." Dkt. No. 11 at 10-11. Plaintiff "seeks the Court's help in identifying the appropriate defendant for this claim." Dkt. No. 14 at 43. [7]

[7]    Plaintiff also requests that the Court subpoena evidence from "the Global Tel Link messaging app" and recorded phone calls. Dkt. No. 14 at 41. Now is not the appropriate time to exercise the Court's subpoena powers. Plaintiff will have the opportunity to engage in the discovery process in due course.

**\*7** Neither the ADA nor the RA "provides for individual liability." *Dees v. Zurlo*, No. 1:24-CV-1, 2024 WL 2291701, *16 (N.D.N.Y. May 21, 2024)* (quotation and quotation marks omitted). Indeed, " ' [i]t is well-established that there is no individual liability under the ADA or the [RA], whether the individual is sued in their official or individual capacity.' " *Goe v. Zucker*, 43 F.4th 19, 35 (2d Cir. 2022) (quoting *Perros v. Cnty. of Nassau*, 238 F. Supp. 3d 395, 402 n.3 (E.D.N.Y. 2017)).

"Title II of the ADA prohibits a 'public entity' from discrimination against a 'qualified individual with a disability.' " *Pascual v. N.Y. State*, No. 2:24-CV-6723, 2024 WL 5046675, *5 (E.D.N.Y. Dec. 9, 2024)* (quoting 42 U.S.C. § 12132). "A 'public entity' includes 'any State or local government.' " *Id.* (quoting 42 U.S.C. § 12131(1)(A)). Accordingly, counties have been found to be public entities capable of being sued under the ADA. *See id.* (finding Suffolk County to be a public entity as defined by the ADA).

For these reasons, the Court adopts Magistrate Judge Stewart's recommendation that the seventh cause of action be dismissed as against the individual Defendants and Plaintiff is granted leave to replead his ADA and RA claims as against a proper party.

## H. Sections 1985 and 1986

Plaintiff brings his ninth and tenth causes of action pursuant to 42 U.S.C. §§ 1985 and 1986, alleging that certain Defendants engaged in a conspiracy to deprive him of his constitutional rights. *See* Dkt. No. 1 at 19-21. Magistrate Judge Stewart recommends dismissal of the ninth and tenth causes of action, with leave to amend, because Plaintiff has failed to state a claim. *See* Dkt. No. 11 at 11. Specifically, Magistrate Judge

Stewart recommends dismissal because Plaintiff does not allege that the conduct by Defendants was motivated by racial or other class-based animus, as required to state a claim under Section 1985 and, as a result, Plaintiff has also failed to state a claim pursuant to Section 1986 because such claim must be predicated on a valid Section 1985 claim. *See id.* Plaintiff asserts no specific objection this recommendation and merely states that his tenth cause of action "should not be dismissed" because he "needs attorney to assist him in prosecuting" his fourth (as well as his tenth) cause of action. Dkt. No. 14 at 39. Exercising its discretion to review this section of the R&R *de novo*, the Court adopts the recommendation that the ninth and tenth causes of action be dismissed with leave to amend.

To state a valid conspiracy claim under 42 U.S.C. § 1985(3), a plaintiff must show:

(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007) (citing *Britt v. Garcia*, 457 F.3d 264, 270 n.4 (2d Cir. 2006)). "Further, a plaintiff must allege ... that the conspiracy was motivated by some class-based animus." *L.K. v. Sewanhaka Cent. High Sch. Dist.*, 641 Fed. Appx. 56, 59 (2d Cir. 2016) (citing *Cine SK8, Inc.*, 507 F.3d at 791). And, because Section 1986 claims are predicated on a valid Section 1985 claim, courts evaluate these claims together. *See id.* (citing *Brown v. City of Oneonta*, 221 F.3d 329, 341 (2d Cir. 2000)).

**\*8** There are no allegations in Plaintiff's complaint that Defendants' alleged conduct was motivated by some class-based animus. *See* Dkt. No. 14. Therefore, the Court adopts Magistrate Judge Stewarts recommendation that the ninth and tenth causes of action, brought pursuant to Sections 1985 and 1986, be dismissed with leave to amend. *See* Dkt. No. 11 at 11.

## I. State Law Claims

Plaintiff asserts, against all Defendants, claims under New York law for negligent infliction of emotional distress, intentional infliction of emotional distress, and negligence—his eleventh, twelfth, and thirteenth causes of action. *See* Dkt. No. 1 at 21. Magistrate Judge Stewart recommends dismissal of these causes of action, with leave to replead, because Plaintiff has not made the proper showing, pursuant to Rule 8(a)(2) of the Federal Rules of Civil Procedure. *See* Dkt. No. 11 at 12. Specifically, Magistrate Judge Stewart recommends dismissal because "the broad assertion that all [Defendants] are liable for these state law torts without any explanation of how each is alleged to have committed the torts is not permissible." *Id.* Plaintiff objects to the dismissal of his state law claims, requests the appointment of *pro bono* counsel, and seeks to amend his eleventh, twelfth, and thirteenth causes of action through his objections to the R&R. *See* Dkt. No. 14 at 46-53.

Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a clam for relief shall contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). "The purpose of this Rule 'is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer [and] prepare an adequate defense.' " *Hudson v. Artuz*, No. 95 CIV. 4768, 1998 WL 832708, \*1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995)) (other citations omitted).

Plaintiff has failed to show how each Defendant is liable for the state law claims alleged. *See* Dkt. No. 1 at 22. As Magistrate Judge Stewart notes, "[t]he various Defendants are accused of a variety of misconduct over a span of time elsewhere in the Complaint and the broad assertion that all are liable for these state law torts without any explanation of how each is alleged to have committed the torts is not permissible." Dkt. No. 11 at 12. For these reasons, the Court adopts the recommendation that the eleventh, twelfth, and thirteenth causes of action be dismissed with leave to replead. *See id.*

## J. Motion for Appointment of Counsel

Magistrate Judge Stewart denied Plaintiff's motion for the appointment of counsel, with leave to renew at a later stage of this action. *See id.* at 12-14. Throughout Plaintiff's objections, he requests that the Court alter Magistrate Judge Stewart's

denial of his motion and appoint him counsel. *See, e.g.*, Dkt. No. 14 at 39, 46.

"Unlike criminal defendants, IFP plaintiffs bringing civil actions have no constitutional right to the appointment of counsel." *Brown v. Utica Police Dep't*, No. 6:17-CV-1190, 2017 WL 5514518, \*4 (N.D.N.Y. Nov. 16, 2017) (citing *Wali v. One Source Co.*, No. 07-7550, 2009 WL 3170110, \*1 (S.D.N.Y. Sept. 30, 2009)). " 'Appointment' of counsel in a civil action involves the court requesting an attorney to represent an IFP party pro bono under 28 U.S.C. § 1915(a)(1)." *Id.* (citation omitted). In determining whether to make such a request for the indigent party, courts carefully consider a number of factors. *See id.* (citing *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994)).

**\*9** The Court agrees with Magistrate Judge Stewart's denial of Plaintiff's motion to appoint counsel, particularly in light of the early stage of this action. *See* Dkt. No. 11 at 12-14; *see also Gervasio v. Diaz*, No. 9:20-CV-0346, 2020 WL 3496423, \*2 (N.D.N.Y. June 29, 2020) ("The Court is still not aware of any special reason why appointment of counsel at this early stage of the proceeding would be more likely to lead to a just determination of this litigation").

## K. Leave to Amend

Finally, Magistrate Judge Stewart recommends dismissing, with prejudice, the claims against Defendants Storie, Charpentier, Reindeau, Farrell, Mcgahan, and St. Lawrence C.C.F., as well as Plaintiff's fourth, fifth, seventh, fourteenth, fifteenth, and seventeenth causes of action, and all Eighth Amendment claims. *See* Dkt. No. 11 at 14. However, Magistrate Judge Stewart recommends dismissing Plaintiff's sixth, eighth, ninth, tenth, eleventh, twelfth, and thirteenth causes of action with leave to amend. *See id.* The Court finds no error with this portion of the R&R.

In Plaintiff's objections, he specifically asks the Court to allow him leave to amend his complaint. *See* Dkt. No. 14 at 1, 58. It is true that "[w]hen a *pro se* complaint fails to state a cause of action, the court generally 'should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.' " *Robinson v. Hallett*, No. 5:19-CV-406, 2020 WL 1227142, \*4 (N.D.N.Y. Mar. 13, 2020) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). However, courts routinely deny an opportunity to amend where a claim is barred on immunity grounds because amendment would be futile. *See Humphrey v. Ct. Clerk ex rel. U.S. Sup. Ct.*,

No. 5:11-CV-938, 2011 WL 7112904, *4 (N.D.N.Y. Aug. 12, 2011) ("Because the defendant would be entitled to absolute immunity, this court recommends dismissal with prejudice of plaintiff's action"). Similarly, where an entity is not a person acting under the color of law, a Section 1983 claim cannot be stated. *Guillory v. Bishop Nursing Home*, No. 5:21-CV-410, 2021 WL 2431259, *3 (N.D.N.Y. June 15, 2021) ("Because Plaintiff failed to plausibly allege that the named Defendants acted under color of state law, Magistrate Judge Baxter correctly determined that the complaint fails to state any claims for relief under Section 1983 .... Moreover, Magistrate Judge Baxter correctly determined that leave to re-plead should be denied").

As such, the Court agrees with Magistrate Judge Stewart that the claims against Defendants Storie, Charpentier, Reindeau, Farrell, Mcgahan, and St. Lawrence C.C.F., along with Plaintiff's fourth, fifth, seventh, fourteenth, fifteenth, and seventeenth causes of action, and all Eighth Amendment claims, should be dismissed with prejudice and without leave to amend. *See* Dkt. No. 11 at 14. Additionally, the Court modifies the R&R, dismissing the claims against Defendant Sheriff's Department, with prejudice and without leave to amend, for the reasons previously stated. The Court also agrees that Plaintiff should have the opportunity to amend his sixth, eighth, ninth, tenth, eleventh, twelfth, and thirteenth causes of action because it is possible that Plaintiff could cure deficiencies in his pleading. *See id.*

If Plaintiff decides to amend his complaint, he must clearly set forth the facts that give rise to the claims, including, when possible, the dates, times, and places of the alleged underlying acts, as well as each individual who committed each alleged wrongful act. The revised pleading should allege facts demonstrating the personal involvement of any named Defendant. *See Wright*, 21 F.3d at 501. Finally, Plaintiff is informed that any amended complaint will replace the existing complaint and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Jeanty v. Sciortino*, 669 F. Supp. 3d 96, 118-19 (N.D.N.Y. 2023).

## IV. CONCLUSION

**\*10**  After carefully considering the R&R, the entire record in this matter, and the applicable law, the Court hereby

**ORDERS** that Magistrate Judge Stewart's R&R (Dkt. No. 11) is **ADOPTED as modified** herein; and the Court further

**ORDERS** that Plaintiff's amended complaint (Dkt. No. 1) is **DISMISSED without prejudice and with leave to amend** as to Plaintiff's sixth, eighth, ninth, tenth, eleventh, twelfth, and thirteenth causes of action; and the Court further

**ORDERS** that Plaintiff's claims against Defendants Storie, Charpentier, Reindeau, Farrell, Mcgahan, St. Lawrence C.C.F., and the Sheriff's Department are **DISMISSED with prejudice and without leave to amend**; and the Court further

**ORDERS** that Plaintiff's fourth, fifth, seventh, fourteenth, fifteenth, and seventeenth causes of action, as well as, all Eighth Amendment claims, are **DISMISSED with prejudice and without leave to amend**; and the Court further

**ORDERS** that Plaintiff's first, second, third, and sixteenth causes of action survive initial review and are permitted to proceed; and the Court further

**ORDERS** that Plaintiff shall file his amended complaint within **thirty (30) days** of the date of this Order; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2025 WL 542587

---

**End of Document**                              © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Fox v. Zennamo, Not Reported in Fed. Supp. (2016)**

2016 WL 1090583

2016 WL 1090583
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Javell FOX, Plaintiff,
v.
Cory ZENNAMO, Defendant.

6:15-cv-0587 (LEK/ATB)
|
Signed 03/18/2016

**Attorneys and Law Firms**

Javell Fox, Romulus, NY, pro se.

David A. Bagley, Kernan Professional Group, LLP, Oriskany, NY, for Defendant.

**DECISION and ORDER**

Lawrence E. Kahn, U.S. District Judge

**I. INTRODUCTION**

**\*1** *Pro se* Plaintiff Javell Fox ("Plaintiff") commenced the present action against Defendant Cory Zennamo ("Defendant") in Oneida County Supreme Court pursuant to 42 U.S.C. § 1983. Dkt. No. 2 ("Complaint"). Defendants removed the case to the Northern District on May 13, 2015. Dkt. No. 1 ("Notice of Removal"). Presently before the Court is Defendants' Motion to dismiss. Dkts. Nos. 3 ("Motion"); 3-2 ("Memorandum"). For the following reasons, the Motion is granted, and Plaintiff's Complaint is dismissed with prejudice.

**II. BACKGROUND** [1]

[1]   Because this case is before the Court on a motion to dismiss for failure to state a claim, the allegations of the Complaint are accepted as true and form the basis of this section. See boyd v. Nationwide Mut. Ins. Co., 208 F.3d 406, 408 (2d Cir. 2000); see also Matson v. Bd. of Educ., 631 F.3d 57, 72 (2d Cir. 2011) (noting that, in addressing a motion to dismiss, a court must view a plaintiff's factual allegations "in a light most favorable to the plaintiff and draw[ ] all reasonable inferences in her favor"). Furthermore, as Plaintiff is proceeding *pro se*, the Complaint "must be construed liberally

and interpreted to raise the strongest arguments that they suggest." Sykes v. Bank of Am., 723 F.3d 399, 403 (2d Cir. 2013) (quoting Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006)).

Plaintiff is currently incarcerated pursuant to a 2012 conviction, having been represented by Defendant in the underlying criminal case. Compl. ¶¶ 2-3, 31. [2] Plaintiff claims that during the pendency of those criminal proceedings, Defendant rendered ineffective assistance of counsel through violations of the Rules of Professional Conduct, failure to raise various defenses, and failure to request a different judge once prejudicial information had been disclosed. Id. ¶¶ 4-15, 20-22, 29. Plaintiff commenced the instant action on February 25, 2015 in Oneida County Supreme Court, generally alleging a deprivation of his constitutional rights. Notice Removal ¶ 1; Compl. at 2. [3] Defendant then removed the case to the Northern District based on federal question jurisdiction on May 13, 2015. Notice Removal ¶ 4. Defendant filed a Motion to dismiss on May 18, 2015. Mot. Defendant states that he cannot be held liable under 42 U.S.C. § 1983 as a matter of law, since public defenders do not act under color of state law. Mem. at 5. [4] Plaintiff filed a Response on February 26, 2016, along with a Motion to amend and a Proposed Amended Complaint. Dkt. No. 17 ("Motion to Amend"); [5] 18 ("Response"). [6] Plaintiff, in his Proposed Amended Complaint, added further facts regarding Defendant's representation and added as his new first cause of action an attorney malpractice claim. Mot. Amend at 5-9, 16. Plaintiff's Response included further facts and supporting caselaw regarding the merits of his ineffectiveness claim. Resp. at 4-6; Dkt. No. 18-1 ("Response Affirmation"). Defendant filed a Reply on March 15, 2016 stating that Plaintiff's addition of a malpractice claim would not defeat the dismissal of the federal law claim. Dkt. No. 19 ("Reply").

[2]   Neither party has pleaded the underlying facts of Plaintiff's conviction, so the Court will take judicial notice of Plaintiff's records on the Department of Corrections and Community Supervision ("DOCCS") website, where Plaintiff's current term of confinement is listed under DIN 12B1626. See Inmate Information, N.Y. Dep't of Corr. & Community Supervision, http://nysdoccslookup.doccs.ny.gov (last visited Mar. 15, 2016). It appears that Plaintiff was returned from parole and convicted of criminal possession of a

Fox v. Zennamo, Not Reported in Fed. Supp. (2016)

2016 WL 1090583

Case 1:25-cv-01150-AJB-TWD    Document 4    Filed 10/20/25    Page 71 of 187

controlled substance in the third degree and in the fourth degree. Id. Plaintiff has been housed in the state system since June 1, 2012, eleven days after the sentencing date pleaded in his Complaint. Id.

3     For all citations to sections of the Complaint that are not in paragraph form, the Court uses the pagination assigned by the Court's Electronic Court Filing ("ECF") system.

4     The Court uses the pagination assigned by ECF.

5     The Proposed Amended Complaint is found on pages 3-16 of Dkt. No. 17. The Court uses the pagination assigned by ECF.

6     Plaintiff's Response is timely due to six Letter Motions requesting extensions of his time to file a response. Dkt. Nos. 5; 7; 9; 11; 13; 15. The Court granted each extension in full or in part, extending Plaintiff's time to file a response to March 7. Dkt. Nos. 6; 8; 10; 12; 14; 16.

## III. DISCUSSION

**\*2** To survive a motion to dismiss pursuant to Rule 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also FED. R. CIV. P. 12(b)(6). A court must accept as true the factual allegations contained in a complaint and draw all inferences in a plaintiff's favor. See Allaire Corp. v. Okumus, 433 F.3d 248, 249-50 (2d Cir. 2006).

### A. Public Defender Liability under § 1983

Section 1983 provides a private right of action for redress of constitutional violations "'under color' of law." Terebesi v. Terreso, 764 F.3d 217, 230 (2d Cir. 2014). The Supreme Court has held that public defenders only act under color of law in limited circumstances: "for example ... when making hiring and firing decisions on behalf of the State[,] ... performing certain administrative and possibly investigative functions[, or] for malpractice ... under state tort law." Polk County v. Dodson, 454 U.S. 312, 325 (1981). However, "when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding," public defenders are not acting under color of state law. Prisoners "have a constitutional right of access to the courts." Id. Therefore, public defenders are not subject to suit under § 1983 if the

case and controversy arises out of their traditional functions. Rodriguez v. Weprin, 116 F.3d 62, 65-66 (2d Cir. 1997).

In this case, Plaintiff has alleged that Defendant rendered ineffective assistance of counsel and failed to adhere to various standards of representation. See Compl. These allegations are all squarely within the "traditional functions as counsel" and do not implicate any of the exceptions listed above. As the Supreme Court stated in Polk County, "an indigent prisoner retains the right to initiate state and federal habeas corpus proceedings. ... [T]his normally is the most important form of judicial relief." 454 U.S. at 325 n.18. Therefore, Plaintiff's allegations, even accepted as true, do not set forth an actionable claim under § 1983.

### B. Motion to Amend

When a plaintiff moves to amend a pleading, "[t]he court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2); Foman v. Davis, 371 U.S. 178, 182 (1962). However, a court does not have to grant leave to amend "where the proposed amendment would be 'futil[e].'" Williams v. Citigroup Inc., 659 F.3d 208, 214 (2d Cir. 2011) (alteration in original). A proposed amendment is futile if the "proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002).

Plaintiff's Proposed Amended Complaint first restates his ineffectiveness claim against Defendant, with further facts to support his claim. Mot. Amend at 5-9. However, as Defendants point out, Reply at 2, Plaintiff's claim is still not cognizable due to the underlying facts being directly a result of Defendant's "traditional functions as counsel." Polk County, 454 U.S. at 325. Therefore, Plaintiff's constitutional claim would not be able to withstand a motion to dismiss under Rule 12(b)(6).

Plaintiff's additional claim is an attorney malpractice claim, which is traditionally a state law claim. See Harrison v. New York, 95 F. Supp. 3d 293, 330 (E.D.N.Y. 2015) (dismissing malpractice claim due to lack of supplemental jurisdiction after dismissing constitutional ineffectiveness claim). While a district court has supplemental jurisdiction over all state-law claims that are "part of the same case or controversy" as any claim with federal subject matter jurisdiction, 28 U.S.C. § 1367(a), that court may decline to exercise supplemental jurisdiction where it "has dismissed all claims over which it has original jurisdiction," id. §

Case 1:25-cv-01150-AJB-TWD     Document 4     Filed 10/20/25     Page 72 of 187

Fox v. Zennamo, Not Reported in Fed. Supp. (2016)

2016 WL 1090583

1367(c). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988). Because Plaintiff's federal claims have been dismissed at this early stage of litigation, the Court finds that exercising supplemental jurisdiction solely over Plaintiff's malpractice claim would be improper given that there is no relevant federal consideration favoring retention. Harrison, 95 F. Supp. 3d at 330; see also Nazzaro v. Balber, No. 05 Civ. 2172, 2005 WL 1251785, at *5-6 (S.D.N.Y. May 25, 2005) (retaining legal malpractice claim when the question of deficient performance turned on the question of "severance pay and/or deferred compensation arising from their ERISA benefits plans"). Therefore, because Plaintiff's Proposed Amended Complaint would not survive a Rule 12(b)(6) motion, Plaintiff's Motion to amend is denied.

## IV. CONCLUSION

**\*3** Accordingly, it is hereby:

**ORDERED**, that Defendant's Motion (Dkt. No. 3) to dismiss is **GRANTED**; and it is further

**ORDERED**, that Plaintiff's Motion (Dkt. No. 17) to amend is **DENIED**; and it is further

**ORDERED**, that Plaintiff's Complaint (Dkt. No. 2) is **DISMISSED with prejudice**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2016 WL 1090583

---

**End of Document**
© 2025 Thomson Reuters. No claim to original U.S. Government Works.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Khalil v. General Electric Corp, Not Reported in Fed. Supp. (2023)

2023 WL 11921904

Case 1:25-cv-01150-AJB-TWD    Document 4    Filed 10/20/25    Page 73 of 187

2023 WL 11921904
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Ahmed S. KHALIL, Plaintiff,

v.

GENERAL ELECTRIC CORP, et al., Defendants.

5:22-CV-312 (GTS/ATB)
|
Signed December 1, 2023

**Attorneys and Law Firms**

AHMED S. KHALIL, Plaintiff, pro se.

**ORDER and REPORT-RECOMMENDATION**

ANDREW T. BAXTER, United States Magistrate Judge

 **\*1** On May 16, 2022, I issued an Order and Report-Recommendation after an initial review of the plaintiff's civil rights complaint, pursuant to 28 U.S.C. § 1915. (Dkt. No. 8) ("May 2022 ORR"). In the May 2022 ORR, I granted the plaintiff's motion to proceed in forma pauperis ("IFP"), but recommended dismissal of the complaint, without prejudice to plaintiff filing an amended complaint as to certain claims. (*Id.* at 39-42). On September 15, 2023, the Honorable Glenn T. Suddaby accepted and adopted the May 2022 ORR in its entirety, and directed that any amended complaint be returned to me for further review. (Dkt. No. 16). Plaintiff filed an amended complaint on October 30, 2023, which is now before me pending review. (Dkt. Nos. 17, 18) ("AC").

**I. The Amended Complaint**
Plaintiff's amended complaint is equally, if not more, difficult to decipher as compared to his original complaint. (*Compare* Dkt. No. 1 ("Compl.") *with* AC). The amended pleading presents as a confusing stream of consciousness replete with spelling and grammatical errors, and includes over 90 named and Jane/John Doe defendants. (AC at 2-22). The recitation of facts in the amended complaint, which are not presented in any chronological order, concern plaintiff's purported involvement with the Central Intelligence Agency ("CIA") via his employment with General Electric ("GE"), his enrollment as a graduate student at Clarkson University, and criminal investigations of him which, apparently, ultimately

led to his incarceration. (*See generally* AC). As best the court can decipher, plaintiff's factual allegations are substantially similar to those raised in his original complaint, with the exception of several new claims arising while he was in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). (*Compare* Compl. *with* AC).

Notwithstanding the overarching futility of the claims raised in plaintiff's original complaint, I undertook a careful analysis of the named defendants and claims in my May 2022 ORR. For this reason, and considering the plaintiff's continued failure to present this court with an overall coherent pleading, the court will not endeavor to restate the factual allegations as pled in the amended complaint, but will address them as necessary in assessing the sufficiency of plaintiff's claims.

**II. Defendants GE and Clarkson University**

 **A. State Action/§ 1983 Claim**
In the May 2022 ORR, I explained that, in order to be liable for a section 1983 violation, the defendant must act under color of state law. (May 2022 ORR at 7-8). I further discussed that defendants GE and Clarkson University were private entities, and that plaintiff failed to allege how any conduct on their behalf amounted to state action, including any purported cooperation with law enforcement and/or federal government agencies. (*Id.* at 7-8, 14-15).

Plaintiff has again named GE and Clarkson University in his amended complaint, making substantially similar factual allegations relating to these defendants. Many of the allegations are impossible to understand, despite the court's most liberal reading. In any event, plaintiff's baseless and unsupported claims that GE and Clarkson University were "front companies" for the CIA still do not suffice to establish a conspiracy or state action for purposes of this review, much less state a plausible cause of action. Accordingly, and for the reasons more fully set forth in the May 2022 ORR, the amended complaint should be dismissed without prejudice, but without leave to amend, [1] as against GE and Clarkson University for lack of subject matter jurisdiction, to the extent it raises any section 1983 claims against these entities.

[1]     In the May 2022 ORR, which the district court adopted in its entirety, I recommended that the original complaint be dismissed **without** leave to

Khalil v. General Electric Corp, Not Reported in Fed. Supp. (2023)

Case 1:25-cv-01150-AJB-TWD    Document 4    Filed 10/20/25    Page 74 of 187

2023 WL 11921904

amend as against GE and Clarkson University. (May 2022 ORR at 41).

**B. Employment Discrimination**

*\*2* Plaintiff alleges that he was employed by General Electric since at least 2013, where he was trained to work in various capacities including gas turbine field engineer, steam turbine field engineer, and generator second man. (AC at 32, 34-35). He states that his field service reports were evaluated as "some of the best out [of] the group, extremely detailed and are a model for others to follow[.]" (AC at 35).

Plaintiff further alleges that

> On or about January 1ˢᵗ, 2017 I was promoted to "Lead Steam Turbine Application Engineer" the job I applied for originally, on or about January 1ˢᵗ, 2017 "Lead Engineer-Mechanical Component" in order to maliciously do the illegal firing on April 30, 2017.

(AC at 35).

Plaintiff then alleges several instances of "discrimination" that occurred prior to his "illegal firing," including a supervisor's comment that " 'this shouldn't be done like this, you may do it like this in the Middle East,' or words to that effect." (AC at 36). He also states that a GE coworker "repeatedly posted offensive images and comments on social media targeting [plaintiff's] religion and national origin," citing to specific instances. (*Id.*). Plaintiff further alleges that on July 17, 2014, he was subject to "clear discriminatory treatment" based upon an email exchange regarding his citizenship status. (*Id.*). Plaintiff states that he has "repeatedly suffered harassing statements from his manager" regarding his religion, and suggestions that plaintiff change his first name to an "American name," which plaintiff told his manager "made him uncomfortable." (AC at 37). Plaintiff alleges that when he interviewed for his position at GE, the interviewer "mocked his name." (*Id.*). Between January 20, 2017, and February 17, 2017, plaintiff's coworker made continuing, "derogatory" comments about plaintiff having been "raised in a ... dangerous place, Cairo." (*Id.*). Plaintiff also states that during this time, he "repeatedly applied for

promotions, and never got called for interviews, despite his good work and numerous accolades." (*Id.*). He alleges that although he "properly" identified himself as "white" on his employment application, he was re-classified as "two or more races," which he unsuccessfully attempted to change "from 2013 to 2016[.]" (*Id.*).

Plaintiff states that on or about March 23, 2017, he "was told" he would be fired, and that his lawyer at the time sent GE a "demand letter stat[ing] some complaints [plaintiff] filed at GE[.]" (AC at 35). He claims that in April 2017, GE informed him that he was "under investigation," and on or about April 30, 2017, the CIA, FBI, and GE "breached the contract between themselves and [plaintiff,]" and that GE "wanted [plaintiff] to sign to waive [his] right to pursue covered claims against the company ... which [he] did not sign[.]" (AC at 38).

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), makes it unlawful for an employer to "discriminate against any individual with respect to his ... terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42. U.S.C. § 2000e-2(a). In a Title VII discrimination case, the plaintiff must allege two elements: "(1) the employer discriminated against him (2) because of his race, color, religion, sex, or national origin." *Lorefice v. New York*, No. 22-2037-CV, 2023 WL 7271838, at \*2 (2d Cir. Nov. 3, 2023) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015)).

*\*3* Liberally construed, plaintiff alleges that he was subjected to wrongful termination and a hostile work environment in violation of Title VII, based on, at least, his national origin and religion. "Title VII, however, also requires a claimant who desires to bring a suit in federal court to file a charge of discrimination with the [Equal Employment Opportunity Commission ("EEOC")] within one hundred eighty (180) days 'after the alleged unlawful employment practice occurred,' or within three hundred 300 days of the alleged discrimination if the claimant 'has initially instituted proceedings with a State or local agency with authority to grant or seek relief ... or to institute criminal proceedings.' " *McNight v. Dormitory Auth. of State of N.Y.*, 995 F. Supp. 70, 76 (N.D.N.Y. 1998) (quoting 42 U.S.C. § 2000e-5(e)). Thus, "only after charges are brought before the EEOC and a right-to-sue letter is obtained may an aggrieved party bring an action for relief in federal court." *Mazzeo-Unum v. Dep't of Transp.*, No. 12-CV-1856 (TJM), 2013

Case 1:25-cv-01150-AJB-TWD   Document 4   Filed 10/20/25   Page 75 of 187
Khalil v. General Electric Corp, Not Reported in Fed. Supp. (2023)
2023 WL 11921904

WL 2636159 (N.D.N.Y. June 12, 2013) (citing 42 U.S.C. § 2000e-5(e)); *Dollinger v. State Ins. Fund*, 44 F. Supp. 2d 467, 474 (N.D.N.Y. 1999) (citing *Niroomand v. Erie Cnty. Med. Ctr.*, 94-CV-21E(H), 1996 WL 328183, at *7 n.20 (W.D.N.Y. June 4, 1996)) (additional citations omitted); *see also Pietras v. Board of Fire Comm'rs*, 180 F.3d 468, 474 (2d Cir. 1999).

Here, plaintiff fails to allege or otherwise demonstrate that he filed a claim with the EEOC or with any state or local agency, as described in 42 U.S.C. § 2000e-5(e), before commencing this action, and has failed to provide a "right to sue letter" from the EEOC relating to the alleged discrimination described in his amended complaint. Thus, plaintiff has failed to establish the threshold requirements for his Title VII claim. Accordingly, the court recommends that plaintiff's employment discrimination claim be dismissed without prejudice. *Johnson v. Xylem Inc.*, No. 19-CV-0130, 2020 WL 1963125, at *2 (W.D.N.Y. Apr. 16, 2020) (citing *Constantine v. U-Haul Int'l, Inc.*, No. 15-CV-1204 (MAD/CFH), 2015 WL 7272211, at *2 (N.D.N.Y. Nov. 16, 2015) (dismissing the plaintiff's Title VII claim where the plaintiff failed to demonstrate that she received an EEOC right-to-sue letter)); *Parker v. Mack*, No. 09-CV-1049A, 2010 WL 11507368, at *3 (W.D.N.Y. Jan. 4, 2010) (holding that the plaintiff's Title VII claims were subject to dismissal where the plaintiff did not submit a copy of his EEOC right-to-sue letter).

### C. Breach of Contract

The amended complaint reasserts plaintiff's purported breach of contract claims against GE and Clarkson University. (AC at 30). As was the case with plaintiff's original complaint, it remains completely unclear from plaintiff's recitation of facts in the amended complaint how he believes that GE breached a contract with the plaintiff, other than plaintiff's reference to the CIA, FBI, and GE breaching "the contract between themselves and myself," when he was laid off. (AC at 38). Nor has plaintiff referenced how Clarkson University violated any contract that it had with plaintiff, implicit or otherwise. Accordingly, and for the reasons more fully set forth in my May 2022 ORR, the breach of contract claims against GE and Clarkson University, as raised in the amended complaint, should be dismissed with prejudice for failure to state a claim.

### III. Individual Federal Defendants

Plaintiff has identified numerous individual defendants in his amended complaint, whom he identifies as FBI agents, CIA "sources," and a Department of Homeland Security Special Agent. (AC at 4-22). A careful reading of the amended complaint suggests that the majority of the named CIA sources were plaintiff's coworkers and/or supervisors at GE. Another, defendant--Hosseini-Norouei--appears to be the plaintiff's "ex fiancé." (AC at 40). Throughout the amended complaint, plaintiff makes various references to these individuals, alleging that he communicated with some of them.

**\*4** Plaintiff's allegations as against these defendants, even under the most liberal reading afforded to pro se pleadings, border on the implausible. Specifically, and based on plaintiff's allegations in their entirety, the court has serious doubts concerning his representation that the majority of these defendants were, in fact, covert federal agents. *See Gallop v. Cheney*, 642 F.3d 364, 368 (2d Cir. 2011) ("A court may dismiss a claim as factually frivolous if the sufficiently well-pleaded facts are clearly baseless--that is, they are fanciful, fantastic, or delusional.") (internal quotation marks omitted). "[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992); *Khalil v. United States*, Nos. 17-CV-2652 & 17-CV-5458, 2018 WL 443343, at *3-4 (E.D.N.Y. Jan. 12, 2018) (dismissing complaint alleging broad conspiracy as frivolous); *Bussie v. IRS Commissioner*, Nos. 16-CV-7006 & 17-CV-157, 2017 WL 395113, at *3 (E.D.N.Y. Jan. 27, 2017) (dismissing "indisputably meritless" complaint as frivolous).

In any event, plaintiff has failed to plausibly allege that any of these individual defendants have engaged in conduct violating his constitutional rights, much less acted in conspiracy to do so. Thus, and for the reasons more fully set forth in the May 2022 ORR, plaintiff's amended complaint should be dismissed with prejudice as against defendants Hosseini-Norouei, Burke, Chow, Marcia, Rosania, Doe #74, Ahmed, Doe #75, Doe #76, Darius, Farzi, Doe #77, Atchan, Ahmadi, Mirbod, and Erath.

### IV. Prosecutorial Immunity

The legal standards for prosecutorial immunity were discussed in the May 2022 ORR, on which I based my recommendation that the original complaint be dismissed with prejudice as against defendants District Attorney Gary Pasqua and Assistant District Attorneys Adam Stone, Jason Marx, [2] and Alex Nichols. (May 2022 ORR at 28-29). Notwithstanding the district court's adoption of my

2023 WL 11921904

recommendation, plaintiff has reasserted claims against these defendants in his amended complaint. Specifically, plaintiff complains of DA Pasqua and ADA Stone's conduct associated with the prosecution of plaintiff's criminal charges in or around 2019. (AC at 51, 57). Moreover, in the amended complaint plaintiff alleges that ADA Marx appeared for and was "handling" a "family offense petition" and criminal charges against plaintiff pending in St. Lawrence County in 2019. (AC at 67). Because plaintiff has not alleged that these defendants committed any violations outside the scope of their duties concerning the prosecution of plaintiff's criminal charges, the amended complaint should be dismissed with prejudice as against them.

2          In the May 2022 ORR, I interpreted plaintiff's handwritten complaint to identify this defendant as Jason **Mary**. (May ORR at 41). In his typed amended complaint, plaintiff identifies this defendant as Jason **Marx.** (AC at 67).

With respect to ADA Nichols, the amended complaint merely states that ADA Nichols's mother worked at Clarkson University. (AC at 51). Plaintiff has failed to plausibly allege any conduct by ADA Nichols that would amount to a constitutional violation, much less plead that such conduct was outside the scope of his duties as a prosecutor. Accordingly, the amended complaint should be dismissed with prejudice as against ADA Nichols as well.

## V. Defendant Law Enforcement Officers

In his amended complaint, plaintiff names ten St. Lawrence County Deputy Sheriffs/Investigators, three New York State Troopers, two Greene County Deputy Sheriffs, two Village of Potsdam Police Officers, and one Town of Canton Police Officer as defendants. (AC at 2-22). With respect to these defendants, plaintiff generally alleges claims sounding in false arrest, malicious prosecution, conspiracy, fabrication of evidence, and "other events as ... described[.]" (AC at 30). Notably, several of the defendants are not referenced anywhere in the factual recitation of plaintiff's allegations. As discussed in the May 2022 ORR, "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983[,]" and supervisory officials may not be held liable merely because they held a position of authority. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citations omitted); *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). Thus, to the extent plaintiff has failed to reference, much less describe the offending conduct of, defendants Bigwarfe, Doe #67, Doe #1, and Doe #6, the

amended complaint should be dismissed with prejudice as against them.

**\*5** Otherwise, plaintiff's purported false arrest, malicious prosecution, conspiracy, and fabrication of evidence claims against the remaining law enforcement agents noted above are completely muddled, conclusory, and otherwise impossible to decipher. Presumably sometime around the time that plaintiff's employment with GE was terminated, he became the subject of a criminal investigation. (AC at 38). Nevertheless, it is nearly impossible to follow plaintiff's narrative of the events giving rise to his purported constitutional violations with respect to these defendants, even under the most liberal of interpretations afforded to pro se litigants. (*See* AC at 38-39, 49, 52-56, 65). In particular, plaintiff makes conclusory statements that his home was "illegally searched" and that he was "falsely arrested." (AC at 52). In the May 2022 ORR concerning these claims, I found that plaintiff's allegations, without more, were insufficient to plausibly allege a constitutional violation. (May ORR at 23-30). Despite being afforded the opportunity to amend his complaint and remedy the noted deficiencies, plaintiff has failed to coherently supplement these claims with any facts which could plausibly form the basis of his purported causes of action. Accordingly, plaintiff's amended complaint should be dismissed with prejudice as against defendants Wells, [3] Coringi, Jones, Doe ##2-5, Maria, Doe # 7, Kroengel, Trimboil, Doe # 73, Fink, and Cole. *See Gonzalez v. City of Kingston Police Dep't*, No. 9:22-CV-1214 (GTS/ML), 2023 WL 2895216, at *2 (N.D.N.Y. Apr. 11, 2023) (dismissing plaintiff's amended complaint with prejudice where plaintiff was already provided one opportunity to amend his complaint, and the amended complaint, like the original pleading, "contain[ed] largely incoherent, rambling and disjointed statements in contravention of Fed. R. Civ. P. 8(a) (2)[.]").

3          Plaintiff is inconsistent with the spelling of many defendants' names, making it further difficult to decipher what allegations he is asserting against whom. For example, plaintiff identifies a "Kevin M. Mwlls" (AC at 4) as a defendant when listing the parties to this action, but later refers to a defendant "Kevin Wells" (AC at 49), who is presumably the same individual. Plaintiff has confused other defendants' names as well, such as Trimboil/ Trimboli and Kraengle/Kroengel.

## VI. St. Lawrence County Correctional Facility

Case 1:25-cv-01150-AJB-TWD    Document 4    Filed 10/20/25    Page 77 of 187

Khalil v. General Electric Corp, Not Reported in Fed. Supp. (2023)

2023 WL 11921904

**A. Defendant C.O. Salsiburu**

Plaintiff alleges that he was confined to St. Lawrence County Correctional Facility ("C.F.") in or around April 2020. Plaintiff further alleges that on or around April 19, 2020, between 4 a.m. and 4:30 a.m., defendant Corrections Officer Salsiburu "deprived [plaintiff] from [his] prescribed medicine[.]" (AC at 57). Plaintiff alleges that, as the night shift officer, defendant Salsiburu "was in possession of [plaintiff's] medicine to give it to [him] before [he] started [his] Muslim fasting," and that defendant Salsiburu had "clear instructions to do that[.]" (AC at 57). Plaintiff then alleges that defendant Salsiburu "attentionally [sic] called [plaintiff] after [he] started [fa]sting," so he would be unable to take the medicine. (AC at 57).

In the May 2022 ORR, my best interpretation of plaintiff's handwritten complaint suggested that plaintiff was alleging that defendant Salsiburu "accidently" gave plaintiff his medication after plaintiff began his fast. (May ORR at 31). Although still less than clear, a liberal construal of plaintiff's amended complaint suggests that he is alleging defendant Salsiburu "intentionally" gave the medication after he began to fast.

"To be entitled to protection under the free exercise clause of the First Amendment, a prisoner must make a threshold showing that the disputed conduct substantially burdened his sincerely held religious beliefs." *Washington v. Chaboty*, No. 09-CV-9199, 2015 WL 1439348, at *9 (S.D.N.Y. Mar. 30, 2015) (alteration and quotation marks omitted); *see also Salahuddin v. Goord*, 467 F.3d 263, 274-75 (2d Cir. 2006) ("The prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." (citation omitted)). "Determining whether a plaintiff's free exercise rights have been substantially burdened 'requires courts to distinguish important from unimportant religious beliefs, a task for which ... courts are particularly ill-suited." *Brandon v. Kinter*, 938 F.3d 21, 32 (2d Cir. 2019) (quoting *Ford*, 352 F.3d at 593). As a result, the Second Circuit has been "appropriately wary of making 'conclusory judgments about the unimportance of the religious practice to the adherent.' " *Id.* (quoting *Ford*, 352 F.3d at 593). "While the substantial burden requirement presupposes that there will be cases in which it comfortably could be said that a belief or practice is so peripheral to the plaintiff's religion that any burden can be aptly characterized as constitutionally de minimis, ... establishing a substantial burden is not a particularly onerous task[.]" *Id.* (internal quotation marks and citations omitted).

**\*6** At this stage of the proceeding, and mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, the Court recommends that plaintiff's First Amendment claim against defendant Salsiburu survive sua sponte review and require a response. In so recommending, the court expresses no opinion as to whether this claim can withstand a properly filed dispositive motion.

**B. Remaining St. Lawrence County C.F. Defendants and Claims**

Plaintiff has failed to sufficiently amend the remaining claims he attempts to assert against those defendants listed as employees/agents of St. Lawrence County C.F. Plaintiff's original complaint asserted that 56 John Doe defendants failed to feed plaintiff for 19 days. (Compl. at 36). In the May 2022 ORR, I found that while such an allegation could rise to the level of a constitutional violation, plaintiff's allegations failed to do so due to their vague and conclusory nature. (May 2022 ORR at 33). In his amended complaint, plaintiff has replaced the "Doe" defendants with the names of 24 St. Lawrence County C.F. staff, and maintains that these 24 defendants attempted to "murder" plaintiff when they "deprived [him] foods" between April 23, 2020 and May 11, 2020. (AC at 57-58). Notwithstanding plaintiff's identification of the Doe defendants, his general statement that these 24 defendants deprived him of some unspecified amount of food over the course of two and a half weeks, without more, still falls short of stating a claim.

Plaintiff's amended complaint then alleges that, after requesting a religious diet from defendant C.O. Lesault in April 2020, C.O. Lesault told plaintiff that "USA official religion is Christian," and asked plaintiff "what is in the two complain[ts] you filed against Clarkson university[?]" (AC at 58). Plaintiff then asserts that on or about June 29, 2020, defendant C.O. Lesault called him and "made 'white power' hand sign to me[.]" (AC at 58-59). Plaintiff raised a similar claim in his original complaint, although he has now identified defendant John Doe #66 as C.O. Lesault. (*Compare* Compl. at 37 *with* AC at 58-59). Notwithstanding plaintiff's amendments to this claim, plaintiff has failed to allege conduct by C.O. Lesault that would rise to the level of a constitutional violation. Plaintiff does not allege that C.O. Lesault deprived him of his religious diet, and as discussed in the May 2022 ORR, the defendant's purported unprofessional and offensive conduct as alleged does not rise to the level of a constitutional violation. *See Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) (use of vulgar or offensive language

Khalil v. General Electric Corp, Not Reported in Fed. Supp. (2023)

Case 1:25-cv-01150-AJB-TWD    Document 4    Filed 10/20/25    Page 78 of 187

2023 WL 11921904

is not a constitutional violation, where no injury resulted from the conduct).

Plaintiff next alleges that on or about May 27, 2020, non-party C.O. Gerald Cross gave plaintiff "food with [plaintiff's] name handwritten on the bag[.]" (AC at 59). Plaintiff alleges that soon after, he began to experience abdominal pain. (*Id.*). C.O. Cross stated that there was "no medical to see [plaintiff] till 7:00 AM," but he "did give [plaintiff] unidentified liquid[.]" (*Id.*). Plaintiff states that he was then moved to a different cell, where non-party C.O. Whitmarch gave him more "unidentified liquid." (*Id.*). Plaintiff claims that he began to experience bloody diarrhea, and a nurse checked on him around 7:00 a.m. (*Id.*). Plaintiff alleges that he "informed the housing officer [defendant C.O.] Shown several times," and a nurse came back to check on plaintiff at 1:30 p.m. (*Id.*). Ultimately, plaintiff alleges that he was taken to the hospital where blood work showed "poison trace" in his blood. (*Id.*).

 *7  Plaintiff raised similar allegations in his original complaint. (*Compare* Compl. at 37 *with* AC at 59). Although attempting to poison plaintiff could rise to the level of a constitutional violation, plaintiff's allegations still fail to state a claim. At the outset, defendant has not named C.O. Cross or C.O. Whitmarch as defendants, and does not otherwise specifically allege who purportedly attempted to poison him. Nor does plaintiff indicate that he actually ate the food provided by C.O. Cross, and it is entirely unclear if plaintiff is claiming that there was poison in the food he was provided, the unknown liquid, or otherwise. Although plaintiff cites to some "abnormal" test results, they do not, without more, support his allegations that "poison trace" was found in his blood. (*See* AC at 59).

Plaintiff has named St. Lawrence County C.F. doctor Doe # 69 and nurses Doe ##70-72 as defendants in the amended complaint. (AC at 14-15). They are not, however, mentioned anywhere in the body of plaintiff's complaint. Accordingly, plaintiff has failed to allege that these unidentified defendants were personally involved in conduct rising to the level of violating his constitutional rights.

For all of the reasons set forth above, the court recommends that the amended complaint be dismissed with prejudice as against St. Lawrence County C.F. defendants Lesault, Merrill, Lpage, Salisbury,[4] Lawrence, Barr-LaRock, McCollum, Rutkauskas, Perry, Sanchez, Gonzalez, Merrill, Marin, Pharoah, Martin, Warren, Simpson, Sweeney, Kellison,

Fitzgerald, Simmons, Hartle, Cole, Lesault, Doe # 69, Doe # 70, Doe # 71, Doe # 72, and Shown.

4       For the sake of clarity, the court notes that plaintiff has named two defendants with similar names who were both purportedly employed as corrections officers at St. Lawrence County C.F. – defendant **Salsiburu**, who allegedly deprived plaintiff of his medication in comport with his Muslim fasting diet, and defendant **Salisbury**, who allegedly deprived plaintiff of food to some extent.

## VII. DOCCS Defendants

### A. Excessive Force

Plaintiff alleges that while incarcerated at Watertown C.F. on or about October 30, 2020, another "murder" was attempted on him when two officers took him inside a sergeant's office, where two more officers and one or two more sergeants were waiting for him. While one of the sergeants was talking to plaintiff, "officers hit [him] on the back of [his] head extremely hard[.]" (AC at 60). Plaintiff alleges that he "did fall from the chair," and they told him to get back up and sit down, while keeping his hands inside his pockets. (*Id.*). Plaintiff states that while one of the sergeants was "threatening" him, plaintiff "was getting hit on the back of [his] head continuously and ordering [plaintiff] don't look back[.]" (*Id.*).

Although courts sometimes allow plaintiffs to plead causes of action against a "John Doe" defendant where a plaintiff does not know the defendant's identity, they ultimately require plaintiffs, under Rule 8(a), to allege specific facts that would aid in identifying the defendant and thereby allow defendants to prepare a defense. *See, e.g., Regeda v. City of New York,* No. 09-CV-5427, 2012 WL 7157703, at *8 (E.D.N.Y. Sept. 7, 2012) (noting that a plaintiff, in an amended complaint, must either "identify each [defendant] by name, or else identify them as the 'John Doe defendants' and provide sufficient factual basis to allow the defendants to successfully identify the John Doe defendants and prepare for a defense"), *adopted by* 2013 WL 619567 (S.D.N.Y. Feb. 19, 2013); *Barreto v. Cnty. of Suffolk,* 762 F.Supp.2d 482, 487-88 (E.D.N.Y. 2010) (holding that a complaint against John Doe defendants satisfied Rule 8(a), as liberally applied to pro se complaints, where the plaintiff "identified the specific [jobs] that the John Doe defendants were assigned to, as well as their presence (or lack thereof) at a specified time and place" related to the cause of action, and "provided the grounds for liability with regards

Case 1:25-cv-01150-AJB-TWD    Document 4    Filed 10/20/25    Page 79 of 187

Khalil v. General Electric Corp, Not Reported in Fed. Supp. (2023)

2023 WL 11921904

to each of the [d]efendants," such that those defendants had "ample notice as to the nature of the claims brought against them [and] also the opportunity to prepare an intelligent defense"); *Gabriel Capital, L.P. v. Natwest Fin., Inc.,* 137 F. Supp. 2d 251, 269 (S.D.N.Y. 2000) (holding that a complaint "fail[ed] to plead a claim against [John Doe] defendants" under Rule 8(a) where it contained no information specific to the identities or actions of those defendants).

**\*8** Liberally construed, plaintiff's amended complaint appears to allege that he was subject to excessive force [5] during the above encounter with various corrections officers and sergeants. However, although plaintiff has named a date and location of the alleged incident, he has otherwise failed to sufficiently identify which, or how many, of the generally named "officers" or "sergeants" were involved. Specifically, it is entirely unclear how many, or which, officers hit plaintiff on the back of his head, and how many/which individuals might be liable for failure to intervene in the purportedly unconstitutional use of force.

[5]    "The right not to be subject to excessive force, perhaps most commonly associated with the Fourth and Eighth Amendments, can also arise under the Fourteenth." *Edrei v. Maguire,* 892 F.3d 525, 533 (2d Cir. 2018). In *Kingsley v. Hendrickson,* 576 U.S. 389, 135 S. Ct. 2466 (2015), the Supreme Court held that the Fourteenth Amendment's Due Process Clause grants broader protections to pre-trial detainees than the Eighth Amendment's ban on "cruel and unusual punishments" affords to a convicted prisoner. This is because, unlike a convicted prisoner, a pre-trial detainee cannot be "punished" at all. *Edrei,* 892 F.3d at 535. In this case, it is unclear whether plaintiff was a pre-trial detainee or a convicted prisoner at the time of the alleged excessive force incident described above. Assuming the less stringent Fourteenth Amendment standards for purposes of this analysis, then, it is enough to note that in order to state an excessive force claim, a detainee " 'must show only that the force purposely or knowingly used against him was objectively unreasonable.' " *Fletcher v. City of New London,* No. 3:16-CV-241 (MPS), 2018 WL 4604306, at \*10 (D. Conn. Sept. 25, 2018) (quoting *Kingsley,* 135 S. Ct. at 2473). " '[O]bjective reasonableness turns on the 'facts and circumstances of each particular case.' " *Kingsley,* 135 S. Ct. at 2473 (quoting *Graham v. Connor,*

490 U.S. 386, 396 (1989)). Moreover, the failure of corrections officers to employ reasonable measures to protect an inmate or pre-trial detainee from violence by others may rise to the level of a constitutional violation. *See Ayers v. Coughlin,* 780 F.2d 205, 209 (2d Cir. 1985); *Taylor v. City of New York,* No. 16 Civ. 7857, 2018 WL 1737626, at \*11 (S.D.N.Y. Mar. 27, 2018) (recognizing failure to protect claims as applicable to pre-trial detainees under the Fourteenth Amendment). At this juncture, further distinguishing between these two categories of claims is unnecessary, because this court is recommending dismissal on a separate basis.

Plaintiff did not assert this claim in his original complaint. Recently, the Second Circuit warned that a pro se plaintiff should be granted the opportunity to amend claims which are asserted for the first time in an amended complaint before entering a sua sponte dismissal with prejudice. *Mitchell v. Annucci,* No. 21-2978-pr (2d Cir. Nov. 21, 2023) (remanding with instruction to, at minimum, allow plaintiff an opportunity to amend the claims raised for the first time in his amended complaint). Accordingly, plaintiff's excessive force claim arising out of the events taking place at Watertown C.F. on October 30, 2020, should be dismissed without prejudice.

### B. Medical Indifference

Plaintiff alleges having experienced a myriad of medical conditions and treatment during his time in DOCCS custody. The court has attempted to interpret plaintiff's allegations in some semblance of chronological order, despite his chaotic pleading of the facts.

#### 1. Factual Allegations

##### i. Condyloma/HPV

**\*9** Plaintiff alleges that in August 2020, he informed "medical staff" [6] defendant Doe # 81 that there was blood in his stool, and that plaintiff had a sister with colon cancer. (AC at 62). Plaintiff alleges that he was "misdiagnosed with [a] hemorrhoid." (AC at 62). Confusingly, however plaintiff then states that in May 2020, Cape Vincent C.F. "prison medical" Doe # 82 "told [him] that they referred [him] to Gastroenterology," and in June 2020 he underwent a "red blood cell count." (AC at 62). Plaintiff was approved for a colonoscopy in July 2020 [7] to check for colon cancer and

Case 1:25-cv-01150-AJB-TWD    Document 4    Filed 10/20/25    Page 80 of 187

Khalil v. General Electric Corp, Not Reported in Fed. Supp. (2023)

2023 WL 11921904

internal bleeding. (AC at 62). Plaintiff alleges that on July 19, 2020, defendant Mr. McCaughan, "director of guidance and counseling" at DOCCS central office, came into the classroom at Cape Vincent C.F. where plaintiff was working. (AC at 62-63). Plaintiff alleges that "just after [defendant McCaughan] left, he was taken to a special housing unit and received a misbehavior ticket." (AC at 63).

6    Plaintiff alleges that Doe # 81 was employed at Watertown C.F. during the underlying events. (AC at 19).

7    Plaintiff has written 20**22**, but based on the context of his pleading it appears that he intended to state the date as 20**20.**

It appears that plaintiff was thereafter subject to some disciplinary proceedings, and placed on suicide watch. (AC at 62-63). On August 9, 2020, by which time it appears he had been transferred to Altona C.F., plaintiff was informed by "medical staff" defendant Doe # 83 that the colonoscopy was still scheduled, and they would call him for preparation. (AC at 63). On October 4, 2020, plaintiff was informed by defendant Joe #84, another medical staff personnel at Altona C.F., that the "current scope is still scheduled." (AC at 63). Plaintiff alleges that he was prescribed medication on October 5, 2020, by defendant doctor Doe # 85. (AC at 63). He states that he "seen with and informed colonoscopy has been cancelled for a while[.]" (AC at 63). On November 2, 2020, he was taken to Coxsackie C.F. to "see Gastroenterology Jo[h]n Doe # 86[.]" (AC at 63).

Plaintiff alleges that, on December 7, 2020, defendant DOCCS "offender rehabilitation coordinator ('ORC')" J. Bamker "told [plaintiff he] can "get a medical procedure when [he is] released and 'we know about the case against Clarkson St. Lawrence [sic], we would not let you get out to have access to that court, everything is connected.'" (AC at 63). On December 8, 2020, defendant "medical staff member" Caryn Evans stated: "we can't put you in quarantine, keep you in the infirmary[.]" (AC at 63).

Plaintiff alleges that in December 2022, he "requested from [defendant DOCCS] acting commissioner Mr. Anthony J. A[nn]ucci to be considered for medical parole[.]" (AC at 64). He states that he has "not got any answer." (AC at 64).

Plaintiff further alleges that he was eventually taken to Albany Medical Center on or about March 23, 2023, seven days before his release from DOCCS custody, where they performed a colonoscopy. (AC at 64). Plaintiff was seen by a colorectal surgeon on July 21, 2023, after his release from custody, and "surgery was performed" on August 24, 2023, where they found "condyloma which is caused by the Human Papilloma Virus (HPV) lifetime risk for recurrent warts, and increased risk of anal cancer [sic]." (AC at 64).

### ii. Concussion/Brain Injury

Plaintiff alleges that he "reported headaches and eye problems" to the medical staff at Cape Vincent C.F. (AC at 61). In February 2021, defendant nurse Doe #78 "just performed eye exam [sic] and told [plaintiff his] eyes are normal[.]" (*Id.*). Plaintiff alleges that he was eventually referred to an eye doctor by defendant nurse Doe #79 in October 2021, and reading glasses were prescribed by defendant Doe #80 in January 2022. (*Id.*).

Plaintiff then alleges that he was diagnosed with a brain concussion by defendant doctor Qudsi Vigar over two years after his initial complaint of headaches, while confined to Altona C.F. in January of 2023. (AC at 61). Plaintiff refers to a brain MRI conducted in June 2023, [8] which showed "brain damaged partial empty sella," and states that he was told he could not get into outpatient neurosurgery, and should seek emergency room treatment. (*Id.*). Plaintiff states that he was discharged from the emergency room "after [m]ore than 14 hours lumbar puncture was performed [sic]," and he was notified that there was "brain bleeding after the concussion and partial empty sella due to internal scar[r]ed brain tissue[.]" (*Id.*). Plaintiff states, however, that there were "negative" impressions upon examination of his brain, which showed "no acute intracranial abnormality." (AC at 61-62).

8    This appears to have been performed at the direction of plaintiff's private medical provider, after plaintiff was released from custody. *See* AC at 64; *see also* https://nysdoccslookup.doccs.ny.gov/ (last visited November 20, 2023) (indicating that plaintiff was released to parole on March 30, 2023).

### 2. Legal Standards

**\*10** A convicted prisoner asserting a claim for deliberate indifference to his serious medical needs must plead facts satisfying the two elements of such a claim: (1) an "objective" element, which requires a showing that the medical issue is sufficiently serious, and (2) a "subjective" or "mental"

2023 WL 11921904

element, which requires a showing that the defendant acted with at least deliberate indifference to the risk of serious harm. *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).

The objective element requires allegations that the plaintiff's medical need is a "sufficiently serious" condition that "could result in further significant injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)); *see also Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (noting that standard contemplates "a condition of urgency, one that may produce death, degeneration, or extreme pain"). To satisfy the subjective or "mental" element, a convicted prisoner must allege that a correction official actually "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Darnell*, 849 F.3d at 32 (quoting *Farmer*, 511 U.S. at 837). That is, a convicted prisoner must allege that the official was both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also [have] draw[n] the inference." *Id.*

### 3. Analysis

With respect to plaintiff's condyloma/HPV condition, he has failed to plausibly allege a deliberate indifference claim, or any other constitutional violation, with respect to named defendant McCaughan, and the amended complaint should be dismissed as against him. Furthermore, plaintiff has failed to plausibly allege how the conduct described by defendants Doe #81 or Doe #82 rises to the level of deliberate indifference. To the extent Doe #81 "misdiagnosed" plaintiff with a hemorrhoid, such a claim by itself is not cognizable under section 1983. *See Sanders v. Laplante*, No. 3:19-CV-1151, 2019 WL 5538118, at *3 (D. Conn. Oct. 25, 2019) ("[E]ven after *Darnell*, it is well-settled that 'negligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim.' ") (quoting *Clay v. Kellmurray*, 465 F. App'x 46, 47 (2d Cir. 2012)). Moreover, plaintiff has failed to plausibly allege how Doe #82's referral to Gastroenterology constituted deliberate indifference, considering plaintiff's representation that he was actually seen for the consult as a result of the referral. (AC at 62). Accordingly, the amended complaint should be dismissed without prejudice as against defendants Doe #81 and Doe #82.

However, mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *see e.g. Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185,191 (2d

Cir. 2008), the court recommends that plaintiff's deliberate medical indifference claims asserted against defendants Doe # 83, Doe # 84, Doe #85, Doe # 86, J. Bamker, and Caryn Evans survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

Conversely, the court finds that plaintiff's allegations stemming from his concussion/brain injury are so vague, confusing and remote, that they fail to plausibly state a claim. According to plaintiff's allegations, he reported headaches and "eye problems" to defendants Doe ##78-80 over three months after he was purportedly hit on the back of the head by other corrections officers in October 2020. Plaintiff, however, does not allege how the treatment provided by these defendants - eye examinations, a referral to an eye doctor, and a prescription for reading glasses - rose to the level of violating plaintiff's constitutional rights. Moreover, plaintiff has failed to plausibly allege how this treatment was related to plaintiff's "brain concussion" diagnosed over two years after his initial complaint. Nor does plaintiff's allegation that defendant doctor Qudsi Vigar "diagnosed" him with a "brain concussion" in January 2023 sufficiently allege a constitutional claim against Dr. Vigar. Accordingly, the complaint should be dismissed without prejudice as against defendants Doe ##78-80 and Dr. Vigar.

**\*11** Moreover, plaintiff's allegations against defendant Annucci fail to state a claim. It is well settled that "[t]he receipt of letters or grievances, by itself, does not amount to personal involvement." *Leneau v. Ponte*, No. 1:16-CV-776, 2018 WL 566456, at *14–15 (S.D.N.Y. Jan. 25, 2018) (citation and quotation marks omitted); *see also Evans v. Barone*, 3:22-CV-074, 2022 WL 408920, at *6 (D. Conn. Feb. 10, 2022) (finding no personal involvement when the plaintiff "alleges only that [defendant] failed to take any action based on a letter or letters he wrote to them; he does not even allege that they received the letters"); *Johnson v. Wright*, 234 F. Supp. 2d 352, 363 (S.D.N.Y. 2002) ("[I]f mere receipt of a letter or similar complaint were enough, without more, to constitute personal involvement, it would result in liability merely for being a supervisor, which is contrary to the black-letter law that § 1983 does not impose respondeat superior liability." (citation omitted)). Accordingly, plaintiff's allegation, without more, that he sent defendant Annucci a letter requesting medical parole is insufficient to establish personal involvement in a constitutional violation, and the amended complaint should be dismissed as against defendant Annucci without prejudice.

Khalil v. General Electric Corp, Not Reported in Fed. Supp. (2023)

2023 WL 11921904

Case 1:25-cv-01150-AJB-TWD    Document 4    Filed 10/20/25    Page 82 of 187

**C. Defendant Rick Gonzalez**

Plaintiff alleges that on September 16, 2021, defendant DOCCS Office of Special Investigation Agent Rick Gonzalez visited plaintiff at Cape Vincent C.F. to train plaintiff on

> detecting and reporting illegal drug activities; communication between me and them included letters phone calls and in person meetings, information included GE, Clarkson some of the defendants and COVID-19 research, I will told that, we want to make sure you are safe, research was COVID-19 gain of function technology to develop US biological weapon jointly with GE and United States government intelligence, Farideh was set up to criminalize you, they went too far to hurt you physically.

(AC at 41). This is the only reference to defendant Gonzalez in the amended complaint. Because plaintiff's incomprehensible allegations as they pertain to defendant Gonzalez, even liberally construed, fail to plausibly allege conduct violating plaintiff's constitutional rights, the amended complaint should be dismissed without prejudice as against this defendant.

**VIII. *Monell* Liability**

In his original complaint, plaintiff named the police departments of several municipalities as defendants, along with the municipalities themselves. Plaintiff has named these same entities as defendants in his amended complaint. (*Compare* Compl. *with* AC). As discussed in the May 2022 ORR, plaintiff's claims against the police departments are subject to dismissal because they are merely "administrative arms of a municipality" and "do not have a legal identity separate and apart from the municipality[,]" thus they are not amendable to suit. (May 2022 ORR at 34-35).

With respect to the municipalities themselves, the district court adopted this court's recommendation to dismiss plaintiff's original complaint as against these entities for failure to allege that the constitutional violations, to the extent any were cognizable, were caused by a policy or custom of

the municipality. (May 2022 ORR at 35). Plaintiff's amended complaint likewise fails to allege that any of the purported constitutional violations which he describes were caused by a policy or custom of the municipality. Accordingly, the amended complaint should be dismissed with prejudice as against defendants St. Lawrence County, Greene County, Village of Potsdam, Village of Potsdam Police Department, Town of Canton, Town of Canton Police Department, St. Lawrence County Sheriff's Department, and Greene County Sheriff's Department.

**IX. Defense/Family Attorneys**

Plaintiff alleges that he was the subject of a "malicious[ ]" family offense petition in February 2019, which apparently stemmed "from the same set of allegations" concerning the criminal charges that were pending against him. (AC at 67). Liberally construed, plaintiff appears to allege that his two family court attorneys, defendants James Maswick and Bryan Kennelly, as well as his two criminal defense attorneys, defendants Dan Ramsey and Peter Dumas, afforded him deficient representation and "conspired" with the assistant district attorney concerning the petition/charges pending against him. (AC at 67).

**\*12** It is unclear from plaintiff's allegations whether his attorneys were privately retained or appointed by the court. Notwithstanding the distinction, plaintiff's claims against these attorneys are subject to dismissal. "It is well-settled that private attorneys and law firms ... do not act under color of state law and are not state actors for purposes of Section 1983 simply by virtue of their state-issued licenses to practice law." *Manko v. Steinhardt*, No. 11-CV-5430, 2012 WL 213715, at \*4 (E.D.N.Y Jan. 24, 2012) (collecting cases); *see also Cunningham v. Fisch*, No. 01 Civ. 1123, 2001 WL 1313518, at \*4 (S.D.N.Y. Oct. 26, 2001) ("[A] lawyer representing a client is not, by virtue of being an officer of the court, a state actor 'under color of state law' within the meaning of § 1983." (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 318 (1981))). Likewise, "a public defender is not a state actor as required for a claim under section 1983." *Welch v. Schenectady Cnty.*, No. 1:22-CV-9 (DNH/ DJS), 2022 WL 3904113, at \*2 (N.D.N.Y. Aug. 10, 2022), *report and recommendation adopted*, 2022 WL 3908798 (N.D.N.Y. Aug. 30, 2022) (citing *Fisk v. Letterman*, 401 F. Supp. 2d 362, 378 (S.D.N.Y. 2005)). Although a public defender and a private attorney could be held liable under section 1983 if they conspired with state actors, plaintiff here has failed to plead any plausible facts that suggests any of these named attorneys were involved in a conspiracy to inflict

Case 1:25-cv-01150-AJB-TWD    Document 4    Filed 10/20/25    Page 83 of 187
Khalil v. General Electric Corp, Not Reported in Fed. Supp. (2023)
2023 WL 11921904

an unconstitutional injury. Otherwise, it is clear that a section 1983 action "is not the appropriate vehicle to raise a claim of ineffective assistance of counsel." *Murphy v. Feliciano*, No. 3:17-CV-269, 2017 WL 3699353, at \*7 (D. Conn. May 31, 2017); *see also Magassouba v. Cascione, Purcigliotti & Galluzzi, P.C.*, 2021 WL 4692990, at \*4 (S.D.N.Y. June 14, 2021), *report and recommendation adopted as modified*, 2021 WL 4198219 (S.D.N.Y. Sept. 15, 2021). Accordingly, the amended complaint should be dismissed without prejudice, but without leave to amend, against defendants Dumas, Ramsey, Maswick and Kennelly.

## X. Defendant "Val"

In his original complaint, plaintiff briefly states that someone named "Val" helped the district attorney with some unknown administrative help. In my May 2022 ORR, I recommended dismissal of the complaint without prejudice as to this defendant, to provide plaintiff an opportunity to sufficiently allege what constitutional claim this defendant was purportedly responsible for. (May 2022 ORR at 35-38). The amended complaint does not, however, identify any conduct by named defendant Val that would rise to the level of a constitutional violation. Therefore, the amended complaint should be dismissed with prejudice as against defendant Val.

**WHEREFORE**, it is

**RECOMMENDED**, that the amended complaint (Dkt. No. 17) be accepted for filing in part; and it is further

**RECOMMENDED**, that plaintiff's First Amendment free exercise claim against defendant Salsiburu as set forth in the amended complaint (Dkt. No. 17) survives initial review and requires a response; and it is further

**RECOMMENDED**, that plaintiff's Eighth Amendment medical indifference claims against defendants Doe #83, Doe #84, Doe #85, Doe #86, J. Bamker, and Caryn Evans as set forth in the amended complaint (Dkt. No. 17) survive initial review and require a response;[9] and it is further

---

[9] If the district court adopts this recommendation, plaintiff must engage in discovery and take reasonable steps to ascertain the identity of the "John/Jane Doe" defendants remaining in this action. Upon learning the identities of the unnamed defendants, plaintiff must amend the operative complaint to properly name those individuals as

parties. If plaintiff fails to ascertain the identity of the Doe defendants so as to permit timely service of process, all claims against those individuals will be dismissed.

**RECOMMENDED**, that plaintiff's § 1983 claims against defendants GE and Clarkson as set forth in the amended complaint (Dkt. No. 17) be **DISMISSED** without prejudice, but without leave to amend; and it is further

**RECOMMENDED**, that plaintiff's Title VII claim against defendant GE as set forth in the amended complaint (Dkt. No. 17) be **DISMISSED** without prejudice; and it is further

**RECOMMENDED**, that plaintiff's remaining claims against defendants GE and Clarkson as set forth in the amended complaint (Dkt. No. 17) be **DISMISSED** with prejudice; and it is further

\*13 **RECOMMENDED**, that plaintiff's excessive force claim arising from the events taking place at Watertown C.F. on or about October 30, 2020, as set forth in the amended complaint (Dkt. No. 17) be **DISMISSED** without prejudice; and it is further

**RECOMMENDED**, that plaintiff's Eighth Amendment medical indifference claims against defendants McCoughan, Doe #81, Doe #82, Doe #78, Doe #79, Doe #80, Vigar, and Annucci as set forth in the amended complaint (Dkt. No. 17) be **DISMISSED** without prejudice; and it is further

**RECOMMENDED**, that the amended complaint (Dkt. No. 17) as against defendant Gonzalez be **DISMISSED** without prejudice; and it is further

**RECOMMENDED**, that the amended complaint (Dkt. No. 17) as against defendants Dumas, Ramsey, Maswick and Kennelly be **DISMISSED** without prejudice, but without leave to amend, and it is further

**RECOMMENDED**, that the remaining defendants and causes of action set forth in the amended complaint (Dkt. No. 17) be **DISMISSED** with prejudice; and it is further

**RECOMMENDED**, that if the district court adopts this recommendation, any amended complaint be returned to me for any orders relating to service.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written

objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.,* 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

**All Citations**

Not Reported in Fed. Supp., 2023 WL 11921904

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 3963699
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Ahmed S. KHALIL, Plaintiff,

v.

GENERAL ELECTRIC CORP., et al., Defendants.

5:22-CV-0312 (GTS/MJK)

|

Signed August 28, 2024

**Attorneys and Law Firms**

AHMED S. KHALIL, Plaintiff, Pro Se, 272 Central Ave, Apt.
6, Albany, New York 12206.

**DECISION and ORDER**

GLENN T. SUDDABY, United States District Judge

**\*1** Currently before the Court, in this *pro se* civil rights
action filed by Ahmed S. Khalil ("Plaintiff") against more
than 90 individuals and entities ("Defendants"), [1] are (1)
United States Magistrate Judge Andrew T. Baxter's Report-
Recommendation [2] recommending that certain of the claims
in Plaintiff's Amended Complaint survive the Court's *sua
sponte* review and that the remainder of those claims be
dismissed (some without prejudice and the others with
prejudice), and (2) Plaintiff's Objections to the Report-
Recommendation. (Dkt. Nos. 16, 21.) For the reasons set forth
below, the Report-Recommendation is accepted and adopted
in its entirety.

1    For a complete listing of these Defendants, the
     reader is respectfully referred to the listing of
     Defendants in, and the factual allegations of,
     Plaintiff's Amended Complaint (Dkt. No. 17, at
     2-27, 30-68), which superseded in their entirety
     the listing of Defendants in, and the factual
     allegations of, his original Complaint (Dkt. No.
     1, at 2-11, 14-37). Because the following seven
     individuals are not currently listed as Defendant
     on the docket sheet (but have been found, in this
     Decision and Order, to be the subject of actionable
     claims asserted in Plaintiff's Amended Complaint),
     the Clerk of Court is directed to add them as

Defendants: (1) Salsiburu, Corrections Officer, St.
Lawrence County Jail; (2) Jane/John Doe #83,
Nurse, DOCCS / Altona Prison; (3) Jane/John Doe
#84, Nurse, DOCCS / Altona Prison; (4) Jane/
John Doe #85, Nurse, DOCCS / Altona Prison; (5)
Jane/John Doe #86, Nurse, Coxsackie Prison; (6)
J. Bamker, Offender Rehabilitation Coordinator,
DOCCS / Altona Prison; and (7) Caryn Evans,
Nurse, DOCCS / Altona Prison. (Dkt. No. 17, at 9,
19-20.)

2    This case was reassigned to U.S. Magistrate Judge
     Mitchell J. Katz on January 5, 2024. (Dkt. No. 22.)

**I. RELEVANT BACKGROUND**

**A. Magistrate Judge Baxter's Report-
Recommendation**

Generally, in his Report-Recommendation, Magistrate Judge
Baxter recommends that the following claims in Plaintiff's
Amended Complaint survive the Court's *sua sponte* review
(so as to require a response): (1) Plaintiff's First Amendment
free exercise claim against Defendant Salsiburu; and (2)
Plaintiff's Eighth Amendment medical indifference claims
against Defendants Jane/John Doe #83, Jane/John Doe #84,
Jane/John Doe #85, Jane/John Doe #86, J. Bamker, and Caryn
Evans. (Dkt. No. 20, at 12-14, 30.)

In addition, Magistrate Judge Baxter recommends that
the following claims in Plaintiff's Amended Complaint be
dismissed without prejudice to amendment in this action
(upon a successful motion for leave to amend): (1) Plaintiff's
Title VII claim against Defendant General Electric; (2)
Plaintiff's excessive force claim arising from the events
taking place at Watertown Correctional Facility on or about
October 30, 2020; (3) Plaintiff's Eighth Amendment medical
indifference claims against Defendants Mr. McCaughan,
Jane/John Doe #78, Jane/John Doe #79, Jane/John Doe
#80, Jane/John Doe #81, Jane/John Doe #82, Qudsi Vigar,
and Anthony J. Annucci; and (4) Plaintiff's claims against
Defendant Rick Gonzalez. (*Id.* at 4-7, 17-19, 24-27, 30-31.)

**\*2** Furthermore, Magistrate Judge Baxter recommends that
the following claims in Plaintiff's Amended Complaint be
dismissed without prejudice but without leave to amend in
this action (due to a lack of subject-matter jurisdiction): (1)
Plaintiff's Section 1983 claims against Defendants General
Electric and Clarkson University; and (2) Plaintiff's claims
against Defendants Dan Dumas, Peter Ramsey, James

Maswick and Bryan Kennelly (all attorneys). (*Id.* at 3, 27-28, 30-31.)

Finally, Magistrate Judge Baxter recommends that the following claims in Plaintiff's Amended Complaint be dismissed with prejudice: (1) Plaintiff's remaining claims against Defendants General Electric and Clarkson University; and (2) Plaintiff's remaining claims against all other Defendants. [3] (*Id.* at 3, 8-11, 14-17, 27, 29, 31.)

[3]    These Defendants include but not limited to Defendants Farided Hosseini-Norouei, Christopher J. Burke, Wingming Chow, Brandon Marcia, Francis K. Rosania, Amun (John) Ahmed, Jane/Doe # 69, Jane/Doe # 70, Jane/Doe # 71, Jane/Doe # 72, Jane/Doe # 73, Jane/John Doe #74, Jane/John Doe #75, Jane/John Doe #76, Jane/John Doe #77, Rebert Darius, Bahman Farzi, Maya M. Atchan, Goodarz Ahmadi, Parisa Mirbod, Byron Erath, Jason Marx, Alex Nichols, Kevin M. Wells, Coringi, John E. Jones, Jane/John Doe #2-5, Matthew Maria, Jane/John Doe # 7, Peter T. Kroengel, Judy Trimboil, Kyle Fink, Ryan Cole, Lesault, Alan Merrill, Mark Lpage, Scott Salisbury, Samuel Lawrence, Brandi Barr-LaRock, Michael McCollum, Teressa Rutkauskas, Michael Perry, Larry Sanchez, Dylan Gonzalez, Monica Marin, William Pharoah, Debra Martin, Norman Warren, Stefani Simpson, Nathan Sweeney, Robert Kellison, Justin Fitzgerald, Joshua Simmons, Natolie Hartle, Shown, St. Lawrence County, Greene County, Village of Potsdam, Village of Potsdam Police Department, Town of Canton, Town of Canton Police Department, St. Lawrence County Sheriff's Department, Greene County Sheriff's Department, and "Val." (Dkt. No. 20, at 8-11, 14-17, 27, 29, 31.)

### B. Plaintiff's Objections

Generally, in his Objections, rather than assert the basis of a challenge to any specific finding or recommendation of the Report-Recommendation, Plaintiff identifies a half-dozen statements in the Report-Recommendation, and then either (1) asserts that the statements are somehow inaccurate (without explaining the materiality of the purported inaccuracy) or (2) requests that an Arabic Egypt interpreter be assigned to assist Plaintiff in amending his Amended Complaint. (*See generally* Dkt. No. 21.)

## II. STANDARD OF REVIEW

When a *specific* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to a *de novo* review. Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1)(C). To be "specific," the objection must, with particularity, "identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection." N.D.N.Y. L.R. 72.1(c). [4] When performing such a *de novo* review, "[t]he judge may ... receive further evidence...." 28 U.S.C. § 636(b)(1). However, a district court will ordinarily refuse to consider evidentiary material that could have been, but was not, presented to the magistrate judge in the first instance. [5] Similarly, a district court will ordinarily refuse to consider argument that could have been, but was not, presented to the magistrate judge in the first instance. *See Zhao v. State Univ. of N.Y.*, 04-CV-0210, 2011 WL 3610717, at *1 (E.D.N.Y. Aug. 15, 2011) ("[I]t is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not.") (internal quotation marks and citation omitted); *Hubbard v. Kelley*, 752 F. Supp.2d 311, 312-13 (W.D.N.Y. 2009) ("In this circuit, it is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not.") (internal quotation marks omitted).

[4]    *See also Mario v. P&C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) ("Although Mario filed objections to the magistrate's report and recommendation, the statement with respect to his Title VII claim was not specific enough to preserve this claim for review. The only reference made to the Title VII claim was one sentence on the last page of his objections, where he stated that it was error to deny his motion on the Title VII claim '[f]or the reasons set forth in Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment.' This bare statement, devoid of any reference to specific findings or recommendations to which he objected and why, and unsupported by legal authority, was not sufficient to preserve the Title VII claim.").

[5]    *See Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137-38 (2d Cir. 1994) ("In objecting to a

magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters*, 894 F.2d 36, 40, n.3 (2d Cir. 1990) (finding that district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *cf. U. S. v. Raddatz*, 447 U.S. 667, 676, n.3 (1980) ("We conclude that to construe § 636(b)(1) to require the district court to conduct a second hearing whenever either party objected to the magistrate's credibility findings would largely frustrate the plain objective of Congress to alleviate the increasing congestion of litigation in the district courts."); Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition ("The term 'de novo' does not indicate that a secondary evidentiary hearing is required.").

**\*3** When only a *general* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed. R. Civ. P. 72(b)(2),(3); Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition; *see also Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at \*2-3 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) [collecting cases], *aff'd without opinion*, 175 F.3d 1007 (2d Cir. 1999). Similarly, when an objection merely reiterates the *same arguments* made by the objecting party in its original papers submitted to the magistrate judge, the Court subjects that portion of the report-recommendation challenged by those arguments to only a *clear error* review. [6] Finally, when *no* objection is made to a portion of a report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.* [7]

[6]  *See Mario*, 313 F.3d at 766 ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under either Fed. R. Civ. P. 72(b) or Local Civil Rule 72.3(a) (3).");  *Camardo v. Gen. Motors Hourly-Rate Emp.*

*Pension Plan*, 806 F. Supp. 380, 382 (W.D.N.Y. 1992) (explaining that court need not consider objections that merely constitute a "rehashing" of the same arguments and positions taken in original papers submitted to the magistrate judge); *accord, Praileau v. Cnty. of Schenectady*, 09-CV-0924, 2010 WL 3761902, at \*1, n.1 (N.D.N.Y. Sept. 20, 2010) (McAvoy, J.); *Hickman ex rel. M.A.H. v. Astrue*, 07-CV-1077, 2010 WL 2985968, at \*3 & n.3 (N.D.N.Y. July 27, 2010) (Mordue, C.J.); *Almonte v. N.Y.S. Div. of Parole*, 04-CV-0484, 2006 WL 149049, at \*4 (N.D.N.Y. Jan. 18, 2006) (Sharpe, J.).

[7]  *See also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at \*1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks and citations omitted).

After conducting the appropriate review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

## III. ANALYSIS

After carefully reviewing the relevant papers herein, including Magistrate Judge Baxter's thorough Report-Recommendation, the Court can find no error in those parts of the Report-Recommendation to which Plaintiff specifically objected, and no clear error in the remaining parts of the Report-Recommendation: Magistrate Judge Baxter employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. As a result, the Report-Recommendation is accepted and adopted in its entirety for the reasons stated therein.

To those reasons, the Court adds only that, although it will continue to extend the full measure of special solicitude to Plaintiff as a *pro se* civil rights litigant, it denies without prejudice his request for an interpreter as both procedurally improper (being unsupported by either an affidavit or a citation to a rule or statute on which the request is based) and lacking a showing of cause (the defects in Plaintiff's claims not appearing able to be rectified by such an interpreter).

**ACCORDINGLY**, it is

**ORDERED** that the Clerk of Court is directed to add as Defendants on the docket sheet the seven individuals identified in note 1 of this Decision and Order; and it is further

**ORDERED** that the Report-Recommendation (Dkt. No. 20) is **ACCEPTED** and **ADOPTED** in its entirety; and it is further

**ORDERED** that the following claims in Plaintiff's Amended Complaint (Dkt. No. 17) **SURVIVE** the Court's *sua sponte* review (so as to a require a response):

   **\*4** (1) Plaintiff's First Amendment free exercise claim against Defendant Salsiburu; and

   (2) Plaintiff's Eighth Amendment medical indifference claims against Defendants Jane/John Doe #83, Jane/John Doe #84, Jane/John Doe #85, Jane/John Doe #86, J. Bamker, and Caryn Evans;[8] and it is further

[8]     Plaintiff is respectfully reminded that, if he does not diligently identify the above-stated Jane/John Doe Defendants, his claims against those Defendants will be dismissed, as stated in note 9 on page 30 of the Report-Recommendation. (Dkt. No. 20, at 30, n.9.)

**ORDERED** that the following claims in Plaintiff's Amended Complaint (Dkt. No. 17) are **DISMISSED without prejudice** to amendment in this action (upon a successful motion for leave to amend):

   (1) Plaintiff's Title VII claim against Defendant General Electric;

   (2) Plaintiff's excessive force claim arising from the events taking place at Watertown Correctional Facility on or about October 30, 2020;

   (3) Plaintiff's Eighth Amendment medical indifference claims against Defendants Mr. McCaughan, Jane/John Doe #78, Jane/John Doe #79, Jane/John Doe #80, Jane/John Doe #81, Jane/John Doe #82, Qudsi Vigar, and Anthony J. Annucci; and

   (4) Plaintiff's claims against Defendant Rick Gonzalez; and it is further

**ORDERED** that the following claims in Plaintiff's Amended Complaint (Dkt. No. 17) are **DISMISSED without prejudice** but **without leave to amend in this action** (due to a lack of subject-matter jurisdiction):

   (1) Plaintiff's Section 1983 claims against Defendants General Electric and Clarkson University; and

   (2) Plaintiff's claims against Defendants Dan Dumas, Peter Ramsey, James Maswick and Bryan Kennelly; and it is further

**ORDERED** that the following claims in Plaintiff's Amended Complaint (Dkt. No. 17) are **DISMISSED with prejudice**:

   (1) Plaintiff's remaining claims against Defendants General Electric and Clarkson University; and

   (2) Plaintiff's remaining claims against all other Defendants named in the Amended Complaint (including those listed in note 3 of this Decision and Order).

**All Citations**

Slip Copy, 2024 WL 3963699

---

**End of Document**                     © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:25-cv-01150-AJB-TWD    Document 4    Filed 10/20/25    Page 89 of 187

Welch v. Schenectady County, Not Reported in Fed. Supp. (2022)

2022 WL 3904113

2022 WL 3904113
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Aaron WELCH, Sr., Plaintiff,

v.

SCHENECTADY COUNTY, et al., Defendants.

1:22-CV-9 (DNH/DJS)
|
Signed August 10, 2022

**Attorneys and Law Firms**

AARON WELCH, SR., Plaintiff, Pro Se, 14-B-149, Great Meadow Correctional Facility, Box 51, Comstock, New York 12821.

**REPORT-RECOMMENDATION and ORDER**

DANIEL J. STEWART, United States Magistrate Judge

**\*1** Presently before the Court for review under 28 U.S.C. §§ 1915(e) & 1915A is the Amended Complaint, Dkt. No. 11, filed following the District Court's Order dismissing the Complaint with leave to amend. Dkt. No. 10. This Court previously set forth at length the legal standards for review under those statutes, Dkt. No. 8, Report-Recommendation at pp. 2-4, and so those standards will not be repeated here.

In this Court's Report-Recommendation relating to the initial Complaint, dismissal of all claims predating 2019 was recommended based on the expiration of the applicable statute of limitations. Report-Recommendation at pp. 7 & 8. The District Court adopted the Report-Recommendation in its entirety. Dkt. No. 10. Though the Amended Complaint fails to offer much in the way of specific factual allegations, it appears that it continues to assert claims related to prior Family Court proceedings that have already been dismissed as untimely. Plaintiff now contends that he is entitled to equitable tolling based upon Plaintiff's filing of other court actions at the time of events at issue. Am. Compl. at p. 7.

"The doctrine of equitable tolling permits courts to deem filings timely where a litigant can show that '[he] has been pursuing [his] rights diligently' and that some 'extraordinary circumstance stood in [his] way.' " *F.B. by Galbato v. Berryhill*, 2018 WL 5777768, at \*3 (N.D.N.Y. Nov. 2, 2018)

(quoting *Torres v. Barnhart*, 417 F.3d 276, 279 (2d Cir. 2005)) (internal alterations omitted). "Equitable tolling is available only in 'rare and exceptional circumstances,' where a court finds that 'extraordinary circumstances' have prevented a party from filing his or her claims within the statute of limitations." *Myers v. People of the State of New York*, 2016 WL 538470, at \*4 (N.D.N.Y. Feb. 9, 2016); *see also Rosenwasser v. Fordham Univ.*, 772 F. App'x 1, 3 (2d Cir. 2019). Plaintiff appears to base his entitlement to equitable tolling on the fact that he previously had other actions pending. Am. Compl. at p. 7. The fact that he concededly attempted to litigate claims undercuts, rather than supports his claim for tolling. The fact that he was pursuing other legal avenues shows that he was not being prevented from filing litigation, thus cannot show his entitlement now, years after the expiration of the limitations period, to equitable tolling. *Myers v. People of the State of New York*, 2016 WL 538470, at \*4. The Court, therefore, again recommends that all claims predating 2019 be dismissed as untimely.

On the merits, the Amended Complaint identifies five substantive causes of action. Am. Compl. at pp. 7-11. [1] Each is considered below.

---

[1]    The pleading actually identifies six causes of action, but one is limited exclusively to Plaintiff's assertion of equitable tolling. Am. Compl. at p. 7.

Plaintiff first asserts a claim under the Eighth Amendment because his status an inmate was purportedly used against him in Family Court proceedings. *Id.* at p. 7. "The Eighth Amendment provides that excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted. The cruel and unusual punishments clause protects inmates from the use of excessive force and from prison officials' deliberate indifference to inmates' serious medical needs." *Nash v. McGinnis*, 585 F. Supp. 2d 455, 459 (W.D.N.Y. 2008) (internal quotations and alterations omitted). None of those interests are implicated by Plaintiff's allegations and so the Court recommends that this claim be dismissed.

**\*2** Plaintiff next alleges a conspiracy among the Defendants to violate his rights to due process and familial association. Am. Compl. at p. 8. The conspiracy is pled in entirely conclusory terms, however. "To sustain a conspiracy claim under 42 U.S.C. § 1983, a plaintiff must demonstrate that a defendant acted in a wilful manner, culminating in an agreement, understanding or meeting of the minds, that

Case 1:25-cv-01150-AJB-TWD    Document 4    Filed 10/20/25    Page 90 of 187

Welch v. Schenectady County, Not Reported in Fed. Supp. (2022)

2022 WL 3904113

violated the plaintiff's rights ... secured by the Constitution or the federal courts. Conclusory, vague, or general allegations of a conspiracy to deprive a person of constitutional rights do not state a claim for relief under section 1983." *O'Neil v. Bebee*, 2010 WL 502948, at \*9 (N.D.N.Y. Feb. 10, 2010) (internal citations and quotation marks omitted); *see also Vega v. Artus*, 610 F. Supp. 2d 185, 205 (N.D.N.Y. 2009) (applying same standard to section 1985 conspiracy claim). "For purposes of a court's review under section 1915(e) ... it is not sufficient merely to [allege] the existence of a conspiracy in wholly conclusory terms." *McIntyre v. Battisti*, 2016 WL 791467, at \*5 (N.D.N.Y. Feb. 4, 2016), *report and recommendation adopted*, 2016 WL 799334 (N.D.N.Y. Feb. 29, 2016). Plaintiff has failed to offer anything more than conclusory allegations of a conspiracy and his claims should, therefore, be dismissed. *See Wilson v. Cty. of Onondaga*, 2021 WL 5971316, at \*9 (N.D.N.Y. Apr. 21, 2021), *report and recommendation adopted*, 2021 WL 5967130 (N.D.N.Y. Dec. 16, 2021).

Next, Defendant asserts an ineffective assistance of counsel claim against Defendant Martin who is alleged to have been Plaintiff's public defender. Am. Compl. at pp. 2 & 9. This claim is also subject to dismissal. A public defender is not a state actor as required for a claim under section 1983. *See Fisk v. Letterman*, 401 F. Supp. 2d 362, 378 (S.D.N.Y. 2005) (citing cases). In addition, a section 1983 action "is not the appropriate vehicle to raise a claim of ineffective assistance of counsel." *Murphy v. Feliciano*, 2017 WL 3699353, at \*7 (D. Conn. May 31, 2017); *see also Magassouba v. Cascione, Purcigliotti & Galluzzi, P.C.*, 2021 WL 4692990, at \*4 (S.D.N.Y. June 14, 2021), *report and recommendation adopted as modified*, 2021 WL 4198219 (S.D.N.Y. Sept. 15, 2021). This claim, therefore, should be dismissed.

The final claim asserted against individual Defendants is for a violation of equal protection, apparently because Plaintiff alleges actions were taken solely because of his status as an inmate. Am. Compl. at p. 9. This claim too is subject to dismissal as conclusory. It is unclear what action Plaintiff claims was taken to violate his rights or when. A "wholly conclusory assertion fails to allege an equal protection violation." *Barnes v. Starks*, 1996 WL 648956, at \*5 (S.D.N.Y. Nov. 6, 1996).

The final cause of action is a *Monell* claim against Schenectady County. Am. Compl. at p. 9. Given the recommendations above, that all other causes of action be dismissed, the Court also recommends that the *Monell* claim

be dismissed. "[T]here is no municipal liability where, as here, there is no underlying violation." *Marvin v. Peldunas*, 2022 WL 2125851, at \*2 n. 1 (2d Cir. June 14, 2022); *see also Lemon v. New York City Hous. Auth.*, 2009 WL 4800108, at \*4 (E.D.N.Y. Dec. 10, 2009) (citing cases).

For the reasons set forth above, the Court recommends dismissal of the Amended Complaint in its entirety. "[A] court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once 'when a liberal reading of the complaint gives any indication that a valid claim might be stated.' " *Bruce v. Tompkins Cty. Dep't of Soc. Servs. ex rel. Kephart*, 2015 WL 151029, at \*4 (N.D.N.Y. Jan. 7, 2015) (quoting *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991)). However, "a dismissal with prejudice is generally appropriate where a court puts a plaintiff on notice of a complaint's deficiencies and the plaintiff fails to correct those deficiencies after amendment." *Abu Dhabi Com. Bank v. Morgan Stanley & Co. Inc.*, 2009 WL 3346674, at \*2 (S.D.N.Y. Oct. 15, 2009) (citing cases). Here, Plaintiff was provided a prior opportunity to amend. Given the particular nature of the pleadings in this case, "[t]here is no basis to believe that granting leave to amend a second time would induce the plaintiff to add the kind of allegations needed to establish a facially-plausible claim when [he] took no steps to do so with h[is] first opportunity to amend." *Driessen v. Royal Bank Int'l*, 2015 WL 1245575, at \*2 (D. Conn. Mar. 18, 2015) (citing cases). Under the circumstances presented here, the Court recommends that the Amended Complaint be dismissed with prejudice.

**\*3  ACCORDINGLY**, it is hereby

**RECOMMENDED**, that Plaintiff's Amended Complaint be **DISMISSED**; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) [2] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

**Welch v. Schenectady County, Not Reported in Fed. Supp. (2022)**

2022 WL 3904113

[2]    If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

**All Citations**

Not Reported in Fed. Supp., 2022 WL 3904113

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:25-cv-01150-AJB-TWD    Document 4    Filed 10/20/25    Page 92 of 187

Murphy v. Feliciano, Not Reported in Fed. Supp. (2017)

2017 WL 3699353

2017 WL 3699353
Only the Westlaw citation is currently available.
United States District Court, D. Connecticut.

Douglas MURPHY, Plaintiff,

v.

FELICIANO, et al., Defendants.

PRISONER CASE NO. 3:17-cv-269 (VLB)
|
Signed 05/31/2017

**Attorneys and Law Firms**

Douglas Murphy, Northampton, MA, pro se.

INITIAL REVIEW ORDER

VANESSA L. BRYANT, UNITED STATES DISTRICT
JUDGE

**\*1** On February 16, 2017, the plaintiff, Douglas Murphy,
filed a civil rights complaint, pursuant to 42 U.S.C.
§ 1983, against Warden Jose Feliciano, Warden Allison
Black, Deputy Warden Denise Walker, Commissioner of
Correction Scott Semple, Deputy Warden Stacy Marmora,
Deputy Warden Richard Laffargue, Dr. Kathleen Maurer,
Dr. Mark Buchanan, Director Constance Weiskoph, Gail
Johnson, Director Michael Nicholson, the Correctional
Managed Health Care ("CMHC"), Attorney Julie Costello,
Attorney John Longwell, Attorney Carol Goldberg, and
Mary Ellen Castro for unconstitutional denial of access to
courts, deliberate indifference to medical needs, attorney
malpractice, and denial of effective assistance of counsel. [1]
The plaintiff is suing all of the defendants for monetary
damages in their official and individual capacities. On April
3, 2017 and May 18, 2017, this Court denied the plaintiff's
motion to proceed *in forma pauperis*. *See* Order #s 8, 13. The
plaintiff has since submitted the required filing fee to proceed
with his case against the defendants.

[1]    The plaintiff has withdrawn his claims against
       State's Attorney Jonathan Knight, Alice Miller, and
       Judge Charles Gill. *See* Pl.'s Mot. Amend List of
       Def.s [Dkt. No. 14].

I. Relevant Legal Principles

Pursuant to 28 U.S.C. § 1915A, this Court must review
prisoner civil complaints and dismiss any portion of the
complaint that is frivolous or malicious, that fails to state
a claim upon which relief may be granted, or that seeks
monetary relief from a defendant who is immune from
such relief. Although detailed allegations are not required,
the complaint must include sufficient facts to afford the
defendants fair notice of the claims and the grounds upon
which they are based and to demonstrate a right to relief.
*Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007).
Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*,
556 U.S. 662, 678 (2009). The plaintiff must plead "enough
facts to state a claim to relief that is plausible on its face."
*Twombly*, 550 U.S. at 570. Nevertheless, it is well-established
that "[*p*]*ro se* complaints 'must be construed liberally and
interpreted to raise the strongest arguments that they suggest.'
" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013)
(quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471,
474 (2d Cir. 2006)).

II. Factual Allegations

The plaintiff groups his factual allegations into three sections,
each with its own legal claim(s). For purposes of clarity, the
court will do the same for its recitation of the facts.

A. Facts Supporting the Plaintiff's
Claim for Denial of Access to Courts

The plaintiff was arrested on August 16, 2014 and held on a
bond of $50,000 cash or surety. The plaintiff posted bond the
next day and was released from custody. He later appeared for
his arraignment on August 18, 2014, when new charges were
added and his bond was increased to $200,000 cash or surety.
The plaintiff could not afford to post the increased bond and,
consequently, was held at the New Haven Correctional Center
("NHCC") while awaiting the disposition of his case.

**\*2** While at NHCC, the plaintiff attempted to gain access
to legal materials in order to familiarize himself with state
statutes and court rules but was informed that there was no
law library or legal materials available to inmates at NHCC.
The plaintiff subsequently filed a grievance against NHCC
staff for the denial of legal materials to NHCC inmates.
In retaliation for his grievance, prison staff transferred the
plaintiff to Bridgeport Correctional Center ("BCC"), a much
less maintained and supervised facility. BCC also does not
provide its inmates with access to legal materials.

Case 1:25-cv-01150-AJB-TWD    Document 4    Filed 10/20/25    Page 93 of 187
Murphy v. Feliciano, Not Reported in Fed. Supp. (2017)
2017 WL 3699353

On October 15, 2014, the plaintiff posted his $200,000 bail and was released. Shortly thereafter, however, he was arrested on new charges and bond was set at $100,000 cash or surety. Prior to his arraignment on the new charges, the court appointed Attorney Julie Costello from the Public Defender's Office to represent the plaintiff for arraignment purposes. Attorney John Longwell from the Public Defender's Office informed the plaintiff that Judge Charles Gill, who was presiding over his case, was known to arbitrarily convert surety bonds to cash only bonds, in violation of Connecticut's bail statutes (CONN. GEN. STAT. § 54-64a). At the arraignment, Judge Gill converted the plaintiff's bond from $100,000 cash or surety to $100,000 cash only for a single charge of a Class D felony. Attorney Costello later withdrew from representation, and the plaintiff was again remanded to NHCC.

While housed at NHCC for the second time, the plaintiff again attempted to gain access to legal materials but was referred to the inmate handbook, which informed all inmates about the Inmate Litigation Assistance Program ("ILAP"). However, the plaintiff subsequently learned that ILAP is limited to civil suits, and does not assist with criminal proceedings. With respect to criminal matters, NHCC only permits its inmates to consult with their attorneys. Without access to adequate legal materials, the plaintiff struggled to investigate and research the legal issues pertaining to his case. Often times, he was forced to rely on friends and family to provide him with information over the telephone regarding his case.

On November 12, 2014, the plaintiff filed a second grievance against NHCC staff for the facility's denial of access to adequate legal materials. Warden Jose Feliciano denied the grievance on December 1, 2014. The plaintiff subsequently appealed the denial of the grievance, which was also denied. Unlike NHCC and BCC, Osborn Correctional Institution ("Osborn") provides its inmates with access to legal databases for research. Feliciano had the authority, as warden of NHCC, to transfer the plaintiff to Osborn so that he could access legal materials.

After five and one-half months, the plaintiff successfully drafted and submitted a motion to reduce his bail. The court granted his motion, and his bail was converted back from $100,000 cash only to $100,000 cash or surety. The plaintiff successfully posted bail on May 1, 2015 and was released.

B. Facts Supporting the Plaintiff's Claim for Deliberate Indifference to Medical Needs

In July of 2014, prior to being arrested, the plaintiff suffered a shoulder injury from playing sports. An MRI later showed that the plaintiff suffered two substantial tears to his left rotator cuff, which caused the plaintiff severe pain and limited his ability to use his left arm. The plaintiff's orthopedic surgeon at the time informed him that he would need surgery to correct the damage to his arm. However, due to his arrest on August 16, 2014, the plaintiff was unable to obtain corrective surgery.

**\*3** When he was first remanded to NHCC in August 2014, the plaintiff informed the intake nurses about the nature of his injury and the results of the MRI. He also informed them that the injury required corrective surgery, which he was unable to obtain because of his arrest, and that he was unable to use his left arm to defend himself in the event his safety was jeopardized. The plaintiff also informed the intake nurses that he suffered from alcoholism and had been medicated for his withdrawal symptoms.

The intake nurses did not offer the plaintiff any treatment for his pain but informed him that his complaint would be reviewed by the NHCC physician. They became visibly annoyed with the plaintiff and told him to "stop whining" or he would be placed in a holding cell delaying his placement in a housing unit. When the plaintiff continued to complain about his injury and his withdrawal problems, he was placed in an empty cell in the medical ward. There, the plaintiff repeatedly knocked on the cell door in order to get attention. A correction officer approached the plaintiff and told him that, if he continued to knock on the door, he would be taken "out back" and "buried."

After a day in the medical unit, the plaintiff was transferred to an intake unit where he would be housed while awaiting clearance for general population. There, the plaintiff was attacked by another inmate. Because of the limited use of his left arm, the plaintiff was unable to defend himself against the attack. Later, while he was being examined by medical staff, one of the nurses who had witnessed the attack, told the plaintiff, "You didn't even swing back." Afterward, the plaintiff was transferred to general population in NHCC. He continued to suffer pain and limited mobility in his left arm.

WESTLAW   © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Murphy v. Feliciano, Not Reported in Fed. Supp. (2017)

2017 WL 3699353

When he was transferred to BCC, the plaintiff was examined by a female physician. The physician informed the plaintiff that she had reviewed his medical history and that "prison/ medical officials would not provide [the plaintiff] surgery" or any other available treatment. She suggested that the plaintiff either seek treatment if released from custody or "revisit the subject if he was sentenced to a state term of incarceration." The plaintiff was, thereafter, released from custody.

When he was arrested on new charges in October 2014 and again remanded to NHCC, the plaintiff was sent to the emergency room at New Milford Hospital, where he received medication for his alcohol withdrawal. He later informed the intake nurses at NHCC that he had just been treated for severe alcohol withdrawal and that his physicians were concerned about the possibility that he would suffer from seizures. The nurses told the plaintiff that they would not provide him with any treatment unless and until he suffered a seizure. When the plaintiff protested, the nurses told him to "shut-up."

The plaintiff filed formal grievances against prison staff for the lack of treatment for his medical needs. As of the filing of his complaint, the plaintiff has not ascertained the names of the medical staff at NHCC, BCC, and CMHC with whom he interacted regarding his medical problems. [2]

[2]    The plaintiff has not submitted any documentation since filing his complaint to identify the names of the medical personnel against whom he makes his allegations.

C. Facts Supporting Plaintiff's Claims for Attorney Malpractice and Denial of Effective Assistance of Counsel

Attorney Costello was appointed to represent the plaintiff on August 18, 2014 and was official counsel on record from that date until January 9, 2015. Costello was appointed for bond purposes only. Both Longwell and Costello knew that Judge Gill, who would decide the plaintiff's bond had a reputation for changing a defendant's bond from cash or surety to cash only as a punitive measure. Longwell even warned the plaintiff before his arraignment on October 27, 2014 about Judge Gill's reputation. At a pretrial hearing on November 17, 2014, Costello stated the following on the record:

**\*4**  I know that oftentimes [J]udge Gill will put a cash only bond on

people as a punative [sic] measure. Oftentimes we're allowed to bring people back sooner and have their bonds converted.

Pl.'s Comp. at 25. When Judge Gill erroneously changed the plaintiff's bond from $100,000 cash or surety to $100,000 cash only, Longwell and Costello failed to "report such misconduct to the proper authorities." Their failure to report Judge Gill's error made them "complicit in promulgating Judge Gill [']s unlawful practices."

Throughout the duration of her representation, Attorney Costello refused to communicate with the plaintiff, often times telling him that she did not represent him despite the fact that she was still counsel on record at those times. She also refused to file certain documents on the plaintiff's behalf and to supply the plaintiff with a copy of the motion to reduce his bond, which he successfully submitted in the spring of 2015. Had Longwell and Costello promptly and successfully challenged Judge Gill's decision to change the plaintiff's bond, the plaintiff would have posted bond immediately and would have been able to obtain corrective surgery for his left shoulder.

III. Analysis

A. Claims for Money Damages Against Defendants in their Official Capacities

To the extent that the plaintiff seeks money damages from the defendants in their official capacities, those claims are barred by the Eleventh Amendment. See *Kentucky v. Graham,* 473 U.S. 159 (1985); *Quern v. Jordan,* 440 U.S. 332, 342 (1979). All such claims are dismissed pursuant to 28 U.S.C. § 1915A(b)(2). Because the plaintiff is only seeking monetary damages and no injunctive relief, all claims against the defendants in their official capacities are hereby dismissed.

B. Claim Against Correctional Managed Health Care ("CMHC")

The CMCH is not a "person" subject to suit under 42 U.S.C. § 1983 because it is a division of a state agency. *Figueroa v. Correctional Managed Health Care,* No. 16 Civ. 120 (VAB), 2016 WL 7428191, *3 (D. Conn. Dec. 23, 2016). A state

Case 1:25-cv-01150-AJB-TWD    Document 4    Filed 10/20/25    Page 95 of 187

Murphy v. Feliciano, Not Reported in Fed. Supp. (2017)

2017 WL 3699353

agency is not a "person" within the meaning of section 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, (1989) (state and state agencies not persons within meaning of 42 U.S.C. § 1983). Thus, the plaintiff's claim against CMHC is dismissed because it lacks an arguable legal basis. *See* 28 U.S.C. § 1915A(b)(1).

## C. Personal Involvement of Defendants

"It is well settled ... that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotation marks omitted); *see also Johnson v. Glick*, 481 F.2d 1028, 1034 (2d Cir. 1973) (doctrine of *respondeat superior* does not suffice for claim of monetary damages under § 1983). A plaintiff who sues a supervisory official for monetary damages must allege that the official was "personally involved" in the constitutional deprivation in one of four ways: (1) the official directly participated in the deprivation; (2) the official learned about the deprivation through a report or appeal and failed to remedy the wrong; (3) the official created or perpetuated a policy or custom under which unconstitutional practices occurred; (4) the official was grossly negligent in managing subordinates who caused the unlawful condition or event; or (5) the official failed to act on information indicating that unconstitutional acts were occurring. *Wright*, 21 F.3d at 501; *Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir. 2003). In addition, the plaintiff must allege a causal link between the conduct of the supervisory official, or lack thereof, and the injury. *See Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002).

**\*5** With the exception of Warden Feliciano, Attorney Longwell, Attorney Costello, and the unnamed medical personnel, the plaintiff does not allege any specific conduct or failure on the part of the named defendants to show their personal involvement in the alleged constitutional violations. The plaintiff simply includes the named defendants because of their supervisory roles and concludes that they were responsible for his injuries. *See Camacho v. Fairfield County*, No. 03 Civ. 1773 (SRU), 2001 WL 34397629, \*7 (D. Conn. Mar. 12, 2001) (plaintiff's assumption that supervisory defendants permitted injuries to occur by failure to train subordinates insufficient to establish causal link for supervisory liability). He does not allege facts to support his allegations that the these named defendants directly participated in the deprivations, learned about the deprivations through reports or appeals, created a policy that

fostered unconstitutional practices, were grossly negligent in supervising their subordinates, or otherwise failed to act upon learning that such deprivations were occurring. He does not even allege how, if at all, these defendants became aware of the constitutional deprivations of which he complains. *See Merriwether v. Coughlin*, 879 F.2d 1037, 1048 (2d Cir. 1989) (to impose supervisory liability prisoner must allege that official had actual or constructive notice of unconstitutional practices and demonstrated gross negligence or deliberate indifference by failing to act). It is clear from his complaint that the plaintiff is suing these defendants solely because they have supervisory roles in the Department of Correction or CMHC, which is insufficient to establish personal involvement. *See Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985) (claim for monetary damages against Commissioner of Correction requires showing more than linkage in prison chain of command); *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977) (fact that Commissioner was in high position of authority insufficient basis for personal liability). Without any factual support, the plaintiff's conclusory statements that these defendants directly participated in the constitutional deprivations, were grossly negligent in supervising their subordinates, or created a policy that caused the deprivations are insufficient for his claims to proceed. *See Samper v. Abate*, 101 F.3d 1392, \*2 (2d Cir. 1996) (conclusory claim that supervisory defendants have policy not to provide requested treatment insufficient to establish personal involvement); *Gray v. Erfe*, No. 13 Civ. 39 (JBA), 2012 WL 7785080, \*2 (D. Conn. Mar. 21, 2012) (plaintiff's conclusory statements insufficient to state plausible claims against supervisory defendants); *Smith v. Connecticut Dept. of Corrections*, No. 05 Civ. 960 (HBF), 2007 WL 678549, \*4 (D. Conn. Mar. 1, 2007) (allegation that letter sent to Department of Correction "should have prompted a person in [Commissioner's] position to respond appropriately" insufficient to establish personal involvement of Commissioner). Therefore, the plaintiff's claims against defendants Semple, Black, Walker, Marmora, Laffargue, Maurer, Buchanan, Weiskoph, Johnson, Nicholson, Castro, and Goldberg are DISMISSED.

## D. Denial of Access to the Courts

"Prisoners have a constitutional right of access to the courts that may not be unreasonably obstructed by the actions of prison officials." *Baker v. Weir*, No. 16 Civ. 1066 (JAM), 2016 WL 7441064, \*2 (D. Conn. Dec. 27, 2016) (citing *Washington v. James*, 782 F.2d 1134, 1138 (2d Cir. 1986)).

Case 1:25-cv-01150-AJB-TWD    Document 4    Filed 10/20/25    Page 96 of 187
Murphy v. Feliciano, Not Reported in Fed. Supp. (2017)
2017 WL 3699353

The prisoner's right of access to courts is rooted in the constitutional guarantees of equal protection of laws and due process. *Avent v. New York*, 157 Fed.Appx. 375, *1 (2d Cir. 2005). In *Bounds v. Smith*, 430 U.S. 817, 828 (1977), the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Years later, however, the Supreme Court in *Lewis v. Casey*, 518 U.S. 343, 351 (1996), held that, "[b]ecause *Bounds* did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." Instead, the inmate "must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Id.*

"Thus, to state a claim for denial of access to the courts, a plaintiff must demonstrate that he suffered an actual injury ... that is, he must allege that defendant's conduct deprived him of an opportunity to press some nonfrivolous, arguable cause of action in court." *Baker*, 2016 WL 7441064, *2. "[The] plaintiff must allege not only that the defendant's alleged conduct was deliberate and malicious, but also that the defendant's actions resulted in actual injury to the plaintiff such as the dismissal of an otherwise meritorious legal claim." *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) (quoting *Cancel v. Goord*, No. 00 Civ. 2042 (LMM), 2001 WL 303713, at *4 (S.D.N.Y. Mar. 29, 2001)). Moreover, "the injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 354. The underlying claim must involve a challenge to the conviction for which the prisoner was incarcerated, an action under 42 U.S.C. § 1983 to vindicate "basic constitutional rights," or some other form of challenge to the prisoner's sentence or conditions of confinement. *See id.* at 354-55.

 *6 Here, the only defendant against whom it could be argued the plaintiff alleged sufficient personal involvement in the denial of access to the courts was Warden Feliciano, who denied the plaintiff's grievance based on the absence of legal materials at NHCC. He alleges that the absence of legal materials at NHCC and BCC deprived him of the ability to conduct research on Judge Gill's decision to increase his bail and file a motion to reduce his bail within a more expedient time period. Specifically, the plaintiff alleges that, due to the absence of legal materials at NHCC and

BCC, he was forced to rely on friends and family to secure information on his behalf and communicate with them over the telephone as opposed to researching the information himself. He admits, however, that he eventually received a copy of the Connecticut bail statutes from another inmate and was able to successfully complete and submit a motion for a reduction in bail, which the state court granted. Nevertheless, the plaintiff contends that, "[b]ut for the [prison's] complete lack of access to the courts/access to legal material, [he] could have, and would have, generated the motion for a bail reduction that was successful in 7-10 days ... instead of 5 ½ months." Pl.'s Comp. at 10.

Even if the plaintiff could establish sufficient personal involvement of any of the defendants in this action, these allegations fail to state a plausible claim of denial of access to the courts. His inability to research, complete, and submit a motion for bond reduction within a more expedient time frame is insufficient to establish actual injury for purposes of *Lewis*. The plaintiff was able to successfully obtain the materials necessary for him to complete and submit his motion, which the state court granted. Moreover, the plaintiff has not alleged that any of the defendants deliberately or maliciously hindered his efforts to pursue a legal claim. *See Davis*, 320 F.3d at 351. It is also not well-established that the plaintiff's challenge to Judge Gill's decision to increase his bond is the type of claim contemplated by *Lewis*. *See State v. Anderson*, 319 Conn. 288, 307 (2015) (imposition of monetary bond did not violate defendant's state constitutional right to bail). Because he has failed to allege a deliberate interference with his ability to pursue a legal claim, which he ultimately succeeded in pursuing, the plaintiff has failed to state a plausible claim of denial of access to the courts.

E. Deliberate Indifference to Serious Medical Needs

To state a claim for deliberate indifference to a serious medical need, the plaintiff must show both that his medical need was serious and that the defendants acted with a sufficiently culpable state of mind. *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citing *Estelle v. Gamble*, 492 U.S. 97, 105 (1976)). There are both objective and subjective components to the deliberate indifference standard. *See Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). Objectively, the alleged deprivation must be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The condition must be "one that may produce death, degeneration, or extreme pain." *See Hathaway v. Coughlin*, 99 F.3d

Case 1:25-cv-01150-AJB-TWD    Document 4    Filed 10/20/25    Page 97 of 187

Murphy v. Feliciano, Not Reported in Fed. Supp. (2017)

2017 WL 3699353

550, 553 (2d Cir. 1996) (internal quotation marks omitted). Subjectively, the defendants must have been actually aware of a substantial risk that the inmate would suffer serious harm as a result of his actions or inactions. *See Salahuddin v. Goord*, 467 F.3d 263, 280–81 (2d Cir. 2006). Negligence that would support a claim for medical malpractice does not rise to the level of deliberate indifference and is not cognizable under section 1983; *see id.* at 280; nor does a difference of opinion regarding what constitutes an appropriate response and treatment. *See Ventura v. Sinha*, 379 Fed.Appx. 1, 2–3 (2d Cir. 2010); *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998).

The plaintiff alleges that when he was taken into custody at NHCC, he informed the nurses there about the nature and severity of his shoulder injury and that he had been scheduled for corrective surgery prior to his arrest. He also informed them about his alcoholism and that he suffered from withdrawal symptoms. The plaintiff alleges that, in response, the nurses did not offer him any treatment and, at one point, became visibly annoyed with the plaintiff, telling him to "stop whining." The plaintiff further alleges that, when he was attacked by another inmate and was unable to defend himself because of his shoulder injury, one of the nurses told him, "You didn't even swing back." When he was transferred to BCC, the female physician there told him that, despite his medical history, he would not be given surgery to correct his shoulder problem. The physician told the plaintiff to either seek treatment upon release from custody or revisit the subject if he was sentenced to a term of incarceration. When he reentered NHCC, the plaintiff told the intake nurses that he had recently been treated for alcohol withdrawal and that his physicians were concerned about the possibility of him suffering a seizure. In response, the nurses told the plaintiff that they would not offer him any treatment unless and until he suffers a seizure. When the plaintiff protested, the nurses told him to "shut up." These allegations, construed liberally, sufficiently state a claim of deliberate indifference to serious medical needs. However, as the plaintiff stated in his complaint, he has not yet discovered the names of the intake nurses at NHCC or the female physician at BCC who denied him treatment. Thus, the court will permit his Eighth Amendment claim to proceed for ninety (90) days in order to give the plaintiff an opportunity to identify these unnamed defendants. If the plaintiff does not submit the names of these defendants in ninety days, the claim will be dismissed.

F. Claims Against Attorneys Costello and Longwell

**\*7** The plaintiff alleges that Attorneys Costello and Longwell violated his Sixth Amendment right to the effective assistance of counsel by failing to prevent and/or report Judge Gill's unconstitutional practice of arbitrarily converting cash or surety bonds to cash only bonds. A civil action brought pursuant to 42 U.S.C. § 1983 is not the appropriate vehicle to raise a claim of ineffective assistance of counsel. *See Bourdon v. Loughren*, 386 F.3d 88, 90 (2d Cir. 2004). Attorneys Costello and Longwell were not acting "under color of state law" when they were representing the plaintiff and, therefore, are not subject to suit under 42 U.S.C. § 1983. *See Polk County v. Dodson*, 454 U.S. 312, 318-19 (1981) (public defenders do not act "under color of state law" and therefore are not subject to suit under 42 U.S.C. § 1983); *Osuch v. Gregory*, 303 F. Supp. 2d 189, 196 (D. Conn. 2004) (dismissing § 1983 action against public defender for ineffective assistance). Thus, the plaintiff's ineffective assistance of counsel claims against Costello, and Longwell are DISMISSED.

The plaintiff also alleges that his attorneys' actions constituted malpractice and fraud, both of which are state law claims. This Court can exercise supplemental jurisdiction over a state law claim if:

> (1) there is a claim arising under the federal constitution or federal laws; (2) the relationship between the federal claim and the state claim permits the conclusion that the entire action comprises but one constitutional case; (3) the federal claim has substance sufficient to confer subject matter jurisdiction on the court; and (4) the state and federal claims derive from a common nucleus of operative fact.

*Miller v. Lovett*, 879 F.2d 1066, 1071 (2d Cir. 1989), *abrogated on other grounds, Graham*, 490 U.S. at 386. Because he cannot raise an ineffective assistance of counsel claim in this § 1983 civil action and the claims against his attorneys are entirely unrelated to his denial of access to courts and Eighth Amendment claims, the court will not exercise supplemental jurisdiction over his malpractice and/or fraud

Case 1:25-cv-01150-AJB-TWD    Document 4    Filed 10/20/25    Page 98 of 187
**Murphy v. Feliciano, Not Reported in Fed. Supp. (2017)**
2017 WL 3699353

claims against Attorneys Costello and Longwell. Such are claims are, therefore, DIMISSED.

ORDERS

(1) All claims against the defendants in their official capacities are DISMISSED pursuant to 28 U.S.C. § 1915A(b)(2).

(2) The plaintiff's claims for denial of access to the courts, ineffective assistance of counsel, attorney malpractice, and fraud are DISMISSED.

(3) The plaintiff's claims against defendants Feliciano, Black, Walker, Semple, Marmora, Laffargue, Maurer, Buchanan, Weiskoph, Castro, Johnson, Nicholson, CMHC, Costello, Goldberg, and Longwell are DISMISSED for failure to allege personal involvement and/or failure to state a cognizable claim.

(4) The plaintiff's Motion to Amend the List of Named Defendants [Dkt. No. 14] is GRANTED. The plaintiff's claims against defendants Knight, Miller, and Gill are DISMISSED pursuant to said motion.

(5) The plaintiff's Eighth Amendment claim for deliberate indifference to serious medical needs will proceed against the John/Jane Doe defendants (i.e. intake nurses at NHCC and female physician at BCC). Because the plaintiff has not identified these defendants by name, the Clerk is not able to serve a copy of the complaint on them in their individual capacity. Within ninety (90) days of the date of this order, the plaintiff shall file a notice indicating the first and last name of these unnamed defendants. If the plaintiff files the notice, the court will direct the Clerk to effect service of the complaint on those defendants in their individual capacities. If the plaintiff fails to identify the unnamed defendants within the time specified, the complaint will be dismissed.

(6) The plaintiff's Motion to Order Service upon the Defendants [Dkt. No. 15] is DENIED. *See supra* ORDER (5).

SO ORDERED this 31st day of May 2017 at Hartford, Connecticut.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 3699353

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Welch v. Schenectady County, Not Reported in Fed. Supp. (2022)

2022 WL 3908798

2022 WL 3908798
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Aaron WELCH, Sr., Plaintiff,

v.

SCHENECTADY COUNTY, Susan Fitzgerald,
Child Protective Services Caseworker/Employee,
Susanna Hurley, Schenectady County Dept of
Social Services Supervisor, Christopher Gardener,
Schenectady County Attorney, James Letitia,
New York State Attorney General, and NYS
Office of Children & Family Services, Defendant.

1:22-CV-9
|
Signed August 30, 2022

**Attorneys and Law Firms**

AARON WELCH, SR., Plaintiff, Pro Se, 14-B-0149, Great
Meadow, Correctional Facility, Box 51, Comstock, NY
12821.

### ORDER ON REPORT & RECOMMENDATION

DAVID N. HURD, United States District Judge

**\*1** On January 5, 2022, *pro se* plaintiff Aaron Welch, Sr.
("plaintiff") filed this civil action alleging that defendants
violated his rights in connection with some pending child
abuse proceedings in state court. Dkt. No. 1. Although
plaintiff's case was initially closed based on his failure to
comply with the filing fee requirements, Dkt. No. 4, the
Clerk of the Court reopened the matter after plaintiff filed an
application to proceed *in forma pauperis* ("IFP Application"),
Dkt. Nos. 4, 6. Thereafter, U.S. Magistrate Judge Daniel J.
Stewart granted plaintiff's IFP Application. Dkt. No. 7.

However, on March 15, 2022, Judge Stewart recommended
by Report & Recommendation ("R&R") that plaintiff's

complaint be dismissed with leave to amend. Dkt. No. 8. As
Judge Stewart explained, a broad reading of the complaint
suggested that plaintiff had, "at least in some measure,
allege[d] arguable claims" related to "the denial of due
process rights" based on "visitation with Plaintiff's children."
*Id.*

But because plaintiff only "allege[d] violations of his rights
in generally conclusory terms" and named certain defendants
who were shielded by immunity doctrines or the statute
of limitations, Judge Stewart recommended that plaintiff be
given leave to replead his claims with additional factual
specificity. *See id.*

This Court adopted Judge Stewart's R&R over plaintiff's
objections on April 4, 2022. Dkt. No. 10. Thereafter, plaintiff
filed an amended complaint. Dkt. No. 11.

On August 10, 2022, Judge Stewart advised by R&R that
plaintiff's amended complaint be dismissed, but this time
without leave to further amend. Dkt. No. 13. As Judge Stewart
explained, none of plaintiff's various causes of action gave
rise to any plausible claims for relief. *Id.*

Plaintiff has filed objections. Dkt. Nos. 14–15. Upon *de novo*
review of the portions to which plaintiff has objected, the
R&R will be accepted and adopted in all respects. 28 U.S.C.
§ 636(b)(1)(C).

Therefore, it is

ORDERED that

1. The Report & Recommendation is ACCEPTED; and

2. Plaintiff's complaint is DISMISSED with prejudice.

IT IS SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2022 WL 3908798

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:25-cv-01150-AJB-TWD    Document 4    Filed 10/20/25    Page 100 of 187

Brooks v. New York State Supreme Court, Appellate Div...., Not Reported in...

2002 WL 31528632

2002 WL 31528632
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Trevor L. BROOKS, Plaintiff,
v.

THE NEW YORK STATE SUPREME COURT,
APPELLATE DIVISION FIRST DEPT.; the Disciplinary
Committee, First Dept.; Thomas J. Cahill Chief Counsel
and Raymond Vallejo Attorney for Disciplinary
Committee; Michael Ross, Attorney at Law, Defendants.

No. 02–CV–4183 (RR).
|
Aug. 16, 2002.

**Synopsis**
Disbarred attorney brought § 1983 action against court,
disciplinary committee and various attorneys, alleging racial
discrimination. The District Court, Raggi, J., held that: (1)
court and committee were entitled to absolute immunity;
(2) plaintiff's attorney was not state actor; and (3) *Younger*
abstention was warranted.

Dismissed.

West Headnotes (4)

[1]    **Civil Rights**  🔑  States and territories and their
       agencies and instrumentalities, in general
       State court is not "person" subject to suit under
       § 1983. 42 U.S.C.A. § 1983.

       11 Cases that cite this headnote

[2]    **Civil Rights**  🔑  Judges, courts, and judicial
       officers
       State court and disciplinary committee were
       absolutely immune from § 1983 liability for
       their conduct in disciplinary proceeding, absent
       allegation that any non-judicial actions were
       taken, or that there was complete absence of all
       jurisdiction. 42 U.S.C.A. § 1983.

       7 Cases that cite this headnote

[3]    **Civil Rights**  🔑  Attorneys and witnesses
       Private counsel retained to represent attorney in
       disciplinary proceeding was not state actor, and
       thus could not be held liable to attorney under §
       1983. 42 U.S.C.A. § 1983.

       13 Cases that cite this headnote

[4]    **Federal Courts**  🔑  Professional or other
       services;  malpractice
       *Younger* abstention was warranted in attorney's §
       1983 action against participants in on-going state
       disciplinary proceedings. 42 U.S.C.A. § 1983.

MEMORANDUM AND ORDER

RAGGI, J.

**\*1**  Plaintiff Trevor L. Brooks, a disbarred attorney
proceeding pro se, sues defendants the New York State
Supreme Court, Appellate Division First Department ("First
Department"), the court's Disciplinary Committee, the
Committee's Chief Counsel Thomas J. Cahill, a Committee
Attorney Raymond Vallejo, and his own retained counsel
Michael Ross,[1] pursuant to 42 U.S.C. §§ 1983 and 1985
for racial discrimination in connection with his disbarment.
Plaintiff demands compensatory damages and an injunction
ordering his reinstatement to the New York bar.

[1]        The Court notes that it has received a letter written
           on behalf of an attorney named Michael Jay Ross.
           The letter explains that plaintiff's complaint was
           served on Michael Jay Ross in error and that
           Michael Jay Ross is a different person from the
           Michael Ross named in the complaint. According
           to the letter, a copy of the summons and complaint
           has been forwarded to the correct defendant. Since
           this case is being dismissed in its entirety, the Court
           will take no further action regarding the error in
           service.

Case 1:25-cv-01150-AJB-TWD    Document 4    Filed 10/20/25    Page 101 of 187

Brooks v. New York State Supreme Court, Appellate Div...., Not Reported in...

2002 WL 31528632

Brooks was admitted to practice law in the State of New York by defendant First Department in 1976. According to Brooks's Complaint, in 1996, he decided to relocate to Jamaica and requested from the First Department a two-year leave of absence and/or permission to resign from the practice of law. Apparently, at that time, two disciplinary complaints were outstanding against Brooks. The First Department's decision to pursue these complaints, as well as several others filed against Brooks after he relocated to Jamaica, are at issue in this case.

I. *Sua Sponte Dismissal*

28 U.S.C. § 1915(e)(2) provides that the court shall dismiss a case where it determines that the action is frivolous, or fails to state a claim on which relief may be granted. A complaint "is frivolous where it lacks an arguable basis either in law or in fact"; i.e., where it is "based on an indisputably meritless legal theory" or presents "factual contentions [which] are clearly baseless." *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *see Alaji Salahuddin v. Alaji,* 232 F.3d 305, 306–7 (2d Cir.2000); *Nance v. Kelly,* 912 F.2d 605, 606 (2d Cir.1990). Where, as here, the court "can rule out any possibility, however unlikely it might be, that an amended complaint could succeed in stating a claim," dismissal is appropriate. *Gomez v. USAA Fed. Sav. Bank.,* 171 F.3d 794, 796 (2d Cir.1999); *see also Fitzgerald v. First East Seventh Street Tenants Corp.,* 221 F.3d 362, 363 (2d Cir.2000) (holding that a district court may dismiss a frivolous claim *sua sponte* even when the plaintiff has paid the required filing fee). Thus, because Brooks has failed to provide a sound legal basis for his claim, this court hereby dismisses his action *sua sponte.*

II. *Claims Against the Court and Disciplinary Committee*

 [1]    "Neither a state nor its officials acting in their official capacities are persons under § 1983." *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Section 1983 does not provide a federal forum for litigants who seek a remedy against the State for alleged deprivations of civil liberties, as the Eleventh Amendment bars such suits. *Id.* at 66. The state court is thus not subject to suit under § 1983, rendering Plaintiff's claim meritless. *See Zuckerman v. Appellate Div.,* 421 F.2d 625, 626 (2d Cir.1970) (state court is part of "judicial arm of the state of New York" and thus not subject to suit under § 1983).

 **\*2** **[2]**    Additionally, a state court and, by extension, its members, are immune from a suit for damages for their judicial acts performed in their judicial capacities. *See Mireles v. Waco,* 502 U.S. 9, 11, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991); *Supreme Court of Virginia v. Consumers Union,* 446 U.S. 719, 734, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980); *Stump v. Sparkman,* 435 U.S. 349, 356, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). Defendants are alleged to have initiated and conducted disciplinary proceedings against plaintiff in a discriminatory manner in violation of 42 U.S.C. § 1985. These proceedings resulted in the recommended disbarment of plaintiff and said recommendation was confirmed by the New York State Supreme Court, Appellate Division, First Department.

The absolute judicial immunity of the court and its members "is not overcome by allegations of bad faith or malice," nor can a judge "be deprived of immunity because the action he took was in error ... or was in excess of his authority." *Mireles,* 502 U.S. at 11, 13 (quotation omitted). The only way that this immunity can be overcome is if the court is alleged to have taken nonjudicial actions or if the judicial actions taken were "in the complete absence of all jurisdiction." *Id.* at 11–12.

"State bar disciplinary hearings ... constitute ... state judicial proceedings." *Whitely v. Comsat Corp.,* No. 00 Civ. 9401(WHP), 2001 WL 1135946, at \*4 (S.D.N.Y. Sept.25, 2001) (citing *Middlesex County Ethics Committee v. Garden State Bar Association,* 457 U.S. 423, 433—434, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982)). In New York, in the matter of attorney disciplinary proceedings, the Appellate Division has exclusive jurisdiction. *Paladin v. Finnerty,* No. 92 CV 2792(JG), 1996 WL 1088915, at \*2 (E.D.N.Y. Mar.28, 1996) (citing N.Y. Judiciary Law §§ 90(1)—(2)), *aff'd,* 104 F.3d 356 (2d Cir.1996). State bar disciplinary proceedings have been found to be "clearly judicial in nature," and thus quasi-judicial immunity is available to members of disciplinary committees and panels. *Lipin v. Nat'l Union Fire Ins. Co. of Piitsburgh, PA.,* 202 F.Supp.2d 126, 134–35 (S.D.N.Y.2002) (quoting *Sassower v. Mangano,* 927 F.Supp. 113, 120–21 (S.D.N.Y.1996)); *see also Barbara v. New York Stock Exchange, Inc.,* 99 F.3d 49, 58 (2d Cir.1996) (noting that courts of appeals have extended absolute immunity to members of bar association disciplinary committees).

Plaintiff has not alleged that any of the defendants have taken nonjudicial actions or that the actions taken were done in the absence of all jurisdiction. Indeed, initiating a disciplinary proceeding and confirming a recommendation by the hearing Referee and Hearing Panel is well within the jurisdiction of the defendants. Therefore, plaintiff's first cause of action

Case 1:25-cv-01150-AJB-TWD    Document 4    Filed 10/20/25    Page 102 of 187

Brooks v. New York State Supreme Court, Appellate Div...., Not Reported in...

2002 WL 31528632

seeking damages is dismissed as against the state court, the Disciplinary Committee, and defendants Cahill and Vallejo.

The Court's inquiry does not end there however, for plaintiff also seeks injunctive relief in the form of reinstatement to the practice of law or a hearing regarding the alleged violations. Plaintiff cites *Supreme Court of Virginia v. Consumers Union, 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980),* as authority which allows a state court to be sued for declaratory or injunctive relief under section 1983 for acts performed in its enforcement capacity. Subsequent to this decision, the Supreme Court extended this doctrine in *Pulliam v. Allen, 466 U.S. 522, 541–42, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984),* and ruled that prospective injunctive relief could be granted against a judicial officer acting in his or her judicial capacity. However, in 1996 Congress enacted the Federal Courts Improvement Act of 1996 ("FCIA"), Pub.L. No. 104–317, 110 Stat. 3847 (1996) (amending 42 U.S.C. § 1983), which effectively reversed the Court's ruling in *Pulliam.* Section 309(c) of the FCIA bars injunctive relief in any section 1983 action "against a judicial officer for an act or omission taken in such officer's judicial capacity ... unless a declaratory decree was violated or declaratory relief was unavailable." Therefore, plaintiff's claim for injunctive relief is also dismissed.

III. *Plaintiff's Claim against his Attorney*
**\*3** Plaintiff has also filed a claim against his former attorney, defendant Michael Ross, under 42 U.S.C. § 1983. His allegations against defendant Ross, however, consist of allegations of professional misconduct rather than constitutional violations. A claim for relief under § 1983 must allege "the deprivation of a right secured by the Constitution or laws of the United States ... which has taken place under color of state law." *Rodriguez v. Weprin,* 116 F.3d 62, 65 (2d Cir.1997). There are no such allegations here.

**[3]** Even if Plaintiff had alleged constitutional violations on the part of defendant Ross, such claims would fail to state a claim under § 1983 because a lawyer is generally not considered to be "a state actor 'under color of state law' within the meaning of § 1983." *Polk County v. Dodson,* 454 U.S. 312, 318, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981) (recognizing the general consensus among the Courts of Appeals); *see generally Cammer v. United States,* 350 U.S. 399, 405, 76 S.Ct. 456, 100 L.Ed. 474 (1956) ("The word 'officer' as it has always been applied to lawyers conveys quite a different meaning from the word 'officer' as applied to people serving as officers within the conventional meaning of that term.").

It is well settled that public defenders, *Polk County,* 454 U.S. at 325, and court-appointed attorneys, *Rodriguez,* 116 F.3d at 65, do not act under color of state law when representing criminal defendants. The role of a privately retained attorney is even more remote to the state than that of public defenders and court-appointed attorneys in that he has an obligation to advance the undivided interests of his client, *see Polk County,* 454 U.S. at 318–319, and his license to practice law does not place him "so close to the center of the political process as to make him a formulator of government policy." *In re Griffiths,* 413 U.S. 717, 729, 93 S.Ct. 2851, 37 L.Ed.2d 910 (1973). Consequently, a privately retained attorney does not act under color of state law within the meaning of § 1983 when representing a client in a civil matter. Accordingly, the Court finds that defendant Ross did not act under color of state law and cannot be held liable under section 1983.

Section 1983 "was enacted to redress civil rights violations by persons acting under color of State law" and should not be used by clients disappointed with the performance of their attorneys. *Mitchell v. Cohen,* No. 90 CV 1836(TCP), 1990 WL 100254, at *1 (E.D.N.Y. Jun.13, 1990). Complaints about the behavior or performance of an attorney should be addressed to the Grievance Committee of the appropriate State Appellate Division. *Id.*

IV. *Younger Abstention*
**[4]** Furthermore, even if plaintiff were not barred for the reasons noted above, this Court would have to abstain from considering this case pursuant to *Younger v. Harris,* 401 U.S. 37 (1971), which holds that federal courts should refrain from interfering with pending state judicial proceedings except under special circumstances. "Where vital state interests are involved, a federal court should abstain 'unless state law clearly bars the interposition of the constitutional claims.' " *Middlesex County Ethics Committee v. Garden State Bar Association,* 457 U.S. 423, 432, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982) (quoting *Moore v. Sims,* 442 U.S. 415, 423, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979)). The State of New York obviously has an important interest in regulating the conduct of attorneys licensed by the state and the New York courts are "competent to consider and determine federal constitutional questions." *Hayes v. State of New York,* No. 01–CV–0545E (SR), 2001 WL 1388325, at *3–4 (W.D.N.Y. Nov.1, 2001). Here, plaintiff notes that he has appealed his disbarment to the New York State Court of Appeals and expects a ruling sometime in August 2002. The *Younger* doctrine is not only applicable to any ongoing attorney disciplinary proceeding,

Case 1:25-cv-01150-AJB-TWD    Document 4    Filed 10/20/25    Page 103 of 187

Brooks v. New York State Supreme Court, Appellate Div...., Not Reported in...

2002 WL 31528632

*id.* at 3, but it is also applicable to the pending appeal in state court. *See Davidson v. Garry,* 956 F.Supp. 265, 269 n. 2 (E.D.N.Y.1996) (citing *New Orleans Public Service, Inc. v. Council of New Orleans,* 491 U.S. 350, 368, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) in extending the *Younger* principles to state civil proceedings), *aff'd,* 112 F.3d 503 (2d Cir.1997)). "[W]hen *Younger* abstention is applicable, abstention is mandatory." *Hayes,* 2001 WL 1388325 at *3 (citing *Schlagler v. Phillips,* 166 F.3d 439, 441 (2d Cir.1999)).

V. *Conclusion*

**\*4** For all of the above stated reasons, plaintiff's complaint is dismissed and his request for a preliminary injunction is denied.

*SO ORDERED.*

CIVIL JUDGMENT

Pursuant to the order issued *August 16, 2002* by the Honorable Reena Raggi, dismissing the complaint and denying the request for a preliminary injunction, it is
ORDERED, ADJUDGED AND DECREED: That the complaint is hereby dismissed and the request for a preliminary injunction is hereby denied.

**All Citations**

Not Reported in F.Supp.2d, 2002 WL 31528632

---

End of Document

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:25-cv-01150-AJB-TWD    Document 4    Filed 10/20/25    Page 104 of 187

Mitchell v. Cohen, Not Reported in F.Supp. (1990)

1990 WL 100254

1990 WL 100254
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

James MITCHELL a/k/a Wamel Allah, Plaintiff,
v.
Lewis D. COHEN, Defendant.

No. CV 90–1836 (TCP).
|
June 13, 1990.

*MEMORANDUM AND ORDER*

PLATT, Chief Judge,

**\*1** Upon review of plaintiff's application to proceed *in forma pauperis,* this Court has concluded that this action must be dismissed as frivolous or malicious pursuant to 28 U.S.C. § 1915(d).

Plaintiff, James Mitchell, has filed a complaint pursuant to 42 U.S.C. § 1983 against his defense counsel, Lewis D. Cohen, alleging civil rights violations during counsel's representation of plaintiff on criminal indictment ## 1632/76 in New York State Supreme Court, Kings County.

Plaintiff alleges that defendant's representation during the State proceedings was ineffective and that defendant breached his fiduciary duties to plaintiff. It is alleged that defendant failed to cross examine an expert witness, failed to advise plaintiff of the evidence available for trial, and failed to properly evaluate evidence in defendant's possession. Plaintiff alleges further that the overt acts, as well as omissions, of the defendant were "intentionally designed to cause malicious injury" and, thereby, constitute a breach of defendant's fiduciary duties. Complaint at 7–8.

For the alleged violations of his civil rights, plaintiff demands judgment in the amount of twenty-five million dollars. Complaint at 8.

*42 U.S.C. § 1983 RELIEF*

A plaintiff filing an action under 42 U.S.C. § 1983 must allege that the defendant was acting under color of State law in order for a court to find defendant liable for the alleged violations and assess damages. *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 159 n. 5 (1978); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150 (1970); *Monroe v. Pape,* 365 U.S. 167 (1961).

Private counsel representing a defendant in a criminal case does not act under color of State law and, therefore, is not subject to liability under 42 U.S.C. § 1983. *Polk County, et al., v. Dodson,* 454 U.S. 312, 318–19 (1981)[1]. Court-appointed counsel also does not act under color of State law for the purposes of 42 U.S.C. § 1983. *Id.* at 324–325.

Plaintiff's complaint prays for relief solely on plaintiff's disappointment with his defense counsel during his State criminal proceedings. Ineffective assistance of counsel is a matter to be raised on appeal, or by collateral means, attacking the conviction in State court. Unprofessional or irresponsible behavior on the part of an attorney should be addressed to the Grievance Committee of the appropriate State Appellate Division. 42 U.S.C. § 1983 was enacted to redress civil rights violations by persons acting under color of State law. It was not enacted to appease disaffected clients by fining their attorneys. Plaintiff has not alleged anything that his defense counsel did or did not do which could be construed as acting under color of State law. Therefore, as a matter of law, plaintiff has not stated a set of facts or merited legal theory that could abrogate the defendant's immunity to this action as expressed in *Polk County* and, thus, this action must be dismissed.

*CONCLUSION*

**\*2** 28 U.S.C. § 1915(d) authorizes the dismissal of actions brought *in forma pauperis* where the Court determines that the action is frivolous or malicious. Plaintiff's complaint against his former counsel is not cognizable under 42 U.S.C. § 1983 as a matter of law and is, therefore, frivolous pursuant to 28 U.S.C. § 1915(d). *Neitzke v. Williams,* ——— U.S. ———, 109 S.Ct. 1827, 1833 (1989) (citing claims against which defendants are immune as an example of meritless legal actions that may be dismissed *sua sponte* under 28 U.S.C. § 1915(d)).

Wherefore, plaintiff's complaint is hereby dismissed.

SO ORDERED.

1     "Within the context of our legal system, the duties of a defense lawyer are those of a personal counselor and advocate. It is often said that lawyers are 'officers of the court.' But the Courts of Appeals are agreed that a lawyer representing a

client is not, by virtue of being an officer of the court, a state actor 'under color of state law' within the meaning of § 1983."

454 U.S. 312, at 318 (footnote omitted).

**All Citations**

Not Reported in F.Supp., 1990 WL 100254

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Dougal v. Lewicki, Not Reported in Fed. Supp. (2023)

2023 WL 6430586

Case 1:25-cv-01150-AJB-TWD    Document 4    Filed 10/20/25    Page 106 of 187

2023 WL 6430586
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Robert DOUGAL, Plaintiff,

v.

Eric LEWICKI, et al., Defendants.

No. 1:23-CV-1167 (DNH/CFH)
|
Signed October 3, 2023

**Attorneys and Law Firms**

Robert Dougal, 294 Wilbur Road, Schuylerville, New York 12871, Plaintiff pro se.

**REPORT-RECOMMENDATION AND ORDER**

Christian F. Hummel, United States Magistrate Judge

### I. Background

**\*1** Plaintiff pro se Robert Dougal ("plaintiff") commenced this action on September 12, 2023, by filing a complaint. See Dkt. No. 1 ("Compl."). Plaintiff also filed an application to proceed in forma pauperis ("IFP"). See Dkt. No. 2. The undersigned has reviewed plaintiff's IFP application and determines that he financially qualifies to proceed IFP. [1]

[1]    Plaintiff is advised that although he has been granted IFP status, he is still required to pay any fees and costs he may incur in this action.

### II. Initial Review

#### A. Legal Standard

Section 1915 [2] of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). It is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action.

[2]    The language of § 1915 suggests an intent to limit availability of IFP status to prison inmates. See 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section as making IFP status available to any litigant who can meet the governing financial criteria. See, e.g., Fridman v. City of N.Y., 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

Where, as here, the plaintiff proceeds pro se, "the court must construe his [or her] submissions liberally and interpret them to raise the strongest arguments that they suggest." Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (citation and internal quotation marks omitted). This does not mean the Court is required to accept unsupported allegations that are devoid of sufficient facts or claims. Although detailed allegations are not required at the pleading stage, the complaint must still include enough facts to provide the defendants with notice of the claims against them and the grounds on which these claims are based. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007). Pro se litigants are "not exempt ... from compliance with relevant rules of procedural and substantive law[.]" Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (citation omitted). Ultimately, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation omitted).

Pleading guidelines are set forth in the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). Specifically, Rule 8 provides that a pleading which sets forth a claim for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Rule 8 also requires the pleading to include "a short and plain statement of

the grounds for the court's jurisdiction" and "a demand for the relief sought ...." FED. R. CIV. P. 8(a)(1), (3). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." Id. at 8(d)(1).

**\*2** Further, Rule 10 provides in pertinent part that:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 55 (internal quotation marks and citations omitted). A complaint that fails to comply with the pleading requirements "presents far too [ ] heavy [a] burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). The Second Circuit has held that "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citation omitted). However, "[d]ismissal ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citation omitted). If dismissal is warranted and the plaintiff is pro se, the court generally affords the plaintiff leave to amend the complaint. See Simmons v. Abruzzo, 49 F.3d 83, 86-87 (2d Cir. 1995).

### B. Plaintiff's Complaint

Plaintiff names eight current or former police officers, four county attorneys, three current or former town justices, and one defense attorney as defendants. See Compl. at 2-5.

Plaintiff alleges that on January 25, 2017, while at a doctor's appointment, plaintiff's partner, Susan Yerry, saw someone cutting down a tree on her property. See Compl. at 6, ¶ 4. Ms. Yerry called the New York State Police and defendant, State Trooper Eric Lewicki, responded. See id. Trooper Lewicki spoke with the loggers who stated that they would not cut down any other trees. See id. After plaintiff returned home, he and Ms. Yerry looked at the tree and they saw two Saratoga County Sheriff's vehicles driving by. See id. The damage to the trees was worse than they thought, and they flagged the vehicles down. See id. Plaintiff asked defendants, Saratoga County Sheriff's Deputy C.J. Brownell and Saratoga County Sheriff's Deputy John Carey, to investigate the timber theft. See id. Deputies Brownell and Carey questioned plaintiff about "gunshots, because one of the three loggers involved in the timber theft claimed to have heard gunshots." Id. Deputy Carey handcuffed plaintiff and Deputy Brownell threw plaintiff to the ground and knelt on his back. See id.

Defendants Lewicki, Trooper Christopher Martin, and retired Sergeant Brent Dupras arrived at the scene. See Compl. at 6, ¶ 4. Trooper Martin held Ms. Yerry's arm and "would not allow Ms. Yerry to enter her house unless she let him in to retrieve her firearm." Id. at 7, ¶ 6. Trooper Martin and Deputy Carey confiscated two firearms and plaintiff's medications. See id. Plaintiff was transported to the State Police Barracks in Malta, New York. See id. at 7, ¶ 7. Plaintiff alleges that he "was denied his evening dose of medications while in custody ...." Id. at 7, ¶ 8. He was charged with criminal possession of a weapon in the fourth degree and illegal discharge of a firearm. See id. at 7, ¶ 9. Plaintiff alleges that on February 8, 2018, defendant, former Saratoga County Town Justice Daniel Waldron, denied his motion to dismiss the charges. See id. at 7, ¶ 10.

**\*3** On August 12, 2018, plaintiff saw Deputy Brownell standing on the road in front of his house with an assault rifle pointed at plaintiff. See Compl. at 8, ¶ 13. Ms. Yerry asked why he was there, and Deputy Brownell responded, "wrong address." Id. Then, approximately seven law enforcement officers, including Deputies Brownell and Carey drove to Ms. Yerry's property and refused to explain why they were there. See id. at 8, ¶ 14. Ms. Yerry called and filed a complaint with the Saratoga County Sheriff's Office. See id. at 8, ¶ 15. Plaintiff contends that defendant, Saratoga County Sherriff Michael Zurlo, never responded to her complaint. See id. Six weeks later, Ms. Yerry received a summons in the mail for trespassing charges. See id. at 8, ¶ 17. Plaintiff contends that Ms. Yerry tried to contact Sherriff Zurlo multiple times, but he

Case 1:25-cv-01150-AJB-TWD    Document 4    Filed 10/20/25    Page 108 of 187

Dougal v. Lewicki, Not Reported in Fed. Supp. (2023)

2023 WL 6430586

did not respond. See id. at 8-9, ¶¶ 16, 18, 19. Justice Walden found Ms. Yerry guilty of the trespassing charges on April 2, 2019. See id. at 9, ¶ 20.

Plaintiff contends that in response to a Freedom of Information Act ("FOIA") request submitted by Ms. Yerry, he learned that his neighbor called 911 on August 12, 2018, threatening to shoot plaintiff if plaintiff came onto his property. See Compl. at 9, ¶ 21. Plaintiff states that defendant Assistant District Attorney Rachel Welch Phelan was aware of the 911 call and instead of prosecuting his neighbor for the threat, chose to prosecute Ms. Yerry for trespassing. See id. at 9, ¶ 22.

Plaintiff went to trial on October 28, 2019, during which Deputy Brownell testified that he put plaintiff on the ground to handcuff him. See Compl. at 9, ¶ 23. Plaintiff contends that this testimony was contrary to Deputy Brownell's Huntley hearing testimony. See id. Plaintiff's defense counsel at trial was defendant Attorney Lee Kindlon. See id. at 10, ¶ 25. Plaintiff was acquitted of illegal discharge of a weapon and convicted of criminal possession of a weapon. See id. at 10, ¶ 26. Plaintiff was sentenced to six months' imprisonment on January 7, 2020. See id. at 10, ¶ 28.

Plaintiff contends that on January 29, 2020, the Saratoga County Correctional Facility withheld his medications for twenty-four hours. See Compl. at 10, ¶ 29. He states that on March 3, 2020, Justice Waldron increased his sentence to nine months because plaintiff was appealing his conviction. See id. at 10, ¶ 30.

Two temporary orders of protection were issued against plaintiff for Aime Ferrone and Marilyn Erano who own the trailer park across the road from plaintiff's house. See Compl. at 10-11, ¶ 31. Mr. Ferrone videotaped plaintiff pacing and ranting on his phone on plaintiff's front porch. See id. at 11, ¶ 31. Defendant Deputy William Brady arrested plaintiff and charged him with criminal contempt in the second degree. See id. at 11, ¶ 32. Plaintiff contends that the criminal contempt charge "remains unresolved" as of the date of his complaint, September 12, 2023. See id. at 11, ¶ 34. Plaintiff alleges that there is no valid reason for the orders of protection. See id.

Then, "[o]n January 31, 2021, Ms. Yerry learned that Defendant Rachael Welch Phelan, who prosecuted Ms. Yerry, was a second cousin on the complainant on her trespassing charges." Compl. at 11, ¶ 35. Ms. Yerry contacted Mr. Kindlon who represented her in her appeal of the trespassing

conviction. See id. at 11-12, ¶ 35. Mr. Kindlon informed plaintiff and Ms. Yerry that he and Ms. Phelan came to an agreement about plaintiff's appeal and retrial because Ms. Phelan agreed that there were errors at plaintiff's trial. See id. at 12, ¶ 37. Ms. Yerry contacted Mr. Kindlon multiples times concerning court records, but he did not respond. See id. at 12-13, ¶¶ 38-41. On June 1, 2021, Mr. Kindlon e-mailed Ms. Yerry explaining that plaintiff would be offered a plea deal in which he could plead guilty to a misdemeanor if he dismissed his appeal, and he would not have to go to prison. See id. at 13, ¶ 43. Plaintiff and Ms. Yerry eventually received trial transcripts and plaintiff alleges that they were alerted. See id. at 14, ¶ 47.

**\*4** Plaintiff and Ms. Yerry hired Attorney Matthew Hug to appeal plaintiff's conviction. See Compl. at 14, ¶ 52. Ms. Yerry learned that Mr. Kindlon never filed a notice of appeal, but signed an affirmation in support of a motion to extend the time to perfect an appeal. See id. at 15, ¶ 53. Plaintiff's appeal was dismissed on May 10, 2022, and he filed an application to the Court of Appeals on May 17, 2022. See id. at 16, ¶¶ 56-57.

Plaintiff contends that defendant Trooper Nick Dziamba charged him with criminal contempt in the second degree and harassment in the second degree on July 14, 2022, after his neighbors "made up random complaints about the Plaintiff yelling in his backyard." Compl. at 16, ¶ 58. Justice Waldron remanded plaintiff to jail on October 24, 2022, pending a presentence investigation report. See id. at 17, ¶ 63. Justice Waldron sentenced plaintiff to six months' imprisonment on December 6, 2022. See id. at 17, ¶ 66.

In March 2023, Ms. Yerry discovered a 2016 e-mail from Trooper Lewicki in which he placed plaintiff's home on "house watch." Compl. at 18, ¶ 69. Plaintiff alleges that he hired a private detective who spoke to two jurors from plaintiff's criminal possession of a weapon trial. See Compl. at 19, ¶ 73. One juror stated that the jurors were confused about one of the charges. See id.

Plaintiff alleges violations of his First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights and alleges a conspiracy claim pursuant to 42 U.S.C. §§ 1983, 1985. See Compl. at 19.

### III. Analysis

Dougal v. Lewicki, Not Reported in Fed. Supp. (2023)

Case 1:25-cv-01150-AJB-TWD    Document 4    Filed 10/20/25    Page 109 of 187

2023 WL 6430586

## A. Judicial Immunity

Plaintiff seeks to sue former Saratoga Town Justice Daniel Waldon, and Saratoga Town Justices Charles Sherman and John McCarron. See Compl. at 5.

The Eleventh Amendment to the U.S. Constitution states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Thus, "[a]s a general rule, state governments and their agencies may not be sued in federal court unless they have waived their Eleventh Amendment immunity or there has been a valid abrogation of that immunity by Congress." Kisembo v. N.Y.S. Office of Children & Family Servs., 285 F. Supp. 3d 509, 519 (N.D.N.Y. 2018) (quoting Jackson v. Battaglia, 63 F. Supp. 3d 214, 219-20 (N.D.N.Y. 2014)). "This jurisdictional bar applies regardless of the nature of the relief sought." Murawski v. N.Y. State Bd. of Elections, 285 F. Supp. 3d 691, 695 (S.D.N.Y. 2018) (quoting Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984)). "This immunity 'extends beyond state agencies to state officials at those agencies working on behalf of the state (i.e., in their official capacities).' " Kisembo, 285 F. Supp. 3d at 519 (quoting Emmons v. City Univ. of N.Y., 715 F. Supp. 2d 394, 406 (E.D.N.Y. 2010)).

"With minor exceptions, judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions." Zavalidroga v. Girouard, No. 6:17-CV-682 (BKS/ATB), 2017 WL 8777370, at *8 (N.D.N.Y. July 7, 2017) (citing Mireles v. Waco, 502 U.S. 9, 9-10 (1991) (per curiam)). [3] "Judicial immunity has been created for the public interest in having judges who are 'at liberty to exercise their functions with independence and without fear of consequences.' " Id. (quoting Huminski v. Corsones, 396 F.3d 53, 74 (2d Cir. 2004)). "Judicial immunity applies even when the judge is accused of acting maliciously or corruptly." Id. (citation omitted). "Judicial immunity is immunity from suit, not just immunity from the assessment of damages." Id. (citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). "The only two circumstances in which judicial immunity does not apply is when he or she takes action 'outside' his or her judicial capacity and when the judge takes action that, although judicial in nature, is taken 'in absence of jurisdiction.' " Id. (quoting Mireles, 502 U.S.

at 11-12). "Injunctive relief against judges is also barred 'unless a declaratory decree was violated or declaratory relief was unavailable.' " Id. (quoting Bobrowski v. Yonkers Courthouse, 777 F. Supp. 2d 692, 711 (S.D.N.Y. 2011)).

3      All unpublished decisions cited in this Report-Recommendation and Order have been provided to plaintiff, unless noted otherwise.

**\*5** As for Justice Waldron, plaintiff alleges that Justice Waldron denied a motion to dismiss, sentenced him, and remanded him to jail. See Compl. at 7, ¶ 10; 10, ¶ 30; 17, ¶¶ 63, 66. Plaintiff alleges that Justices Sherman and McCarron presided over a February 7, 2023, conference concerning protection order violations. See id. at 18, ¶ 68. Plaintiff also contends that Justices "McCarron and Sherman have not responded to Matthew Hug's Notice of Omnibus Motion requesting dismissal." Id. at 23, ¶ 96. Plaintiff does not allege that any of the town justices acted absent jurisdiction or outside the bounds of their judicial authority. See generally id. As the allegations concern conduct taken in the town justices' capacities as judges, they are immune from suit. See Publicola v. Lomenzo, No. 1:21-CV-1303 (DNH), 2022 WL 1027099, at *11 (N.D.N.Y. Apr. 5, 2022) ("Upon review, [the] plaintiff's § 1983 claims against Town Justice Lomenzo ... must be dismissed ...."), appeal dismissed, 54 F.4th 108 (2d Cir. 2022); Burdick v. Town of Schroeppel, 717 F. App'x 92, 93 (2d Cir. 2018) (summary order) (affirming district court's conclusion that town justice was entitled to judicial immunity). Thus, it is recommended that the claims against the town justices be dismissed.

## B. Prosecutorial Immunity

"Absolute immunity bars a civil suit against a prosecutor for advocatory conduct that is 'intimately associated with the judicial phase of the criminal process.' " Giraldo v. Kessler, 694 F.3d 161, 165 (2d Cir. 2012) (quoting Imbler v. Pachtman, 424 U.S. 409, 430 (1976)). "This immunity attaches to conduct in court, as well as conduct 'preliminary to the initiation of a prosecution and actions apart from the courtroom.' " Id. (citation omitted). "Prosecutorial immunity from § 1983 liability is broadly defined, covering virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." Id. (quotation marks omitted) (alteration in original) (quoting Hill v. City of New York, 45 F.3d 653, 661 (2d Cir. 1995)). "[A] prosecutor's functions preliminary to the initiation of proceedings include

2023 WL 6430586

'whether to present a case to a grand jury, whether to file an information, whether and when to prosecute, whether to dismiss an indictment against particular defendants, which witnesses to call, and what other evidence to present.' " Id. (quoting Imbler, 424 U.S. at 431 n.33); see also LoPorto v. Cnty. of Rensselaer, No. 1:15-CV-0866 (LEK/DJS), 2018 WL 4565768, at *7 (N.D.N.Y. Sept. 24, 2018) ("The initiation of a prosecution is an essential element of a malicious prosecution claim, and so prosecutors are generally immune to malicious prosecution claims.").

Additionally, "[i]n Van de Kamp v. Goldstein, 555 U.S. 335, 344 (2009), the Supreme Court extended prosecutorial immunity to claims against a district attorney for failure to properly train and supervise assistant prosecutors ...." Morris v. Martin (NAM/TWD), No. 5:16-CV-00601, 2017 WL 1047328, at *5 (N.D.N.Y. Jan. 5, 2017), report and recommendation adopted, 2017 WL 1090019 (N.D.N.Y. Mar. 22, 2017). "In order to sustain a § 1983 claim against a district attorney as a municipal policymaker, a plaintiff must show that he suffered a constitutional violation and that the violation resulted from an identified municipal policy or custom." Wilkins v. Soares, No. 8:20-CV-0116 (LEK/CFH), 2020 WL 3286507, at *4 (N.D.N.Y. June 18, 2020) (citing Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658 (1978)).

> A municipal policy or custom may be established where the facts show: (1) a formal policy, officially promulgated by the municipality; (2) an action taken by an official who is responsible for establishing municipal policies with respect to the subject matter in question; (3) an unlawful practice by subordinate officials so permanent and widespread as to practically have the force of law; or (4) a failure to train, supervise, or discipline that amounts to "deliberate indifference" to the rights of those with whom the municipality's employees interact[.]

**\*6** Id. (internal citations omitted).

Plaintiff seeks to sue Saratoga County Attorney Michelle Granger, Saratoga County District Attorney Karen Heggen,

Assistant District Attorney Rachel Welch Phelan, and Assistant District Attorney Anna Besson. See Compl. at 3-4.

Plaintiff's complaint contains allegations against Attorney Welch in her capacity as the prosecutor in Ms. Yerry's trespassing case and in plaintiff's criminal possession case. See Compl. at 9, ¶¶ 22, 24; 11, ¶ 35. Plaintiff alleges that Attorney Heggen "failed to properly train and supervise" Attorney Phelan. Compl. at 20-21, 23, 25-27, ¶¶ 78, 85, 95, 105, 110, 117. Plaintiff alleges that Attorney "Besson continues to prosecute the Plaintiff on one count of Criminal Contempt Second Degree from May 25, 2020, one count of Criminal Contempt Second Degree from July 14, 2020, and one count of Harassment Second Degree from July 14, 2020." Compl. at 23, ¶ 94. Plaintiff's complaint does not contain any allegations against Attorney Granger. See generally id.

As plaintiff seeks to sue the named prosecutors for their roles in prosecuting him, the prosecutors are absolutely immune from suit. See Giraldo, 694 F.3d at 165. To the extent plaintiff seeks to sue Attorney Heggen for a failure to train, he does not identify a policy or custom that she created or promulgated which violated his constitutional rights. Thus, he has failed to state a claim for Monell liability. It is recommended that plaintiff's claims against the prosecutors be dismissed.

### C. Defense Counsel

Section 1983 permits a person to recover damages for the deprivation of constitutional rights "under color of any statute, ordinance, regulation, custom, or usage of any State or Territory." 42 U.S.C. § 1983. "[I]t is well-established that court-appointed attorneys performing a lawyer's traditional functions as counsel to defendant do not act 'under color of state law' and therefore are not subject to suit under 42 U.S.C. § 1983." Rodriguez v. Weprin, 116 F.3d 62, 65-66 (2d Cir. 1997); see also Blount v. Cnty. of Onondaga, No. 5:20-CV-937 (GTS/TWD), 2020 WL 9264843, at *7 (N.D.N.Y. Oct. 19, 2020) ("Private attorneys, whether court appointed or privately retained, are generally not liable under Section 1983 .... Because of this lack of state action, [the p]laintiff's claims against his criminal defense attorneys are not cognizable under Section 1983."), report and recommendation adopted, 2021 WL 958456 (N.D.N.Y. Mar. 15, 2021). "In addition, a section 1983 action 'is not the appropriate vehicle to raise a claim of ineffective assistance of counsel.' " Welch v. Schenectady Cnty., No. 1:22-CV-9 (DNH/DJS), 2022 WL 3904113, at *2 (N.D.N.Y. Aug. 10, 2022) (citation omitted),

Dougal v. Lewicki, Not Reported in Fed. Supp. (2023)
Case 1:25-cv-01150-AJB-TWD     Document 4     Filed 10/20/25     Page 111 of 187
2023 WL 6430586

report and recommendation adopted, 2022 WL 3908798 (N.D.N.Y. Aug. 30, 2022).

Plaintiff seeks to sue Attorney Lee Kindlon for his actions taken as his and Ms. Yerry's criminal defense attorney. See Compl. at 27-28, ¶¶ 120-22. Attorney Kindlon is not a state actor. Plaintiff summarily asserts that Attorney Kindlon "conspired with government officials to deprive the Plaintiff of his civil rights to due process." Id. at 28, ¶ 121. However, "[a] merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity." Ciambriello v. Cnty. of Nassau, 292 F.3d 307, 324 (2d Cir. 2002). Thus, Attorney Kindlon is not liable under § 1983 and it is recommended that the claims against him be dismissed.

### D. Statute of Limitations

 *7  "The statute of limitations for claims brought under Section 1983 is governed by state law, and in this case is the three-year period for personal injury actions under New York State law." Smith v. Campbell, 782 F.3d 93, 100 (2d Cir. 2015) (quoting Shomo v. City of New York, 579 F.3d 176, 181 (2d Cir. 2009)). A "claim accrues when the plaintiff knows or has reason to know of the harm." Connolly v. McCall, 254 F.3d 36, 41 (2d Cir. 2001) (per curiam) (citation and quotation marks omitted). "Although the statute of limitations is an affirmative defense, and must generally await a defense motion, dismissal at this stage is appropriate when the facts supporting the statute of limitations defense are set forth in the papers that a plaintiff submits." Velez v. Paredez, No. 9:22-CV-0362 (LEK/ML), 2022 WL 2904380, at *5 (N.D.N.Y. July 22, 2022) (citing Pino v. Ryan, 49 F.3d 51, 53 (2d Cir. 1995) (holding that, for purposes of an initial review under 28 U.S.C. § 1915, a court "may" find "that a complaint is based on an indisputably meritless legal theory" if an affirmative defense, such as the statute of limitations, "appears on the face of the complaint"); Akassy v. Hardy, 887 F.3d 91, 95 (2d Cir. 2018) (confirming that sua sponte dismissals for failure to state a claim under the in forma pauperis statute are appropriate when the "inclusion of dates in the complaint indicat[e] that the action is untimely")).

Further, "[i]n malicious prosecution suits under Section 1983, the statute of limitations begins to run when the prosecution 'terminate[s] in the plaintiff's favor.' " Spak v. Phillips, 857 F.3d 458, 462 (2d Cir. 2017) (alteration in original) (quoting Poventud v. City of N.Y., 750 F.3d 121, 130 (2d Cir. 2014)

(en banc)). "A 'favorable termination' does not occur until the prosecution against the plaintiff has 'conclusively' ended." Id. (quoting Murphy v. Lynn, 53 F.3d 547, 548 (2d Cir. 1995)).

Here, plaintiff seeks to bring his complaint concerning allegations from January 25, 2017, to the present. See Compl. at 6, ¶ 4; 11, ¶ 34. First, plaintiff does not allege that all of his convictions have resulted in a favorable termination. Insofar as plaintiff was acquitted of illegal discharge of a weapon in 2019, he would have had to bring his claim by 2022. See Compl. at 10, ¶ 26. Second, the only named defendants who are not immune from suit under judicial or prosecutorial immunity are the law enforcement defendants: Lewicki, Martin, Dziamba, Zurlo, Brownell, Carey, and Brady.

Plaintiff's allegations against a majority of the officers are time barred. His latest allegation against Deputy Brady was that he charged plaintiff with criminal contempt in May 2020. See Compl. at 11, ¶ 32. He contends that Deputy Brownell falsely testified at his trial on October 28, 2019. See id. 9, ¶ 23. Plaintiff states that Sheriff Zurlo did not respond to Ms. Yerry's phone calls on March 19, 2019. See id. at 9, ¶ 19. He alleges that Deputy Carey parked on Ms. Yerry's property on April 12, 2018. See id. at 8, ¶¶ 13-14. Finally, he states that Trooper Martin held Ms. Yerry's arm and made her get the guns out of her house on January 25, 2017. See id. at 7, ¶ 6. The three-year statute of limitations ran for these claims between January 2020 and May 2023. Thus, plaintiff cannot bring his claims against defendants Brady, Brownell, Zurlo, Carey, and Martin. It is recommended that those claims be dismissed. See Ajamian v. Zakarian, No. 1:14-CV-321 (DNH/TWD), 2014 WL 4247784, at *5, n.4 (N.D.N.Y. Aug. 26, 2014) ("Where it is clear from the face of the complaint that a claim is barred by the applicable statute of limitations, the claim is subject to dismissal for failure to state a claim on § 1915(e)(2) (B) review even though the statute of limitations bar is an affirmative defense."). However, out of deference to plaintiff's pro se status, the undersigned recommends dismissal without prejudice. See Abbas v. Dixon, 480 F.3d 636, 640 (2d Cir. 2007) (remanding the district court's sua sponte dismissal of a complaint because although the statute of limitations had run, "[t]he District Court could not tell from the face of [the plaintiff's] complaint whether he might have meritorious tolling arguments.").

As to Trooper Lewicki, plaintiff contends that Trooper Lewicki's charged plaintiff with criminal possession of a weapon and illegal discharge of a firearm on January 25, 2017. See Compl. at 6-7, ¶¶ 4, 9. This claim is time barred

Case 1:25-cv-01150-AJB-TWD    Document 4    Filed 10/20/25    Page 112 of 187

Dougal v. Lewicki, Not Reported in Fed. Supp. (2023)

2023 WL 6430586

as plaintiff would have had to bring a claim by January 2020. However, plaintiff contends that on March 30, 2023, Ms. Yerry learned that Lewicki sent an e-mail in 2016 which placed plaintiff's house on "watch." Id. at 18, ¶ 69. Thus, because plaintiff did not learn of this until 2023, the statute of limitations may not have run, and the undersigned will address whether plaintiff has stated a claim. Similarly, his claims against Trooper Dziamba do not appear to be time barred as his latest allegation against Trooper Dziamba is that he charged plaintiff with crimes on July 14, 2022. See id. at 16, ¶ 58. Thus, the undersigned will also address whether plaintiff has stated a claim against Trooper Dziamba.

### E. Failure to State a Claim

**\*8** Plaintiff alleges that on March 30, 2023, following a FOIA request, Ms. Yerry learned that Trooper Lewicki placed plaintiff's house on a "watch" in 2016. Compl. at 18, ¶ 69. The e-mail from Trooper Lewicki indicated that plaintiff "expressed disdain and extreme dislike for police" and that he kept "a shotgun nearby[.]" Id. Plaintiff contends that he was denied due process "when he was unfairly labeled or listed as requiring 'house watch' by Defendant Lewicki[.]" Id. at 20, ¶ 77.

"A procedural due process analysis proceeds with two questions. '[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.' " Shakur v. Selsky, 391 F.3d 106, 118 (2d Cir. 2004) (quoting Kentucky Dep't of Corrs. v. Thompson, 490 U.S. 454, 460 (1989)). Plaintiff does not explain what liberty or property interest was violated by Trooper Lewicki placing plaintiff's house on "watch." Compl. at 18, ¶ 69. Even assuming he had stated a recognized liberty or property interest, he does not allege what procedures were taken to place his home on watch, what procedures should have taken place, or how any procedures were inadequate. Thus, plaintiff's conclusory allegation that Trooper Lewicki's conduct violated his due process rights is insufficient to state a claim.

Plaintiff also references an unreasonable search and seizure. See Compl. at 20, ¶ 77. The Supreme Court has "held that visual observation is no 'search' at all ...." Kyllo v. United States, 533 U.S. 27, 32 (2001) (quoting Dow Chemical Co. v. United States, 476 U.S. 227, 234-235, 239 (1986)). As such, plaintiff's allegations that Trooper Lewicki placed his house

on "watch" does not state a Fourth Amendment claim. See Palmieri v. Lynch, 392 F.3d 73, 81 (2d Cir. 2004) (citations omitted) (reiterating that "a merely 'visual observation' " is not a search).

Plaintiff seeks to bring false imprisonment claims. See Compl. at 25. "Under New York law, the elements of a false arrest and false imprisonment claim are: '(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.' " Hernandez v. United States, 939 F.3d 191, 199 (2d Cir. 2019) (quoting McGowan v. United States, 825 F.3d 118, 126 (2d Cir. 2016) (per curiam)). "For purposes of the privilege element of a false arrest and imprisonment claim, an act of confinement is privileged if it stems from a lawful arrest supported by probable cause." Id. (citation omitted). "Officers have probable cause when 'they have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.' " Id. (quoting Posr v. Court Officer Shield No. 207, 180 F.3d 409, 414 (2d Cir. 1999)).

Plaintiff alleges that he "committed no crime[,]" but also states that he was convicted and sentenced by a town justice. Compl. at 26, ¶ 109; see also id. at 10, ¶ 26; 17, ¶ 66. Insofar as the charges and subsequent convictions and sentences were based on probable cause, plaintiff cannot state a false arrest or imprisonment claim.

Finally, plaintiff states that the officers violated his First Amendment rights by arresting him for his free speech. See Compl. at 22-23, ¶¶ 88-96. "To state a First Amendment retaliation claim, a plaintiff must establish that: (1) his speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him; and (3) there was a causal connection between this adverse action and the protected speech." Cox v. Warwick Valley Cent. Sch. Dist., 654 F.3d 267, 272 (2d Cir. 2011). "The presence of probable cause should generally defeat a First Amendment retaliatory arrest claim." Nieves v. Bartlett, 139 S. Ct. 1715, 1726 (2019). "Speech is protected under the First Amendment when it can be 'fairly characterized as constituting speech on a matter of public concern.' " Burns v. Cook, 458 F. Supp. 2d 29, 39 (N.D.N.Y. 2006) (quoting Connick v. Myers, 461 U.S. 138, 146 (1983)). "[W]here matters of purely private significance are at issue, First Amendment protections are often less

Case 1:25-cv-01150-AJB-TWD   Document 4   Filed 10/20/25   Page 113 of 187

Dougal v. Lewicki, Not Reported in Fed. Supp. (2023)

2023 WL 6430586

rigorous. That is because restricting speech on purely private matters does not implicate the same constitutional concerns as limiting speech on matters of public interest[.]" Snyder v. Phelps, 562 U.S. 443, 452 (2011) (citations and quotation marks omitted) (alteration in original).

**\*9** Plaintiff alleges that defendant Dziamba violated his free speech rights by arresting and charging him on July 15, 2022. See Compl. at 23, ¶ 92. Plaintiff does not allege what he was discussing on his front porch or that Dziamba had any knowledge about plaintiff's specific speech. Plaintiff contends that "[a]ll Defendants listed violated" his free speech rights "by the continued prosecution of the Plaintiff." Id. at 23, ¶ 93. He does not contend what speech "[a]ll Defendants" have prosecuted him for. Id. Thus, he has not alleged that his speech was protected, and he has not sufficiently alleged a First Amendment claim.

Regardless, because delving into plaintiff's claims would run afoul of the Younger and Rooker-Feldman doctrines, the undersigned recommends dismissing the claims.

### F. Younger and Rooker-Feldman

To the extent state criminal charges are still pending against plaintiff, the Court should abstain from interfering under the Younger doctrine. Under Younger v. Harris, 401 U.S. 37 (1971), "it is appropriate for a federal court to abstain from exercising jurisdiction where ... (1) there is an ongoing state proceeding; (2) an important state interest is implicated; and (3) the plaintiff has an avenue open for review of constitutional claims in the state court." McCulley v. N.Y.S. Dep't of Env't Conservation, 593 F. Supp. 2d 422, 430 (N.D.N.Y. 2006) (citation omitted). "[S]o long as the constitutional claims of [plaintiffs] can be determined in the state proceedings ... the federal courts should abstain." Spargo v. New York State Comm'n on Jud. Conduct, 351 F.3d 65, 76-77 (2d Cir. 2003) (second alteration in original) (quotation marks omitted) (quoting Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 434-35 (1982)). "[T]o avoid abstention, plaintiffs must demonstrate that state law bars the effective consideration of their constitutional claims." Id. at 78. "The relevant question under Younger is 'whether the state's procedural remedies *could* provide the relief sought [not] ... whether the state *will* provide' the constitutional ruling which the plaintiff seeks." Id. at 79 (alteration in original) (citation omitted).

Plaintiff requests "[a]n immediate injunction ... to stop the prosecution of the Plaintiff on the Criminal Contempt and Harassment Charges" Compl. at 29, ¶ 130. The charges are still pending, they implicate important state interests in administering state criminal charges, and plaintiff can appeal a conviction or sentence in state court. See Kirschner v. Klemons, 225 F.3d 227, 233 (2d Cir. 2000) (citation omitted) ("In *Younger* ..., the Supreme Court stated the principle that 'a federal court may not enjoin a pending state criminal proceeding in the absence of special circumstances suggesting bad faith, harassment or irreparable injury that is both serious and immediate.' "). Plaintiff has not alleged bad faith or harassment on the named defendants' part but contends that his neighbors' complaints which led to the charges were false. See Compl. at 16, ¶ 58. This is insufficient to overcome the presumption that federal courts should not interfere in ongoing state criminal matters. See Anilao v. Spota, 27 F.4th 855, 866 (2d Cir. 2022) (citation omitted) ("Absolute immunity ... shielded the prosecutors' conduct because the indictment contained allegations that, even if completely false, could authorize the prosecutors to prosecute ...."), cert. denied sub nom. Anilao v. Spota, III, 143 S. Ct. 1781 (2023). Thus, it is recommended that any claims be dismissed.

As for plaintiff's convictions, "[t]he *Rooker–Feldman* doctrine effectively precludes lower federal courts 'from exercising appellate jurisdiction over final state-court judgments.' " DeMeo v. Kean, 754 F. Supp. 2d 435, 448 (N.D.N.Y. 2010) (quoting Lance v. Dennis, 546 U.S. 459, 463 (2006) (per curiam)). The "doctrine applies if ...: (1) the plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state court judgment; (3) the plaintiff requests the district court to review and reject the state court judgment; and (4) the state court judgment was rendered before the proceedings commenced in the district court." Id. (citing V.S. v. Muhammad, 595 F.3d 426, 430 (2d Cir. 2010)).

**\*10** In plaintiff's requests for relief, he does not state that he wants his prior convictions to be overturned. See generally Compl. at 29-30. He does, however, ask that the Court declare that defendants' conduct violated his civil rights. See id. at 29, ¶ 129. Such a request would require the Court to review and reject the state criminal judgments against him. This is not permitted under the Rooker-Feldman doctrine, and it is recommended that any claims related to plaintiff's prior convictions and sentences be dismissed.

Case 1:25-cv-01150-AJB-TWD    Document 4    Filed 10/20/25    Page 114 of 187
Dougal v. Lewicki, Not Reported in Fed. Supp. (2023)
2023 WL 6430586

**G. Municipal Liability**

Plaintiff names Saratoga County as a defendant. See Compl. at 3, ¶ 3.d. To set forth a cognizable claim for municipal liability under § 1983, a plaintiff must plead that a deprivation of his constitutional rights was "caused by a governmental custom, policy, or usage of the municipality." Jones v. Town of E. Haven, 691 F.3d 72, 80 (2d Cir. 2012) (citing Monell, 436 U.S. at 690-91). Municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right; it "may not be held liable on a theory of respondeat superior." Jeffes v. Barnes, 208 F.3d 49, 56 (2d Cir. 2000). An "official policy or custom" can be shown in several ways:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing municipal policies related to the particular deprivation in question; (3) a practice so consistent and widespread that it constitutes a 'custom or usage' sufficient to impute constructive knowledge of the practice to policymaking officials; or (4) a failure by policymakers to train or supervise subordinates to such an extent that it amounts to 'deliberate indifference' to the rights of those who come in contact with the municipal employees.

Dorsett-Felicelli, Inc. v. Cty. of Clinton, 371 F. Supp. 2d 183, 194 (N.D.N.Y. 2005) (internal citations omitted). "[M]ere allegations of a municipal custom, a practice of tolerating official misconduct, or inadequate training and/or supervision are insufficient to demonstrate the existence of such a custom unless supported by factual details." Tieman v. City of Newburgh, No. 13-CV-4178, 2015 WL 1379652, at *13 (S.D.N.Y. Mar. 26, 2015).

Plaintiff contends that Saratoga County "failed to properly train and supervise" Attorney Phelan and other "County employees." Compl. at 21-22, 24-27, ¶¶ 85, 91, 100, 105, 110, 117. Plaintiff does not include any allegations in his complaint concerning municipal conduct that states a Monell claim. He does not allege what actions were taken by the County, or by its employees and which the County knew about. See generally id. Thus, he has failed to state a municipal liability claim against Saratoga County and it is recommended that any such claims be dismissed.

**H. Conspiracy**

To state a conspiracy claim under 42 U.S.C. § 1985(3),

> a plaintiff must allege (1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States.

Thomas v. Roach, 165 F.3d 137, 146 (2d Cir. 1999). "In addition, 'there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.' " Syfert v. City of Rome, No. 6:17-CV-0578 (GTS/TWD), 2018 WL 3121611, at *6 (N.D.N.Y. Feb. 12, 2018) (quoting Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)), report and recommendation adopted, 2018 WL 2316681 (N.D.N.Y. May 22, 2018), aff'd, 768 F. App'x 66 (2d Cir. 2019) (summary order). "Moreover, 42 U.S.C. § 1985(3) 'allows damages whenever two or more 'persons' conspire to violate the civil rights of another.' " Id. (quoting Owens v. Haas, 601 F.2d 1242, 1247 (2d Cir. 1979)). "A municipality is a 'person' for the purposes of a § 1985(3) claim only if one of the Monell factors ... applies." Id. (citation omitted). However, "the 'intra-agency conspiracy' doctrine provides that officers, agents or employees of a single corporate entity are legally incapable of conspiring together." Id. (quoting Everson v. N.Y. City Transit Auth., 216 F. Supp. 2d 71, 76 (E.D.N.Y. 2002)). "Although courts first applied this doctrine to cases involving public corporations, they have subsequently held that the doctrine is applicable to municipal entities and their officers, agents, and employees." Griffin-Nolan v. Providence Wash. Ins. Co., No. 5:04-CV-1453 (FJS/GJD), 2005 WL 1460424, at *10 (N.D.N.Y. June 20, 2005) (citations omitted).

Dougal v. Lewicki, Not Reported in Fed. Supp. (2023)

2023 WL 6430586

**\*11** "Complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." Walker v. O'Connor, No. 1:22-CV-581 (DNH/TWD), 2022 WL 2341420, at \*4 (N.D.N.Y. June 29, 2022) (citation omitted), report and recommendation adopted, 2022 WL 2805462 (N.D.N.Y. July 18, 2022). "Moreover, a § 1985 conspiracy claim fails as a matter of law where there is no underlying constitutional violation." Id. (citing Oliver v. Penny, No. 21-111, 2022 WL 2165814, at \*3 (2d Cir. June 16, 2022) (summary order) (concluding plaintiff's § 1985 conspiracy claim "failed because she did not plausibly allege an underlying constitutional violation")).

Plaintiff has not alleged a conspiracy claim sufficient to withstand initial review. First, he has not stated a viable underlying constitutional claim as some of the defendants are immune from suit, most of his claims are barred by the statute of limitations, and/or the Court is precluded from interfering in the claims. Thus, a potential conspiracy claim fails as a matter of law. See Oliver, 2022 WL 2165814, at \*3. Second, plaintiff has not alleged that any of the defendants acted together to deprive plaintiff of any specific rights on any discriminatory basis. See generally Compl. Third, plaintiff's allegations would likely be barred by the "intra-agency conspiracy" doctrine to the extent the defendants worked for the same entity. Griffin-Nolan, 2005 WL 1460424, at \*10. Thus, he has failed to allege a conspiracy claim and it is recommended that the claim be dismissed. [4]

[4]     Robert Dougal is the only named plaintiff in the complaint. See Compl. at 2, ¶ 2. However, throughout much of the complaint, allegations are raised concerning Ms. Yerry. See generally id. In federal court, 28 U.S.C. § 1654 "does not permit 'unlicensed laymen to represent anyone else other than themselves.' " Lattanzio v. COMTA, 481 F.3d 137, 139 (2d Cir. 2007) (per curiam) (citation omitted). "This principle further extends to non-attorneys' attempts to bring suit on behalf of adults who are not competent to handle their own affairs." Galanova v. Portnoy, 432 F. Supp. 3d 433, 442 (S.D.N.Y. 2020) (citing Berrios v. New York City Hous. Auth., 564 F.3d 130, 133 (2d. Cir. 2009)). The undersigned cautions plaintiff that he cannot brings claims on Ms. Yerry's behalf as a non-

attorney. The same goes for Ms. Yerry, in that she cannot bring claims on plaintiff's behalf.

### IV. Conclusion

**WHEREFORE**, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff's application to proceed in forma pauperis (Dkt. No. 2) is **GRANTED**; and it is further

**RECOMMENDED**, that plaintiff's complaint (Dkt. No. 1) as alleged against Michelle Granger, Karen Heggen, Rachael Phelan, Anna Besson, Daniel Waldron, Charles Sherman, John McCarron, and Lee Kindlon be **DISMISSED WITH PREJUDICE and WITHOUT LEAVE TO AMEND**; and it is further

**RECOMMENDED**, that plaintiff's complaint (Dkt. No. 1) as alleged against Saratoga County, Eric Lewicki, Christopher Martin, Nick Dziamba, Michael Zurlo, C.J. Brownell, Brent Dupras, John Carey, and William Brady be **DISMISSED WITHOUT PREJUDICE and WITH LEAVE TO AMEND**; [5] and it is further

[5]     Any amended pleading supersedes and replaces a prior pleading in its entirety. In the event the District Judge adopts the undersigned's Report-Recommendation & Order and plaintiff amends his complaint, plaintiff is advised that his amended pleading cannot incorporate a prior pleading or its exhibits by reference. An amended pleading must establish this Court's jurisdiction and state a claim for relief against each named defendant for which leave to replead was granted according to Rules 8 and 10 of the Federal Rules of Civil Procedure.

**\*12 RECOMMENDED**, that should the District Judge adopt this Report-Recommendation and Order, plaintiff be given thirty (30) days from the date of the Order adopting this Report-Recommendation and Order to file an amended complaint, and if plaintiff does not file an amended complaint, it will be deemed as an abandonment of any claims for which leave to replead has been granted and will result in judgment being entered against plaintiff on these claims without further order by the Court; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order in accordance with Local Rules.

Dougal v. Lewicki, Not Reported in Fed. Supp. (2023)

Case 1:25-cv-01150-AJB-TWD    Document 4    Filed 10/20/25    Page 116 of 187

2023 WL 6430586

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a). [6]

[6]    If you are proceeding pro se and are served with this Report-Recommendation & Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(c).

**All Citations**

Not Reported in Fed. Supp., 2023 WL 6430586

---

**End of Document**    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:25-cv-01150-AJB-TWD    Document 4    Filed 10/20/25    Page 117 of 187

Dougal v. Lewicki, Not Reported in Fed. Supp. (2023)
2023 WL 7013384

2023 WL 7013384
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Robert DOUGAL, Plaintiff,

v.

Eric LEWICKI et al., Defendants.

1:23-CV-1167
|
Signed October 25, 2023

**Attorneys and Law Firms**

ROBERT DOUGAL, Plaintiff, Pro Se, 294 Wilbur Road, Schuylerville, NY 12871.

### ORDER ON REPORT & RECOMMENDATION

DAVID N. HURD, United States District Judge

**\*1** On September 12, 2023, *pro se* plaintiff Robert Dougal ("plaintiff") filed this action alleging that the named defendants violated his civil rights during an incident that happened on January 25, 2017 and, along with a series of other related events, ultimately led to his state-court conviction on certain criminal charges. Dkt. No. 1. Along with his complaint, plaintiff sought leave to proceed *in forma pauperis* ("IFP Application"). Dkt. No. 2.

On October 3, 2023, U.S. Magistrate Judge Christian F. Hummel granted plaintiff's IFP Application and advised by Report & Recommendation ("R&R") that plaintiff's complaint be dismissed with partial leave to replead. Dkt. No. 3. As Judge Hummel explained, plaintiff's claims against certain defendants were barred by various immunity or preclusion principles and were therefore subject to dismissal *without* leave to replead. *Id.* However, Judge Hummel concluded that plaintiff might be able to plead one or more plausible claims for relief against certain other defendants and therefore those claims were subject to dismissal *with* leave to amend them. *Id.*

Plaintiff has filed objections, Dkt. No. 5, and moved for the appointment of counsel to assist him, Dkt. Nos. 4, 6. Broadly stated, plaintiff faults Judge Hummel's R&R for leaving out "important points" related to the historical facts and other factors that support his claims. Dkt. No. 5. But as plaintiff

himself acknowledges, his current pleading is "very detailed," and it is therefore "difficult to keep track of all the events that occurred in one or several readings." *Id.*

Upon *de novo* review of plaintiff's objections, the R&R is accepted and will be adopted in all respects. *See* 28 U.S.C. § 636(b)(1)(C). Although the Court is sympathetic to plaintiff's thorough recitation of the facts of his case as stated in his written objections, a review of Judge Hummel's R&R confirms that he correctly applied binding legal precedent about certain immunity principles and preclusion or limitation rules.

Plaintiff is advised that he now has an opportunity to try to replead certain of his claims by filing an amended complaint in accordance with the guidance set forth in Judge Hummel's R&R. Among other things, any new pleading should clearly and succinctly set forth the material historical facts related to each of his timely claims against each remaining defendant.

Therefore, it is

ORDERED that

1. The Report & Recommendation is ACCEPTED;

2. Plaintiff's complaint as alleged against Michelle Granger, Karen Heggen, Rachael Phelan, Anna Besson, Daniel Waldron, Charles Sherman, John McCarron, and Lee Kindlon is DISMISSED with prejudice and without leave to amend;

3. Plaintiff's claims as alleged against Saratoga County, Eric Lewicki, Christopher Martin, Nick Dziamba, Michael Zurlo, C.J. Brownell, Brent Dupras, John Carey, and William Brady is DISMISSED without prejudice and with leave to amend;

4. The Court DEFERS decision on plaintiff's motion for the appointment of counsel to assist him and directs that this motion be REFERRED to Judge Hummel for consideration in the event that plaintiff amends his pleading;

**\*2** 5. Plaintiff shall have thirty days in which to amend his pleading;

6. If plaintiff files an amended complaint within the thirty-day deadline, the pleading shall be returned to Judge Hummel for an initial review; and

**Dougal v. Lewicki, Not Reported in Fed. Supp. (2023)**
2023 WL 7013384

7. If plaintiff does not file an amended complaint within the thirty-day deadline, the Clerk is directed to enter a judgment dismissing this action without further order of the Court.

IT IS SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2023 WL 7013384

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

🚩 KeyCite Yellow Flag

Distinguished by  Rivera v. Westchester County,  S.D.N.Y.,  September 23, 2020

2015 WL 1379652
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Steven TIEMAN, Plaintiff,
v.
CITY OF NEWBURGH, Po Joseph Palermo,
Po John Maguire, Po Eric Eltz, Po Patrick Kelly,
Po Anthony Guidice, Po Christopher Lahar,
Town of Newburgh, Sgt William Ransom,
Unknown Police Officers 1–5, Defendants.

No. 13–CV–4178 (KMK).
|
Signed March 26, 2015.

## Attorneys and Law Firms

David A. Zelman, Esq., The Law Office of David A. Zelman, Brooklyn, NY, for Plaintiff.

Roberta D. Asher, Esq., Asher & Associates, New York, NY, for Plaintiff.

David Lewis Posner, Esq., McCabe & Mack LLP, Poughkeepsie, NY, for Defendant City of Newburgh.

Carl Steven Sandel, Esq., Drew William Sumner, Esq., Morris Duffy Alonso & Faley, New York, NY, for Defendants Town of Newburgh and SGT William Ransom.

## OPINION & ORDER

KENNETH M. KARAS, District Judge.

**\*1**  Plaintiff Steven Tieman brought suit against Defendants City of Newburgh (the "City"); City of Newburgh Police Officers Joseph Palermo, John Maguire, Eric Eltz, Patrick Kelly, Anthony Guidice, Christopher Lahar, and Unknown Police Officers 1–5; the Town of Newburgh (the "Town"); Town of Newburgh Sergeant William Ransom; and State Trooper Moises Nales. The City of Newburgh moves to dismiss all claims against the City and against Defendants Palermo, Maguire, Eltz, Kelly, Guidice, and

Lahar (collectively, the "City Police Officer Defendants"), and for the Court to reject Plaintiff's request to file his Proposed Amended Complaint ("PAC"). The Town of Newburgh moves to dismiss all claims against the Town and against Defendant Ransom, and for the Court to reject Plaintiff's PAC. For the following reasons, the Town's Motion To Dismiss is granted and the City's Motion To Dismiss is denied in part and granted in part.

### I. Background

#### A. Factual Background

The following factual summary is derived from Plaintiff's PAC, which the Court takes as true for the purpose of these Motions To Dismiss.[1] These claims arise out of an incident that occurred on June 17, 2010, at approximately 5:45 p.m. (Pl.'s Mem. of Law in Opp'n ("Pl.'s Mem.") Ex. A(PAC), at ¶ 10 (Dkt. No. 46).) Plaintiff alleges that he "was lawfully driving on a public street in Newburgh, New York, when he was approached by a police officer, upon information and belief, [Defendant Eltz], who was wearing plain clothes." (*Id.*)[2] Without warning and "for no apparent reason," Defendant Eltz "began to yell" at Plaintiff, and "told him to get out of the car." (*Id.* ¶ 11.) Plaintiff further alleges that he "was frightened and thought he was being robbed, so he drove away." (*Id.*) Defendant Eltz and other police officers, including Defendants Maguire, Kelly, Guidice, Lahar, and Palermo, gave chase to Plaintiff. (*Id.* ¶ 12.) "At some point thereafter, and prior to Plaintiff stopping his vehicle," Defendants Ransom and Nales joined the chase. (*Id.*) "After a brief car chase, [P]laintiff pulled over to the side of the road, put his pickup truck in park, turned off the engine, and raised his hands to surrender." (*Id.* ¶ 13.) Plaintiff alleges that, when he stopped his vehicle, Defendant Nales was located near Plaintiff's vehicle. (*Id.*)

[1]    As explained below, Plaintiff's PAC will be accepted unless it would be subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). Because the PAC contains all of the factual allegations contained in Plaintiff's original Complaint, as well as additional allegations, the Court will merely address the sufficiency of the factual allegations in the PAC. If any portion of the PAC would be subject to dismissal, the corresponding portion of the Complaint necessarily will also be dismissed under Rule 12(b)(6).

2

Plaintiff asserts that he was lawfully driving that evening, but he was "convicted of driving while impaired by alcohol in violation of Vehicle and Traffic Law § 1192(1), criminal possession of a controlled substance in the seventh degree, resisting arrest, unlawful fleeing a police officer in a motor vehicle in the third degree (two counts) and reckless driving in conjunction with this incident." (Mem. of Law in Supp. of the Town of Newburgh and Sergeant William Ransom's Mot. To Dismiss ("Town's Mem.") 2 n. 1 (Dkt. No. 30); *see also* Newburgh's Reply Br. in Supp. of 12(b) (5) and 12(b)(6) Dismissal ("City's Reply") 1–2 (Dkt. No. 47).) Whether Plaintiff was driving lawfully is not relevant to the instant Motions, so the Court declines to assess whether, and to what extent, it should consider these seemingly undeniable facts put forth by Defendants. However, counsel for Plaintiff may someday be called upon to explain the good faith basis for this allegation.

Next, Plaintiff alleges that "one of the defendant police officers, on information and belief [Defendant Maguire], opened the truck door and ordered his police dog to attack [P]laintiff." (*Id.* ¶ 14.) Plaintiff "was thereupon attacked by the police dog, and punched numerous times by [Defendant Maguire]." (*Id.*) Plaintiff alleges that he was "not resisting the police officers in any way," but he nonetheless was dragged from his truck and thrown to the ground by Defendant Maguire and other officers, and was "beaten severely by the defendant officers, who at this point were laughing and telling the dog what a good job he had done." (*Id.* ¶ 15.) Plaintiff alleges that at that point "[t]here were at least fifteen or twenty police officers surrounding" him. (*Id.*) Plaintiff alleges that though he was "handcuffed and secured by the police officers, the police dog was again ordered to attack" him, which attack was "completely unjustified, and resulted in numerous further physical injuries. (*Id.* ¶ 16.)

**\*2** Plaintiff alleges that the injuries he suffered as a result of this assault "included deep dog bites and lacerations to his left side and left leg; bruising to his jaw, head, back, and arms; lacerations to his right elbow; and a broken left ring finger (caused by a dog bite)." (*Id.* ¶ 17.) Plaintiff alleges that he was arrested, taken to the Newburgh City police station, then taken for medical treatment at St. Luke's Hospital, and then to Orange County Jail, where he received further medical treatment. (*Id.* ¶ 18.) Plaintiff alleges that his wounds became infected while in jail, and that he suffered severe and permanent injuries, including "scarring and weakness in his limbs," "severe physical pain," and "serious and permanent psychological and emotional injuries, including depression, flashbacks, nightmares, unreasonable fear of dogs and police officers, and inability to concentrate." (*Id.* ¶¶ 19–21.)

According to Plaintiff, the City "has a policy or practice of using excessive force when effectuating arrests, and fails to train and/or discipline its employees to prevent violations of arrestee's [sic] constitutional rights." (*Id.* ¶ 22.) Additionally, Plaintiff claims that the City "has an extensive history of lawsuits and other complaints alleging the use of excessive force by its employees." (*Id.* ¶ 23.) In particular, according to Plaintiff, "[p]ublic court records reveal at least nine suits filed in the five years before the incident [that is the basis for this Action] which allege that police officers employed by [the City] used excessive force during the course of an arrest," "[a]t least five" of which incidents "involved allegations of unnecessary and excessive dog bites." (*Id.*) Plaintiff has listed and described the following lawsuits:

In *Burley. et al. v. City of Newburgh, et al.,* 07–CV–3336, the plaintiffs alleged that on May 11, 2005, police officers employed by [the City] falsely arrested one plaintiff and sprayed him with pepper spray, threw him to the ground, and kicked him in the face causing him to lose consciousness. The other plaintiff alleged that police officers employed by [the City] falsely arrested him, hit him in the face, and kicked him in the ribs.

In *Bryant v. City of Newburgh, et al.,* 06–CV–4200, the plaintiff alleged that he was falsely arrested with excessive force by police officers employed by [the City] on both May 17, 2005 and June 22, 2006.

In *Garcia. et al. v. City of Newburgh, et al.,* 08–CV–1198, [the] plaintiff alleged that on March 30, 2007, he was falsely arrested with excessive force by police officers employed by [the City], including [Defendant Kelly].

In *Cooper. et al. v. City of Newburgh, et al.,* 09–CV–2234, four plaintiffs alleged that on March 31, 2007, July 8, 2007, August 8, 2007, and August 9, 2007, respectively, [City] police officers arrested one of the plaintiffs with excessive force. The complaint alleged that during the course of each arrest, officers directed police dogs to "bite and hold" causing serious injuries to each plaintiff.

**\*3** In *Follini v. City of Newburgh, et al.,* 08–CV–6347, [the] plaintiff alleged that on July 22, 2007, police officers employed by [the City], including [Defendant Palermo], falsely arrested [the] plaintiff with excessive

force, including pushing [the] plaintiff to the ground, repeatedly administering a taser while [the] plaintiff was on the ground, and administering pepper spray directly to [the] plaintiff's face.

In *Allen v. City of Newburgh[,] et al.,* 08–CV–6771, the plaintiff alleged that on August 12, 2007, officers employed by [the City] arrested him with excessive force, causing injuries including loss of consciousness, shoulder dislocation, facial bruising, and muscle spasms.

In *Baynes v. City of Newburgh, et al.,* 08–CV–6442, [the] plaintiff alleged that on August 25, 2007, police officers employed by [the City], including [Defendant Palermo] and [Defendant Kelly], physically assaulted, maced, and tased[ ] both [the] plaintiff and additional arrestees who were not resisting arrest.

In *Fahey, et al. v. Lt. Peter Leach, et al.,* 08–CV–8280, [the] plaintiffs alleged that on September 30, 2007, multiple [City] police officers assaulted [the] plaintiffs at a gas station and at the police precinct.

In *Whitfield v. City of Newburgh, et al.,* 08–CV–8516, the deceased plaintiff, through his estate, alleged that on July 8, 2008, officers employed by [the City] administered a taser to [the] plaintiff and ordered a police dog to attack [the] plaintiff multiple times, causing his death.

(*Id.* ¶¶ 24–32 (italics omitted).) Plaintiff further alleges that the City "routinely reached settlement agreements" with the Plaintiffs in these cases. (*Id.* ¶ 33.) In particular, Plaintiff claims that *"Garcia* settled in 2008, *Bryant, Cooper* and *Baynes* settled in 2010, *Fahey* and *Allen* settled in 2011, and *Follini* settled in 2012." (*Id* .) Plaintiff further asserts that while the "amount of each settlement agreement [is] not publically available, upon information and belief, most, if not all, of the above-mentioned cases settled for amounts well in excess of nuisance value." (*Id.* ¶ 34.) Additionally, Plaintiff alleges, upon information and belief, that "the officers that were the subject of these lawsuits were not disciplined by [the City] for their actions." (*Id.*)

Plaintiff alleges two other bases for the City's "notice of allegations of excessive force." (*Id.* ¶ 35.) Specifically, Plaintiff alleges that the City "was also on notice of allegations of excessive force by its officers through public forums, including on February 11, 2008," on which date "the Newburgh City Council held a public comment session, at which numerous residents testified regarding the excessive and unnecessary use of police dogs during

arrests, as well as additional perceived problems within the Police Department, including the lack of a civilian review board." (*Id.*) Additionally, Plaintiff alleges that "[o]n August 1, 2013, Matrix Consulting Group published their Final Report entitled 'An Assessment of the Culture, Community Relations, Use of Force, Training, Disciplinary Practices of the Police Department–City of Newburgh, New York,' " (the "Matrix Report"). (*Id.* ¶ 36.) According to Plaintiff, the Matrix Report stated generally that "discipline guidelines and decisions are unstructured," noted that "assigning a specific investigator and requiring a formal report" was not "previously required," and stated that "only 43% of sworn officers who responded to the polling in the report agreed that they received appropriate training to do their job well." (*Id.*)

**\*4** Finally, Plaintiff makes a number of general allegations regarding the City and Town. First, Plaintiff alleges that the "City of Newburgh and Town of Newburgh have been aware for years (from lawsuits, notices of claim and complaints filed with the municipalities themselves and their police departments) that many of their police officers are insufficiently trained with respect to the laws and regulations regarding use of force during an arrest." (*Id.* ¶ 40.) Plaintiff further alleges that the "municipalities are ... aware that such improper training has often resulted in a deprivation of civil rights," and that despite having such notice, "the municipalities have failed to take corrective action," which "caused the officers in the present case to violate plaintiff's civil rights." (*Id.*) Additionally, Plaintiff alleges that the City and Town "have been on notice that the defendant police officers lack the objectivity, temperament, maturity, and discretion to be members of their respective police departments," and despite such notice, "the municipalities have retained the individual defendants as police officers." (*Id.* ¶ 41.) Plaintiff also alleges that "upon information and belief, in 2010, Defendants had a policy or routine practice of using excessive force when effectuating arrests," and that upon information and belief, "it was the policy and/or custom of defendant City of Newburgh to inadequately train, supervise, discipline, and/or terminate their officers, staff, agents and employees, thereby failing to adequately discourage further constitutional violations on the part of their officers, staff, agents and employees." (*Id.* at ¶¶ 42–43.) Furthermore, Plaintiff alleges that "as a result of the above described policies and customs, the officers, staff, agents and employees of defendant [City], believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated." (*Id.* at ¶ 44.) Plaintiff

concludes that "the above described policies and customs demonstrate a deliberate indifference on the part of the policymakers of [the City] to the constitutional rights of arrestees and were the cause of the violations of Plaintiff's rights alleged herein." (*Id.* ¶ 45.)

### B. Procedural Background

Plaintiff filed suit against the City, the City Police Officer Defendants, the Town, Defendant Ransom, and Defendant Nales on June 14, 2013. (*See* Dkt. No. 2.) [3] On January 9, 2014, the Court held a pre-motion conference with all Parties. (*See* Dkt. (minute Entry for Jan. 9, 2014).) Following that conference, Plaintiff submitted a letter explaining the basis for filing an amended complaint, and attaching his PAC. (*See* Dkt. No. 20.) [4] Plaintiff never formally moved to file his PAC, which contains all of the factual allegations in his Complaint, as well as additional allegations.

[3]      In June 2014, the Court so ordered a stipulation between Plaintiff and Defendant Nales to dismissal of the claims against that Defendant. (*See* Dkt. No. 35.)

[4]      Plaintiff's PAC also is filed as an attachment to Plaintiff's Memorandum of Law in Opposition, (*see* Dkt. No. 46 Ex. A), and as an attachment to an affidavit submitted by the City in connection with its Memorandum of Law, (*see* Dkt. No. 26 Ex. A).

**\*5** On May 23, 2014, the City moved to dismiss the claims against the City and the City Police Officer Defendants, and to oppose the filing of Plaintiff's PAC as to the claims against the City and the City Police Officer Defendants. (*See* Dkt. No. 25.) Similarly, the Town moved to dismiss the claims against the Town and Defendant Ransom, and to oppose the filing of Plaintiff's PAC as to the claims against the Town and Defendant Ransom. (*See* Dkt. No. 29.)

### II. Discussion

### A. 12(b)(5) Motion To Dismiss

The City of Newburgh moves to dismiss the claims against the City Police Officer Defendants for failure to serve, pursuant to Federal Rule of Civil Procedure 12(b)(5).

### 1. Standard of Review

"[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)." *Sinochem Int'l. Co. v. Malaysia Int'l Shipping Corp.,* 549 U.S. 422, 430–31, 127 S.Ct. 1184, 167 L.Ed.2d 15 (2007). Valid service is a prerequisite for a federal court to assert personal jurisdiction over a claim. *See Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.,* 484 U.S. 97, 104, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987). "When a defendant moves to dismiss under Rule 12(b)(5), the plaintiff bears the burden of proving adequate service." *Dickerson v. Napolitano,* 604 F.3d 732, 752 (2d Cir.2010) (brackets and internal quotation marks omitted).

In deciding a Rule 12(b)(5) motion, the Court "must look to matters outside the complaint to determine what steps, if any, the plaintiff took to effect service." *C3 Media & Mktg. Grp., L.L.C. v. Firstgate Internet, Inc.,* 419 F.Supp.2d 419, 427 (S.D.N.Y.2005) (internal quotation marks omitted); *see also PH Int'l Trading Corp. v. Nordstrom, Inc.,* No. 07–CV–10680, 2009 WL 859084, at *3 (S.D.N.Y. Mar. 31, 2009) ("A court may, on a Rule 12(b)(5) motion to dismiss, consider affidavits and documents submitted by the parties without converting the motion into one for summary judgment under Rule 56." (brackets and internal quotation marks omitted)). For a plaintiff to satisfy his burden of proving adequate service, *see Mende v. Milestone Tech., Inc.,* 269 F.Supp.2d 246, 251 (S.D.N.Y.2003), "[c]onclusory statements that a defendant was properly served are insufficient to overcome a defendant's sworn affidavit that he was never served," *Howard v. Klynveld Peat Marwick Goerdeler,* 977 F.Supp. 654, 658 (S.D.N.Y.1997), *aff'd,* 173 F.3d 844 (2d Cir.1999). Similarly, defective service is not cured or overcome "on the mere assertion that a defendant had actual notice." *Weston Funding, L.L.C. v. Consorcio G Grupo Dina, S.A. de C.V.,* 451 F.Supp.2d 585, 589 (S.D.N.Y.2006) (internal quotation marks omitted).

### 2. Analysis

The Parties agree that service was attempted as follows. "[A] summons addressed to each defendant was delivered to the City Clerk's office, 83 Broadway, Newburgh, N.Y. 12550" in August 2013. (Pl.'s Mem. 9.) Plaintiff asserts that this service was proper because 83 Broadway "is the usual and typical place to serve Newburgh officers," the process server Michael Root of Majestic Process Service, Inc. went to the police department at 55 Broadway, Newburgh, N.Y. 12550, and was told by a sergeant "that the place to serve Newburgh officers was 83 Broadway," and "Mr. Root asked

2015 WL 1379652

Ms. [Autumn] Resto, a paralegal at Newburgh City Hall, if she could accept service on behalf of the officer[s]," "she checked with a supervisor, read the documents, and agreed to accept service on behalf of the officers." (*Id.* at 9–10; *see also id.* Ex. C (Decl. of Michael Root) ("Root Decl.") ¶¶ 1, 3–7.)

**\*6** In support of its Motion To Dismiss, the City submitted an affidavit from Michelle Kelson, Corporation Counsel for the City of Newburgh. (*See* Aff. of Michelle Kelson (April 24, 2014) ("April 24 Kelson Aff.") ¶ 1 (Dkt. No. 27).) Ms. Kelson avers that she was notified that the City Clerk's office had received "several summons[es] and one copy of the verified complaint" for this case, and that there was "one summons for the City and one for each individual police officer." (*Id.* ¶ 2.) Ms. Kelson appended the documentation that that City Clerk's office received-seven summonses and one copy of the verified complaint. (*Id.* at Ex. A.) The City also submitted an affidavit from Ms. Resto, who averred:

> My instructions from the Corporation Counsel are to take whatever legal papers are given to me. I do not offer an opinion as to whether giving me these papers is proper service. I have no authority to accept service on behalf of an individual employee of the City of Newburgh. I have never been appointed an agent to accept service on behalf of any Newburgh employee.

(Aff. of Autumn Resto ("Resto Aff.") ¶ 3 (Dkt. No. 49).) In Reply, the City submitted a second affidavit from Ms. Kelson, who averred:

> Employees in my office, including Ms. Resto, have standing instructions to take legal papers delivered to this office. No one here, including myself, is authorized to accept service on behalf of any employee of the City of Newburgh. Pursuant to CPLR § 311(A) (3), the Corporation Counsel's office is a designated agent for receipt of process for the City but not its employees.
>
> No employee of the Corporation Counsel's office has been designated as an agent to receive[ ] process pursuant to CPLR § 318.
>
> The Corporation Counsel's office is on the second floor of City Hall located at 83 Broadway, Newburgh, New York.

It is a separate building from the police station which is located a few hundred yards away at 55 Broadway. No police officers report to City Hall at the beginning or end of their shifts or receive their work assignments here. All police officers' place of business is the police department. The individual defendants in this case are not stationed at City Hall and, as to the performance of their job duties, City Hall is just another location within the City to which they are occasionally dispatched for official police business.

(Aff. of Michelle Kelson (June 17, 2014) ("June 17 Kelson Aff.") ¶¶ 2–4 (Dkt. No. 48).)

Under Federal Rule 4(e), Plaintiff could serve the City Police Officer Defendants pursuant to state law, *see* Fed.R.Civ.P. 4(e)(1), or by delivering a copy of the summons and of the Complaint to each individual personally, leaving a copy of each at each individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there, or by delivering a copy of each to an agent authorized by appointment or law to receive service of process, *See* Fed.R.Civ.P. 4(e)(2). The City argues, and Plaintiff does not contest, that service was not properly effected pursuant to Rule 4(e)(2). The summons and complaint were not delivered to each person individually, nor were they delivered to each individual's dwelling or usual place of abode. Finally, service was not effected by delivering a copy of the summons and complaint to an agent authorized by appointment or law to receive service of process; the evidence shows that Ms. Resto was not an agent authorized to receive service for the City Police Officer Defendants, nor does Plaintiff even dispute that fact. (Resto Aff. ¶ 3.)

**\*7** Thus, the question is whether the City Police Officer Defendants were properly served under state law, as is permissible under Federal Rule of Civil Procedure 4(e)(1). Section 308 of the New York C.P.L.R. ("CPLR") governs personal service upon natural persons, and provides that service may be effected

1. by delivering the summons within the state to the person to be served; or

2. by delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by either mailing the summons to the person to be served at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business in an envelope bearing

the legend "personal and confidential" and not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served, ... or

3. by delivering the summons within the state to the agent for service of the person to be served as designated under rule 318[.]

N.Y. C.P.L.R. § 308. Again, service was not effected by personal delivery to the City Police Officer Defendants or by delivery at their dwelling places or usual places of abode, nor is there any evidence that Ms. Resto was an agent for service designated under CPLR § 318. Thus, the question is whether the City Police Officer Defendants were served by delivery of the summonses to a person of suitable age and discretion at their actual place of business and by mailing the summonses to the individuals at their last known residences or actual places of business. [5]

[5]        The Court notes that Plaintiff only asserts that service was proper pursuant to N.Y. C.P.L.R. § 308(2). (*See* Pl.'s Mem. 9–11 .)

Here, Plaintiff has failed to establish that the City Police Officer Defendants were served at their "actual place of business" pursuant to CPLR § 308(2). "A person's 'actual place of business' must be where the person is physically present with regularity, and that person must be shown to regularly transact business at that location." *Selmani v. City of New York,* 100 A.D.3d 861, 954 N.Y.S.2d 580, 581–82 (App.Div.2012); *see also Sajimi v. City of New York,* No. 07–CV–3252, 2011 WL 135004, at *3 (E.D.N.Y. Jan. 13, 2011) ("The term 'actual place of business' has been defined as a place where the defendant is regularly physically present or regularly transacts business."); *Varela v. Flintlock Const., Inc.,* 148 F.Supp.2d 297, 301 (S.D.N.Y.2001) ("Actual place of business is statutorily defined as any location that the defendant, through regular solicitation or advertisement, has held out as its place of business. For a location to be a person's actual place of business for service pursuant to CPLR § 308(2), that person must be shown to regularly transact business at that location." (citation and internal quotation marks omitted)). Plaintiff makes no such showing. Indeed, the only evidence submitted on this issue is from Ms. Kelson, who averred, "No police officers report to City Hall at the beginning or end of their shifts or receive their work assignments here. All police officers' place of business is the police department. The individual defendants in this case are not stationed at City Hall and, as to the performance of

their job duties, City Hall is just another location within the City to which they are occasionally dispatched for official police business." (June 17 Kelson Aff. ¶ 4.) Plaintiff has failed to meet his burden of proving that service was effected at Defendants' place of business. *See GMA Accessories, Inc. v. Solnicki,* No. 07–CV–3219, 2010 WL 3749213, at *4 (S.D.N.Y. Sept. 24, 2010) (noting that the plaintiff has the burden of showing service was made at the defendant's place of business and holding that the plaintiff failed to meet this burden when it failed to submit any evidence). [6] Accordingly, service was improper under New York law. *See Davis v. City of New York,* No. 07–CV–1395, 2008 WL 2511734, at *3 (S.D.N.Y. June 19, 2008) (holding that an attempt to effect service on individual police officers at the office of the city's corporation counsel was invalid because the "police precinct to which they report and where they conduct their business is their actual place of business" and the plaintiff "made no effort to serve the officers personally or at their actual residences"); *Moultry v. City of Poughkeepsie,* 154 F.Supp.2d 809, 812 (S.D.N.Y.2001) (holding that service was improper under New York law where the plaintiff tried to serve police officer defendants at the city chamberlain's office, and the defendants worked at police department headquarters, reported to work at headquarters at the beginning and end of each shift, and "[u]nless they [were] testifying in [c]ity [c]ourt, the officers ha[d] no official police business in [c]ity [h]all, and they [did] not work for or with the [c]ity [c]hamberlain"). Furthermore, even if Mr. Root went to the Police Department at 55 Broadway, was told by a sergeant to go to the City Attorney at 83 Broadway, and was told by Ms. Resto that she could accept service on behalf of the officers, as Mr. Root declared, service was still improper. (*See* Root Decl. ¶¶ 3–7.) *See Moultry,* 154 F.Supp.2d at 811–12 (holding that service on individual police officers at the city chamberlain's office was improper even though a clerk for the chamberlain accepted service on behalf of the individual police officers and "told the process server that he had come to the right place, and that she was empowered to accept personal service for the individual police officers"). [7]

[6]        Mr. Root's declaration that 83 Broadway is the usual and typical place to serve all Newburgh officers and employees, (Root Decl. ¶ 3), is the type of "conclusory statement[ ]" that is insufficient to carry the burden that service was adequate. *Doe v. Alsaud,* 12 F.Supp.3d 684, 687–88 (S.D.N.Y.2014) (internal quotation marks omitted).

7    Under New York law, when serving a *corporation,* a process server may rely on the representations of employees of the corporation with respect to who may accept service on the corporation's behalf. *See Melkaze Int'l Inc. v. Flavor Innovation Inc.,* 167 F.R.D. 634, 642 n. 6 (E.D.N.Y.1996). Here, however, Mr. Root was serving individuals and, indeed, not even serving them at their place of business.

**\*8** Additionally, when effecting service under state law, a plaintiff must, at the very least, serve a summons and notice. Specifically, "[i]f the complaint is not served with the summons, the summons shall contain or have attached thereto a notice stating the nature of the action and the relief sought, and ... the sum of money for which judgment may be taken in case of default." N.Y. C.P.L.R. § 305(b). Here, Plaintiff served a summons for the City and summonses for each of the six individual City Police Officer Defendants, but only one copy of the Complaint. (*See* April 24 Kelson Aff. Ex. A.) None of the summonses contained any notice of the claims. (*Id.*) Thus, at least five of the summonses served on the City Police Officer Defendants did not have attached or contain either a copy of the Complaint or notice of the claims, and therefore were invalid under New York law.

Next, Plaintiff argues that, if the Court found service to be improper, it "should be cognizant of the fact that, at the time of the filing of this case, Plaintiff was pro se" and therefore should be granted special leniency regarding procedural matters. (Pl.'s Mem. 11.) However, Plaintiff was pro se for only a very short portion of this case. Plaintiff filed his Complaint pro se on June 14, 2013. (Dkt. No. 2.) On August 21, 2013, Roberta D. Asher [8] entered a notice of appearance on behalf of Plaintiff. (Dkt. No. 4.)[9] Thus, when service was attempted on August 29, 2013, Plaintiff was represented by counsel. (Pl.'s Mem. Ex. D.) Therefore, the Court sees no reason to extend special solicitude to Plaintiff regarding his inadequate service on the basis of his temporarily pro se status. *Cf. Marchand v. Simonson,* 16 F.Supp.3d 97, 106–07 (D.Conn.2014) (noting that the court would "take[ ] into consideration [the] plaintiff's pro se status at the time he filed his amended complaint," but that because the plaintiff was represented at the time he filed opposition to a motion, the court "need not apply the liberal pro se construction in considering [the] plaintiff's opposition" (italics omitted)); *Neely v. RMS Residential Mortg. Solution, L.L.C.,* No. 12–CV–1523, 2013 WL 752636, at \*12 (E.D.N.Y. Feb. 26, 2013) ("Although the

[c]ourt liberally construed [the][p]laintiff's pro se [o]riginal [c]omplaint, since [the] [p]laintiff is now represented by counsel, the [c]ourt has no obligation to construe the [p]roposed [a]mended [c]omplaint liberally[.]" (brackets, italics, and internal quotation marks omitted)); *Eaves v. Strayhorn,* No. 09–CV–394, 2010 WL 2521449, at \*9 (S.D.Ohio June 15, 2010) ("[The] [p]laintiff cannot use the initial pro se filing to obscure the fact that he, with counsel, allowed the statute of limitations to run before re-filing his complaint." (italics omitted)); *Khan v. Abercrombie & Fitch, Inc.,* No. 01–CV–6163, 2003 WL 22149527, at \*10 (S.D.N.Y. Sept. 17, 2003) (refusing to allow a plaintiff to amend her complaint at a late stage of litigation despite her argument she should be afforded deference based on her pro se status, where she was pro se when the case was filed but "has been represented by counsel since the earliest stages of [the] action").

8    The Clerk of the Court is respectfully requested to change the name of the attorney appearing for Plaintiff from Stacy Nicole Baden to Roberta D. Asher, as indicated on the notice of appearance. (*See* Dkt. No. 4.)

9    Plaintiff's second counsel, David A. Zelman, entered a notice of appearance on Plaintiff's behalf on December 19, 2013. (Dkt. No. 18.)

**\*9** Prior to 1993, "the former Rule 4(j) ... provided that if service was not made within 120 days, and the serving party cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice ." *Zapata v. City of New York,* 502 F.3d 192, 195 (2d Cir.2007) (internal quotation marks omitted). Following the 1993 amendments, the relevant rule, now codified in Rule 4(m), states, "If a defendant is not served within 120 days after the complaint is filed, the court ... must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Fed.R.Civ.P. 4(m). Thus, the amendment provided "district courts [with] discretion to grant extensions even in the absence of good cause." *Zapata,* 502 F.3d at 196; *see also Henderson v. United States,* 517 U.S. 654, 662, 116 S.Ct. 1638, 134 L.Ed.2d 880 (1996) ("[I]n 1993 amendments to the Rules, courts have been accorded discretion to enlarge the 120–day period even if there is no good cause shown." (internal quotation marks omitted)).

Here, Plaintiff has not shown good cause—or indeed even tried to argue that good cause existed, instead merely arguing that service was proper and that Plaintiff should get solicitude as he previously was pro se. (Pl.'s Mem. 9–11.) "Good cause is deemed to exist in exceptional circumstances where the plaintiff's failure to serve process in a timely manner was the result of circumstances beyond its control." *Ligon v. City of New York,* No. 12–CV–2274, 2013 WL 3502127, at *1 (S.D.N.Y. July 12, 2013) (internal quotation marks omitted). "[A]ttorney inadvertence or negligence does not establish good cause," nor does "ignorance of the law." *Novak v. Nat' l Broad. Co. Inc.,* 131 F.R.D. 44, 45–46 (S.D.N.Y.1990). "Additionally, a mistaken belief that service was proper does not establish good cause." *Bernstein v. Vill. of Piermont,* No. 11–CV–3677, 2012 WL 6625231, at *3 (S.D.N.Y. Dec. 20, 2012) (internal quotation marks omitted). The Court sees no basis for making a finding that there was good cause for Plaintiff's failure to timely serve the City Police Officer Defendants.

Thus, the only remaining question is whether, in the absence of good cause, the Court should exercise its discretion to grant an extension. Importantly, if the Court were to dismiss the claims against the City Police Officer Defendants, Plaintiff would not be able to bring the claims again because they would be time-barred. Because Section 1983 "does not provide a specific statute of limitations," "courts apply the statute of limitations for personal injury actions under state law." *Hogan v. Fischer,* 738 F.3d 509, 517 (2d Cir.2013). "Section 1983 actions filed in New York are therefore subject to a three-year statute of limitations." *Id.* The events giving rise to this suit occurred on June 17, 2010. (Compl. ¶ 10 (Dkt. No. 2); PAC ¶ 10.) Thus, the statute of limitations expired on June 17, 2013, three days after this suit was filed. (*See* Dkt. No. 2.) "Where, as here, good cause is lacking, the dismissal without prejudice in combination with the statute of limitations would result in a dismissal *with* prejudice," there must be "sufficient indications on the record that the district court weighed the impact that a dismissal or extension would have on the parties." *Zapata,* 502 F.3d at 197 (footnote omitted).

**\*10** When courts are deciding whether to exercise their discretion to extend the service deadline in the absence of good cause, they are to consider the following factors: "(1) whether the applicable statute of limitations would bar the refiled action; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether the defendant had attempted to conceal the defect in service;

and (4) whether the defendant would be prejudiced by the granting of plaintiff's request for relief from the provision." *E. Refractories Co. v. Forty Eight Insulations, Inc.,* 187 F.R.D. 503, 506 (S.D.N.Y.1999). Regarding the first factor, as explained above, the applicable statute of limitations would bar the refiled action, so Plaintiff would be prejudiced if the Court declined to grant an extension. Though this factor weighs in favor of an extension, it "does not guarantee an extension for every case that may be time-barred if refiled." *Bunim v. City of New York,* No. 05–CV–1562 et al., 2006 WL 2056386, at *3 (S.D.N.Y. July 21, 2006) (internal quotation marks omitted). Therefore, the Court must consider the other factors. There are no indications that the City Police Officer Defendants have actual notice of the claims asserted or that they attempted to conceal the defect in service. However, there are also no allegations that these Defendants would be prejudiced if the Court granted an extension. *See Alvarado v. Am. Freightways, Inc.,* No. 04–CV–9536, 2005 WL 1467891, at *6 (S.D.N.Y. June 21, 2005) (holding that allowing service after the statute of limitations has expired does not, by itself, constitute prejudice). Here, because Plaintiff "would be time-barred from refilling and the defendants allege no prejudice if Rule 4(m) relief is granted, the balance of equities tips in favor of [Plaintiff]." *Id.; see also Gore v. RBA Grp., Inc.,* No. 03–CV–9442, 2009 WL 884565, at *7 (S.D.N.Y. Mar. 27, 2009) ("Since the statute of limitations would bar the plaintiff from re-filing his suit against [the defendant] and nothing in the record indicates that an extension of the time for service will prejudice the defendant, the balance of equities tips in favor of the plaintiff."). "Granting ... [P]laintiff[ ] a discretionary extension also furthers the principle that litigation should generally be resolved on the merits." *Alvarado,* 2005 WL 1467891, at *6. Therefore, the Court will grant Plaintiff 21 days from the date of this Opinion to properly serve the City Police Officer Defendants, or else face dismissal of his claims against these Defendants. However, no further extensions will be given, in the absence of good cause.

*B. 12(b)(6) Motion To Dismiss and Opposition to PAC*

Next, the City and Town move under Rule 12(b)(6) to dismiss the Complaint for failure to state a claim under *Monell v. Dep' t of Soc. Servs. of City of N.Y.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and the Town moves to dismiss the claims against the Town Police Officer Ransom. Additionally, the Defendants move that the Court deny Plaintiff's request to file his PAC.

*1. Standard of Review*

**\*11** Federal Rule of Civil Procedure 15 supplies the legal standard applicable to a motion to amend a complaint. Rule 15(a)(2) provides that leave to amend a complaint shall be "freely" given when "justice so requires." Fed.R.Civ.P. 15(a)(2). However, " '[i]t is within the sound discretion of the district court to grant or deny leave to amend.' " *Barbata v. Latamie,* No. 11–CV–7381, 2012 WL 1986981, at \*2 (S.D.N.Y. June 4, 2012) (quoting *Green v. Mattingly,* 585 F.3d 97, 104 (2d Cir.2009)). "A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 200 (2d Cir.2007) (citing *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). However, "[o]utright refusal to grant the leave without any justifying reason for the denial is an abuse of discretion." *Jin v. Metro. Life Ins. Co.,* 310 F.3d 84, 101 (2d Cir.2002). "When the plaintiff has submitted a proposed amended complaint, the district judge may review that pleading for adequacy and need not allow its filing if it does not state a claim upon which relief can be granted." *Ricciuti v. N.Y.C. Transit Auth.,* 941 F.2d 119, 123 (2d Cir.1991); *see also Alaska Laborers Emp'rs Ret. Fund v. Scholastic Corp.,* No. 07–CV–7402, 2011 WL 3427208, at \*2 (S.D.N.Y. Aug.3, 2011) ("[A] court should not grant a plaintiff the right to amend [a complaint] when such amendment ... could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." (citations and internal quotation marks omitted)). The adequacy of the proposed amended complaint is judged by the same standard as that applied to a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See id.; see also Gen. Elec. Capital Fin., Inc. v. Bank Leumi Trust Co. of N.Y.,* No. 95–CV–9224, 1999 WL 33029, at \*5 (S.D.N.Y. Jan.21, 1999).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (second alteration in original) (citations omitted). Instead, the Supreme Court has emphasized that "[f]actual allegations must be enough to

raise a right to relief above the speculative level," *id.,* and that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563. Plaintiffs must allege "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. But if a plaintiff has "not nudged [his] claims across the line from conceivable to plausible, the [ ] complaint must be dismissed." *Id.; see also Iqbal,* 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " (alteration in original) (citation omitted) (quoting Fed.R.Civ.P. 8(a)(2))).

**\*12** "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus,* 551 U.S. 89, 93–94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007); *see also Rothstein v. UBS AG,* 708 F.3d 82, 94 (2d Cir.2013) ("In addressing the sufficiency of a complaint we accept as true all factual allegations and draw from them all reasonable inferences ."); *Aegis Ins. Servs., Inc. v. 7 World Trade Co., L.P.,* 737 F.3d 166, 176 (2d Cir.2013) ("In reviewing a dismissal pursuant to Rule 12(b)(6), we ... accept all factual allegations in the complaint as true ...." (alterations and internal quotation marks omitted)). Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court ... draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res ., Inc.,* 992 F.Supp.2d 302, 304 n. 1 (S.D.N.Y.2014) (citing *Koch v. Christie's Int'l PLC,* 699 F.3d 141, 145 (2d Cir.2012)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678. Therefore, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679.

Moreover, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.,* 199 F.3d 99, 107 (2d Cir.1999) (internal

Case 1:25-cv-01150-AJB-TWD     Document 4     Filed 10/20/25     Page 128 of 187
Tieman v. City of Newburgh, Not Reported in F.Supp.3d (2015)
2015 WL 1379652

quotation marks omitted); *see also ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir.2007) (noting that the court "may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit" (citation omitted)).

*2. Analysis*

*a. Section 1983 Claims Against the City and Town*
Plaintiff brings claims under 42 U.S.C. § 1983 against the City and Town. "To state a claim under [§ 1983], the plaintiff must show that a defendant, acting under color of state law, deprived him of a federal constitutional or statutory right." *Sykes v. Bank of Am.,* 723 F.3d 399, 405–06 (2d Cir.2013). "Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell,* 436 U.S. at 691. Thus, "to prevail on a claim against a municipality under section 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury,* 542 F.3d 31, 36 (2d Cir.2008); *cf. Salvatierra v. Connolly,* No. 09–CV–3722, 2010 WL 5480756, at *10 (S.D.N.Y. Sept. 1, 2010) (dismissing a claim against agencies where the plaintiff did not allege that any policy or custom caused the deprivation of his rights), *adopted by* 2011 WL 9398 (S.D.N.Y. Apr.16, 2010); *Arnold v. Westchester County,* No. 09–CV–3727, 2010 WL 3397375, at *9 (S.D.N.Y. Apr.16, 2010) (dismissing a claim against the county because the complaint "[did] not allege the existence of an unconstitutional custom or policy"), adopted sub nom. *Arnold v. Westchester Cnty. Dep't of Corr.,* 2010 WL 3397372 (S.D.N.Y. Aug.15, 2010). The fifth element reflects the notion that "a municipality may not be held liable under § 1983 solely because it employs a tortfeasor." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997); *see also Newton v. City of New York,* 566 F.Supp.2d 256, 270 (S.D.N.Y.2008) ("As subsequently reaffirmed and explained by the Supreme Court, municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right."). In other words, a municipality may not be liable under Section 1983 "by application of the doctrine of respondeat superior." *Pembaur v. City of*

*Cincinnati,* 475 U.S. 469, 478, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (italics omitted); *see also Vassallo v. Lando,* 591 F.Supp.2d 172, 201 (E.D.N.Y.2008) (noting that "a municipal entity may only be held liable where the entity *itself* commits a wrong"). Instead, there must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *see also City of St. Louis v. Praprotnik,* 485 U.S. 112, 122, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) ("[G]overnments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights."). "In determining municipal liability, it is necessary to conduct a separate inquiry into whether there exists a 'policy' or 'custom.' " *Davis v. City of New York,* 228 F.Supp.2d 327, 336 (S.D.N.Y.2002), *aff'd,* 75 F. App'x 827 (2d Cir.2003). Normally, "a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [municipality]." *Newton,* 566 F.Supp.2d at 271; *see also City of Okla. v. Tuttle,* 471 U.S. 808, 823–24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) (plurality opinion) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell,* unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."); *Brogdon v. City of New Rochelle,* 200 F.Supp.2d 411, 427 (S.D.N.Y.2002) ("A single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation.").

**\*13** A plaintiff may satisfy the "policy or custom" requirement by alleging one of the following: "(1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." *Brandon v. City of New York,* 705 F.Supp.2d 261, 276–77 (S.D.N.Y.2010) (citations omitted); *see also Roe,* 542 F.3d at 36 (describing the second category for establishing *Monell* liability); *Patterson v. County of Oneida,* 375 F.3d 206, 226–27 (2d Cir.2004) (describing methods of establishing *Monell* liability). Moreover, a plaintiff also

must establish a causal link between the municipality's policy, custom, or practice and the alleged constitutional injury. *See Tuttle,* 471 U.S. at 824 n. 8 ("The fact that a municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy *Monell's* requirement that the particular policy be the 'moving force' behind a *constitutional* violation. There must at least be an affirmative link between[, for example,] the training inadequacies alleged, and the particular constitutional violation at issue." (emphasis in original)); *Roe,* 542 F.3d at 37 (holding that "a plaintiff must demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the alleged injury." (quoting *Brown,* 520 U.S. at 404)); *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir.1983) ("Absent a showing of a causal link between an official policy or custom and the plaintiffs' injury, *Monell* prohibits a finding of liability against the [c]ity."); *Johnson v. City of New York,* No. 06–CV–9426, 2011 WL 666161, at *3 (S.D.N.Y. Feb. 15, 2011) (noting that after demonstrating the existence of a municipal policy or custom, "a plaintiff must establish a causal connection-an affirmative link-between the policy and the deprivation of his constitutional rights" (internal quotation marks omitted)).

At this stage, of course, Plaintiff need not prove these elements, but still must plead them sufficiently to make out a plausible claim for relief. Although there is no heightened pleading requirement for complaints alleging municipal liability under § 1983, *see Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), a complaint does not "suffice if it tenders naked assertion [s] devoid of further factual enhancement," *Iqbal,* 556 U.S. at 678 (alteration in original) (internal quotation marks omitted). Thus, to survive a motion to dismiss, Plaintiff cannot, through conclusory allegations, merely assert the existence of a municipal policy or custom, but "must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." *Santos v. New York City,* 847 F.Supp.2d 573, 576 (S.D.N.Y.2012) (citing *Dwares v. City of New York,* 985 F.2d 94, 100 (2d Cir.1993)). Put another way, mere allegations of a municipal custom, a practice of tolerating official misconduct, or inadequate training and/or supervision are insufficient to demonstrate the existence of such a custom unless supported by factual details.

**\*14** Of the four categories among which a *Monell* plaintiff must establish, Plaintiff's allegations do not include the first two. Plaintiff does not allege that there was a formal policy calling for the use of excessive force, nor does he allege any actions by government officials who were responsible for any offending policies. Rather, Plaintiff's allegations implicate the third and fourth categories-a consistent practice of use of excessive force, that supervisors were aware of and tolerated the use of excessive force, a failure to train officers in the use of force, and/or a failure to supervise officers with regard to their use of force when arresting suspects.

Plaintiff makes a number of general allegations against both the City and Town in his PAC. Plaintiff alleges that the event in question "was not an isolated incident," and, in fact, that the City and Town "have been aware for years (from lawsuits, notices of claim and complaints filed with the municipalities themselves and their police departments) that many of their police officers are insufficiently trained with respect to the laws and regulations regarding use of force during an arrest." (PAC ¶ 40.) Plaintiff further alleges that the municipalities are "aware that such improper training has often resulted in a deprivation of civil rights," and that "[d]espite such notice, the municipalities have failed to take corrective action." (*Id.*) Additionally, Plaintiff alleges that the City and Town "are also liable because they have been on notice that the defendant police officers lack the objectivity, temperament, maturity, and discretion to be members of their respective police departments," and retaining the police officers amounts to "gross negligence and deliberate indifference." (*Id.* ¶ 41.) Plaintiff further alleges that "upon information and belief, in 2010, Defendants had a policy or routine practice of using excessive force when effectuating arrests." (*Id.* ¶ 42.)

Plaintiff's PAC also contains allegations specifically against the City, apart from the allegations generally against the City and Town. First, Plaintiff alleges that the City "has a policy or practice of using excessive force when effectuating arrests, and fails to train and/or discipline its employees to prevent violations of arrestee's [sic] constitutional rights." (*Id.* ¶ 22.) Plaintiff also alleges that "upon information and belief, it was the policy and/or custom of [D]efendant City of Newburgh to inadequately train, supervise, discipline, and/or terminate their officers, staff, agents and employees, thereby failing to adequately discourage further constitutional violations on the part of their officers, staff, agents and employees." (*Id.* ¶ 43.) Plaintiff alleges that "as a result of the above described policies and customs, the officers, staff, agents and employees of [the City] believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated," and that these customs

and policies "demonstrate a deliberate indifference on the part of the policymakers of Defendant City of Newburgh to the constitutional rights of the arrestees and were the cause of the violations of Plaintiff's rights alleged herein." (*Id.* ¶¶ 44–45.) By themselves, these general allegations are "conclusory, and therefore must be disregarded." *Simms v. City of New York,* No. 10–CV–3420, 2011 WL 4543051, at *3 (E.D.N.Y. Sept.28, 2011) (dismissing conclusory allegations that did not provide any facts that would allow the court to infer what city policies or practices led to the alleged deficiency) (citing *Iqbal,* 556 U.S. at 678–79), *aff'd,* 480 F. App'x. 627 (2d Cir.2012); *see also Triano v. Town of Harrison,* 895 F.Supp.2d 526, 535–37 (S.D.N.Y.2012) (holding that "mere allegations of a municipal custom or practice of tolerating official misconduct are insufficient to demonstrate the existence of such a custom unless supported by factual details" and collecting cases); *Duncan v. City of New York,* No. 11–CV–3826, 2012 WL 1672929, at *3 (E.D.N.Y. May 14, 2012) (holding that "boilerplate statements" claiming that New York City had a custom of making and tolerating false arrests and of using excessive force "[were] insufficient to state a claim of municipal liability under *Monell* "); *Moore v. City of New York,* No. 08–CV–8879, 2010 WL 742981, at *6 (S.D.N.Y. Mar.2, 2010) ("Allegations that a defendant acted pursuant to a policy or custom without any facts suggesting the policy's existence, are plainly insufficient." (internal quotation marks omitted)); *Bradley v. City of New York,* No. 08–CV–1106, 2009 WL 1703237, at *3 (E.D.N.Y. June 18, 2009) ("The [c]omplaint's conclusory, boilerplate language- that the [c]ity 'fail[ed] to adequately train, discipline, and supervise' employees and 'fail[e]d to promulgate and put into effect appropriate rules and regulations applicable to the duties and behavior' of its employees-is insufficient to raise an inference of the existence of a custom or policy, let alone that such a policy caused [the][p]laintiffs to be arrested without probable cause." (citation omitted)).

**\*15** The only remaining allegation against the Town is that it "was a municipal corporation," and "was the employer and supervisor" of Defendant Ransom. (PAC ¶ 8.) Therefore, Plaintiff alleges, the Town "was responsible for [Defendant Ransom's] training, supervision and conduct," as well as "for enforcing the regulations of the Town of Newburgh Police Department and for ensuring that Town of Newburgh police personnel obey the laws of the State of New York and of the United States." (*Id.*) This allegation would only support a claim for vicarious liability, and does not state a claim for municipal liability under *Monell. See City of Canton,* 489 U.S. at 385 ("Respondeat superior or vicarious liability will not attach under § 1983." (italics omitted)); *Hughes v. Salerno,* No. 11–CV–9094, 2012 WL 6097775, at *4 (S.D.N.Y. Dec.5, 2012) ("*Monell* does not provide a cause of action for vicarious liability."). Therefore, Plaintiff's claim for municipal liability against the Town is dismissed and the Court denies Plaintiff's request to file his PAC with regard to this claim .[10]

[10]    In its Memorandum of Law in Support of its Motion To Dismiss, the Town argued that the Complaint and PAC "are devoid of factual allegations supporting the inference that the alleged policies actually exist." (Town's Mem. 6.) Though Plaintiff responded to the City's arguments regarding his *Monell* claims, he did not respond to the Town's arguments regarding municipal liability. (*See generally* Pl.'s Mem.) The Town argues in reply that "Plaintiff's failure to raise any argument in opposition to the Town's motion constitutes an abandonment of the claim, and as such, the claims against the Town must be dismissed." (Town of Newburgh and Sergeant William Ransom's Reply Br. in Further Supp. of their Mot. To Dismiss ("Town's Reply") 3 (Dkt. No. 50) (citing *Hanig v. Yorktown Cent. Sch. Dist.,* 384 F.Supp.2d 710, 724 (S.D.N.Y.2005)).) Though the Court dismisses Plaintiff's *Monell* claims against the Town on the merits, it alternatively holds that Plaintiff has abandoned this claim, as Plaintiff offered no response to the Town's arguments in support of its Motion To Dismiss the *Monell* claim. *See Baity v. Kralik,* —— F.Supp.3d ——, 2014 WL 5010513, at *16 (S.D.N.Y. Sept.30, 2014) (holding that the court "could find [the][p]laintiff to have abandoned any claim that *Monell* liability applies" when the plaintiff's memorandum in opposition made no mention of the defendant's arguments on that issue, and collecting cases); *Chamberlain v. City of White Plains,* 986 F.Supp.2d 363, 392 (S.D.N.Y.2013) (holding, in the context of a § 1983 *Monell* claim, that "[a] court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed").

Plaintiff does offer more specific allegations in support of his two theories of *Monell* liability against the City. For example, Plaintiff alleges that the City "has an extensive history of lawsuits and other complaints alleging the use of excessive

force by its employees." (PAC ¶ 23.) As noted, Plaintiff specifically identifies nine lawsuits he represents were filed in the five years before the incident in question, at least five of which "involved allegations of unnecessary and excessive dog bites." (*Id.; see also id.* ¶¶ 24–32.) Plaintiff alleges that the "City of Newburgh routinely reached settlement agreements with the plaintiffs in the above-mentioned cases," and further alleges that "upon information and belief, most, if not all, of the above-mentioned cases settled for amounts well in excess of nuisance value." (*Id* . ¶¶ 33–34.) Plaintiff also alleges "[u]pon information and believe," that "the officers that were the subject of these lawsuits were not disciplined by [the City] for their actions." (*Id.* ¶ 34.)

Additionally, Plaintiff alleges that the City of Newburgh "was also on notice of allegations of excessive force by its officers through public forums, including on February 11, 2008," when "the Newburgh City Council held a public comment session, at which numerous residents testified regarding the excessive and unnecessary use of police dogs during arrests, as well as additional perceived problems within the Police Department, including the lack of a civilian review board." (*Id.* ¶ 35.)

Finally, Plaintiff alleges that Matrix Consulting Group published its final report, titled "An Assessment of the Culture, Community Relations, Use of Force, Training, Disciplinary Practices of the Police Department–City of Newburgh, New York," on August 1, 2013. (*Id.* ¶ 36.) According to Plaintiff,

> **\*16** Among the many findings and recommendations in the report is that discipline guidelines and decisions are unstructured-the report therefore recommended, *inter alia,* that the Chief should direct improvements to the Internal Affairs process, including assigning a specific investigator and requiring a formal report, which was not previously required. In addition, only 43% of sworn officers who responded to the polling in the report agreed that they received appropriate training to do their job well. This report's findings support the proposition that [the City's] training and discipline procedures are

inadequate to prevent violations of arrestees['] constitutional rights.

(*Id.*)

These allegations fail to plausibly state that there is a City practice of using excessive force during arrests, generally, or using police dogs so consistent and widespread as to constitute a custom or usage. Under the third category of *Monell* claims, "an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law," *Brown,* 520 U.S. at 404, which is to say, that it is a "longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity," *Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989); *see also Kern v. City of Rochester,* 93 F.3d 38, 44 (2d Cir.1996) (noting that a municipality's custom "need not be memorialized in a specific rule or regulation"); *Jeffes v. Barnes,* 208 F.3d 49, 61 (2d Cir.2000) (discussing *Jett* ). Therefore, a plaintiff may establish municipal liability by demonstrating that a municipality "indirectly caused the misconduct of a subordinate municipal employee by acquiescing in a longstanding practice or custom which may fairly be said to represent official policy." *Miller v. County of Nassau,* 467 F.Supp.2d 308, 314 (E.D.N.Y.2006). To prevail on this theory of municipal liability, however, a plaintiff must prove that the custom at issue is permanent and well-settled. *See Praprotnik,* 485 U.S. at 127 (noting that the Supreme Court "has long recognized that a plaintiff may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a custom or usage with the force of law' " (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 167–68, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (internal quotation marks omitted))); *Davis* 228 F.Supp.2d at 346 (explaining that "[w]idespread means that [the unconstitutional acts in question] are common or prevalent throughout the [government body]; well-settled means that the [unconstitutional acts in question] have achieved permanent, or close to permanent, status."). As the Supreme Court emphasized in *Monell,* Congress enacted § 1983 to impose liability on municipalities "because of the persistent and widespread discriminatory practices of state officials," and out of recognition that such practices could become "so permanent and well settled as to constitute a

'custom or usage' with the force of law." *Monell,* 436 U.S. at 691 (citation and internal quotation marks omitted).

**\*17** The lawsuits cited by Plaintiff in the PAC, even when combined with the allegations regarding the public forum comments and the Matrix Report, are insufficient to plausibly support an inference of a widespread custom. To begin, even if the civil complaints involved comparable conduct to that alleged here, "none result[ed] in an adjudication of liability." *Walker v. City of New York,* No. 12–CV–5902, 2014 WL 1259618, at \*3 (S.D.N.Y. Mar.18, 2014); *see also Collins v. City of New York,* 923 F.Supp.2d 462, 479 (E.D.N.Y.2013) (holding that a "litany of other police-misconduct cases" discussed in the plaintiff's complaint "[were] insufficient to make a plausible case for *Monell* liability," because they either were different from the misconduct alleged in the complaint, post-dated the alleged misconduct in the case at hand, or "involve[d] something less (settlements without admissions of liability and unproven allegations) than evidence of misconduct"); *accord Strauss v. City of Chicago,* 760 F.2d 765, 768–69 (7th Cir.1985) (holding, even pre-*Twombly* and *Iqbal,* that allegations of complaints about similar conduct were insufficient to state a claim for a widespread custom under *Monell* because "the number of complaints filed, without more, indicates nothing," as "[p]eople may file a complaint for many reasons, or for no reason at all," and "[t]hat they filed complaints does not indicate that the policies that [the plaintiff] alleges exist do in fact exist"); *Rikas v. Babusch,* No. 13–CV–2069, 2014 WL 960788, at \*3 (N.D.Ill. Mar.12, 2014) ("[T]he fact that prior lawsuits were filed against [one of the defendants accused of excessive force] does not support [the plaintiff's] *Monell* claim nor does it evidence a widespread municipal practice."); *Xian Ming Wu v. City of New Bedford,* No. 12–CV–11648, 2013 WL 4858473, at \*2 (D.Mass. Sept.11, 2013) (holding that a complaint's reference to two other similar complaints is insufficient to survive a motion to dismiss). And though numerous cases, discussed below, look to unsubstantiated allegations in lawsuits and complaints by residents to establish municipal liability, these cases do so through the framework of deliberate indifference failure-to-train and failure-to-supervise cases and their reasoning is therefore not persuasive here. *See e .g., Walker,* 2014 WL 1259618, at \*3 (holding that failure-to-train cases, such as *Fiacco v. City of Rensselaer,* 783 F.2d 319 (2d Cir.1986), are inapposite to *Monell* claims alleging a widespread custom). Simply put, the fact that there were allegations of thirteen instances of excessive force during arrests over four years (none of which involved findings or admissions

of culpability) during which hundreds, if not thousands, of arrests were made does not plausibly demonstrate that the use of excessive force during arrest was so frequent and pervasive to constitute a custom. *Walker,* 2014 WL 1259618, at \*1–3 (holding that the allegation that ten complaints were filed against New York City in the ten preceding years was insufficient to state a claim because the "paltry number of complaints (none resulting in an adjudication of liability), spread over a period so long in a city so large, hardly suggests the frequency or pervasiveness of the purported custom that is required to state a *Monell* claim"). (*See also* Aff. of David L. Posner ("Posner Aff.") Ex. D (Matrix Report), at 59 (Dkt. No. 26) (noting that the City made "a total of 2,478 arrests in 2012").) [11]

[11]    The City puts forward several documents not attached to Plaintiff's Complaint or PAC, specifically, a redacted settlement stipulation from one of the cases Plaintiff refers to in the PAC, releases signed by some plaintiffs in the cases referred to by Plaintiff in the PAC, and an excerpt of the Matrix Report. (*See* Aff. of David L. Posner ("Posner Aff.") Ex. B–D (Dkt. No. 26).) The Court considers the Matrix Report because it is incorporated by reference into the PAC, as Plaintiff specifically cites to the Report and its findings. *See Wilson v. Med. Unit Officials at George R. Vierno Ctr. Jail at 09–09 Hazen St.,* No. 10–CV–1438, 2011 WL 6780934, at \*2 (E.D.N.Y. Dec. 27, 2011) ("Because they are explicitly cited in [the] plaintiff's complaint, the court shall deem the ultrasound reports incorporated by reference and shall consider them in assessing [the] defendants' motion to dismiss."); *Harrison v. Metro. Life Ins. Co.,* 417 F.Supp.2d 424, 431 (S.D.N.Y.2006) (considering a document outside the complaint where the plaintiff "cites to" the document in her complaint and specifically quoted from one part of it). Furthermore, Plaintiff does not dispute the veracity of the Report provided by the City.

The other documents provided by Defendants, however, are not material to the Court's determination of the City's Motion, so the Court need not assess whether they are properly considered.

**\*18**    Additionally, in Plaintiff's Memorandum in Opposition, he argues that the City has a police force of 75, and that Plaintiff alleges that there were at least 15 to 20 police officers

surrounding him, meaning that "Plaintiff's allegations, taken as true, would mean that at least one-fifth of the entire City of Newburgh Police Department was present for the assault of Plaintiff, and both tolerated the abuse of plaintiff's constitutional rights and did not fear retribution." (Pl.'s Mem. 8.) However, the size of the City's police force is not a fact alleged in the Complaint or PAC, and the Court cannot consider additional factual allegations contained in Plaintiff's papers. *See Paul v. Bailey,* No. 09–CV–5784, 2013 WL 2896990, at *5 (S.D.N.Y. June 13, 2013) ("[A]s a general rule, ... courts should not consider factual allegations made for the first time in opposition papers."); *Friedman v. MiraMed Revenue Grp., L.L.C.,* No. 12–CV–5328, 2012 WL 5992163, at *3 (S.D.N.Y. Nov. 19, 2012) ("[T]he [c]ourt declines to consider the additional facts set forth in [the] plaintiff's opposition papers that are not in his complaint."). [12] In any event, the allegation that 15 to 20 officers were present during Plaintiff's arrest does nothing to establish that the alleged excessive force happened as part of a well-established practice or custom. Instead, this allegation only supports, at best, a single instance where numerous officers allegedly used excessive force. This is not an akin to establishing a custom of use of excessive force. *See Tuttle,* 471 U.S. at 823–24 (1985) (plurality opinion) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell* [.]"); *Triano,* 895 F.Supp.2d at 532 ("Normally, a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the municipality." (alteration and internal quotation marks omitted)). For the above reasons, Plaintiff fails to state a *Monell* claim for relief against the City of Newburgh on the theory that the City of Newburgh has a custom of using excessive force during arrests so widespread to have the force of law.

[12] "[W]here a pro se plaintiff has submitted other papers to the [c]ourt, such as legal memoranda, the [c]ourt may consider statements in such papers to supplement or clarify the plaintiff's pleaded allegations." *Sommersett v. City of New York,* No. 09–CV–5916, 2011 WL 2565301, at *3 (June 28, S.D.N.Y.2011) (italics and internal quotation marks omitted). Here, however, Plaintiff was not pro se when he submitted the PAC, so the Court does not have an obligation read the PAC with the special solicitude due to pro se plaintiffs. *See Neely,* 2013 WL 752636, at *12 ("Although the [c]ourt liberally construed [the][p]laintiff's pro se [o]riginal [c]omplaint, since [the][p]laintiff is now represented by counsel, the [c]ourt has no obligation to construe the [p]roposed [a]mended [c]omplaint liberally[.]" (brackets, italics, and internal quotation marks omitted)).

The Court next considers whether Plaintiff has adequately pleaded a claim for relief against the City under a deliberate indifference theory, the fourth category of *Monell* claims. "*Monell's* policy or custom requirement is satisfied where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions." *Reynolds v. Giuliani,* 506 F.3d 183, 192 (2d Cir.2007) (citing *Jett,* 491 U.S. at 737); *see also City of Canton,* 489 U.S. at 394–95 (O'Connor, J., concurring in part and dissenting in part) ("Where ... a claim of municipal liability is predicated upon a failure to act, the requisite degree of fault must be shown by proof of a background of events and circumstances which establish that the 'policy of inaction' is the functional equivalent of a decision by the city itself to violate the Constitution."); *Amnesty Am. v. Town of W. Hartford,* 361 F.3d 113, 129 (2d Cir.2004) (citing *City of Canton* for the proposition that a "municipality can be liable for failing to train its employees where it acts with deliberate indifference in disregarding the risk that its employees will unconstitutionally apply its policies without more training"); *Johnson,* 2011 WL 666161, at *3 (explaining that a plaintiff may demonstrate the existence of a custom or policy by alleging "a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees"). However, such a failure to act, train, or supervise can constitute a municipal custom "only where the need to act is so obvious, and the inadequacy of current practices so likely to result in a deprivation of federal rights, that the municipality or official can be found deliberately indifferent to the need." *Reynolds,* 506 F.3d at 192 (citing *City of Canton,* 489 U.S. at 390); *see also Marte v. N.Y.C. Police Dep ' t,* No. 10–CV–3706, 2010 WL 4176696, at *2 (S.D.N.Y. Oct. 12, 2010) (noting that a municipality's failure to train its employees can support § 1983 liability only where " 'the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.' " (quoting *City of Canton,* 489 U.S. at 388)).

**\*19** In *City of Canton,* the Supreme Court established the "deliberate indifference" standard in the context of a claim for failure to train, but "the stringent causation and culpability requirements set out in that case have been applied

to a broad range of supervisory liability claims," including claims for failure to supervise and failure to discipline. *Reynolds,* 506 F.3d at 192 (citing *Amnesty Am.,* 361 F.3d at 127 (failure to supervise); *Berry v. City of Detroit,* 25 F.3d 1342, 1354 (6th Cir.1994) (failure to discipline)); *see also Connick v. Thompson,* —— U.S. ——, ——, 131 S.Ct. 1350, 1360, 179 L.Ed.2d 417 (2011) (noting that "deliberate indifference" is a "stringent standard" requiring "proof that a municipal actor disregarded a known or obvious consequence of his action" (internal quotation marks omitted)).[13] In this context, the Supreme Court has held that "where a policymaking official exhibits deliberate indifference to constitutional deprivations caused by subordinates, such that the official's inaction constitutes a 'deliberate choice,' that acquiescence may 'be properly thought of as a city 'policy or custom' that is actionable under § 1983.' " *Amnesty Am.,* 361 F.3d at 126 (quoting *City of Canton,* 489 U.S. at 388); *see also Vann v. City of New York,* 72 F.3d 1040, 1049 (2d Cir.1995) (holding that a plaintiff "may establish the pertinent custom or policy by showing that the municipality, alerted to the [unconstitutional action by its employees], exhibited deliberate indifference"); *Sorlucco v. N.Y.C. Police Dep't,* 971 F.2d 864, 871 (2d Cir.1992) (stating that municipal liability lies where the subordinate's misconduct is "so manifest as to imply the constructive acquiescence of senior policy-making officials").

[13]    The Supreme Court has emphasized that a "municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick,* 131 S.Ct. at 1359; *see also Tuttle,* 471 U.S. at 822–23 ("[A] 'policy' of 'inadequate training' " is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell.*" ).

Plaintiff has attempted to allege two types of deliberate indifference claims: failure to train and failure to supervise/ discipline. Indeed, "[a] § 1983 plaintiff injured by a police officer may establish the pertinent custom or policy by showing that the municipality, alerted to the possible use of excessive force by its police officers, exhibited deliberate indifference." *Vann,* 72 F.3d at 1049. To establish deliberate indifference for a failure to supervise and/or discipline claim, the plaintiff must "show that the need for more or better supervision to protect against constitutional violations was obvious," which may be established "by showing that there were repeated complaints of civil rights violations," and "deliberate indifference may be inferred if the complaints

are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." *Shepherd v. Powers,* No. 11–CV–6860, 2012 WL 4477241, at *9 (S.D.N.Y. Sept.27, 2012) (internal quotation marks omitted). The Second Circuit has set out three requirements that must be met before a municipality may be liable under either theory: first, that a policymaker knows " 'to a moral certainty' " that his or her employees will confront a given situation; second, " 'that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation;' " and third, " 'that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights.' " *Jenkins v. City of New York,* 478 F.3d 76, 94 (2d Cir.2007) (quoting *Walker v. City of New York,* 974 F.2d 293, 297–98 (2d Cir.1992)).

**\*20** Applying these principles to this case, the Court concludes that Plaintiff has sufficiently alleged that the need for more or better supervision was obvious. There is no bright line rule for how many complaints of civil rights violations is sufficient to show the need for more supervision, nor is there a bright line rule for how recent those complaints must be. The City asserts that the complaints relied on by Plaintiff regarding excessive force incidents that occurred between 2005 and 2008 are too sparse and too remote to support an inference of obviousness. (Def.'s Mem. of Law in Supp. of Dismissal ("City's Mem.") 10 (Dkt. No. 28); Newburgh's Reply Br. in Supp. of 12(b)(5) and 12(b)(6) Dismissal ("City's Reply") 5–6 (Dkt. No. 47).) However, the City provides no authority to support the notion that a plaintiff must cite a certain number of complaints in a certain time period to make out a *Monell* claim. Indeed, the case law supports Plaintiff's position here. For example, in *McCants v. City of Newburgh,* No. 14–CV–556, 2014 WL 6645987 (S.D.N.Y. Nov.21, 2014), *clarified on denial of reconsideration,* 2014 WL 7398910 (S.D.N.Y. Dec.9, 2014), the court denied a motion to dismiss a *Monell* claim on deliberate indifference grounds. In that case, the court found it sufficient that the plaintiff's pleadings referred to other lawsuits demonstrating that the municipality "was on notice to the possible use of excessive force by its police officers on seventeen different occasions." *Id.* at *4. There, the seventeen excessive force claims were made "in the seven-year time period prior to" the incident resulting in the suit. *Id.* In *Farrow v. City of Syracuse,* No. 12–CV–1401, 2014 WL 1311903, (N.D.N.Y. Mar. 31, 2014), the Northern District of New York noted in dicta that were the court deciding a motion to dismiss,

the fact that "at least 15 excessive force complaints ha[d] been filed against the [c]ity in the past 5 years" would be sufficient state a plausible failure to train case. *Id.* at \*8 n. 7; *see also Shepherd,* 2012 WL 4477241, at \*10 (holding, on a motion to dismiss where the complaint relied on a Department of Justice ("DOJ") report finding evidence of unconstitutional activity in 2008 to support a claim that such a custom existed in 2010, that the court "[was] obligated to draw all reasonable inferences in [the] [p]laintiff's favor and thus [took] as true for purposes of th[e] motion practice the assertion that the deficiencies found by the DOJ existed at the time of the alleged assault against [the][p]laintiff"). The Court does not see any material difference between the seventeen excessive force claims in seven years in *McCants,* the fifteen excessive force claims in five years in *Farrow,* [14] and the thirteen claims alleged in nine lawsuits in five years here. [15] While there may be questions about the quantum of proof Plaintiff has regarding these other complaints at summary judgment, Plaintiff's allegations allow the Court to plausibly infer that the City was on notice that the police officers were using excessive force in making arrests. *See Osterhoudt v. City of New York,* No. 10–CV–3173, 2012 WL 4481927, at \*1 (E.D.N.Y. Sept. 27, 2012) ("Mere allegations have little, if any, probative force and by themselves would hardly prevent summary judgment. But in the context of Rule 12, where plausibility is in issue, it is hard to ignore these cases, which suggest that the conduct complained of is not limited to the four corners of [the plaintiff's] complaint.").

[14]    Indeed, the fifteen cases referred to in *Farrow* were *filed* against the city in the preceding five years, so the underlying claims likely occurred even outside that timeframe.

[15]    Unlike in cases such as *Perez v. N.Y.C. Dep't of Corr.,* No. 10–CV–2697, 2012 WL 3704744 (E.D.N.Y. Aug.27, 2012), there is no doubt here that the City knew about the complaints. *Id.* at \*3 (reasoning that "[w]hile a court may consider complaints made against a municipality and its response to them to determine whether the municipality acted with deliberate indifference," the plaintiff's claims must be dismissed because the "plaintiff does not allege who, if anyone, at [the department of corrections] and/or the [c]ity knew about the alleged incidents, or how and through whom these entities may have responded to the alleged incidents").

Additionally, the Court concludes that it can consider all of the other lawsuits cited by Plaintiff, not just the ones involving police dogs, as Plaintiff alleges a custom involving a broad array of unconstitutionally excessive force during arrest, resulting not only in him being attacked by a police dog, but also being punched and beaten severely during his arrest. (*See* PAC ¶¶ 14–16.)

**\*21** However, an allegation of numerous claims of excessive force by itself is insufficient to raise an inference of deliberate indifference due to failure to supervise. Instead, a plaintiff must allege that "meaningful attempts to investigate repeated claims of excessive force are absent." *Hart v. City of Binghamton,* No. 10–CV–1064, 2012 WL 1565085, at \*5 (N.D.N.Y. May 2, 2012) (internal quotation marks omitted). Put another way, "[f]or deliberate indifference to be shown, the response must amount to a persistent failure to investigate the complaints or discipline those whose conduct prompted the complaints." *Id.* (internal quotation marks omitted); *see also Lawrence v. City of Rochester,* No. 09–CV–6078, 2015 WL 510048, at \*7 (W.D.N.Y. Feb.6, 2015) ("Deliberate indifference may be inferred from the failure to train or supervise based on proof of repeated complaints of civil rights violations that are followed by no meaningful attempt on the part of the municipality to investigate or to forestall." (internal quotation marks omitted)); *Aretakis v. Durivage,* No. 07–CV–1273, 2009 WL 249781, at \*29 (N.D.N.Y. Feb. 3, 2009) (same). Here, Plaintiff does not offer any allegations plausibly establishing that the City failed to investigate the listed complaints of excessive force. The *only* allegation Plaintiff makes regarding the City's response to the other lawsuits and the complaints made in the public forum is that "[u]pon information and belief, the officers that were the subject of these lawsuits were not disciplined by [the City] for their actions." (PAC ¶ 34.) This is insufficient.

There are two ways to plausibly plead deliberate indifference with respect to failure to supervise/discipline. First, a plaintiff may plead (1) that there was a pattern of allegations of or complaints about similar unconstitutional activity and (2) that the municipality *consistently failed to investigate* those allegations. Second, a plaintiff may plead (1) that there was a pattern of actual similar constitutional violations and (2) the municipality *consistently failed to discipline* those involved. However, what Plaintiff alleges here is (1) that there was a pattern of allegations of or complaints about similar unconstitutional activity and (2) that those allegedly involved were not disciplined. This does not plausibly plead a claim for deliberate indifference. There is no basis for the

Court to conclude that Plaintiff plausibly alleged that the past conduct was *actually* unconstitutional, and therefore it would not be deliberately indifferent of the City to fail to punish police officers for conduct that was not improper or that they did not commit. Indeed, to plausibly allege a deliberate indifference failure to discipline claim under the second strategy, Plaintiff must allege a consistent pattern of a failure to discipline unconstitutional action. *See Posr v. City of New York,* 835 F.Supp. 120, 125 (S.D.N.Y.1993) (holding, in granting a motion to dismiss a failure to discipline case, that while "[i]t is true that a consistent failure to discipline can give rise to a finding that a municipality has a policy of not disciplining," "[n]o court ... has ever held that a municipality is required to discipline every officer upon a finding of wrongdoing"), *aff'd,* 22 F.3d 1091 (2d Cir.1994); *see also Hart,* 2012 WL 1565085, at \*4 (holding, in the context of a summary judgment motion, that "while [the][p]laintiff [had] cited to numerous cases concerning citizen complaints of the use of excessive force," he "[had] not provided evidence tending to indicate that any [of] the [ ] complaints were of substance," thus the "failure to find any of the officers engaged in excessive force alleged in the complaints does not mean *a fortiori,* that the [c]ity was deliberately indifferent to the well being of its citizens"); *cf. Bertuglia v. City of New York,* 839 F.Supp.2d 703, 738 (S.D.N.Y.2012) (denying a motion to dismiss a deliberate indifference claim where "[t]he plaintiffs have pleaded that the [c]ity has a longstanding, de facto policy of never disciplining prosecutors who commit specified types of prosecutorial misconduct and not otherwise training them to avoid misconduct"). Finally, Plaintiff's allegation that the Matrix Report concluded that the City's "discipline guidelines and decisions are unstructured" and recommended that certain changes be made is insufficient to plausibly plead that there was a consistent failure to investigate allegations of misconduct or punish incidents of unconstitutionally excessive force to meet the stringent standard of deliberate indifference. In particular, Plaintiff alleges no causal link between the allegedly "unstructured" discipline guidelines and the unconstitutional practice of not investigating allegations of use of excessive force. For the above reasons, the Court holds that Plaintiff has not plausibly alleged a failure to supervise/discipline case against the City.

**\*22** The Court now turns to the additional requirements for a failure to train claim. To allege a failure to train claim, a plaintiff must plausibly allege a specific deficiency in the municipality's training. In *Amnesty America,* the Second Circuit suggested that to state a claim for a municipality's failure to train its employees, a plaintiff "need only plead

that the city's failure to train caused the constitutional violation," because "[i]t is unlikely that a plaintiff would have information about the city's training programs or about the cause of the misconduct at the pleading stage." 361 F.3d at 130 n. 10. However, since *Twombly* and *Iqbal,* "courts in this district have generally required that plaintiffs provide more than a simple recitation of their theory of liability, even if that theory is based on a failure to train." *Simms,* 2011 WL 4543051, at \*2 n. 3 (collecting cases), *aff'd sub nom. Simms v. City of New York,* 480 F. App'x 627 (2d Cir.2012); *see also Simms,* 480 F. App'x at 631 n. 4 ("While it may be true that § 1983 plaintiffs cannot be expected to know the details of a municipality's training programs prior to discovery, this does not relieve them of their obligation under *Iqbal* to plead a facially plausible claim." (citation omitted)); *Santos,* 847 F.Supp.2d at 577 ("Because the existence of a municipal policy or practice, such as a failure to train or supervise, cannot be grounded solely on the conclusory assertions of the plaintiff, [the plaintiff's] claims against the [c]ity are dismissed with prejudice." (citation omitted)). To state a claim for municipal liability based on failure to train, Plaintiff therefore must allege facts that support an inference that the municipality failed to train its police officers, that it did so with deliberate indifference, and that the failure to train caused his constitutional injuries. *See Acosta v. City of New York,* No. 11–CV–856, 2012 WL 1506954, at \*11 (S.D.N.Y. Apr. 26, 2012) (dismissing *Monell* claim where plaintiff merely alleged that the city "failed to train its police officers as to display a deliberate indifference," because plaintiff "failed to set forth factual allegations that would support a plausible inference that the [c]ity's 'policies' or 'customs' caused ... [the] alleged violations of [the] plaintiff's rights"); *Simms,* 2011 WL 4543051, at \*2 (dismissing failure to train claim where there was "not enough factual material in the [c]omplaint for the court to reasonably infer that the police misconduct [the plaintiff] allege [d] was the result of anything other than individual acts of the arresting officers"); *Johnson,* 2011 WL 666161, at \*4 (holding that a complaint that "contain[ed] only an unsupported conclusory allegation that the [c]ity failed to train the individual [d]efendants" could not withstand a motion to dismiss because the plaintiff did not plead any facts that "plausibly allege[d] a specific deficiency in the training or supervision program" (internal quotation marks omitted)); *Araujo v. City of New York,* No. 08–CV–3715, 2010 WL 1049583, at \*9 (E.D.N.Y. Mar. 19, 2010) (dismissing failure to train claim where the plaintiff alleged "no facts to indicate any deliberate choice by municipal policymakers to engage in unconstitutional conduct").

**\*23** Other than Plaintiff's boilerplate assertions discussed above, the sole fact Plaintiff pleaded with respect to the City's failure to train its officers is that, "only 43% of sworn officers who responded to the polling in the [Matrix Report] agreed that they received appropriate training to do their job well." (PAC ¶ 36.) This factual allegation is just not enough to nudge Plaintiff's claim from possible to plausible. The polling data is not specific as to training regarding the use of excessive force. Nor has Plaintiff pleaded any facts suggesting that an alleged training deficiency *caused* his constitutional injury, for example by identifying "procedural manuals or training guides" or by "highlight[ing] relevant particular aspects of police training or supervision." *Marte,* 2010 WL 4176696, at \*3. The allegation that, three years after the incident in question took place, only 43% of officers who responded to polling stated that they received appropriate training to do their job well does not allow the Court to plausibly conclude that, at the time of the incident, the City's training as to the use of force during arrest was insufficient and that that insufficiency led to Plaintiff's injuries. *See Hunter v. City of New York,* 35 F.Supp.3d 310, 325–26 (E.D.N.Y.2014) (dismissing a *Monell* failure to train claim because the pleadings did not plausibly state a claim that there was "a specific deficiency in the city's training program and that the deficiency is closely related to [the plaintiff's] ultimate injury, such that it actually caused [the plaintiff's] constitutional deprivation" (internal quotation marks omitted)); *Triano,* 895 F.Supp.2d at 539 (dismissing a *Monell* failure to train claim where the plaintiff "merely alleged that the [t]own fail[ed] to train its employees, without providing any supporting factual detail about alleged deficiencies in the training program, or regarding other instances of police misconduct which could be attributed to a failure to train"); *Khanukayev v. City of New York,* No. 09–CV–6175, 2012 WL 3538729, at \*4 (S.D.N.Y. Aug.13, 2012) (dismissing a failure to train claim where "the complaint [does not] ... allege ... the manner in which there was a failure to train"); *Doe v. City of New York,* No. 09–CV–9895, 2012 WL 2900483, at \*2 (S.D.N.Y. July 2, 2012) ("The [a]mended [c]omplaint contains no facts elaborating on (or even theorizing as to) the defective nature of the NYPD training program, let alone an allegation as to how a defect in training or supervision caused her harm."); *Simms,* 2011 WL 4543051, at \*3 ("While this assertion does specify what type of training the officers lacked, it does not provide any facts that would allow the court to infer what city policies, practices, or customs contributed to or caused the deficiency."); *Johnson,* 2011 WL 666161, at \*4 (dismissing a failure to train claim where plaintiff did not

plead "any facts that plausibly allege[d] a specific deficiency in the training or supervision program that accounts for deprivation of [his] constitutional rights" and "[did] not identify procedural manuals or training guides, nor [did he] highlight relevant particular aspects of police training or supervision" (internal quotation marks omitted)); *Brown v. City of New York,* No. 09–CV–2337, 2010 WL 4077925, at \*2 (S.D.N.Y. Oct.13, 2010) (dismissing a failure to train claim where the plaintiff "[did] not allege any ... specific deficiencies in the officers' training, nor [did] he allege any facts from which the court could infer that such ... deficiencies existed"); *Williams v. City of New York,* 690 F.Supp.2d 338, 345–46 (S.D.N.Y.2010) (dismissing a plaintiff's failure to train claim where the plaintiff's complaint "once mention[ed] the [c]ity's inadequate training program," but did "not set forth a single factual allegation relating to the program"). For the foregoing reasons, Plaintiff fails to state a claim against the City under *Monell.* However, the Court will give Plaintiff one last chance to plead a *Monell* claim against the City.

### b. Claims against Defendant Ransom

**\*24** Plaintiff's PAC contains the following allegation against Defendant Ransom. The City Police Officers "gave chase to [P]laintiff in a number of police vehicles," and "[a]t some point soon thereafter, and prior to Plaintiff stopping his vehicle," Defendant Ransom joined the chase. (PAC ¶ 12.) That is the only allegation specifically referring to Defendant Ransom. However, the Complaint and PAC also contain a number of allegations against "the defendant police officers," a term defined in the Complaint as the City Police Officer Defendants and unknown police officers 1–5, (Compl.¶ 4), and not defined in the PAC. Plaintiff alleges that, after he pulled over, Defendant Maguire "opened the truck door and ordered his police dog to attack [P]laintiff," and Plaintiff was attacked by the police dog and punched by Defendant Maguire. (PAC ¶ 14.) Plaintiff further alleges that although he was "not resisting the police officers in any way," he was "dragged from the truck and thrown to the ground by [Defendant Maguire] and additional officers," and was "thereupon beaten severely by the defendant officers, who at this point were laughing and telling the dog what a good job he had done." (*Id.* ¶ 15.) Then, after Plaintiff was handcuffed and secured, "the police dog was again ordered to attack" Plaintiff. (*Id.* ¶ 16.) Additionally, Plaintiff alleges that "the defendant police officers are liable for failing to intervene ... because (1) the officers had a realistic opportunity to intervene and prevent the harm, (2) a reasonable person in the officers' position would have known that the plaintiff's constitutional

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

rights were being violated, and (3) the officers did not take reasonable steps to intervene." (*Id.* ¶ 39.)

In response to the Town's Motion To Dismiss, Plaintiff argues that Defendant Random "does not deny being present at the scene," and cites to Defendant Ransom's testimony at Plaintiff's criminal trial to establish his presence at the scene. (Pl.'s Mem. 11–13.) Plaintiff then argues that this is sufficient at the pleading stage because Plaintiff has sufficiently alleged that Defendant Ransom was present and Plaintiff need not plead the "specific involvement of each and every officer while he was being assaulted and bitten by a police dog [.]" (*Id.* at 12.) However, there is simply no basis for the Court to consider the testimony given at trial in the manner that Plaintiff would like. This testimony, attached as Exhibit B to Plaintiff's Memorandum in Opposition, is not attached to the PAC, nor is it integral to the PAC or incorporated by reference into the PAC. *See Rosenblum v. Thomson Reuters (Markets) L.L.C.,* 984 F.Supp.3d 141, 146 (S.D.N.Y.2013) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, ... documents incorporated by reference in the complaint [, and] a document, not incorporated by reference, where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." (footnotes and internal quotation marks omitted)). "To be incorporated by reference, the complaint must make a clear, definite and substantial reference to the documents[.]" *Bill Diodato Photography L.L.C. v. Avon Products, Inc.,* No. 12–CV–847, 2012 WL 4335164, at *3 (S.D.N.Y. Sept. 21, 2012) (internal quotation marks omitted). "[T]o be integral to a complaint, the plaintiff must have (1) actual notice of the extraneous information and (2) relied upon the documents in framing the complaint." *Id.* (internal quotation marks omitted). Here, Plaintiff clearly has notice of the document, since he is the one who submitted it to the Court. *See Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria,* 265 F.R.D. 106, 124 (S.D.N.Y.2010) ("[T]here is no dispute that, pursuant to the first prong of the integrality test, plaintiffs had 'actual notice' of the extraneous information since they enclosed the extrinsic documents with their opposition brief."). The Complaint and PAC make no reference whatsoever to Defendant Ransom's testimony at Plaintiff's criminal trial, and thus do not incorporate this document by reference. Moreover, there is no evidence that Plaintiff relied on this trial testimony in framing the Complaint or PAC. And, the fact that it was Plaintiff, himself, who submitted this document as an

attachment to his opposition memorandum, counsels against the Court considering it. *Id.* at 122–23 (noting that "[c]ourts in [the Second] Circuit have made clear that a plaintiff may not shore up a deficient complaint through extrinsic documents submitted in opposition to a defendant's motion to dismiss" and collecting cases).

**\*25** Finally, the Court "may also consider matters of which judicial notice may be taken, even if the corresponding documents are not attached to or incorporated by reference in the complaint." *Munno v. Town of Orangetown,* 391 F.Supp.2d 263, 268 (S.D.N.Y.2005). However, even if this trial testimony is appropriate for judicial notice, the Court would consider it "only to establish [its] existence and legal effect, or to determine what statements [it] contained not for the truth of the matters asserted." *Liang v. City of New York,* No. 10–CV–3089, 2013 WL 5366394, at *5 (E.D.N.Y. Sept. 24, 2013) (alterations and internal quotation marks omitted) (quoting *Twine v. Four Unknown N.Y. Police Officers,* No. 10–CV–6622, 2012 WL 6184014, at *7 (S.D.N.Y. Dec. 12, 2012)); *see also Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir.2007) ("If the court takes judicial notice, it does so in order to determine *what* statements [the document] contained —but *again not for the truth of the matters asserted.*" (internal quotation marks omitted)).

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (internal quotation marks omitted). There are two ways a plaintiff can establish personal involvement of a police officer in the use of excessive force. "A police officer is personally involved in the use of excessive force if the officer either: (1) directly participates in an assault; or (2) is present during the assault, and fails to intercede on behalf of the victim even though he had a reasonable opportunity to do so." *Vesterhalt v. City of New York,* 667 F.Supp.2d 292, 297 (S.D.N.Y.2009). Additionally, to be liable the officer must "observe[ ] or ha[ve] reason to know that an individual's constitutional right has been violated[.]" *Brooks v. County of Nassau, —— F.Supp.3d ——,* 2014 WL 5093277, at *5 (E.D.N.Y. Oct.9, 2014) (internal quotation marks omitted).

Plaintiff does not allege that Defendant Ransom directly participated in the assault, therefore the question is whether he sufficiently alleges that Defendant Ransom was present and failed to intercede, even though he had a reasonable opportunity to do so. First, Plaintiff's allegation that all "the

defendant police officers are liable for failing to intervene ... because (1) the officers had a realistic opportunity to intervene and prevent the harm, (2) a reasonable person in the officers' position would have known that the plaintiff's constitutional rights were being violated, and (3) the officers did not take reasonable steps to intervene" is a conclusory allegation that does nothing more than provide a formulaic recitation of the elements of a cause of action, and is therefore not entitled to the presumption of truth. (PAC ¶ 39.) See *Iqbal,* 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.... In keeping with [this] principle[ ] a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."); *Twombly,* 550 U.S. at 555 ("[A] formulaic recitation of the elements of a cause of action will not do."). To state a claim against each individually named defendant, Plaintiff must include allegations as to that defendant. See *Ochre L.L.C. v. Rockwell Architecture Planning & Design, P.C.,* No. 12–CV–2837, 2012 WL 6082387, at *6 (S.D.N.Y. Dec. 3, 2012) ("Where a complaint names multiple defendants, that complaint must provide a plausible factual basis to distinguish the conduct of each of the defendants."), *aff'd,* 530 F. App'x 19 (2d Cir.2013); *Appalachian Enters., Inc. v. ePayment Solutions, Ltd.,* No. 01–CV–11502, 2004 WL 2813121, at *7 (S.D.N.Y. Dec.8, 2004) ("A plaintiff fails to satisfy Rule 8, where the complaint lumps all the defendants together and fails to distinguish their conduct because such allegations fail to give adequate notice to the defendants as to what they did wrong." (alterations and internal quotation marks omitted)).

**\*26** In a claim for excessive force or for failure to intervene with respect to excessive force, courts in the Second Circuit have allowed plaintiffs to use a flexible approach, recognizing the difficulty that plaintiffs may have in pleading who did what. For example, "[a] plaintiff need not establish who, among a group of officers, directly participated in the attack and who failed to intervene." *Jeffreys v. Rossi,* 275 F.Supp.2d 463, 474 (S.D.N.Y.2003), *aff'd sub nom. Jeffreys v. City of New York,* 426 F.3d 549 (2d Cir.2005). However, this does not eliminate Plaintiff's burden to allege facts supporting a plausible inference of personal involvement by Defendant Ransom. For example, it is sufficient to allege "who was present during the assaults, and that these defendants *either* directly participated in the excessive force *or* failed to intervene." *Snoussi v. Bivona,* No. 05–CV–3133, 2010 WL 3924255, at *3 (E.D.N.Y. Feb. 17, 2010) (emphasis added), *adopted by* 2010 WL 3924683 (E.D.N.Y. Sept.29, 2010). But,

a plaintiff fails to state a claim for which relief can be granted if he does not make any factual allegations that any officer "was present" or "had an opportunity to intercede." *K.D. ex rel. Duncan v. White Plains Sch. Dist.,* 921 F.Supp.2d 197, 207 (S.D.N.Y.2013) (discussing failure to intervene in the context of an alleged due process violation). In assessing the sufficiency of Plaintiff's claims, the Court is also mindful that the activities he describes—being handcuffed, thrown on the ground, beaten, and attacked by a dog—"are likely to have prevented [P]laintiff from identifying which of the defendant officers specifically engaged in the bad acts." *Snoussi,* 2010 WL 3924255, at *3 (brackets and internal quotation marks omitted).

Here, though, Plaintiff fails to meet this liberal standard with respect to his allegations against Defendant Ransom. Plaintiff merely pleads that Defendant Ransom joined the police chase. (PAC ¶ 12.) Plaintiff does not sufficiently plead personal involvement, because he does not even plead that Defendant Ransom was present at the scene of the alleged unconstitutional conduct, and therefore also does not sufficiently plead that a reasonable person in Defendant Ransom's position would know that Plaintiff's rights were being violated and that Defendant Ransom had a reasonable opportunity to intervene but failed to do so. Plaintiff argues that Defendant Ransom was at the scene, relying not on allegations in the Complaint or PAC but rather on a document outside the pleadings that the Court is not permitted to consider, and based on an inference he suggests that "[a]t no point does Ransom claim that he left the scene, so he was presumably also present when Plaintiff was thrown to the ground and beaten, and attacked by the police dog a second time while in handcuffs." (Pl.'s Mem. 12.) However, Plaintiff never alleged that Defendant Ransom was at the scene. But, in light of Plaintiff's citation to Defendant Ransom's trial testimony, the Court will give Plaintiff one more opportunity to amend his Complaint to include any additional allegations against Defendant Ransom.

### III. Conclusion

**\*27** For the above reasons, the Town's Motion To Dismiss is granted; the claims against the Town are dismissed with prejudice; and the claims against Defendant Ransom are dismissed without prejudice. The City's Motion To Dismiss is granted in part and denied in part. In particular, the claims against the City are dismissed without prejudice, but Plaintiff may file his PAC against the City Police Officer

**Tieman v. City of Newburgh, Not Reported in F.Supp.3d (2015)**

2015 WL 1379652

Defendants. Plaintiff shall properly serve the City Police Officer Defendants within 21 days of the date of this Opinion, or else face dismissal of the claims against those Defendants. Additionally, Plaintiff is given 21 days to file an amended complaint to supplement his allegations against Defendant Ransom and the City. The Clerk of the Court is respectfully requested to terminate the pending Motions. (*See* Dkt. Nos. 25, 29.)

SO ORDERED.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 1379652

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Dees v. Zurlo, Not Reported in Fed. Supp. (2024)

2024 WL 1053237

2024 WL 1053237
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Jennifer Lynn DEES and Ethan Davis Smith, Plaintiffs,
v.
Michael ZURLO, et al., Defendants.

1:24-CV-0001 (MAD/DJS)
|
Signed March 11, 2024

**Attorneys and Law Firms**

JENNIFER LYNN DEES, ETHAN DAVIS SMITH, Pro se
Plaintiff, Clifton Park, New York 12065.

### REPORT RECOMMENDATION and ORDER

DANIEL J. STEWART, United States Magistrate Judge

### I. INTRODUCTION

**\*1** The Clerk has sent to the Court a Complaint filed by pro
se Plaintiffs Jennifer Lynn Dees and Ethan Davis Smith. Dkt.
No. 1, Compl. Plaintiffs have not paid the filing fee, but have
submitted Motions to Proceed *In Forma Pauperis*. Dkt. Nos. 2
& 3. Also pending are requests for leave to file electronically.
Dkt. Nos. 4 & 5. For the reasons outlined below, the Court
recommends that the Complaint be dismissed in its entirety.
Given that recommended disposition, the Motions for leave
to file electronically are denied.

In their 170-page pro se Complaint, Plaintiffs Jennifer
Lynn Dees and Ethan Davis Smith collectively assert 30
federal and state claims against 53 individual and municipal
Defendants. Compl. In sum, Plaintiffs make conclusory
claims against virtually every judge, prosecutor, social service
worker, private attorney, private party, witness, or medical
professional that was involved in a long-running custody
and/or support dispute between Plaintiff Ethan Smith [1]
and Defendant Veronica Smith. The matter is presently
being litigated in Saratoga County Supreme and/or Family
Court. The Complaint alleges federal RICO claims (claims
1-2); claims under 42 U.S.C. §§ 1983 & 1985, alleging
violations of procedural due process, substantive due process,
First Amendment retaliation, equal protection, abuse of

process, *Brady* violation, failure to intervene, and a claim
under *Monell*, (claims 3-14); a claim under the American
with Disabilities Act (claim 15); and numerous state law
claims (claims 16-30). Plaintiff's summary of the allegations
contained in the Complaint is as follows:

> The plaintiffs allege a conspiracy to violate both
> state and federal constitutional rights, encompassing
> acts of deprivation of rights, misconduct, negligence,
> collusion, malpractice, and discrimination, extending to
> claims of wrongful death. Furthermore, the plaintiffs
> assert instances of malicious prosecution, selective
> prosecution, due process violations, failure to intercede,
> and point to issues of supervisory and municipal liability,
> alongside infringements under (RICO). The defendants
> engaged in fraudulent practices, illicit negotiations, and
> extortion tactics to enforce compliance with illegal
> orders. The Plaintiffs have been targeted with false
> accusations, such as felony theft involving significant
> assets and unfounded suspension of driving privileges,
> systematically orchestrated to undermine their personal
> integrity, professional standing, and social relationships.
> The severity and complexity of these allegations have led
> the plaintiffs to call for federal intervention, arguing that
> the magnitude of the corruption and misconduct is beyond
> the purview of state-level resolution.

> Moreover, the plaintiffs allege that the defendants have
> actively interfered with court proceedings, engaged in
> witness tampering, and committed acts of obstruction
> of justice, perjury, and witness intimidation. They argue
> that these actions are part of a concerted effort by the
> defendants to destroy their reputations, careers, familial
> bonds, religious affiliations, and friendships, pointing to
> a deliberate strategy aimed at collapsing their lives in a
> comprehensive and destructive manner.

**\*2** Compl. at ¶¶ 5-6.

[1]    While Jennifer Lynn Dees was not a party to this
legal proceeding, it is alleged that she was involved
in certain aspects of the litigation and was impacted
by the issuance of various protective orders. *See*,
*e.g.*, Compl. at p. 10.

The present action, therefore, appears primarily an attempt
to have the federal courts intervene in a pending state court
matter. The sheer volume of the Complaint, coupled with its
wholly conclusory allegations of a far-reaching conspiracy
seeking to make every Defendant responsible for all acts of

Dees v. Zullo, Not Reported in Fed. Supp. (2024)

Case 1:25-cv-01150-AJB-TWD    Document 4    Filed 10/20/25    Page 142 of 187

2024 WL 1053237

perceived misconduct by everyone else, violates the basic notice and "short and plain" requirements of FED. R. CIV. PROC. 8(a). Moreover, such a pleading goes against a core § 1983 principle that defendants are generally only responsible for their own acts. Further, the Complaint ignores the fact that a large portion of the named Defendants are either absolutely immune from suit or are not state actors subject to suit under § 1983. Finally, insofar as the Plaintiffs are looking to overturn decisions in an ongoing divorce, support, and custody proceeding, the Court does not have jurisdiction to hear the matter, or, if it does, it should abstain from hearing it. For the reasons that follow, therefore, the Court recommends that Plaintiffs' Complaint be dismissed.

## II. Factual Statement and Procedural History

Plaintiff Ethan Smith and Defendant Veronica Smith were married and have three children together. The Smiths separated and, on or about June of 2020, a divorce proceeding was commenced. Compl. at ¶ 113. The matter was assigned to Judge Paul Pelagalli, who was a Family Court Judge in Saratoga County but was, at the time, an acting Supreme Court Judge. As part of that proceeding issues involving custody and support were litigated. The parties were represented by counsel, and the three children also had assigned counsel. The Court issued various orders and decrees in connection with the proceeding, including orders of maintenance and support. Plaintiffs disagree with the orders and rulings that were issued by the Court. Plaintiffs maintain that Defendant Veronica Smith submitted false financial information regarding both her assets, as well as Plaintiff Smith's finances, resulting in a fraudulent support order. This caused significant financial difficulty, resulting in negative actions being taken against Plaintiff Smith for being in arrears of his support obligations, including having his license suspended. Plaintiff Smith alleges that the support order was issued without due process or a sufficient hearing.

Plaintiffs also alleged that numerous orders of protection, or temporary orders of protection, were erroneously issued against them by either Family Court or Supreme Court. Compl. at ¶ 138. Conversely, their request for orders of protection were not granted, or were delayed, and this represented an unequal application of the law as to them. Compl. at ¶¶ 73, 180. Further, Court hearings were held, during which time it is alleged that the involved attorneys improperly advocated for their clients, or in the case of Plaintiff Smith, did not represent him with the required level

of skill. Compl. at ¶¶ 49, 61, 65, & 85. Witnesses allegedly lied, or obfuscated, or covered up for other witnesses. Compl. at ¶¶ 136, 164, 348. The Court itself was biased against the Plaintiff Ethan Smith and did not treat him properly. Compl. at ¶¶ 39, 308. Ultimately a divorce decree was granted on or about August 31, 2023, but Plaintiff Smith appears to allege that the decree was improper because there was no jury trial. Comp. at ¶¶ 155 & 170

**\*3** During the same time period, it is alleged that the Defendant social service workers and school officials did not properly investigate claims of abuse and neglect by Defendant Veronica Smith, or her significant other, against the Smith children. Compl. at ¶¶ 56, 76. It is alleged that police officers did not provide the level of protection that the Plaintiffs were entitled to, and failed to intervene in the conduct of private parties and/or Defendant Smith. Compl. at ¶¶ 264-266. The alleged failure of public officials to protect the Plaintiffs resulted in severe emotional stress, which in turn is said to be the cause of Plaintiff Dees having a miscarriage. Compl. at ¶ 53.

## III. DISCUSSION

### A. Standard of Review

Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed in forma pauperis, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action.

In reviewing a pro se complaint, this Court has a duty to show liberality toward pro se litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990), and should exercise "extreme caution ... in ordering sua sponte dismissal of a pro se complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (emphasis in original) (citations omitted). Therefore, a court should not dismiss a complaint if the plaintiffs have stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570,

Dees v. Zurlo, Not Reported in Fed. Supp. (2024)

Case 1:25-cv-01150-AJB-TWD    Document 4    Filed 10/20/25    Page 143 of 187

2024 WL 1053237

127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). Although the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]'–'that the pleader is entitled to relief.' " *Id.* at 679, 129 S.Ct. 1937 (quoting *Fed. R. Civ. P. 8(a)(2)*). Furthermore, *Federal Rule of Civil Procedure 8* "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal quotation marks and alterations omitted). Allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

"Ordinarily, a court should not dismiss a complaint filed by a pro se litigant without granting leave to amend at least once 'when a liberal reading of the complaint gives any indication that a valid claim might be stated.' " *Bruce v. Tompkins Cnty. Dep't of Soc. Servs. ex rel. Kephart*, 2015 WL 151029, at *4 (N.D.N.Y. Jan. 7, 2015) (quoting *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991)). However, where the grounds for dismissal offer no basis for curing the defects in the pleading, dismissal with prejudice is appropriate. *Kunz v. Brazill*, 2015 WL 792096, at *3 (N.D.N.Y. Feb. 25, 2015).

**B. Jurisdiction**

**\*4** It is well settled that a federal court, whether trial or appellate, is obligated to notice on its own motion the basis for its jurisdiction. *City of Kenosha, Wisconsin v. Bruno*, 412 U.S. 507, 512, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); *see also Alliance of Am. Ins. v. Cuomo*, 854 F.2d 591, 605 (2d Cir. 1988) (challenge to subject matter jurisdiction cannot be

waived); *Fed. R. Civ. P. 12(h)(3)* (court may raise basis of its jurisdiction sua sponte). When subject matter jurisdiction is lacking, dismissal is mandatory. *United States v. Griffin*, 303 U.S. 226, 229, 58 S.Ct. 601, 82 L.Ed. 764 (1938); *Fed. R. Civ. P. 12(h)(3)* ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). In light of the Plaintiffs pro se status, the Court will sua sponte assess whether subject matter jurisdiction is present in this case. *LeClair v. Vinson,* 2019 WL 1300547, at *4 (N.D.N.Y. Mar. 21, 2019), *report and recommendation adopted,* 2019 WL 2723478 (N.D.N.Y. July 1, 2019).

In the present case, Plaintiffs cite to violations of federal constitutional law, and seeks redress under the civil rights statute, 42 U.S.C. §§ 1983 & 1985, the American with Disabilities Act, and 18 U.S.C. § 1964(a). The federal courts would normally have original jurisdiction under 28 U.S.C. § 1331 to hear such a case; however, because of the precise allegations of the claims, the Court must also consider two additional well established jurisdictional rules.

*1. The Rooker-Feldman Doctrine*

A dismissal pursuant to the *Rooker-Feldman* doctrine is for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *Remy v. New York State Dep't of Tax'n and Fin.*, 507 F. App'x 16, 18 (2d Cir. 2013). This doctrine divests the federal court of jurisdiction to consider actions that "seek to overturn state court judgments." *Fernandez v. Turetsky*, 2014 WL 5823116, at *3 (E.D.N.Y. Nov. 7, 2014) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005)). The doctrine also bars the federal court from considering claims that are "inextricably intertwined" with a prior state court determination. *Id.* (quoting *Johnson v. Smithsonian Inst.*, 189 F.3d 180, 185 (2d Cir. 1999)).

There are four requirements to the application of *Rooker-Feldman*: (1) "the federal-court plaintiff must have lost in state court"; (2) the plaintiff's injuries must have been caused by a state court judgment; (3) the plaintiff must be asking the federal court to review and reject the state court's judgment; and (4) the state-court judgment must have been rendered prior to filing the federal court action. *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005). A challenge to "the validity or enforcement of [a] child support order itself" constitutes an injury "caused by a state court judgment." *Sykes v. Bank of Am.*, 723 F.3d 399, 404 (2d Cir. 2013);

Dees v. Zurlo, Not Reported in Fed. Supp. (2024)

Case 1:25-cv-01150-AJB-TWD    Document 4    Filed 10/20/25    Page 144 of 187

2024 WL 1053237

*Davis v. Westchester Cnty. Fam. Ct.*, 2017 WL 4311039, at *8 (S.D.N.Y. Sept. 26, 2017) ("Courts have repeatedly invoked *Rooker-Feldman* in cases in which plaintiffs challenge family court decrees setting child support arrears."). In the present case, Plaintiff Smith seeks to overturn various orders issued by the state courts, having been unsuccessful in doing so by way of their Article 78 action, and accordingly such claims are effectively barred by *Rooker-Feldman. Errato v. Seder*, et al., 2024 WL 726880, at *2 (2d Cir. Feb. 22, 2024); *Sims V. Kaufman*, 2024 WL 757338, at *4 (S.D.N.Y. Feb. 14, 2024) ("Inasmuch as Plaintiff criticizes any final child support decision of the New York Family Court, Bronx County, in an effort to request that this Court overturn that final decision, the *Rooker-Feldman* doctrine bars this Court from granting Plaintiff such relief.").[2]

[2]   Dees, who was not a party to those proceedings, would clearly lack standing to assert claims challenging the outcome of them.

### *2. Younger Abstention*

**\*5**   In *Younger v. Harris*, the Supreme Court held that federal courts must abstain from exercising jurisdiction over claims, seeking declaratory or injunctive relief, that implicate ongoing state proceedings. 401 U.S. 37, 43-44 (1971). The Supreme Court held that when there is a parallel criminal proceeding in state court, the federal court must refrain from enjoining the state prosecution. *Id. Younger* abstention is triggered only by three categories of state court proceedings: (1) state criminal prosecutions; (2) "civil proceedings that are akin to criminal proceedings"; and (3) civil proceedings that "implicate a State's interest in enforcing the orders and judgments of its courts." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72-73, 134 S.Ct. 584, 187 L.Ed.2d 505 (2013). In *Sprint*, the Court used state-initiated custody proceedings as an example of civil proceedings which are akin to criminal proceedings. *Id.* at 79, 134 S.Ct. 584 (citing *Moore v. Sims*, 442 U.S. 415, 419-420, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) (state-initiated proceeding to gain custody of children allegedly abused by their parents)); *see also Davis v. Baldwin*, 594 F. App'x 49, 51 (2d Cir. 2015) (same).

While it is true that *Younger* abstention does not apply to claims for monetary damages, such as the present one, the doctrine does dictate that "a stay of the action pending resolution of the state proceeding may be appropriate." *Kirschner v. Klemons*, 225 F.3d 227, 238 (2d Cir. 2000). This

is particularly the case in matters involving divorce, alimony, and child custody. This "domestic relations" abstention is based upon a policy dictating that the states have traditionally adjudicated marital and child custody disputes, developing "competence and expertise in adjudicating such matters, which the federal courts lack." *Thomas v. N.Y. City*, 814 F. Supp. 1139, 1146 (E.D.N.Y. 1993); *see also Am. Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir. 1990) (When a case calls for a federal court to interpret state domestic relations law or "immerse itself in domestic relations matters," the court must abstain from proceeding with the case due to the state courts' "greater interest and expertise" in that field.). Therefore, "to the extent that Plaintiff is asking the Court to grant injunctive and declaratory relief with respect to ongoing Family Court and Supreme Court proceedings, including any post-judgment proceedings, the Court must abstain from hearing those claims under the *Younger* abstention doctrine." *Stampfl v. Eisenpress*, 2024 WL 37075, at *4 (S.D.N.Y. Jan. 3, 2024).

### C. RICO Claims

Plaintiffs' first two federal claims are that Defendants allegedly violated, and conspired to violate, provisions of the Racketeering Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1962 *et seq.* As noted by the Second Circuit, "[t]o establish a RICO claim, a plaintiff must show: (1) a violation of ...18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013) (quoting *DeFalco v. Bernas*, 244 F.3d 286, 305 (2d Cir. 2001)). To establish a violation of section 1962, a plaintiff must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). "Racketeering activity," in turn, is defined to include any "act" indictable under various specified federal statutes, including the mail and wire fraud statutes and the obstruction of justice statute. *See* 18 U.S.C. § 1961(1) (defining "racketeering activity" to include offenses indictable under 18 U.S.C. §§ 1341 (relating to mail fraud), 1343 (relating to wire fraud), and 1503 (relating to obstruction of justice)). A "pattern of racketeering activity" is defined by the statute as "at least two acts of racketeering activity" within a ten-year period. 18 U.S.C. § 1961(5).

Courts generally approach RICO claims with a cautious eye, and with the understanding that Congress' goal in

Dees v. Zurlo, Not Reported in Fed. Supp. (2024)

Case 1:25-cv-01150-AJB-TWD    Document 4    Filed 10/20/25    Page 145 of 187

2024 WL 1053237

enacting RICO was to prevent legitimate businesses from becoming infiltrated by organized crime. *See United States v. Porcelli*, 865 F.2d 1352, 1362 (2d Cir. 1989). "Because the mere assertion of a RICO claim has an almost inevitable stigmatizing effect on those named as defendants, courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Schmidt v. Fleet Bank*, 16 F.Supp.2d 340, 346 (S.D.N.Y. 1998) (internal quotation marks omitted).

**\*6** As noted above, the present case outlines a contentious and lengthy custody and support dispute, and the Court is not unmindful of the stress that results from such proceedings. However, to allow the racketeering law to be utilized to create parallel federal litigation because a party is dissatisfied with the outcome of a pending family/supreme court matter, is both unjustified and unwise.

This principle was articulated by the Second Circuit in the case of *Kim v. Kimm*, 884 F.3d 98 (2d Cir. 2018). The *Kim* plaintiff was a restaurant owner and a defendant in a trademark infringement suit. After the trademark case was dismissed at the summary judgment stage, the plaintiff sued his opponent under RICO, alleging that the initial lawsuit was simply an extortion attempt. *Id.* at 101. The plaintiff further claimed that false legal documents were used to mislead the court, all of which constituted both mail fraud and a pattern of racketeering activity. *Id.* The District Court dismissed the lawsuit for failure to state a claim, noting that conduct during the course of litigation cannot constitute predicate acts for purposes of RICO. *Id.* at 99. The Second Circuit affirmed, concluding that "the allegations of frivolous, fraudulent, or baseless litigation activities—without more—cannot constitute a RICO predicate act." *Id.* at 104. The Second Circuit further set forth the following basis for this ruling:

[T]here are compelling policy arguments supporting this rule. First, "[i]f litigation activity were adequate to state a claim under RICO, every unsuccessful lawsuit could spawn a retaliatory action," which "would inundate the federal courts with procedurally complex RICO pleadings." Dist. Ct. Op. at 10–11, Appellant App'x at 266–67; *see also Nora F. Engstrom, Retaliatory RICO and the Puzzle of Fraudulent Claiming*, 115 MICH. L. REV. 639, 696 (2017) (permitting RICO suits based on prior litigation activities would "engender wasteful satellite litigation"). Furthermore, "permitting such claims would erode the principles undergirding the doctrines of res judicata and collateral estoppel, as such claims frequently call into

question the validity of documents presented in the underlying litigation as well as the judicial decisions that relied upon them." Dist. Ct. Op. at 11, Appellant App'x at 267; see also *Gabovitch [v. Shear]*, 1995 WL 697319, at \*3, 1995 U.S. App. LEXIS 32856 [(1st Cir. 1995)] ("In essence, simply by alleging that defendants' litigation stance in the state court case was 'fraudulent,' plaintiff is insisting upon a right to relitigate that entire case in federal court.... The RICO statute obviously was not meant to endorse any such occurrence."). Moreover, endorsing this interpretation of RICO "would chill litigants and lawyers and frustrate the well-established public policy goal of maintaining open access to the courts" because "any litigant's or attorney's pleading and correspondence in an unsuccessful lawsuit could lead to drastic RICO liability." Dist. Ct. Op. at 11, Appellant App'x at 267 (quoting *Curtis & Assocs.*, 758 F.Supp.2d at 173); *see also Engel v. CBS, Inc.*, 182 F.3d 124, 129 (2d Cir. 1999) (noting the "strong public policy of open access to the courts for all parties and [the need] to avoid ad infinitum [litigation] with each party claiming that the opponent's previous action was malicious and meritless" (internal quotation marks and citations omitted) (second brackets in original)).

**\*7** *Id.*

For the reasons cogently summarized in *Kim*, the present RICO allegation, arising out of the state court litigation, fails to set forth a cognizable RICO claim.

## D. Claims Under 42 U.S.C. §§ 1983 & 1985

As to Plaintiffs claims under the Civil Rights Act, *see* Compl. at ¶¶ 207-298 (claims 3-14), an initial review discloses that these claims are also barred by principles of immunity, as well as the failure of the Plaintiffs to allege the essential elements of such claims.

### 1. Absolute Judicial Immunity

The claims under 42 U.S.C. §§ 1983 and 1985 against the judges who are, or had been, involved in the state court case, are barred by the doctrine of absolute judicial immunity. Judicial Immunity is applicable to conduct taken by the court as part of its judicial power and authority, and its absolute protection extends to all judicial acts except those performed in the clear absence of all jurisdiction. *See Pierson*

Dees v. Zurio, Not Reported in Fed. Supp. (2024)

Case 1:25-cv-01150-AJB-TWD    Document 4    Filed 10/20/25    Page 146 of 187

2024 WL 1053237

*v. Ray*, 386 U.S. 547, 554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). The Supreme Court has emphasized that the scope of a judge's jurisdiction must be construed broadly. *Stump v. Sparkman*, 435 U.S. 349, 356-57, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) (citing *Bradley v. Fisher*, 80 U.S. 13 Wall. 335, 351, 20 L.Ed. 646 (1871)). Generally, "acts arising out of, or related to, individual cases before [a] judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "[E]ven allegations of bad faith or malice cannot overcome judicial immunity." *Id.* at 209. This is because "[w]ithout insulation from liability, judges would be subject to harassment and intimidation...." *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994).

Allegations of unconstitutional conduct are made in the Complaint against the following judicial officers, members of their staff, and court-appointed experts: acting Saratoga Supreme Court Judge Paul Pelagalli; Saratoga Supreme Court Judges John Ellis and Diane Freestone; City Court Judge Jeffrey Waite; Saratoga County Court Judge James Murphy; Administrative Judge for the Fourth Judicial District Judge Felix Catena; Appellate Division Justices Elizabeth Garry and Christine Clark; Court Attorney Karla Conway; and Court-appointed experts Jaqueline Bashkoff and Dr. Mary O'Conner. A summary of their conduct is important in deciding the validity of those allegations.

Acting Saratoga County Supreme Court Judge Pelagalli was initially assigned to the *Smith v. Smith* case. The claims against Judge Pelagalli arise out of acts taken in his judicial capacity. These acts include the October 20, 2020, issuance of an Order of maintenance and child support, and then reiterating that Order on April 27, 2022, all allegedly done without a proper hearing or due process. Compl. at ¶ 119. Further, Plaintiffs allege Defendant Pelagalli misused his judicial power by negligently or inappropriately issuing, or failing to issue, orders of protection and/or temporary orders of protection; improperly handling proceedings before him, including but not limited to, providing Plaintiff Smith with a copy of an evaluation by Dr. Bashkoff of the children, excluding Plaintiff Dees from the courtroom, not allowing Dees to testify at a proceeding, threatening to hold Dees in contempt, not signing certain trial subpoenas, and having ex parte communications with witnesses; labeling Plaintiff Smith in a decision as a "narcissist" without having a medical degree; imposing an order of protection that would not allow Plaintiff Dees to be present during overnight visitation by Plaintiff Smith's children, which according to Plaintiffs, led

to a miscarriage; and granting a divorce decree on August 31, 2023 without a jury trial. Compl at ¶¶ 31-33, 138-171.

**\*8** John Ellis is a Saratoga County Supreme Court Justice and replaced Judge Pelagalli on the *Smith v. Smith* matter in October 2023. Compl. at ¶ 38. According to the Plaintiffs, Judge Ellis has mirrored the approach of the previous judge, neglected evidence of fraud, child abuse, and assault, and has not taken the time to rectify the situation to the Plaintiffs' satisfaction. Compl. at ¶¶ 38-39.

Judge Jeffrey Wait is a Saratoga Springs City Court Judge and Acting County Court Judge. Plaintiffs' Complaint against Judge Wait relates to his alleged bias against the Plaintiffs; the failure to provide adequate safeguards following a November 8, 2023, assault by Defendant Smith; issuing an illegal stay-away order; declining to recuse himself; failing to issue an order of protection in the Plaintiffs' favor, which is said to have contributed to the November 8, 2023 assault; improperly dismissing Plaintiff Smith's custody petition; presiding over a December 19, 2023, court proceeding where there was misconduct, including having Plaintiff Dee (Plaintiff Smith's alleged in-court ADA notetaker) leave the courtroom due to a court-mandated parenting schedule; and, overall, abusing his judicial authority. Compl. at ¶¶ 34, 36, 37, 176, 179, 185.

The Hon. Felix Catena is the Administrative Judge for the Fourth Judicial Department and is sued in that position. According to Plaintiffs, Judge Catena is in charge of assigning judges in the Saratoga Courts and, despite being notified on 30 occasions regarding the conduct of judges under his supervision, he failed to take appropriate action, or to conduct independent investigations to ascertain the presence of fraud. Compl. at ¶¶ 24, 43, 45, 145, 306.

Supreme Court Judge Dianne Freestone was assigned to handle the Plaintiffs' Article 78 Petition challenging the conduct that occurred during the ongoing divorce and custody proceedings, and she is sued because she "prematurely" dismissed the Plaintiffs' Article 78 proceeding. Compl. at ¶ 44. Similarly, Elizabeth Garry, Chief Justice of the Appellate Division, and Christine Clark, Associate Justice of the Appellate Division, are also sued for upholding the dismissal of the Article 78 proceeding. *Id. See Smith v. Pelagalli*, 2023 WL 6801376 (3d Dep't 2023). An appeal of that decision was dismissed by the New York State Court of Appeals. *Smith v. Pelagalli*, 40 N.Y.3d 1060 (2023).

Dees v. Zurlo, Not Reported in Fed. Supp. (2024)
2024 WL 1053237

Case 1:25-cv-01150-AJB-TWD    Document 4    Filed 10/20/25    Page 147 of 187

James Murphy holds the position of County Court Judge for Saratoga County. The Complaint alleges that Judge Murphy, "in his capacity as an appellate judge for Saratoga, failed to fulfill his judicial responsibilities by ignoring crucial evidence ..." Compl. at ¶ 46. As a result, Plaintiff Smith is said to now face trial on fraudulent charges. *Id.*

As summarized above, the present Complaint against the judges relates to alleged misconduct or improper decisions by Family Court, Supreme Court, and County Court Judges in Saratoga County, as well as members of the Appellate Division, Third Judicial Department. *See* Compl. This misconduct includes how those judges conducted their proceedings and hearings; issued or failed to issue orders of protection; analyzed legal matters and drafted their decisions and orders; controlled discovery; assigned counsel and experts; and generally handled cases. That conduct is, without doubt, judicial in nature. The Plaintiffs' arguments that the Justices were wrong in their conclusions because they were biased, misinformed, malicious, or incompetent, simply miss the mark. In construing such immunity, the reviewing courts look to the nature of the act, not the act itself. "If judicial immunity means anything, it means that a judge will not be deprived of immunity because the action he took was in error ... or was in excess of his authority. *Mireles v. Waco*, 502 U.S. 9, 12-13, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991) (internal quotations and citations omitted). Accordingly, courts must evaluate the nature and function of the act, rather than the act itself. *Id.*

**\*9** Finally, as amended in 1996, 42 U.S.C. § 1983 provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated, or declaratory relief was unavailable." 42 U.S.C.S. § 1983. There is no allegation in the Complaint regarding the violation or unavailability of such a declaratory decree.

For these reasons, Plaintiffs claims against the above-named Judicial Defendants are dismissed.[3] *See Caroselli v. Curci*, 371 F. App'x 199, 202 (2d Cir. 2010) (summary order) ("With respect to the state court judges, insofar as [the plaintiff] seeks money damages, such claims are barred by absolute judicial immunity. Insofar as [the plaintiff] seeks injunctive relief against the state court judges, such relief is statutorily barred." (citations omitted)).

[3]    The Judicial officers named in this suit are also protected under the doctrine of sovereign

immunity. *In Gollomp v. Spitzer*, the Court held that the New York Unified Court System is an "arm of the State" and affirmed the dismissal of a § 1983 claim against a judge under sovereign immunity. 568 F.3d 355, 365–68 (2d Cir. 2009). That holding was just recently reaffirmed by the Second Circuit. *Bythewood v. New York*, 2023 WL 6152796, at *1 (2d Cir. Sept. 21, 2023) ("The New York State Unified Court System is "unquestionably an arm of the state" that shares in New York's immunity to suit.").

Next, Plaintiffs sue Karla Conway, Judge Pelagalli's court attorney, who is said to have participated with the Judge in the issuance of fraudulent orders, defamed Plaintiffs in and out of court, falsified statements in Court, and generally was biased. Compl. at ¶¶ 24, 40, 41, 42, 119, 122. These litigation related claims fail because absolute judicial immunity, as discussed above, also applies to a judicial law clerk, who is considered at law to be an extension of the judge at whose pleasure she serves. *Oliva v. Heller*, 839 F.2d 37, 40 (2d Cir. 1988).

### *2. Quasi-Judicial Immunity*

Dr. Mary O'Connor and Dr. Jacquelyn Bashkoff were appointed by Judge Pelagalli to perform psychological assessments regarding the Smith Family. Compl. at ¶ 91. Plaintiffs take issue with the O'Connor and Bashkoff Reports and maintain that they are not impartial evaluations and contributed to the "wrongful separation of the children from Plaintiff [Smith]". Compl. at ¶¶ 91, 95, 96. Plaintiff also maintains that the fact that Bashkoff did not finish her report and did not testify, "hints at collusion." Compl. at ¶ 98.

The claims against Drs. O'Conner and Bashkoff are likewise barred by quasi-judicial immunity. "[A]bsolute immunity may attach to non-judicial officers and employees where the individual serves as an arm of the court or where the individual conducts activities that are inexorably connected with the execution of court procedures and are analogous to judicial action." *McKnight v. Middleton*, 699 F. Supp. 2d 507, 527 (E.D.N.Y. 2010); *see Cherner v. Westchester Jewish Cmty. Servs., Inc.*, 2022 WL 17817882, at *1 (2d Cir. Dec. 20, 2022) (family court ordered Defendants to conduct a forensic evaluation and to prepare a report to aid that court's decision in a child custody suit. These acts are "integrally related to an ongoing judicial proceeding" and therefore entitled to quasi-judicial immunity). The fact that Dr. Bashkoff did not ultimately testify does not affect her entitlement to immunity.

Dees v. Zurio, Not Reported in Fed. Supp. (2024)
2024 WL 1053237
Case 1:25-cv-01150-AJB-TWD    Document 4    Filed 10/20/25    Page 148 of 187

*Di Costanzo v. Henriksen*, 1995 WL 447766, at *2 (S.D.N.Y. July 28, 1995) ("The doctrine of witness immunity bars an action against [clinical psychologist and medical doctor who provided medical and psychological evaluations to the court] even if they did not formally testify as witnesses in the proceedings, since their role in the proceedings would have been essentially that of witnesses.").

**\*10**  A large majority of the Plaintiff's allegations are leveled against various private attorneys who represented parties in the divorce, custody, and support matters. This group includes the attorneys who were appointed to represent the interest of the children; Jessica Vinson of Vella Carbone, LLP; Denise Rest-Tobin; Elena Tastensen; and Heather Corey-Mongue. Compl. at ¶ 48. Courts in this circuit have concluded that such court appointed counsel are entitled to quasi-judicial immunity from suit. *McKnight v. Middleton*, 699 F. Supp. 2d 507, 528 (E.D.N.Y. 2010), *aff'd*, 434 F. App'x 32 (2d Cir. 2011); *Yapi v. Kondratyeva*, 340 F. App'x 683, 684-85 (2d Cir. 2009) (law guardian entitled to quasi-judicial immunity when acting as an arm of the court); *see also Zavalidroga v. Hester*, 2020 WL 210812, at *8 (N.D.N.Y. Jan. 14, 2020), *report and recommendation adopted*, 2020 WL 633291 (N.D.N.Y. Feb. 11, 2020).

### 3. Government Attorney Immunity

The Court must also dismiss Plaintiffs' section 1983 & 1985 claims for damages against the government attorneys who were representing governmental agencies at the proceedings. Samuel Maxwell and Emily Williams were Deputy District Attorney's involved in the custody and support case. Compl. at ¶ 14. It is generally alleged that they acted in unison with all other Defendants to submit deceptive and counterfeit affidavits with various courts and clerks. Compl. at ¶ 361. As to Defendant Williams, it is specifically alleged that there may be questions regarding her adherence to discovery obligations, including *Brady* obligations. Compl. at ¶¶ 186, 291.

Michelle Granger and Michael Hartnett were Saratoga County attorneys, and provided guidance to the Saratoga child support enforcement agency, and in that role they are alleged to have neglected numerous fraud complaints regarding Defendant Veronica Smith and failed to investigate and correct wrongdoing. Compl. at ¶ 71, 215, 268.

Government attorneys are immune from suit under section 1983 for damages "when functioning as an advocate of the state in a way that is intimately associated with the judicial process." *Mangiafico v. Blumenthal*, 471 F.3d 391, 396 (2d Cir. 2006). This immunity applies to government attorneys who perform functions " 'that can fairly be characterized as closely associated with the conduct of litigation or potential litigation' in civil suits." *Id.* (quoting *Barrett v. United States*, 798 F.2d 565, 572 (2d Cir. 1986)); *see also Cornejo v. Bell*, 592 F.3d 121, 128 (2d Cir. 2010) ("[A]n attorney for a county Department of Social Services who 'initiates and prosecutes child protective orders and represents the interests of the Department and the County in Family Court' is entitled to absolute immunity.").

Moreover, "the common law precedents also extend absolute immunity to [government attorneys] participating in the administrative process." *Bloom v. New York State Comm'r of Health*, 573 F. Supp. 2d 732, 740 (E.D.N.Y. 2004) (citing *Butz v. Economou*, 438 U.S. 478, 509-10 (1978)).

### 4. Witness Immunity

Several Defendants are being sued based upon their testimony at various court hearings, or in connection with testimony provided to the Court via some other method. With regard to Deputy Jillian Knox, for example, Plaintiffs allege that she testified at a court hearing on November 16, 2023, but her testimony was inconsistent, and she may have potentially coordinated her story with others. Compl. at ¶¶ 186, 190. Defendant Veronica Smith is said to have testified and have provided false testimony in legal proceedings and introduced "misleading" evidence. Compl. at ¶¶ 100, 127. Defendant Tedesco testified and was cross examined by Plaintiff, Compl. at ¶¶ 187-188, and while Defendant Bashkoff did not testify, she did submit reports to the state court for its review and consideration, Compl. at ¶ 98. Further, a report and/or psychological evaluation prepared by Dr. O'Connor was utilized as the basis of the proceedings against Plaintiff, and she was cross examined in Court. Compl. at ¶¶ 93, 98, 150. Finally, the Complaint indicates that Attorney Tobin testified. Compl. at ¶ 162.

**\*11**  The Court must also dismiss all of Plaintiffs' §§ 1983 & 1985 claims for damages that arise from any of the Defendants' testimony, either in person or by affidavit or other means, in the County Court or the Family Court proceedings. Grand jury and trial court witnesses are

Dees v. Zurlo, Not Reported in Fed. Supp. (2024)
2024 WL 1053237

Case 1:25-cv-01150-AJB-TWD    Document 4    Filed 10/20/25    Page 149 of 187

absolutely immune from liability under section 1983 for damages arising from their testimony, even if that testimony was false. *See Rehberg v. Paulk*, 566 U.S. 356, 366-69, 132 S.Ct. 1497, 182 L.Ed.2d 593 (2012); *Briscoe v. LaHue*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). The Supreme Court reasoned that without such immunity, "[a] witness's apprehension of subsequent damages liability might induce ... self-censorship," either by making witnesses reluctant to come forward in the first place or by distorting their testimony, which would then deprive the finder of fact of candid and objective evidence. *Briscoe v. LaHue*, 460 U.S. at 333, 103 S.Ct. 1108. This immunity has been extended to witnesses in Family Court proceedings. *See Buchanan v. Ford*, 638 F. Supp. 168, 171 (N.D.N.Y. 1986). This witness immunity extends to providing information by way of affidavit on issues such as support obligations. *Hart v. Shmayenik*, 2023 WL 7164975, at *5 (S.D.N.Y. Oct. 30, 2023). Nor can Plaintiffs attempt an end run around this immunity by alleging a conspiracy with other individuals to present false testimony. *Rehberg v. Paulk*, 566 U.S. at 369, 132 S.Ct. 1497. Accordingly, all claims arising out of a witness's testimony are subject to dismissal.

### 5. State Action and Conspiracy

To state a claim under section 1983, a plaintiff must allege both that (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *West v. Atkins*, 487 U.S. 42, 48-49, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). Private parties generally are not state actors and therefore are not usually liable under section 1983. *Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties.").

Plaintiffs have named the following private individuals and entities as Defendants: Sarah Wood, Donnellan Law, Saratoga Center for the Family, Jessica Vinson, Vella Carbone LLP, Denise Resta-Tobin; Elena Tastensen, Heather Corey-Mongue, Marc Greenwald, Lisa Proskin, Proskin Law, JoAnne Coughtry, Wende Tedesco, Rebecca Baldwin, Marriet M. West Child Advocacy, Saratoga Center for the Family, Dr. O'Connor, Dr. Bashkoff, NP Julia Gross, Veronica Smith, James Bennett and Sharon Bennett. Plaintiffs have alleged no facts showing that any of these Defendants has acted as a state actor in any relevant respect, or that their conduct

is fairly attributable to the state. *Elmasri v. England*, 111 F. Supp. 2d 212, 221 (E.D.N.Y. 2000) (dismissing § 1983 claims where defendants, including plaintiff's ex-wife, "acted purely as private individuals in connection with the state court [divorce and child custody] proceedings").

Further, the allegations of fact that Victoria Smith went to family court, filed claims for support and custody, and requested protective orders does not establish that Ms. Smith, a private citizen, was acting "under color of state law" for the purposes of § 1983 liability for the alleged constitutional violations. *Jacobs v. Jacobs*, 2023 WL 4503766, at *3 (2d Cir. July 13, 2023). "Under our precedents, the fact that [defendant] sought the protection of family court does not mean [s]he was acting under color of state law." *Id.*; *see also Serbalik v. Gray*, 27 F. Supp. 2d 127, 131 (N.D.N.Y. 1998) (A private party does not act under color of state law when she merely elicits state aid or invokes the exercise of the state official's authority); *Taylor v. Nichols*, 558 F.2d 561, 564 (10th Cir. 1977) ("The acts of filing a claim and testifying at trial do not constitute state action. These are private acts.").

Plaintiffs do allege that all of the Defendants conspired with each other to violate their federal constitutional rights. The Court understands these allegations as attempting to state a claim under section 1983, as well as 42 U.S.C. section 1985(3) ("section 1985"), which applies specifically to conspiracies. But because Plaintiffs' allegations are vague and lack supporting facts, they fail to state a claim of conspiracy under either section 1983 or section 1985(3). *See Wang v. Miller*, 356 F. App'x 516, 517 (2d Cir. 2009); *Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983) (noting that section 1985 claims must be dismissed where they contain "only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights"). The Supreme Court has noted that "merely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge." *Dennis v. Sparks*, 449 U.S. 24, 28, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980); *see also Deem v. DiMella-Deem*, 2019 WL 1958107, at *8 (S.D.N.Y. May 2, 2019) (allegations of a conspiracy to violate civil rights must be pleaded with specificity, and "[a]n otherwise invalid [§] 1983 claim cannot survive a motion to dismiss merely by mentioning the word 'conspiracy' "); *Parent v. New York*, 786 F. Supp. 2d 516, 540 (N.D.N.Y. 2011) (Private attorney for wife during divorce proceedings was not liable under § 1983 for allegedly conspiring to violate husband's constitutional rights, despite husband's allegations that attorney engaged in ex parte conversation with judges,

2024 WL 1053237

where there was no evidence suggesting concerted action between attorney and any state actor to deprive husband of his civil rights)

### 6. No Affirmative Duty

**\*12** The claims against the Saratoga County police officials center on their alleged failure to provide protective services to the Plaintiffs, or the more generalized failure to provide supervision. In particular, on November 8, 2023, it is alleged that Saratoga County Deputies Connor Houle and Tyler Stank were dispatched to the Plaintiffs' home on a report of an incident involving Defendant Veronica Smith. After they arrived at the scene, it is alleged that their Supervisor, Capt. David Huestis, instructed the two Deputies to leave the scene without ensuring the safety and security of the Plaintiffs, and further, that after the Deputies left the scene, Plaintiffs were assaulted by Defendant Smith. Compl. at ¶ 18. Later in the day when Defendant Smith reported that the Plaintiffs had in fact attacked her, her claim was accepted without consideration of the Plaintiffs' version of events. *Id.*

Similarly, the day before Father's Day in 2022, police were called to the Plaintiffs' residence, in which point Defendant Smith's mother, Sharon Bennett, and stepfather James Bennett had been in the driveway. Compl. at ¶ 20. The New York State Police were present, and Christopher Hollenbeck and Scott Carpenter, Supervisors from the Saratoga County Sheriff's Office, arrived and consulted with the State Police. As result of that conversation, it is alleged that the police officers who were present did not offer protection to the Plaintiffs, nor compel the Bennetts to vacate the driveway. Compl. at ¶ 15.

On October 12, 2023, Plaintiff Smith alleges that he approached Defendant William Heid, with the Saratoga County Sheriff's Office, to make a complaint of parental interference by Defendant Veronica Smith. Lt. Hyde, noting that the Sheriff's Department policy is not to press charges for parental interference, refused to provide protection to the Plaintiffs. Compl. at ¶ 175.

Defendant Michael Zurlo is the Saratoga County Sheriff, and Jeffrey Brown is the Undersheriff. Compl. at ¶ 14. They are being sued by Plaintiffs because of their failure to respond and hold Defendants Bennett and Veronica Smith accountable for their actions. Compl. at ¶¶ 14, 16, 21. They are alleged to be final policymakers for the Sheriff's office, and in that role they created a culture of neglect. Compl. at ¶¶ 16, 21, 22.

Also listed as Defendants are individuals who are employed by either Saratoga County or Warren County Department of Human Services. These include Defendants Christine Zimmerman, Conceta HMura, Carlye Magnusen, Ashley Callahan and Marlo Norton. Compl. at ¶ 72. Callahan and Norton were caseworkers, and the remaining social service workers were their supervisors. Plaintiffs allegations are that the DHS Defendants did not refer 11 false allegations by Defendant Smith out to law enforcement, nor did they conduct any internal investigation; they disregarded significant evidence of educational, medical, and dental neglect; they failed to adhere to their internal guidelines; and that the Plaintiffs reached out to the supervisors on numerous occasions making complaints, but without those supervisors making any rectification of the alleged violations. Compl. at ¶¶ 72, 74, 131, 233, 271, 322. The Plaintiffs rely upon the fact that Rensselaer County DSS "indicated" a report of abuse by Defendant Veronica Smith as evidence that the investigations of Warren and Saratoga County were faulty.

Also sued in the Complaint are Kevin Kolakowski and Meghan Warren, respectively, the Superintendent and the Administrator of the Mechanicville School District. Plaintiff Smith alleges that those Defendants failed to address reports of educational neglect involving the Smith children, who were being homeschooled; they relied on Defendant Veronica Smith's fraudulent reports of the children's education, rather than accede to Plaintiff's request to have the children independently tested; and they generally fostered a pattern of neglect and failed to take remedial action. Compl. at ¶¶ 79, 81, 271, 332. The City of Mechanicville is sued because it is, or should be, responsible for the School District.

**\*13** In sum, Plaintiffs' claims rest on the alleged failure of the courts, police, social service staff and school officials to better intervene and prevent misconduct of private parties against them or the Smith children. This lack of diligent action by the local officials is said to have, *inter alia*, violated the Plaintiffs' due process rights.

Such a theory of constitutional liability, however, has already been rejected by the United States Supreme Court. In *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, Social Services had received information that the child was being abused by his father but ultimately released him back to his father's custody upon the finding that there was insufficient evidence of abuse. 489 U.S. 189, 192, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). It turned out that the father continued to

Case 1:25-cv-01150-AJB-TWD    Document 4    Filed 10/20/25    Page 151 of 187

Dees v. Zurlo, Not Reported in Fed. Supp. (2024)
2024 WL 1053237

abuse the child, resulting in permanent brain damage to the child, Joshua. *Id.* at 193, 109 S.Ct. 998. The Supreme Court rejected the mother's claim on behalf of the child and held that the failure of Social Services to remove Joshua from his father's custody, despite the defendants' alleged knowledge of abuse, did not constitute a violation of the due process clause because the person causing injury was a private citizen, and not a state actor. *Id.* at 202, 109 S.Ct. 998. The Court noted that there was no affirmative obligation on the part of the state to provide protective services. *Id.* at 196-97, 109 S.Ct. 998.

Thereafter, the Supreme Court held that there was no due process right regarding the negligent enforcement of an order of protection by the police. *Town of Castle Rock, Colorado v. Gonzales*, 545 U.S. 748, 768-69, 125 S.Ct. 2796, 162 L.Ed.2d 658 (2005) ("[T]he benefit that a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process Clause, neither in its procedural nor in its "substantive" manifestations. ... Although the framers of the Fourteenth Amendment and the Civil Rights Act of 1871, 17 Stat. 13 (the original source of § 1983), did not create a system by which police departments are generally held financially accountable for crimes that better policing might have prevented, the people of Colorado are free to craft such a system under state law.").

Based upon the above stated precedent, the claims against the police officers, their supervisors, the school staff, social services employees and supervisors, predicated on their failure to properly investigate claims of abuse or custodial or parental interference; report and investigate false claims of abuse; or enforce or issue orders of protection, are without legal merit and do not survive initial review. To the extent Plaintiffs attempt to predicate their procedural due process claim on the Saratoga and Warren County Defendants' alleged failure to report abuse or neglect, as required under New York Social Services Law, that claim also fails to survive Court review. Although New York State law requires that mandated individuals report instances of suspected child abuse or maltreatment, such reporting is not constitutionally required. *Jones v. Nickens*, 961 F. Supp. 2d 475, 493 (E.D.N.Y. 2013). "State child protection legislation, even with procedural requirements "for the immediate classification and evaluation of child abuse reports, the timely initiation of an investigation, and the conduct of the investigation," does not create protected property or liberty interests when the statutory scheme "invest significant discretion in the [child protective workers] to determine both whether an investigation is warranted and what remedial action, if any, to

pursue based on the results of the investigation." *Hilbert S. v. Cnty. of Tioga*, 2005 WL 1460316, at *11 (N.D.N.Y. June 21, 2005) (internal quotations and citations omitted).

*7. Monell Liability and Supervisory Liability*

**\*14** In addition to their substantive claims, the Plaintiffs attempt to assert liability pursuant to *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), against Warren and Saratoga County, and the City of Mechanicville. To demonstrate *Monell* liability, a plaintiff must allege a violation of constitutional rights by employees of the municipality and "(1) the existence of a municipal policy or custom ... that caused his injuries beyond merely employing the misbehaving officer[s]; and (2) a causal connection - an affirmative link - between the policy and the deprivation of his constitutional rights." *Harper v. City of New York*, 424 F. App'x. 36, 38 (2d Cir. 2011) (internal quotations and citations omitted). A fundamental requirement of a *Monell* claim is the establishment of an underlying constitutional violation. *City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806, (1986); *see also Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely correct."). In the present case the Court is recommending the dismissal of all the federal claims and, as such, also recommends that any *Monell* claim be likewise dismissed.

For similar reasons the Court recommends the dismissal of claims against the Defendants that are premised upon supervisory liability. That would include the claims against Hallenbeck, Carpenter, Zurlo, Heggen, Brown, Zimmerman, H'mura, Norton, Granger, and Hartnett. Compl. at ¶¶ 14, 16, 2, 72, 268. At the onset, it is important to note that the term 'supervisory liability' is a misnomer insofar as it implies respondeat superior liability; rather, to succeed, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (*quoting Ashcroft v. Iqbal*, 556 U.S. at 676). Again, as the Court has recommended dismissal of the underlying federal claims for failure to state a claim, the causes of action against any supervisors necessarily fail as well.

Case 1:25-cv-01150-AJB-TWD    Document 4    Filed 10/20/25    Page 152 of 187

Dees v. Zullo, Not Reported in Fed. Supp. (2024)
2024 WL 1053237

**E. Claims under the ADA and the Rehabilitation Act**

The final federal claims alleged by Plaintiff Ethan Smith allege a violation of his rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. 12131, *et seq.*, and § 504 of the Rehabilitation Act, 29 U.S.C. § 794. Plaintiff alleges that he suffers from various disabilities, including ADHD and Auditory Processing Delay, and that he was entitled to various accommodations during his court proceedings such as an ADA compliant notetaker, but that while he was initially granted that accommodation, it was later revoked by Judge Pelagalli. Compl. at ¶ 300. When Plaintiff, during a proceeding, attempted to explain his auditory problems, Judge Wait's response was said to be dismissive and insensitive. Compl. at ¶ 178. Further, during a December 19, 2023 hearing, Judge Wait had Smith's notetaker (Plaintiff Dees) leave the courtroom. Compl. at ¶ 185. While the Complaint references Defendant Heggen and Williams in connection with this claim, it makes no specific factual allegations against them.

The Plaintiff's ADA and Rehabilitation Act claims, which arise out of in-court conduct and decisions regarding the regulation of judicial proceedings, are barred by the *Rooker-Feldman* doctrine, judicial immunity, and by § 1983's requirement that injunctive relief against a judge is barred unless a declaratory decree was violated, or declaratory relief was unavailable. *Richter v. Connecticut Jud. Branch*, 2014 WL 1281444, at *10 (D. Conn. Mar. 27, 2014), *aff'd*, 600 F. App'x 804 (2d Cir. 2015). Additionally, neither statute provides for individual liability. *See Goe v. Zucker*, 43 F.4th 19, 35 (2d Cir. 2022) (citing *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001)).

**F. State Court Claims**

A district court may decline to exercise supplemental jurisdiction over state law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988). Having recommended dismissal of the federal claims over which the Court has original jurisdiction, the Court also recommends that the District Court decline to exercise its supplemental jurisdiction over any state law claims Plaintiffs may be asserting.

**IV. CONCLUSION**

**\*15**  For the forgoing reasons, the Court recommends that the Plaintiffs claims seeking to review and reject state court judgments that were rendered prior to the filing of the federal court action, be dismissed due to lack of jurisdiction pursuant to the *Rooker-Feldman* doctrine.

Next, the Court recommends that the District Court abstain from deciding issues related to the ongoing Family Court and Supreme Court proceedings pursuant to *Younger v. Harris*.

Third, the Court recommends dismissal of the claims alleging a violation of the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. 1962, or a conspiracy to do the same.

Fourth, the Court recommends that the claims against the following individuals be dismissed, **with prejudice**, on grounds of judicial immunity or quasi-judicial immunity: Judge Paul Pelagalli; Saratoga Supreme Court Judges John Ellis and Dianne Freestone; City Court Judge Jeffrey Wait; Saratoga County Court Judge James Murphy; Administrative Judge for the Fourth Judicial District Judge Felix Catena; Appellate Division Justices Elizabeth Garry and Christine Clark; Court Attorney Karla Conway; and Court-appointed experts Jaqueline Bashkoff and Dr. Mary O'Connor; and the private attorneys appointed by the Court to represent the Smith children - Jessica Vinson of Vella Carbone, LLP; Denise Rest-Tobin; Elena Tastensen; and Heather Corey-Mongue.

Fifth, the Court recommends dismissal **with prejudice** of the claims against the government attorneys involved in the court proceedings or that were integral to the litigation process: Samuel Maxwell, Emily Williams, Michelle Granger, and Michael Hartnett.

Sixth, the Court recommends that the claims involving the following Defendants be dismissed **with prejudice** on the grounds of witness immunity, insofar as the claims against them are based upon their testimony or information provided to the Court: Jillian Knox; Dr. Bashkoff; Dr. O'Connor; Veronica Smith; and Denise Rista-Tobin.

Dees v. Zurlo, Not Reported in Fed. Supp. (2024)

2024 WL 1053237

Seventh, the Court recommends that all other federal claims against the remaining Defendants be dismissed for the reasons set forth above.

Eighth, the Court recommends that the District Court decline to exercise supplemental jurisdiction over the remaining state law claims.

Unless specifically stated otherwise, several of the above recommendations of dismissal are based primarily on pleading deficiencies and not necessarily on the viability of the claims intended to be stated. Although the Court recommends dismissal of such claims and Defendants, alternatively, in light of Plaintiffs' pro se status, the Court recommends that on those claims not subject to dismissal with prejudice, the Court should afford Plaintiffs the opportunity to file an amended complaint if they desire to proceed. Should Plaintiffs be directed by the District Judge to file an amended complaint, I offer the following guidance. Any such amended complaint, which shall supersede and replace in its entirety the original Complaint filed by Plaintiffs, must contain a caption that clearly identifies, by name, each individual that Plaintiffs are suing in the present lawsuit and must bear the case number assigned to this action. The body of Plaintiffs' amended complaint must contain sequentially numbered paragraphs containing only one act of misconduct per paragraph. Thus, if Plaintiffs claim that their civil and/or constitutional rights were violated by more than one defendant, or on more than one occasion, they should include a corresponding number of paragraphs in the amended complaint for each such allegation, with each paragraph specifying (i) the alleged act of misconduct; (ii) the date on which such misconduct occurred; (iii) the names of each and every individual who participated in such misconduct; (iv) where appropriate, the location where the alleged misconduct occurred; and, (v) the nexus between such misconduct and Plaintiff's civil and/or constitutional rights.

**\*16** Importantly, any such pleading must be "*concise and direct.*" Fed. R. Civ. P. 8(d) (emphasis added).

Plaintiffs' amended complaint shall also assert claims against each and every defendant named in such complaint; any defendant not named in such pleading shall not be a defendant in the instant action. Plaintiff is further cautioned that no portion of any prior complaint shall be incorporated into their amended complaint by reference. Plaintiffs shall state in the single amended complaint all claims that they wish this Court to consider as a basis for awarding Plaintiff relief herein; and their failure to file such a pleading will result in dismissal of this action without further Order of the Court.

**WHEREFORE**, it is hereby

**RECOMMENDED**, that the Complaints be **DISMISSED** as set forth above; and it is

**ORDERED**, that the Motions for Leave to File Electronically are **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

**SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2024 WL 1053237

---

**End of Document**    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:25-cv-01150-AJB-TWD    Document 4    Filed 10/20/25    Page 154 of 187

Dees v. Zurlo, Not Reported in Fed. Supp. (2024)

2024 WL 2291701

2024 WL 2291701
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Jennifer Lynn DEES and Ethan Davis Smith, Plaintiffs,

v.

Michael ZURLO, et al., Defendants.

1:24-CV-1 (MAD/DJS)
|
Signed May 21, 2024

**Attorneys and Law Firms**

JENNIFER LYNN DEES and ETHAN DAVIS SMITH, 16
Grant Hill Road, Clifton Park, New York 12065, Plaintiffs,
pro se.

**MEMORANDUM-DECISION AND ORDER**

Mae A. D'Agostino, United States District Judge:

**I. INTRODUCTION**

**\*1** On January 2, 2024, Plaintiffs Jennifer Lynn Dees and
Ethan Davis Smith commenced this action, *pro se*, against
fifty-three Defendants. *See* Dkt. No. 1. In their 170-page
complaint, Plaintiffs allege that Defendants have deprived
them of various constitutional rights because of Defendants'
roles and involvement in state-court custody, support, and/
or criminal disputes. *See id.* Plaintiffs submitted applications
to proceed *in forma pauperis* ("IFP") and for leave to file
electronically. *See* Dkt. Nos. 2, 3, 4, 5.

On March 11, 2024, Magistrate Judge Daniel J. Stewart
issued an Order granting Plaintiffs' IFP motions. *See* Dkt.
No. 11. Magistrate Judge Stewart also issued a Report-
Recommendation and Order reviewing Plaintiffs' complaint
pursuant to 28 U.S.C. § 1915(e) and recommending that the
complaint be dismissed. *See* Dkt. No. 12. He also ordered that
Plaintiffs be denied leave to file electronically. *See id.*

Plaintiffs objected to every single aspect of the Report-
Recommendation and Order. *See* Dkt. No. 13. [1] "Generally,
when a *specific* objection is made to a portion of a
magistrate judge's report-recommendation, the Court subjects
that portion of the report-recommendation to a *de novo*

review." *Boice v. M+W U.S., Inc.*, 130 F. Supp. 3d 677,
683 (N.D.N.Y. 2015) (citing FED. R. CIV. P. 72(b)(2); 28
U.S.C. § 636(b)(1)(C)). "To be 'specific,' the objection must,
with particularity, 'identify [1] the portions of the proposed
findings, recommendations, or report to which it has an
objection and [2] the basis for the objection.' " *Id.* (quoting
N.D.N.Y. L.R. 72.1(c) (footnote omitted). "When only a
*general* objection is made to a portion of a magistrate judge's
report-recommendation, the Court subjects that portion of
the report-recommendation to only a *clear error* review."
*Id.* at 684 (citations omitted). "Similarly, when an objection
merely reiterates the same arguments made by the objecting
party in its original papers submitted to the magistrate judge,
the Court subjects that portion of the report-recommendation
challenged by those arguments to only a *clear error* review."
*Id.* (footnote omitted). After the appropriate review, "the
court may accept, reject, or modify, in whole or in part, the
findings or recommendations made by the magistrate judge."
28 U.S.C. § 636(b)(1).

[1]     Plaintiffs' objections are thirty-eight pages. *See*
        Dkt. No. 13. Local Rule 71.2(c) instructs
        that "[o]bjections may not exceed twenty-five
        (25) pages without the Court's prior approval."
        N.D.N.Y. L.R. 72.1(c). The Court will consider
        the entirety of Plaintiffs' objections because
        they are proceeding *pro se*. However, the Court
        warns Plaintiffs that future compliance with the
        Federal Rules, the Court's Local Rules, and the
        undersigned's Individual Rules is required.

As Plaintiffs are proceeding *pro se*, the Court must review
their complaint under a more lenient standard. *See Govan
v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2003).
The Court must "make reasonable allowances to protect *pro
se* litigants from inadvertent forfeiture of important rights
because of their lack of legal training." *Traguth v. Zuck*, 710
F.2d 90, 95 (2d Cir. 1983). Thus, "a document filed *pro se* is
'to be liberally construed,' and 'a *pro se* complaint, however
inartfully pleaded, must be held to less stringent standards
than formal pleadings drafted by lawyers.' " *Erickson v.
Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*,
429 U.S. 97, 106 (1976)). "Although the court has the duty
to show liberality towards pro se litigants, ... there is a
responsibility on the court to determine that a claim has some
arguable basis in law before permitting a plaintiff to proceed
with an action in forma pauperis." *Moreman v. Douglas*,
848 F. Supp. 332, 333-34 (N.D.N.Y. 1994) (internal citations
omitted).

Dees v. Zurlo, Not Reported in Fed. Supp. (2024)

2024 WL 2291701

## II. BACKGROUND

**\*2** Plaintiffs summarize their claims at the beginning of their complaint as allegations against "a broad spectrum of governmental entities and private defendants" including judges, attorneys, family members, the Saratoga County Sheriff's Office, district attorneys' offices, departments of social service, Warren County, Saratoga County, and the City of Mechanicville. Dkt. No. 1 at ¶ 2. The complaint concerns New York State Family Court and County Court proceedings and events related to custody and supervision of Plaintiff Smith's children. The proceedings are primarily between Plaintiff Smith and Defendant Veronica Smith—the mother of his children. Plaintiff Dees is Plaintiff Smith's partner. Plaintiffs allege that the Defendants engaged in a conspiracy to violate their constitutional rights as well as Plaintiff Smith's rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et seq.,* and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

For a fuller recitation of the relevant background information, the Court refers to Plaintiffs' complaint and Magistrate Judge Stewart's Report-Recommendation and Order. *See generally* Dkt. No. 1; *see also* Dkt. No. 12 at 4-5.

## III. DISCUSSION

### A. *Rooker-Feldman* Doctrine

In his Report-Recommendation and Order, Magistrate Judge Stewart first addressed the *Rooker-Feldman* doctrine, under which federal courts are divested of jurisdiction over claims that seek to overrule state court determinations. *See* Dkt. No. 12 at 8-9; *see also* Green v. Mattingly, 585 F.3d 97, 101 (2d Cir. 2009). Magistrate Judge Stewart concluded that because Plaintiffs' complaint seeks to overturn state-court custody and support decisions, the Court's review of Plaintiffs' claims is barred by the *Rooker-Feldman* doctrine. *See* Dkt. No. 12 at 8. Plaintiffs object, arguing that because they have appealed the state court decisions, and those appeals have not been decided, the *Rooker-Feldman* doctrine does not apply. *See* Dkt. No. 13 at 1-3.

"The Supreme Court has explained that *Rooker-Feldman* bars 'a party losing in state court ... from seeking what in substance would be appellate review of the state judgment in a United States district court.' " Hunter v. McMahon, 75 F.4th 62, 67 (2d Cir. 2023) (quoting Johnson v. De Grandy, 512 U.S. 997, 1005-06 (1994)). "*Rooker-Feldman* 'is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.' " Id. at 67-68 (quotation omitted). "The doctrine 'does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions.' " Id. at 68 (quotation omitted).

The doctrine " 'applies only in limited circumstances where a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court.' " Id. (quoting Lance v. Dennis, 546 U.S. 459, 466 (2006)). In adopting "the unanimous position of every other circuit court to address it[,]" the Second Circuit in *Hunter* held that "[i]f a federal-court plaintiff's state-court appeal remains pending when she files her federal suit, the state-court proceedings have not ended and *Rooker-Feldman* does not apply." Id. at 70 (quoting Butcher v. Wendt, 975 F.3d 236, 246 (2d Cir. 2020) (Menashi, J., concurring in part and concurring in the judgment)).

In their objections, Plaintiffs list eight "currently pending" appeals. Dkt. No. 13 at 1-2. The relevant inquiry is whether those appeals were pending when they filed their complaint with this Court on January 2, 2024. *See* Dkt. No. 1; *see also* Hunter, 75 F.4th at 71 (quoting E.R. Squibb & Sons, Inc. v. Lloyd's & Cos., 241 F.3d 154, 163 (2d Cir. 2001)) ("[F]ederal courts 'assess[ ] jurisdiction ... as of the moment the complaint was filed' "). Upon the Court's review of the state court dockets, seven of the eight appeals that Plaintiffs list were pending at the time they filed their complaint in this Court. *See Smith v. Smith,* CV-23-1726 (3d Dep't 2023); *Smith v. Smith,* CV-23-1805 (3d Dep't 2023); *Veronica LL. v. Ethan LL.,* CV-23-1874 (3d Dep't 2023); *Smith v. Smith,* CV-23-1265 (3d Dep't 2023); *Smith v. Smith,* CV-23-1642 (3d Dep't 2023); *Matter of Smith v. Smith,* CV-23-2087 (3d Dep't 2023); *Matter of Smith v. Smith,* CV-23-2195 (3d Dep't 2023); *Matter of Ethan LL v. Veronica LL,* CV-24-0306 (3d Dep't 2024). Plaintiffs also contend that their "Article 78 action CV-23-1727, against multiple defendants still remains open." Dkt. No. 13 at 2. Upon the Court's search of that case number in the New York State Unified Court System Electronic Filing System, it appears that the final entry is an "order" dated November 21, 2023. *See Ethan Smith et al. v. Karen Heggen et al.,* CV-23-1727 (3d Dep't 2023), Dkt. No. 36. The Court is unable to view the document as it is

Dees v. Zurlo, Not Reported in Fed. Supp. (2024)
Case 1:25-cv-01150-AJB-TWD    Document 4    Filed 10/20/25    Page 156 of 187
2024 WL 2291701

sealed. *See id.* Plaintiffs do not contend that they appealed this "order" from the Appellate Division.

**\*3** To the extent Plaintiffs have not appealed Supreme Court, Family Court, or Appellate Division decisions, and such decisions are final, the *Rooker-Feldman* doctrine precludes the Court's consideration of the decisions in which Plaintiffs lost. Insofar as appeals are pending in the Appellate Division from Supreme Court or Family Court decisions, Plaintiffs are correct that the *Rooker-Feldman* doctrine does not apply. *See Hunter*, 75 F.4th at 67-71. However, even where the *Rooker-Feldman* doctrine does not apply, as thoroughly set forth in Magistrate Judge Stewart's Report-Recommendation and Order, Plaintiffs' complaint must be dismissed on numerous other grounds.

**B.** *Younger* **Abstention**

Magistrate Judge Stewart next addressed the *Younger* abstention doctrine which mandates that federal courts abstain from interfering in claims seeking declaratory or injunctive relief over ongoing state proceedings. *See* Dkt. No. 12 at 10 (citing *Younger v. Harris*, 401 U.S. 37, 43-44 (1971)). Magistrate Judge Stewart explained that *Younger* abstention does not apply to claims seeking only monetary relief, as Plaintiffs do in this case, but noted that the doctrine implicates "domestic relations" abstention, which "is based upon a policy dictating that the states have traditionally adjudicated marital and child custody disputes, developing 'competence and expertise in adjudicating such matters, which the federal courts lack.' " Dkt. No. 12 at 10 (quoting *Thomas v. N.Y. City*, 814 F. Supp. 1139, 1146 (E.D.N.Y. 1993)).

Plaintiffs objected, arguing that they are not seeking declaratory or injunctive relief, so *Younger* abstention does not apply. *See* Dkt. No. 13 at 5. Plaintiffs contends that "[t]he principle of Younger abstention typically applies in scenarios where significant state interests are at stake and does not extend to precluding federal jurisdiction merely due to possible inconsistencies with state court rulings." *Id.* at 6.

*Younger* demands that

> federal courts [ ] decline to exercise jurisdiction in three [ ] exceptional categories of cases: "First, *Younger* preclude[s] federal intrusion into ongoing state criminal prosecutions. Second, certain civil enforcement proceedings warrant[ ] abstention. Finally, federal courts [must] refrain[ ] from interfering with pending civil proceedings involving

certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions."

*Trump v. Vance*, 941 F.3d 631, 637 (2d Cir. 2019), *aff'd and remanded*, 591 U.S. 786 (2020) (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013)). "*Younger* abstention is [ ] an 'exception to th[e] general rule' that 'a federal court's obligation to hear and decide a case is virtually unflagging,' ... and the doctrine is also subject to exceptions of its own in cases of bad faith, harassment, or other 'extraordinary circumstances.' " *Id.* (quotations omitted). "[T]he *Younger* doctrine is inappropriate where the litigant seeks money damages for an alleged violation of § 1983." *Rivers v. McLeod*, 252 F.3d 99, 101-02 (2d Cir. 2001).

The Second Circuit, in *American Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir. 1990), explained that "[a]lthough matrimonial actions may ordinarily be instituted in federal court on diversity grounds, the Supreme Court in *Barber v. Barber*, 62 U.S. .. 582, 584 ... (1859), went so far as to disclaim all federal subject matter jurisdiction for some classes of matrimonial actions." *Id.* This is known as the domestic relations exception to federal jurisdiction, *i.e.*, federal courts should not exercise jurisdiction over matrimonial actions brought under diversity grounds. "[H]owever, the scope of this matrimonial exception to federal jurisdiction is 'rather narrowly confined,' ... only 'where a federal court is asked to grant a divorce or annulment, determine support payments, or award custody of a child' does it generally decline jurisdiction pursuant to the matrimonial exception." *Id.* (quotations omitted). The Second Circuit, in *American Airlines*, expanded the domestic relations exception, noting that "even if subject matter jurisdiction lies over a particular matrimonial action, federal courts may properly abstain from adjudicating such actions in view of the greater interest and expertise of state courts in this field." *Id.* "A federal court presented with matrimonial issues or issues 'on the verge' of being matrimonial in nature should abstain from exercising jurisdiction so long as there is no obstacle to their full and fair determination in state courts." *Id.* (citations omitted). This is known as the domestic relations abstention doctrine. *See Deem v. DiMella-Deem*, 941 F.3d 618, 621 (2d Cir. 2019) ("Although the domestic relations '*exception*' to subject matter jurisdiction ... does not apply in federal-question cases, the domestic relations *abstention* doctrine articulated in *American Airlines* does").

**\*4** The abstention doctrine has been utilized across the country by federal courts removing themselves from considering a state court domestic relations matter. *See Deem*,

941 F.3d at 623 (collecting cases) (citing, *inter alia, DeMauro v. DeMauro*, 115 F.3d 94, 99 (1st Cir. 1997) ("[A]bstention by use of a stay may be permissible where a RICO action is directed against concealment or transfer of property that is the very subject of a pending divorce proceeding")); *see also Falco v. Justs. of the Matrimonial Parts of Supreme Ct. of Suffolk Cnty.*, 805 F.3d 425, 427 (2d Cir. 2015) (quotation omitted) ("[W]e independently conclude that Falco's case presents circumstances that qualify as 'exceptional' under *Sprint* and that *Younger* abstention was therefore warranted. Falco's federal lawsuit implicates the way that New York courts manage their own divorce and custody proceedings—a subject in which 'the states have an especially strong interest' ").

Here, "the domestic relations *exception* clearly does not apply to this case because it is 'before this Court on federal question jurisdiction, not diversity.' " *Deem*, 941 F.3d at 623 (quoting *Williams v. Lambert*, 46 F.3d 1275 (2d Cir. 1995)) (emphasis added). However, *abstention* is appropriate because Plaintiffs' complaint concerns family court disputes over custody, visitation, and protective orders. *See Reeves v. Reeves*, No. 22-CV-2544, 2022 WL 1125267, *1 (S.D.N.Y. Apr. 14, 2022); *Stumpf v. Maywalt*, 605 F. Supp. 3d 511, 518 (W.D.N.Y. 2022); *Dasler v. Knapp*, No. 2:21-CV-135, 2023 WL 8354441, *9 (D. Vt. Oct. 13, 2023).

Plaintiffs are correct that abstention is usually exercised in scenarios where significant state interests are at stake. *See* Dkt. No. 13 at 6; *see also Sprint*, 571 U.S. at 72-73. This is such a case because states are traditionally tasked with addressing domestic matters. *See Deem*, 941 F.3d at 624 (quoting *In re Burrus*, 136 U.S. 586, 593-94 (1890)) ("[T]he existence of a distinct abstention doctrine for certain domestic relations disputes is supported by the Supreme Court's longstanding recognition — in a non-diversity case involving a child custody dispute — that '[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states, and not to the laws of the United States' "); *see also Amato v. McGinty*, No. 1:17-CV-593, 2017 WL 9487185, *10 (N.D.N.Y. June 6, 2017). Thus, the Court will abstain from exercising jurisdiction over Plaintiffs' complaint insofar as it concerns state court domestic relations matters.

## C. RICO Claims

Magistrate Judge Stewart concluded that Plaintiffs failed to set forth a cognizable claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961,

*et seq.*, because, as explained in *Kim v. Kimm*, 884 F.3d 98 (2d Cir. 2018), RICO cannot be used to address litigation activity. *See* Dkt. No. 12 at 11-14. Plaintiffs object, arguing that *Kim* is inapplicable because that case involved a single instance of litigation activity, whereas their case concerns "actions [that] have been concertedly executed over a period of four years." Dkt. No. 13 at 7. Plaintiffs rely on Fifth and Eleventh Circuit caselaw to argue that their claims support a RICO violation. *See id.* at 6-7. Plaintiffs also contend that Magistrate Judge Stewart's decision supports their assertion of corruption in the judiciary because he took sixty-nine days to issue his Report-Recommendation and Order "as opposed to the swifter resolutions typically observed in cases under the same magistrate." *Id.* at 8.

As an initial matter, Plaintiffs' reliance on out-of-circuit case law is not binding on this Court. *See Goldstein v. Pro. Staff Cong./CUNY*, 643 F. Supp. 3d 431, 443, n.6 (S.D.N.Y. 2022), *aff'd*, 96 F.4th 345 (2d Cir. 2024) (discussing "vertical stare decisis"). Further, the Court finds no error in the time Magistrate Judge Stewart took to issue his Report-Recommendation and Order. Magistrate Judge Stewart was tasked with reviewing a 170-page complaint and a forty-eight-page RICO statement. *See* Dkt. Nos. 1, 9. A two-month time frame to do so is not inappropriate, let alone conspiratorial, where Magistrate Judge Stewart must balance a heavy case load.

**\*5** As to the substance of Plaintiffs' RICO claims and their objections, Plaintiffs are correct that *Kim* concerned one federal litigation alleged to be conspiratorial. *See Kim*, 884 F.3d at 101-02. In that case, the Second Circuit specifically "decline[d] to reach the issue of whether all RICO actions based on litigation activity are categorically meritless." *Id.* at 105. Rather, the Second Circuit held only that "where ... a plaintiff alleges that a defendant engaged in a single frivolous, fraudulent, or baseless lawsuit, such litigation activity alone cannot constitute a viable RICO predicate act." *Id.*

The Second Circuit distinguished *Sykes v. Mel Harris & Assocs., LLC*, 757 F. Supp. 2d 413 (S.D.N.Y. 2010) wherein the court allowed a RICO claim to proceed because the plaintiff pled "a pattern of racketeering activity that included 'at least twenty allegedly fraudulent statements and eighteen acts involving use of the mail and wires over three years, in furtherance of the alleged fraud.' " *Kim*, 884 F.3d at 105 (quoting *Sykes*, 757 F. Supp. 2d at 425). This court has also noted that "the Second Circuit decision in *United States v. Eisen*, 974 F.2d 246 (2d Cir. 1992), allows RICO claims based

Dees v. Zurlo, Not Reported in Fed. Supp. (2024)

2024 WL 2291701

on abusive litigation tactics involving conduct external to any of the particular disputes between the litigants in improperly filed and litigated civil actions." *Carroll v. U.S. Equities Corp.*, No. 1:18-CV-667, 2020 WL 11563716, *9 (N.D.N.Y. Nov. 30, 2020).

The Court concludes that *Kim* does not automatically preclude Plaintiffs' purported RICO claim just because Plaintiffs' complaint concerns litigation activity as the alleged activity is conduct occurring over four years and dozens of individuals. However, Magistrate Judge Stewart did not state that such preclusion was automatic. Rather, he applied the "reasons" and "principle[s]" set forth by *Kim* to Plaintiffs' complaint. Dkt. No. 12 at 12-13. The Court agrees with such application.

"To state a claim for RICO conspiracy under § 1962(d), the plaintiff must also 'allege the existence of an agreement to violate RICO's substantive provisions.' " *Butcher v. Wendt*, 975 F.3d 236, 241 (2d Cir. 2020) (quoting *Williams v. Affinion Grp., LLC*, 889 F.3d 116, 124 (2d Cir. 2018)); *see also First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 164 (2d Cir. 2004) (concluding that where the plaintiffs failed to "adequately allege a substantive violation of RICO," the district court properly dismissed allegations of "a RICO conspiracy in violation of 18 U.S.C. § 1962(d)"); *Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1064 (2d Cir. 1996), *as corrected*, 93 F.3d 1055 (2d Cir. 1996) ("Since we have held that the prior claims do not state a cause of action for substantive violations of RICO, the present claim does not set forth a conspiracy to commit such violations").

"To state a claim of a substantive RICO violation under § 1962(c), a plaintiff must allege, among other things, two or more predicate acts 'constituting a pattern of 'racketeering activity.' " *Butcher*, 975 F.3d at 241 (quoting *Williams*, 889 F.3d at 124). "The RICO statutory scheme defines 'racketeering activity' to include 'a host of criminal offenses, which are in turn defined by federal and state law.' " *Curtis & Assocs., P.C. v. L. Offs. of David M. Bushman, Esq.*, 758 F. Supp. 2d 153, 168 (E.D.N.Y. 2010), *aff'd*, 443 Fed. Appx. 582 (2d Cir. 2011) (quoting *Cofacredit, S.A. v. Windsor Plumbing Supply Co. Inc.*, 187 F.3d 229, 242 (2d Cir. 1999)). "Specifically, the RICO statute defines 'racketeering activity' as including any 'act' indictable under various specified federal statutes, including the mail and wire fraud statutes." *Id.* (quoting 18 U.S.C. § 1961(1)). " ' Pattern' is defined by the statute as 'at least two acts of racketeering activity' within a ten-year period." *Id.* (quoting 18 U.S.C. § 1961(5)).

**\*6** In their RICO statement, Plaintiffs allege that Defendants violated 18 U.S.C. §§ 1341 (relating to mail fraud), 1343 (relating to wire fraud), 1344 (relating to financial institution fraud), 1503 (relating to financial institution fraud), 1510 (relating to obstruction of criminal investigations), 1513 (relating to retaliating against a witness, victim, or an informant), and 1951 (relating to interference with commerce, robbery, or extortion). *See* Dkt. No. 9 at 18-19.

Plaintiffs' complaint and statement fail to sufficiently allege these predicate acts. Plaintiffs allege that Defendants committed mail fraud "by a series of fraudulent support collection letters" which "were issued despite knowledge of fraud and without proper investigation into the claims." Dkt. No. 9 at 22. They contend that Defendants committed wire fraud and financial institution fraud by sending bills and enforcing child support collection orders. *See id.* Plaintiffs state that they have been mailed fraudulent protection orders. *See id.* at 23. They aver that they were e-mailed "fraudulent legal documents including affirmations, affidavits, and protection orders." *Id.* at 25. Plaintiffs also allege that "Defendants each obstructed justice by interfering in state court matters ostensibly to undermine the plaintiffs' federal court case and hinder U.S. attorneys' investigations." *Id.* at 19. They state that Defendants have obstructed justice by "tampering with trial proceedings and witnesses, failing to file pertinent motions into the court record, and deliberately withholding compliance with legally mandated FOIL requests." *Id.* at 20-21. Plaintiffs allege that Defendants "engaged in coercive and illicit practices to extort payments from the plaintiff. The purported extortion involved the utilization of duress, public denigration, threats of incarceration, the manipulation of child custody, tolerance of ongoing abuse, initiation of vindictive charges and protective orders, unlawful intimidation, and the fabrication of federal crime accusations." *Id.* at 21.

Although *Kim* concerned only a single litigation, the principles underlying the Second Circuit's decision are applicable to Plaintiffs' claims because their claims stem entirely from state family and criminal court proceedings. Allowing such claims to be the base underlying RICO violations "would erode the principles undergirding the doctrines of res judicata and collateral estoppel, as such claims frequently call into question the validity of documents presented in the underlying litigation as well as the judicial decisions that relied upon them." *Kim*, 884 F.3d at 104 (quotation omitted).

Dees v. Zurlo, Not Reported in Fed. Supp. (2024)

Case 1:25-cv-01150-AJB-TWD    Document 4    Filed 10/20/25    Page 159 of 187

2024 WL 2291701

The allegations in Plaintiffs' complaint and RICO statement are similar to those in cases which have not allowed a RICO claim to proceed where the allegations concern only litigation activity. Plaintiffs have not alleged any conduct that is unrelated to state-court litigation. *See Wang v. Yien-Koo King*, No. 18-CV-8948, 2019 WL 1763230, *7 (S.D.N.Y. Apr. 22, 2019) ("[B]ecause the Court has held that [the p]laintiffs have not adequately alleged RICO claims premised on the sale of restrained artwork or the proceedings in probate court, [the p]laintiffs' RICO claim would be rooted solely in litigation-related mail or wire fraud predicates -- specifically, the use of mail and wires in filing legal documents"); *Weaver v. New York State Off. of Ct. Admin.*, No. 22-CV-559, 2023 WL 2500390, *9 (N.D.N.Y. Mar. 14, 2023); *Rajaratnam v. Motley Rice, LLC*, 449 F. Supp. 3d 45, 69 (E.D.N.Y. 2020); *Robinson v. Vigorito, Barker, Patterson, Nichols & Porter, LLP*, No. 19-CV-2914, 2019 WL 13417190, *3 (E.D.N.Y. July 31, 2019); *Verschleiser v. Frydman*, No. 22-CV-7909, 2023 WL 5835031, *13 (S.D.N.Y. Sept. 7, 2023) (citing, *inter alia, Curtis & Assocs., P.C. v. L. Offs. of David M. Bushman, Esq.*, 758 F. Supp. 2d 153, 174 (E.D.N.Y. 2010); *Daddona v. Gaudio*, 156 F. Supp. 2d 153, 161-62 (D. Conn. 2000)).

**\*7** Plaintiffs' complaint is also distinguishable from cases where RICO claims have been permitted to proceed. For example, in *Carroll*, the plaintiff alleged that the defendants initiated thousands of lawsuits against the plaintiff and unnamed individuals for fraudulent debts in order to recover monetary default judgments. *Carroll*, 2020 WL 11563716, at *3. The court noted that many acts as alleged by the plaintiff "involved matters beyond proper legal representation and went beyond any of the particular disputes between the litigants" "such as buying uncollectable debts that lacked proof that the debts were owed, conspiring to use a process serving firm that engaged in sewer service to ensure that defendants would not contest the debt-collection actions, using an individual who filed false affidavits of merit in every case, and pressuring defendants to compromise on illegally obtained default judgments were actions external to the individual suits in the state courts." *Id.* at *9. The court concluded that the "case is more closely aligned with *Sykes* than *Kim*." *Id.* In *Sykes*, "[t]he gravamen of [the] racketeering activity was not so much litigation activities, as it was the use of courts to obtain default judgments en masse against defendants who had not been served. The 'litigations' in *Sykes* were mere perfunctory steps to cash in on a portfolio of defaulted debts." *Rajaratnam*, 449 F. Supp. 3d at 71; *see Sykes*, 757 F. Supp. 2d at 425.

Here, the gravamen of Plaintiffs' complaint concerns state court litigation. There are no allegations in either the complaint or RICO statement that are entirely unrelated to litigation. The Defendants are judges, attorneys, law firms, or the mother of Plaintiff Smith's children—who is the primary adversary in the state court cases. Allowing a RICO violation to proceed under these circumstances would, as the Second Circuit cautioned against, " 'chill litigants and lawyers and frustrate the well-established public policy goal of maintaining open access to the courts' because 'any litigant's or attorney's pleading and correspondence in an unsuccessful lawsuit could lead to drastic RICO liability.' " *Kim*, 884 F.3d at 105 (quotation omitted). Thus, the Court concludes that Plaintiffs' complaint fails to state a cognizable RICO claim.

### D. Absolute Judicial Immunity

Plaintiffs seek to bring claims under 42 U.S.C. §§ 1983 and 1985 for alleged constitutional violations against numerous state court judges: Defendants Paul Pelagalli, John Ellis, Jeffrey Wait, Felix Catena, Dianne Freestone, James Murphy, and Elizabeth Garry. *See* Dkt. No. 1 at ¶¶ 24-47. Magistrate Judge Stewart correctly explained that judges are typically immune from such actions. *See* Dkt. No. 12 at 14. Plaintiffs object, arguing that the judicial Defendants' conduct, as outlined in the complaint, constitutes "a significant departure from their judicial responsibilities." Dkt. No. 13 at 11.

"Absolute immunity for judges is 'firmly established' for acts 'committed within their judicial jurisdiction.' " *Peoples v. Leon*, 63 F.4th 132, 138 (2d Cir. 2023) (quoting *Cleavinger v. Saxner*, 474 U.S. 193, 199-200 (1985)). "Absolute immunity for a judge performing his or her judicial functions is conferred in order to insure 'that a judicial officer, in exercising the authority vested in him shall be free to act upon his own convictions, without apprehension of personal consequences to himself.' " *Libertarian Party of Erie Cnty. v. Cuomo*, 970 F.3d 106, 123 (2d Cir. 2020), *abrogated on other grounds by New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022) (quoting *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009)). "Entitlement to absolute immunity does not depend on the individual's title or on the office itself.... A judge may perform tasks that are not essentially judicial, such as supervising and managing court employees, which do not warrant absolute immunity ...; on the other hand, such immunity may be warranted for a person who is not a judge but whose duties are quasi-judicial." *Id.* at 124 (citations omitted). "Judicial acts principally involve adjudication of

Case 1:25-cv-01150-AJB-TWD    Document 4    Filed 10/20/25    Page 160 of 187

Dees v. Zurlo, Not Reported in Fed. Supp. (2024)

2024 WL 2291701

particularized, existing issues." *Id.* "Thus, some functions may be viewed as judicial acts when performed in the context of a particular case but as administrative when performed for the purpose of overall management in anticipation of future cases." *Id.*

**\*8** "In determining a jurisdictional issue that depended on 'whether a particular proceeding before another tribunal was truly judicial,' ... the Supreme Court stated that the form of the proceeding is less significant than the proceeding's nature and effect." *Id.* (quoting *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 n.13, 478 (1983)). "Judicial immunity is overcome in only two circumstances: (1) 'a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity'; and (2) 'a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction.' " *McCluskey v. Roberts*, No. 20-4018, 2022 WL 2046079, \*5 (2d Cir. June 7, 2022) (quoting *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991)).

Plaintiffs' allegations against the judicial Defendants stem entirely from the judge's orders and decisions or conduct in controlling their courtroom. *See* Dkt. No. 1 at ¶¶ 24-47. Although Plaintiffs disagree with the judge's actions or inactions related to protective orders, custody orders, and court proceedings, those actions are entirely within the scope of the judges' jurisdiction. Plaintiffs have not presented more than conclusory allegations to establish that the judicial Defendants were acting absent all jurisdiction. They are, therefore, entitled to absolute immunity for that conduct. *See, e.g.*, *King v. New York State*, No. 23-CV-3421, 2023 WL 5625440, \*4 (E.D.N.Y. Aug. 31, 2023); *Wilkins v. Soares*, No. 8:20-CV-00116, 2020 WL 5238598, \*4 (N.D.N.Y. May 27, 2020); *Viola v. Bryant*, No. 3:17-CV-00853, 2017 WL 2676407, at \*4 (D. Conn. June 21, 2017); *Topolski v. Wrobleski*, No. 5:13-CV-0872, 2014 WL 2215761, \*5 (N.D.N.Y. May 29, 2014).

### *1. Sovereign Immunity*

As an alternative to absolute judicial immunity, Magistrate Judge Stewart explained in a footnote that the judicial Defendants were also protected by sovereign immunity. *See* Dkt. No. 12 at 18, n.3. Plaintiffs object to the application of sovereign immunity because "their allegations are distinctly targeted at the defendants in their personal capacities." Dkt. No. 13 at 21.

"The Eleventh Amendment states: 'The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.' " *Gollomp v. Spitzer*, 568 F.3d 355, 365 (2d Cir. 2009) (quoting U.S. Const. amend. XI). "[T]he Eleventh Amendment means that, 'as a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity,' or unless Congress has 'abrogate[d] the states' Eleventh Amendment immunity when acting pursuant to its authority under Section 5 of the Fourteenth Amendment.' " *Id.* at 366 (quoting *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006)).

"The Unified Court System, or 'UCS,' is the name for the entire New York State judiciary." *T.W. v. New York State Bd. of L. Examiners*, 996 F.3d 87, 95 (2d Cir. 2021). "[A] lawsuit against the Unified Court System is 'in essence one for the recovery of money from the state, [so that] the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit.' " *Gollomp*, 568 F.3d at 368 (quotation omitted). As Magistrate Judge Stewart explained, the Second Circuit has recently reaffirmed the application of Eleventh Amendment sovereign immunity to New York State judges. *See* Dkt. No. 12 at 18, n.3 (citing *Bythewood v. New York*, No. 22-CV-2542, 2023 WL 6152796, \*1 (2d Cir. Sept. 21, 2023) ("We agree with the district court that Bythewood's claims against the State of New York and the Judicial Defendants are barred by Eleventh Amendment sovereign immunity")).

**\*9** As the Court has already concluded that the judicial Defendants were acting within their roles as judges, the Court concludes that they are entitled to sovereign immunity. To the extent Plaintiffs argue that they seek to sue the judicial Defendants in only their individual capacities, such claims "are [ ] barred by absolute judicial immunity." *Bythewood*, 2023 WL 6152796, at \*2.

### *2. Court Attorney*

Magistrate Judge Stewart concluded that Defendant Karla Conway, Judge Pelagalli's court attorney, is also entitled to absolute judicial immunity. *See* Dkt. No. 12 at 19. In Plaintiffs' objections, they state that Conway was "acting beyond her judicial capacity and outside her jurisdiction by orchestrating these unauthorized hearings and issuing void orders when she had no legal authority to do so." Dkt. No. 13 at 14.

Dees v. Zurlo, Not Reported in Fed. Supp. (2024)
Case 1:25-cv-01150-AJB-TWD    Document 4    Filed 10/20/25    Page 161 of 187
2024 WL 2291701

Law clerks and court attorneys are entitled to absolute immunity. *See Jackson v. Pfau*, 523 Fed. Appx. 736, 737-38 (2d Cir. 2013) (affirming dismissal of Section 1983 claims against judicial law clerk, the N.Y.S. Chief Administrative Judge, court attorneys, and the Chief Clerks of several state courts, finding that the "defendants were entitled to judicial immunity[ ] because [the] allegations against each of them concerned actions that were judicial in nature or closely related to the judicial process"); *see also Gollomp,* 568 F.3d at 365; *Fishman v. Off. of Ct. Admin. New York State Cts.*, No. 18-CV-282, 2020 WL 1082560, *6 (S.D.N.Y. Mar. 5, 2020), *aff'd*, No. 20-1300, 2021 WL 4434698 (2d Cir. Sept. 28, 2021).

Plaintiffs' allegations against Conway relate solely to "orders and statements in court." Dkt. No. 1 at ¶ 122. Although Plaintiffs argue otherwise, their allegations relate entirely to work performed as an extension of Judge Pelagalli such that Conway is entitled to absolute immunity.

### E. Quasi-Judicial Immunity

Magistrate Judge Stewart next addressed the claims against court-appointed psychologists—Defendants O'Connor and Bashkoff, and court-appointed attorneys for Plaintiff Smith's children—Defendants Carbone, Tastensen, and Corey-Mongue. *See* Dkt. No. 12 at 19-20. Magistrate Judge Stewart concluded that the psychologists and attorneys were entitled to quasi-judicial immunity. *See id.*

Plaintiffs argue that the psychologists should not be entitled to immunity because of "their active participation in a conspiracy." Dkt. No. 13 at 22. Similarly, Plaintiffs contend that the attorneys should not be afforded immunity because of "their repeated violations of constitutional rights and legal statutes." *Id.* at 23. Plaintiffs state that the "attorneys actively campaign and participate in fundraisers for judges who oversee their appointments and approve their billings." *Id.* [2]

[2]  Magistrate Judge Stewart also addressed court-appointed attorney Defendant Tobin. *See* Dkt. No. 12 at 19-20. Plaintiffs clarify that Defendant Tobin was not an attorney for a child. *See* Dkt. No. 13 at 23. Rather, Tobin represented Defendant Smith. *See* Dkt. No. 1 at ¶¶ 58-59, 162. Insofar as Tobin was retained counsel, "defense attorneys —even if court-appointed or public defenders—do

not act under color of State law when performing traditional functions of counsel." *Krug v. McNally,* 488 F. Supp. 2d 198, 200 (N.D.N.Y. 2007), *aff'd*, 368 Fed. Appx. 269 (2d Cir. 2010). Therefore, Plaintiffs' claims against Tobin must be dismissed for failure to plead state action.

**\*10**  "A private actor may be afforded the absolute immunity ordinarily accorded judges acting within the scope of their jurisdictions if his role is 'functionally comparable' to that of a judge, ... or if the private actor's acts are integrally related to an ongoing judicial proceeding." *Mitchell v. Fishbein,* 377 F.3d 157, 172 (2d Cir. 2004) (quoting *Butz v. Economou,* 438 U.S. 478, 513, (1978); citing *Scotto v. Almenas,* 143 F.3d 105, 111012 (2d Cir. 1998); *Dorman v. Higgins,* 821 F.2d 133, 136-38 (2d Cir. 1987)) (additional quotation marks omitted).

The Second Circuit has affirmed application of quasi-judicial immunity to a "law guardian and her director." *Yapi v. Kondratyeva,* 340 Fed. Appx. 683, 685 (2d Cir. 2009). This is because law guardians or attorneys for children serve "serve[ ] as an 'arm of the court,' or act[ ] as an 'integral part[ ] of the judicial process.' " *Holland v. Morgenstern,* 12-CV-4870, 2013 WL 2237550, *4 (E.D.N.Y. May 20, 2013) (quoting *Scotto v. Almenas,* 143 F.3d 105, 111 (2d Cir. 1998)). The same can be said for court-appointed psychologists. *See Vargas v. Mott,* No. 21-CV-6165, 2022 WL 3236744, *3 (W.D.N.Y. July 13, 2022) ("[P]sychiatrists who perform court-ordered examinations enjoy absolute quasi-judicial immunity"). Because these Defendants were appointed by the court and performing court-related functions, they are afforded quasi-judicial immunity. *See Cherner v. Westchester Jewish Cmty. Servs., Inc.,* No. 20-CV-8331, 2022 WL 596074, *4 (S.D.N.Y. Feb. 28, 2022), *aff'd*, No. 22-642, 2022 WL 17817882 (2d Cir. Dec. 20, 2022); *Wilson v. Wilson-Polson,* No. 09-CV-9810, 2010 WL 3733935, *7 (S.D.N.Y. Sept. 23, 2010), *aff'd*, 446 Fed. Appx. 330 (2d Cir. 2011); *Thomas v. Martin-Gibbons,* No. 19-CV-7695, 2020 WL 5026884, *7 (S.D.N.Y. Aug. 25, 2020).

### F. Government Attorney Immunity

Magistrate Judge Stewart addressed the immunity typically afforded to government attorneys when acting as an advocate of a state. *See* Dkt. No. 12 at 21. He concluded that such immunity should apply to Defendants Samuel Maxwell, Emily Williams, Michelle Granger, and Michael Hartnett as district and county attorneys. *See id.* Plaintiffs contend that Defendants William and Maxwell are not entitled to immunity because they engaged in malicious prosecution.

Dees v. Zurlo, Not Reported in Fed. Supp. (2024)
2024 WL 2291701

Case 1:25-cv-01150-AJB-TWD    Document 4    Filed 10/20/25    Page 162 of 187

*See* Dkt. No. 13 at 23-24. As to Hartnett and Granger, Plaintiffs argue that immunity should not be afforded because their "alleged conduct represents a severe misuse of their positions and constitutes active participation in a broader conspiracy to violate the plaintiffs' rights." *Id.* at 25. Plaintiffs assert that the attorneys requested illegal protective orders, withheld evidence, revoked Plaintiff Smith's drivers license, and refused to investigate Plaintiffs' allegations of fraud. *See id.* at 23-25.

"Absolute immunity protects government officials from suit arising out of acts associated with their 'function as an advocate.' " *Jeanty v. Sciortino*, 669 F. Supp. 3d 96, 108 (N.D.N.Y. 2023) (quoting *Buari v. City of New York*, 530 F. Supp. 3d 356, 378 (S.D.N.Y. 2021)). "Absolute immunity extends to 'government attorneys defending civil suits' and 'government attorneys who initiate civil suits.' " *Id.* (quoting *Spear v. Town of West Hartford*, 954 F.2d 63, 66 (2d Cir. 1992)). "In determining whether an official is entitled to absolute immunity, courts employ a 'functional' approach, 'looking at "the nature of the function performed, not the identity of the actor who performed it." ' " *Id.* (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 394 (2d Cir. 2006)) (additional quotation omitted). "The principle applies to 'functions of a government attorney "that can fairly be characterized as closely associated with the conduct of litigation or potential litigation" in civil suits—including the defense of such actions.' " *Id.* (quotations omitted). " '[O]nce a court determines that challenged conduct involves a function covered by absolute immunity, the actor is shielded from liability for damages regardless of the wrongfulness of his motive or the degree of injury caused.' " *Id.* (quoting *Bernard v. County of Suffolk*, 356 F.3d 495, 503 (2d Cir. 2004)).

**\*11** "Post-arraignment, pre-trial 'acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity.' " *Werkheiser v. Cnty. of Broome*, 655 F. Supp. 3d 88, 101 (N.D.N.Y. 2023) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)). "In contrast, pre-arraignment actions—such as interviewing a witness to obtain probable cause for an arrest—are not entitled to the protections of absolute immunity." *Id.* (citing *Hill v. City of New York*, 45 F.3d 653, 658, 661 (2d Cir. 1995)). "Additionally, 'absolute immunity may not apply when a prosecutor is not acting as "an officer of the court," but is instead engaged in other tasks, say, investigative or

administrative tasks.' " *Id.* (quoting *Van de Kamp v. Goldstein*, 555 U.S. 335, 342 (2009)) (additional quotation omitted). "Investigative tasks beyond the scope of absolute immunity are those 'normally performed by a detective or police officer.' " *Id.* at 102 (quoting *Buckley*, 509 U.S. at 273).

Plaintiffs' allegations against government attorneys stem entirely from these Defendants' functions as counsel for the state. *See* Dkt. No. 1 at ¶¶ 67-71. These Defendants are entitled to absolute immunity for such conduct, even where Plaintiffs contend that the conduct was improperly motivated or "unbecoming." Dkt. No. 13 at 23; *see also Bernard*, 356 F.3d at 504 ("Where ... a prosecutor's charging decisions are not accompanied by any such unauthorized demands, the fact that improper motives may influence his authorized discretion cannot deprive him of absolute immunity"). Moreover, Plaintiffs' allegations of a conspiracy do not save these claims. *See Pinaud v. Cnty. of Suffolk*, 52 F.3d 1139, 1148 (2d Cir. 1995) (quotations omitted) ("As this Court and others circuits have repeatedly held, since absolute immunity covers 'virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate,' ... when the underlying activity at issue is covered by absolute immunity, the 'plaintiff derives no benefit from alleging a conspiracy' "). Thus, the claims against government attorneys are dismissed.

### G. Witness Immunity

Plaintiffs' complaint alleges constitutional violations based on various Defendants providing testimony. Magistrate Judge Stewart recommended dismissing any such claims based on absolute witness immunity. *See* Dkt. No. 12 at 22-23. Plaintiffs object, "grounding their objection in the assertion that the corruption, conspiracy, and collusion among the defendants have led to fraudulent activities within court proceedings." Dkt. No. 13 at 26.

"It is well established that testifying witnesses, including police officers, are entitled to absolute immunity from liability under [Section] 1983 based on their testimony." *Rolan v. Henneman*, 389 F. Supp. 2d 517, 519 (S.D.N.Y. 2005) (citing *Briscoe v. LaHue*, 460 U.S. 325 (1983)) (collecting cases). "As explained in *Briscoe*, absolute immunity for witness testimony in [Section] 1983 cases is rooted in the belief that '[a] witness's apprehension of subsequent damages liability might induce two forms of self-censorship." *Id.* "First, witnesses might be reluctant to come forward to testify. And once a witness is on the stand, his testimony might be distorted by the fear of subsequent liability.' " *Id.* (quoting

Case 1:25-cv-01150-AJB-TWD    Document 4    Filed 10/20/25    Page 163 of 187

Dees v. Zurio, Not Reported in Fed. Supp. (2024)

2024 WL 2291701

*Briscoe*, 460 U.S. at 333). "Such absolute immunity applies to witnesses, 'whether governmental, expert, or lay witnesses' in Family Court proceedings." *Santos v. Syracuse Police Dep't*, No. 5:22-CV-1102, 2022 WL 16949542, *7 (N.D.N.Y. Nov. 15, 2022) (quoting *Storck v. Suffolk Cnty. Dep't of Soc. Servs.*, 62 F. Supp. 2d 927, 945 (E.D.N.Y. 1999)).

"In this Circuit, however, absolute witness immunity does not extend to allegations of conspiracy." *Cipolla v. Cnty. of Rensselaer*, 129 F. Supp. 2d 436, 451 (N.D.N.Y.), *aff'd*, 20 Fed. Appx. 84 (2d Cir. 2001) (citing *Dory v. Ryan*, 999 F.2d 679 (2d Cir. 1994); *San Filippo v. U.S. Trust Co.*, 737 F.2d 246, 254 (2d Cir. 1984)); *see also Coggins v. Buonora*, 362 Fed. Appx. 224, 225 (2d Cir. 2010). The Supreme Court, in *Rehberg v. Paulk*, 566 U.S. 356 (2012), "held that grand jury witnesses, like trial witnesses, are entitled to absolute immunity if a plaintiff's claim is based on their allegedly perjurious testimony." *Gonzalez v. Baart*, No. 5:21-CV-01379, 2023 WL 8818302, *3 (N.D.N.Y. Dec. 20, 2023). The Supreme Court stated that "this rule may not be circumvented by claiming that a grand jury witness conspired to present false testimony or by using evidence of the witness' testimony to support any other § 1983 claim concerning the initiation or maintenance of a prosecution." *Rehberg*, 566 U.S. at 369. "Courts have distinguished presenting false testimony and soliciting false testimony from others and creating fabricated evidence." *Gonzalez*, 2023 WL 8818302, at *4 (collecting cases).

 **\*12** Plaintiff contends that psychological reports that were used as evidence during hearings were false or unfinished, and that various Defendants either refrained from testifying or testified falsely. *See* Dkt. No. 1 at ¶¶ 93-94, 96, 98, 100-01, 127, 162, 186, 190. Insofar as Plaintiffs allege that witnesses testified falsely, such testimony is protected by absolute immunity. To the extent Plaintiffs allege that some of the Defendants conspired to present false testimony, the claims might not automatically be subject to dismissal on witness immunity grounds. *See Cipolla*, 129 F. Supp. 2d at 451; *Gonzalez*, 2023 WL 8818302, at *4. However, Plaintiffs have not provided enough information concerning non-testimonial actions used to create fabricated testimony, beyond their assertions of a conspiracy-at-large. Even assuming not all witness Defendants are entitled to absolute immunity, the claims must be dismissed for failure to sufficiently plead state action or a conspiracy.

### H. State Action

Plaintiffs bring their suit against numerous private parties, including Defendant Smith, Plaintiff Smith's stepfather and mother, a nurse, and private lawyers and law firms. *See* Dkt. No. 1 at ¶¶ 82-89, 99-111. Magistrate Judge Stewart recommended that those claims be dismissed because the private Defendants are not state actors: a prerequisite to bringing Section 1983 and 1985 claims. *See* Dkt. No. 12 at 24-25. Plaintiffs object to that conclusion because the private individuals "orchestrated their actions in unison with state actors." Dkt. No. 13 at 27.

" 'Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action.' " *Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012) (quoting *Flagg v. Yonkers Sav. & Loan Ass'n*, 396 F.3d 178, 186 (2d Cir. 2005)). " 'A plaintiff pressing a claim of violation of his constitutional rights under § 1983 is thus required to show state action.' " *Id.* (quoting *Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003)). " '[S]tate action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," and that "the party charged with the deprivation must be a person who may fairly be said to be a state actor." ' " *Id.* (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)) (additional quotation omitted). " 'Conduct that is formally "private" may become so entwined with governmental policies or so impregnated with a governmental character that it can be regarded as governmental action.' " *Id.* (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 847 (1982)).

" 'To state a claim against a private entity on a section 1983 conspiracy theory, the complaint must allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act.' " *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) (quoting *Spear v. Town of West Hartford*, 954 F.2d 63, 68 (2d Cir. 1992)). "Put differently, a private actor acts under color of state law when the private actor 'is a willful participant in joint activity with the State or its agents.' " *Id.* (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)). "A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity." *Id.*

2024 WL 2291701

Plaintiffs state in their objections that the attorneys for the children conspired with state actors because their hours are approved by the state court judicial Defendants and their positions are dependent on state funding. *See* Dkt. No. 13 at 28-29. Plaintiffs contend that they "personally observed 'meetings of the mind' occurring during off [the] record court proceedings and informal gatherings, like lunches, where conspiratorial strategies were devised and later executed in court." *Id.* at 29.

**\*13** These contentions and the allegations in Plaintiffs' complaint are insufficient to hold the private Defendants out to be state actors. It is well-settled that " '[t]he fact that a private entity uses the state courts does not transform the private party into a state actor.' " *Rice v. City of New York*, 275 F. Supp. 3d 395, 403-04 (E.D.N.Y. 2017) (quoting *Graham v. Select Portfolio Servicing, Inc.*, 156 F. Supp. 3d 491, 516 (S.D.N.Y. 2016)); *see also Malave-Sykes v. Endicott Police Dep't*, No. 3:23-CV-1215, 2023 WL 6847684, \*5 (N.D.N.Y. Oct. 17, 2023) (quotation omitted) ("[P]roviding false information to the police does not make a private individual a state actor and liable under § 1983' "); *Parent v. New York*, 786 F. Supp. 2d 516, 538 (N.D.N.Y. 2011), *aff'd*, 485 Fed. Appx. 500 (2d Cir. 2012) ("[A]lthough appointed by the state, an attorney for the children or law guardian is not a state actor because he or she must exercise independent professional judgment on behalf of the clients they represent"); *Milan v. Wertheimer*, 808 F.3d 961, 962-64 (2d Cir. 2015) (affirming dismissal of claims against children's grandmother for initiating protective services investigations because grandmother was not a state actor).

Because Plaintiffs have stated no more than conclusory allegations that the private Defendants conspired with state actors, the Court dismisses the complaint against those private Defendants for failure to state a claim under Section 1983.

### I. Affirmative Duty

In Magistrate Judge Stewart's Report-Recommendation and Order, he next addressed Plaintiffs' claims against Saratoga County police officers, county departments of social services, and school district administrators. *See* Dkt. No. 12 at 26-30. Magistrate Judge Stewart summarized the allegations against those various entities and individuals as resting on the failure "to better intervene and prevent misconduct of private parties against [Plaintiffs] or the Smith children." *Id.* at 28. He explained, however, that the Supreme Court has rejected claims of an affirmative duty to act under Section 1983. *See*

*id.* at 28-29 (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 192 (1989); *Town of Castle Rock, Colorado v. Gonzales*, 545 U.S. 748, 768-69 (2005)).

Plaintiffs object and "express confusion and disagreement with Magistrate [Judge] Stewart's ruling, which concluded that the officers had no affirmative duty, a decision that contradicts the policies stated by the plaintiffs in their original complaint." Dkt. No. 13 at 30. Plaintiffs "characterize" the police officers' conduct "as a sustained campaign of retaliation and a persistent failure to provide protection, spanning four years." *Id.* at 32. Plaintiffs also "highlight Magistrate [Judge] Stewart's failure to assert qualified immunity for the officers as further evidence that their claims warrant progression in the legal process. This stance underscores their belief in the seriousness of their allegations and the need for judicial scrutiny of the officers' actions." *Id.* at 31.

First, there is no requirement that a court address every single potential ground for dismissal where it is clear that a claim should be dismissed. *See, e.g.*, *Curtis v. Greenberg*, No. 22-252-CV, 2023 WL 6324324, \*2, n.3 (2d Cir. Sept. 29, 2023) ("Because we affirm the dismissal of the RICO claims based on the failure to adequately plead a RICO enterprise, we need not address the district court's alternative grounds for dismissal"); *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 441 (N.D.N.Y. 2009) ("[B]ecause the Court has found adequate grounds on which to adopt Magistrate Judge Lowe's Report-Recommendation, ... the Court does not address th[e] alternative recommendation ...."). Therefore, the Court takes no issue with Magistrate Judge Stewart's decision not to address qualified immunity.

**\*14** Second, it is well settled that police officers do not have an affirmative duty to investigate alleged crimes to the extent and in the way that a complainant or arrestee requests. *See Buari*, 530 F. Supp. 3d at 389 (quotation omitted) (" '[A] police officer's failure to pursue a particular investigative path is not a constitutional violation' "); *Brown v. City of New York*, No. 12-CV-3146, 2014 WL 5089748, \*5 (S.D.N.Y. Sept. 30, 2014) ("Police officers do not have an affirmative duty to investigate allegations made by a complaining witness prior to effectuating an arrest"); *Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) ("Although a better procedure may have been for the officers to investigate plaintiff's version of events more completely, the arresting officer does not have to prove plaintiff's version wrong before arresting him.... Nor does it

Case 1:25-cv-01150-AJB-TWD Document 4 Filed 10/20/25 Page 165 of 187
Dees v. Zurlo, Not Reported in Fed. Supp. (2024)
2024 WL 2291701

matter that an investigation might have cast doubt upon the basis for the arrest").

Third, insofar as Plaintiffs allege that the officers violated their First Amendment rights, there are insufficient allegations in Plaintiffs' complaint to state such a claim. *See* Dkt. No. 13 at 31; *see also* Dkt. No 1. Plaintiffs summarily allege that Defendant police officers brought false charges and protection orders against Plaintiffs in retaliation for Plaintiffs' "legal challenges against governmental grievances." Dkt. No. 1 at ¶ 250. Plaintiffs' contention that "the officers" retaliated against them by "levying fraudulent harassment charges," Dkt. No. 13 at 31, cannot stand because criminal charges are brought by a prosecutor, not police officers. *See Mortimer v. Wilson*, No. 15-CV-7186, 2020 WL 3791892, *8-9 (S.D.N.Y. July 7, 2020).

As to social services and the school district, Plaintiffs contend that "[i]ndividuals in these positions are expected to respond to, and report, any instances of wrongdoing, unethical behaviors, or legal violations." Dkt. No. 13 at 32. Specifically, Plaintiffs rely on a school or administrator's mandatory reporting requirements for suspected child abuse. *See id.* at 33.

As Magistrate Judge Stewart aptly explained, "[a]lthough New York State law requires that mandated individuals report instances of suspected child abuse or maltreatment, such reporting is not constitutionally required." Dkt. No. 12 at 30. In other words, violation of a state law does not create a cognizable Section 1983 claim. *See Jackson v. Pfau*, No. 9:10-CV-1484, 2011 WL 13127988, *15 (N.D.N.Y. May 12, 2011), *aff'd*, 523 Fed. Appx. 736 (2d Cir. 2013) ("[A] Section 1983 claim brought in federal court is not the appropriate forum to assert violations of state law or regulations"). Thus, the Court agrees with Magistrate Judge Stewart that Plaintiffs' claims concerning a school's mandatory reporting obligations does not create a cognizable Section 1983 claim. As such, those claims are dismissed.

## J. *Monell* and Supervisory Liability

Plaintiffs seek to bring municipal and supervisory liability, or *Monell*, claims in count nine of their complaint. *See* Dkt. No. 1 at ¶¶ 267-73. Magistrate Judge Stewart addressed Plaintiffs' *Monell* claims. *See* Dkt. No. 12 at 30-31. He noted that Plaintiffs are required to plead that each Defendant violated the Constitution through their own acts and that Plaintiffs failed to do so. *See id.* at 31. Magistrate Judge Stewart also explained that because Plaintiffs failed to state any underlying

constitutional violations, the *Monell* claims were required to be dismissed. *See id.*

Plaintiffs objected and listed the ways in which they believe their complaint established *Monell* liability. *See* Dkt. No. 13 at 33-34. In doing so, Plaintiffs contend that their constitutional rights were violated through every possible route for supervisory liability: "a specific policy," "actions undertaken by policymaking officials," "pervasive practices by subordinate officials," and "a notable failure by these policymakers to adequately train or supervise municipal employees." *Id.* at 34.

**\*15** " 'It is well settled in this Circuit that personal involvement of defendants in the alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Forrest v. Cnty. of Greene*, 676 F. Supp. 3d 69, 78 (N.D.N.Y. 2023) (quoting *Johnson v. Miller*, No. 9:20-CV-622, 2020 WL 4346896, *9 (N.D.N.Y. Jul. 29, 2020)). "As to supervisory liability, there is no 'special test,' and 'a plaintiff must plead and prove "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." ' " *Id.* (quoting *Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020)) (additional quotation omitted). " 'To establish a violation of § 1983 by a supervisor, as with everyone else, then, the plaintiff must establish a deliberate, intentional act on the part of the defendant to violate the plaintiff's legal rights.' ... It is not sufficient to plead that an official was 'conceivably personally involved.' " *Id.* (quoting *Tangreti*, 983 F.3d at 615-16, 618). " '*Tangreti* makes clear that, after *Iqbal*, [a p]laintiff can no longer succeed on a § 1983 claim against [a d]efendant by showing that a supervisor behaved knowingly or with deliberate indifference that a constitutional violation would occur at the hands of his subordinates, unless that is the same state of mind required for the constitutional deprivation.' " *Lalonde v. City of Ogdensburg*, 662 F. Supp. 3d 289, 322 (N.D.N.Y. 2023) (quotation, quotation marks, and emphasis omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

" 'Thus, an official's conduct in making and executing policy, or failing to make or execute policy, may satisfy *Iqbal*'s requirement of personal involvement if such conduct meets the elements required to establish an underlying constitutional violation and is undertaken with the required state of mind.' " *Lalonde*, 662 F. Supp. 3d at 322 (quotation omitted). Importantly, "if the plaintiff cannot show that his or her constitutional rights were violated by any individual defendants, the *Monell* claim will also fail." *Oliver v. City*

Dees v. Zurio, Not Reported in Fed. Supp. (2024)

Case 1:25-cv-01150-AJB-TWD    Document 4    Filed 10/20/25    Page 166 of 187

2024 WL 2291701

*of New York*, 540 F. Supp. 3d 434, 436 (S.D.N.Y. 2021); *see also Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely correct").

Plaintiff's contentions closely track the pre-*Tangreti* standards for supervisory liability. *See Hendrix v. Annucci, et al.*, No. 9:20-CV-0743, 2021 WL 4405977, *6 (N.D.N.Y. Sept. 27, 2021)* (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)) ("[T]he Second Circuit's general rule was that a supervisory official's personal involvement could have been proven by showing any five factors: '(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring' "). Plaintiffs' complaint does not set forth personal involvement in a constitutional violation against every single Defendant.

Regardless, Plaintiffs' *Monell* claims cannot proceed because their underlying constitutional claims fail for the reasons set forth in this decision—abstention, immunity, lack of state action, and failure to state a claim. *See Segal*, 459 F.3d at 219. Thus, without underlying constitutional violations, Plaintiffs' *Monell* claims must be dismissed.

### K. ADA and Rehabilitation Act Claims

Plaintiffs set forth an ADA and Rehabilitation Act claim. *See* Dkt. No. 1 at ¶¶ 299-301. Plaintiffs refer to themselves in the plural form when discussing these claims, but it appears that Plaintiff Smith is the individual with alleged disabilities of "ADHD, Auditory Processing Delay, and a Written Learning Disability." *Id.* at ¶ 300; *see also id.* at ¶¶ 178, 185. Plaintiffs allege that Defendant Judge Wait denied Plaintiff Smith "an ADA-complaint note-taker for court hearings" and that Defendant Wait made derogatory and demeaning comments about Plaintiff Smith's disabilities. *See id.* at ¶¶ 178, 185, 300.

**\*16** Magistrate Judge Stewart recommended dismissing these claims as "barred by the *Rooker-Feldman* doctrine, judicial immunity, and by § 1983's requirement that

injunctive relief against a judge is barred unless a declaratory decree was violated, or declaratory relief was unavailable." Dkt. No. 12 at 32. He also noted that neither the ADA nor Rehabilitation act provide for individual liability. *See id.*

Plaintiffs summarily object, stating that the ADA claim does not fall under the *Rooker-Feldman* doctrine and does not qualify for immunity. *See* Dkt. No. 13 at 33. Plaintiffs contend that "the ADA violations were not only discriminatory but also strategic, serving as a means for the defendants to shield themselves from exposure related to their corruption and malfeasance." *Id.*

The Second Circuit has explicitly applied the *Rooker-Feldman* doctrine to ADA claims. *See DiLauria v. Town of Harrison*, 64 Fed. Appx. 267, 270 (2d Cir. 2003). Similarly, "[c]ourts in this Circuit and others have found judicial immunity to extend to claims under the ADA." *Brooks v. Onondaga Cnty. Dep't of Child. & Fam. Servs.*, No. 5:17-CV-1186, 2018 WL 2108282, *4 (N.D.N.Y. Apr. 9, 2018)* (collecting cases). Thus, the Court finds no clear error in Magistrate Judge Stewart's applications of these rules of law to Plaintiffs' ADA and Rehabilitation Act claims.[3] Importantly, as Magistrate Judge Stewart explained, and to which Plaintiffs do not respond, "neither statute provides for individual liability." Dkt. No. 12 at 32 (citing *Goe v. Zucker*, 43 F.4th 19, 35 (2d Cir. 2022)); *see also Lalonde v. City of Ogdensburg*, 662 F. Supp. 3d 289, 327 (N.D.N.Y. 2023) (quoting *Fera v. City of Albany*, 568 F. Supp. 2d 248, 259 (N.D.N.Y. 2008)) ("[T]o the extent that Plaintiffs are suing the individual Defendants in their individual capacities, 'neither Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suit ....' "). Plaintiffs' ADA and Rehabilitation Act claims are therefore dismissed.

[3]    Insofar as Magistrate Judge Stewart addressed the injunctive relief issue, the Court reiterates Plaintiffs' contention that they do not seek injunctive or declaratory relief, and request only monetary damages.

### L. State Claims

Because Magistrate Judge Stewart recommended dismissing all of Plaintiffs' federal claims, he also recommended dismissing Plaintiffs' state-law claims. *See* Dkt. No. 12 at 32-33. Plaintiffs object, arguing that their federal claims are meritorious and should not be dismissed which would save their state-law claims. *See* Dkt. No. 13 at 35.

Dees v. Zurlo, Not Reported in Fed. Supp. (2024)

Case 1:25-cv-01150-AJB-TWD    Document 4    Filed 10/20/25    Page 167 of 187

2024 WL 2291701

It is well settled that the Court is not required to retain jurisdiction over state-law claims if the Court dismisses all federal claims. *See Hyman v. Cornell Univ.*, 834 F. Supp. 2d 77, 83 (N.D.N.Y. 2011), *aff'd*, 485 Fed. Appx. 465 (2d Cir. 2012). Indeed, "[a] district court usually should decline the exercise of supplemental jurisdiction when all federal claims have been dismissed at the pleading stage." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006). " 'Dismissal of the pendent state law claims is not, however, "absolutely mandatory" even where the federal claims have been dismissed before trial....' " *Hyman*, 834 F. Supp. 2d at 83 (quoting *Marcus v. AT & T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998)).

All of Plaintiffs' federal claims are subject to dismissal for the reasons set forth in this Memorandum-Decision and Order. As such, the Court declines to exercise jurisdiction over the state-law claims and they too will be dismissed.

## M. Leave to Amend

**\*17** "[P]laintiffs object to the dismissal of any claims without first being given the opportunity to amend them. As pro se litigants, they request that the court allows them the chance to revise their claims if necessary, emphasizing the importance of this consideration in the context of self-representation." Dkt. No. 13 at 37.

Magistrate Judge Stewart recommended dismissal of Plaintiffs' complaint against the following Defendants with prejudice and without leave to amend: Judge Paul Pelagalli; Saratoga Supreme Court Judges John Ellis and Dianne Freestone; City Court Judge Jeffrey Wait; Saratoga County Court Judge James Murphy; Administrative Judge for the Fourth Judicial District Judge Felix Catena; Appellate Division Justices Elizabeth Garry and Christine Clark; Court Attorney Karla Conway; Court-appointed experts Jaqueline Bashkoff and Dr. Mary O'Connor; the private attorneys appointed by the Court to represent the Smith children - Jessica Vinson of Vella Carbone, LLP; Elena Tastensen; and Heather Corey-Mongue; Samuel Maxwell, Emily Williams, Michelle Granger, Michael Hartnett; Jillian Knox; Veronica Smith; and Denise Rista-Tobin. *See* Dkt. No. 12 at 33-34. Magistrate Judge Stewart recommended as such because the claims against those individuals are barred by judicial, quasi-judicial, government attorney, and/or witness immunities. *See id.* He recommended that Plaintiffs be given leave to amend all other claims. *See id.* at 34-35.

" 'Sua sponte dismissal of *pro se* [ ] petitions which contain non-frivolous claims without requiring service upon respondents or granting leave to amend is disfavored by' " the Second Circuit. *Collymore v. Krystal Myers, RN*, 74 F.4th 22, 27 (2d Cir. 2023) (quoting *Moorish Sci. Temple of Am., Inc. v. Smith*, 693 F.2d 987, 990 (2d Cir. 1982)). "In the § 1983 context, such dismissals are 'inappropriate' – regardless of the merits – if the complaint alleges that '(1) the defendant was a state actor ... when he committed the violation and (2) the defendant deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States.' " *Id.* (quoting *Milan v. Wertheimer*, 808 F.3d 961, 964 (2d Cir. 2015)). However, courts often dismiss claims barred by immunity without leave to amend because better pleading cannot dure the deficiency, *i.e.*, amending a complaint does not destroy immunity. *See Clay v. Bishop*, No. 1:22-CV-0983, 2023 WL 3352903, at \*7 (N.D.N.Y. Feb. 7, 2023) (collecting cases); *Woods v. Vermont*, No. 2:22-CV-00008, 2023 WL 2624352, at \*2 (D. Vt. Mar. 24, 2023); *Burdick v. Town of Schroeppel*, No. 5:16-CV-01393, 2017 WL 5509355, at \*9 (N.D.N.Y. Jan. 31, 2017), *aff'd*, 717 Fed. Appx. 92, 93 (2d Cir. 2018).

Because the deficiency in Plaintiffs' claims against judges, court staff, witnesses, government attorneys, and court-appointed individuals are substantive and cannot be cured by better pleading, the Court dismisses those claims with prejudice and without leave to amend. However, the Court will permit Plaintiffs to otherwise amend their complaint. Plaintiffs are informed that any amended complaint will replace the existing complaint and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Jeanty*, 669 F. Supp. 3d at 118.[4]

---

4    The Court directs Plaintiffs to the instructions outlined in Magistrate Judge Stewart's Report-Recommendation and Order. *See* Dkt. No. 12 at 35-36.

## N. Electronic Filing

**\*18** Plaintiffs ask that Court "reconsider and override" Magistrate Judge Stewart's decision to deny their request to file electronically. Dkt. No. 13 at 38; *see also* Dkt. No. 12 at 36. Because Plaintiffs' complaint is being dismissed, their request to file electronically is moot. The Court will not reconsider it at this time.

2024 WL 2291701

## IV. CONCLUSION

After carefully the Plaintiffs' submissions, Magistrate Judge Stewart's Report-Recommendation and Order, and the applicable law, the Court hereby

**ORDERS** that Magistrate Judge Stewart's Report-Recommendation and Order (Dkt. No. 12) is **ADOPTED in its entirety** for the reasons set forth herein; and the Court further

**ORDERS** that Plaintiffs' complaint (Dkt. No. 1) is **DISMISSED**; and the Court further

**ORDERS** that the claims against Judge Paul Pelagalli; Saratoga Supreme Court Judges John Ellis and Dianne Freestone; City Court Judge Jeffrey Wait; Saratoga County Court Judge James Murphy; Administrative Judge for the Fourth Judicial District Judge Felix Catena; Appellate Division Justices Elizabeth Garry and Christine Clark; Court Attorney Karla Conway; Court-appointed experts Jaqueline Bashkoff and Dr. Mary O'Connor; the private attorneys appointed by the Court to represent the Smith children - Jessica Vinson of Vella Carbone, LLP; Elena Tastensen; and Heather Corey-Mongue; government attorneys Samuel Maxwell, Emily Williams, Michelle Granger, Michael Hartnett; and testifying witnesses Jillian Knox and Veronica Smith be **DISMISSED WITH PREJUDICE AND WITHOUT LEAVE TO AMEND**; and the Court further

**ORDERS** that all other claims be **DISMISSED WITHOUT PREJUDICE** with leave to file an amended complaint within thirty (30) days of the date of this Order; and the Court further

**ORDERS** that, if Plaintiffs fail to file an amended complaint within **thirty (30) days** of this Order, the Clerk of the Court shall enter judgment in Defendants' favor and close this case, without further order of this Court; and the Court further

**ORDERS** that Plaintiffs request to reconsider Magistrate Judge Stewart's denial of leave for electronic filing is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court serve a copy of this Order upon Plaintiffs in accordance with Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2024 WL 2291701

---

**End of Document**    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:25-cv-01150-AJB-TWD   Document 4   Filed 10/20/25   Page 169 of 187

Holyoke v. S.S.I., Not Reported in Fed. Supp. (2024)

2024 WL 20726

2024 WL 20726
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Gary Arthur HOLYOKE, Plaintiff,

v.

S.S.I., et al., Defendants.

6:23-CV-1557 (MAD/ATB)
|
Signed January 2, 2024

**Attorneys and Law Firms**

GARY ARTHUR HOLYOKE, Plaintiff, pro se.

### ORDER and REPORT-RECOMMENDATION

ANDREW T. BAXTER, United States Magistrate Judge

**\*1** The Clerk has sent to the court for review a complaint, together with an application to proceed in forma pauperis ("IFP"), filed by pro se plaintiff, Gary Arthur Holyoke. (Dkt. Nos. 1, 2).

### I. IFP Application

Plaintiff declares in his IFP application that he is unable to pay the filing fee. (Dkt. No. 2). After reviewing his application and supporting documents, this court finds that plaintiff is financially eligible for IFP status.

However, in addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915 (e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989), abrogated on other grounds by Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) and 28 U.S.C. § 1915. Dismissal of frivolous actions is appropriate to prevent abuses

of court process as well as to discourage the waste of judicial resources. Neitzke, 490 U.S. at 327; Harkins v. Eldredge, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward pro se litigants and must use extreme caution in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. Fitzgerald v. First E. Seventh St. Tenants Corp., 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint sua sponte even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Bell Atl. Corp., 550 U.S. at 555).

In addition, Fed. R. Civ. P. 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 does not require detailed factual allegations, it does "demand[ ] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Houston v. Collerman, No. 9:16-CV-1009 (BKS/ATB), 2016 WL 6267968, at *2 (N.D.N.Y. Oct. 26, 2016) (quoting Ashcroft, 556 U.S. at 678). A pleading that contains allegations that " 'are so vague as to fail to give the defendants adequate notice of the claims against them' is subject to dismissal." Id. (citing Sheehy v. Brown, 335 F. App'x 102, 104 (2d Cir. 2009)).

### II. Relevant Procedural History

**\*2** Plaintiff is a familiar litigant to this court. On April 4, 2022, he filed a complaint with jury demand against defendants Mohawk Valley Health System ("M.V.H.S.") and Mohawk Valley Community Services ("M.V.C.S."). See Holyoke v. Mohawk Valley Health System, Case No. 6:22-CV-316 (MAD/ATB) ("Holyoke I"). On November 1, 2022, the Honorable Mae A. D'Agostino ordered that the Holyoke I complaint be dismissed without prejudice, but without the opportunity for amendment, based on the court's initial review of the complaint pursuant to 28 U.S.C. § 1915. (Holyoke I Dkt. No. 15). Plaintiff appealed Judge D'Agostino's decision, and on October 31, 2023, the Second Circuit affirmed the judgment of the district court. (Holyoke I Dkt. No. 31).

Case 1:25-cv-01150-AJB-TWD Document 4 Filed 10/20/25 Page 170 of 187

Holyoke v. S.S.I., Not Reported in Fed. Supp. (2024)

2024 WL 20726

On December 12, 2023, plaintiff filed the complaint with jury demand in the instant matter. (Dkt. No. 1) (Complaint ("Compl.")). The facts as alleged in the instant matter bear, at least some, relation to those facts asserted in *Holyoke I.* (Compare *Holyoke I* Dkt. No. 1 *with* Compl.). On December 13, 2023, Judge D'Agostino deemed this matter and *Holyoke I* to be "related." (Dkt. No. 5).

### III. The Complaint

In the caption of his complaint, plaintiff has identified the following defendants: S.S.I., Medicare, I.R.S., the City of Utica, Oneida County, M.V.H.S., and M.V.C.S. (*See generally* Compl.). In the body of his complaint, plaintiff alleges that he is "looking for a place to reside mainly in the skirts of the city of Utica, N.Y. Or a small piece of land in about an [sic] small grove type to put a tiny home to reside in." (Compl. at 3). He states without explanation that his "main problem" is the discrimination between [him] and [his] younger brother ... who has disabilities[.]" (*Id.*). Plaintiff states his brother cannot "be with" him, because they "would not get along together." (*Id.* at 4). Plaintiff then states that he was "declared a duncell [sic]" in third grade, and that "in the 90's and early 2000's [he] just had a bit of depression and ups and downs of mood because of being bored." (*Id.*). Plaintiff describes how he thereafter took up photography and obtained employment "doing surveys[.]" (*Id.* at 5).

Plaintiff's recitation becomes even less clear at this point. He states that during the years 2014 through 2017, doctors were "calling [him] into the hospital," and he was "back and forth" between "St. Elizabeths and St. Lukes [sic] where the doctors kept mixing many of [his] meds between inpatient and outpatient services [ ] and kept trying to routine [him] while just not offering much help." (*Id.* at 6). Plaintiff states that he spent his time "fishing with [his] father to relax and go places to do photography." (*Id.*).

Plaintiff alleges that he eventually created a photography business. (*Id.* at 7). He moved into a "first floor flat" in 2014, however in 2019 he was evicted. (*Id.*). Plaintiff claims that although "Daniel from Home Health Network said she would help" plaintiff, but she was actually "on [the landlord's] side" and "tried to rush [plaintiff] after [he] settled down and made it into a semi comfortable ba[ch]elor pad where [he] was sorta [sic] at ease." (*Id.* at 7-8).

The complaint thereafter becomes even more difficult to follow. Plaintiff lists a myriad of seemingly unrelated state statutes. (*Id.* at 8-10). He states that he cannot live with his immediate family. (*Id.* at 9). He alleges, without any coherent explanation, that the "total cost" for the years 2014 through 2019 with his purported landlord is approximately $108,000. (*Id.* at 9-10). Then, plaintiff cites to an agreement with his "ex girlfriend" at a restaurant, and states that he is "still wondering about copies of parental rights paperwork so this great mishap doesn't happen again." (*Id.* at 11). He states that "all the caseworkers ... totally refused to talk about or help in any support for" plaintiff when he attempted to "talk about photography[,]" in his effort to earn a living and obtain housing. (*Id.*).

**\*3** Plaintiff alleges that "while staying at Globe Mills Loft [apartments]," he "kept seeing cars driving around in figure eights and other pickup trucks that were the same as when he lived in Millgate Meadows that harassed [him.]" (*Id.* at 13). Plaintiff alleges that, under "certain circumstances[,]" this "may constitute a class E Felony[.]" (*Id.* at 13-14). Plaintiff then states that he is "looking for an understanding" as to what he needs "in order to stabilize a business ... and trying to find partnership of," but is "being sent in wrong directions[.]" (*Id.* at 14). He references this "offense" to be considered a "form[ ] of torture, humiliation or degradation." (*Id.* at 14-15).

Plaintiff cites to the Public Health Service Act, Federal Tort Claims Act, and the Eighth Amendment as giving rise to his federal causes of action. (*Id.* at 15-16). He states, without coherency, that "assertive community team and case managers" committed "[per]jury on record[,]" and cost him $36,000 "from [his] income for the past three years and one step backwards to 17 Glod Ave[.] would be about $48,000 dollars ... and personal property." (*Id.* at 16).

As relief, plaintiff purports to seek $750,000.00 in damages "that would cap three branches of bank accounts." (*Id.* at 17). Plaintiff appears to assert that such monetary relief would cover his purchase of property "where he could have a second story flat and a gallery on the first (ground floor) in order to purchase some of [his] own artwork." (*Id.*).

### IV. Discussion

#### A. Legal Standards

##### 1. Section 1983

A claim for relief under 42 U.S.C. § 1983 must allege facts showing that the defendant acted under the color of a state

Holyoke v. S.S.I., Not Reported in Fed. Supp. (2024)

Case 1:25-cv-01150-AJB-TWD    Document 4    Filed 10/20/25    Page 171 of 187

2024 WL 20726

"statute, ordinance, regulation, custom or usage." 42 U.S.C. § 1983. Thus, to state a claim under § 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *See* West v. Atkins, 487 U.S. 42, 48-49 (1988). Private parties are generally not state actors and are therefore not usually liable under Section 1983. *Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties....") (internal quotation marks and citation omitted).

While private individuals are not state actors, such individuals can be liable under Section 1983 if they acted either "jointly" or "in conspiracy" with a state actor to deprive the plaintiff of a constitutional right. *Stewart v. Victoria's Secret Stores, LLC*, 851 F. Supp. 2d 442, 445 (E.D.N.Y. 2012); *see also Betts v. Shearman*, 751 F.3d 78, 84 n.1 (2d Cir. 2014). However, "[a] merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a Section 1983 claim against the private entity."

For the purposes of section 1983, the actions of a nominally private entity are attributable to the state when: "(1) the entity acts pursuant to the 'coercive power' of the state or is 'controlled' by the state ('the compulsion test'); (2) when the state provides 'significant encouragement' to the entity, the entity is a 'willful participant in joint activity with the [s]tate,' or the entity's functions are 'entwined' with state policies ('the joint action test' or 'close nexus test'); or (3) when the entity 'has been delegated a public function by the [s]tate,' ('the public function test')." *Caballero v. Shayna*, No. 18-CV-1627, 2019 WL 2491717, at *3 (E.D.N.Y. June 14, 2019) (citing *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008)). "The fundamental question under each test is whether the private entity's challenged actions are 'fairly attributable to the state." *Id.* (quoting *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012)).

**\*4** Section 1983 "only provides redress for federal statutory and constitutional violations perpetrated under color of state law." *Nghiem v. U.S. Dep't of Veterans Affs.*, 451 F. Supp. 2d 599, 605 (S.D.N.Y. 2006) (emphasis in original), *aff'd*, 323 F. App'x 16 (2d Cir. 2009). "Actions of the federal government

or its officers are exempt from the proscriptions of § 1983." *Id.* (collecting cases).

## 2. Municipal Liability

A municipality may only be named as a defendant in certain circumstances. In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court outlined the limited circumstances under which a municipality may be liable under Section 1983. A municipality may not be held liable solely because it employs a tortfeasor. *LaVertu v. Town of Huntington*, No. 13-CV-4378, 2014 WL 2475566, at *3 (E.D.N.Y. Apr. 4, 2014) (citing inter alia *Los Angeles County, Cal. v. Humphries*, 562 U.S. 29, 35 (2010)), *report recommendation adopted in relevant part*, 2014 WL 2506217 (E.D.N.Y. June 2, 2014). Only when the municipality, through the execution of its policies, actually deprives an individual of his constitutional rights, is it liable for the injury. *Monell*, 436 U.S. at 694.

"The existence of a municipal policy that gives rise to *Monell* liability can be established in four ways: (1) a formal policy endorsed by the municipality; (2) actions directed by the government's 'authorized decisionmakers' or 'those who establish governmental policy;' (3) a persistent and widespread practice that amounts to a custom of which policymakers must have been aware; or (4) a constitutional violation resulting from policymakers' failure to train municipal employees[.]" *Deferio v. City of Syracuse*, 770 F. App'x 587, 590 (2d Cir. 2019) (cleaned up). "Once a plaintiff has demonstrated the existence of a municipal policy, a plaintiff must then establish a causal connection, or an 'affirmative link,' between the policy and the deprivation of his constitutional rights." *Id.* (citing *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985)); *see also Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997) (holding that plaintiff must "demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged").

A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822-823 (1985)) ("[A] 'policy' of 'inadequate training' " is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*"). To satisfy the statute, the municipality's "failure to train its employees in a relevant respect must amount to ' "deliberate indifference to the rights

Case 1:25-cv-01150-AJB-TWD   Document 4   Filed 10/20/25   Page 172 of 187

**Holyoke v. S.S.I., Not Reported in Fed. Supp. (2024)**

2024 WL 20726

of persons with whom the [untrained employees] come into contact." ' " *Id.* (quoting *Canton v. Harris*, 489 U.S. 378, 388 (1989)). "Only then 'can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983.' " *Id.* (quoting *Canton*, 489 U.S. at 389).

### B. Analysis

Turning first to jurisdictional issues, [1] it does not appear that the court has subject matter jurisdiction over several of the named defendants in the complaint. M.V.H.S. is an organization comprised of numerous privately owned healthcare entities, including hospitals, primary care facilities, and urgent care centers. [2] As this court explained in *Holyoke I*, wherein plaintiff also attempted to assert a section 1983 claim against the same defendant, M.V.H.S. is not a state actor for purposes of the statute. *Holyoke v. Mohawk Valley Health Sys.*, No. 6:22-CV-316 (MAD/ATB), 2022 WL 1102414, at *3 (N.D.N.Y. Apr. 13, 2022), *report and recommendation adopted*, 2022 WL 16570433 (N.D.N.Y. Nov. 1, 2022), *aff'd*, No. 22-2771, 2023 WL 6342807 (2d Cir. Sept. 29, 2023); *see also Thomas v. Mohawk Valley Health Sys.*, No. 6:20-CV-01347 (BKS/ML), 2020 WL 6504634, at *6 (N.D.N.Y. Nov. 5, 2020) (finding that defendant Mohawk Valley Health System was a private institution for purposes of section 1983 claim, despite allegation that it received funding from the state and federal governments). Because plaintiff has put forth no additional facts suggesting that, at any point, M.V.H.S. acted under color of state law, plaintiff cannot sustain a section 1983 claim against this named defendant.

[1]   "The Court considers the jurisdictional issues first, because a dismissal for lack of jurisdiction renders all other claims moot." *Strunk v. New York*, No. 1:19-CV-202, 2019 WL 5788560, at *5 (N.D.N.Y. Nov. 6, 2019) (quoting *Cassano v. Altshuler*, 186 F. Supp. 3d 318, 320 (S.D.N.Y. 2016) (citation omitted)); *see also Saleh v. Holder*, 84 F. Supp. 3d 135, 137-38 (E.D.N.Y. 2014) ("Subject matter jurisdiction is a threshold issue ....").

[2]   *See* https://www.mvhealthsystem.org/about (last visited December 27, 2023).

**\*5** Plaintiff is also suing "M.V.C.S.," which he has previously referred to as Mohawk Valley Community Services, an entity which this court understands to offer counseling and mental health services in the Oneida county region. Based on plaintiff's allegations, there is some ambiguity about the identity of this defendant, for purposes

of assessing state action. As in *Holyoke I*, however, plaintiff has not alleged that this defendant was acting under color of state law. In fact, plaintiff does not mention this defendant at all throughout the body of his compliant. To the extent that M.V.C.S. may be an extension of the New York State Office of Mental Health, or any other state agency, it would be protected by the Eleventh Amendment, which bars federal suits against state governments by a state's own citizens. *Capers v. Kirby Forensic Psychiatric Center*, No. 13-CV-6953, 2016 WL 817452, at *1 (S.D.N.Y. Feb. 25, 2016); *Dimps v. New York State Office of Mental Health*, 777 F. Supp. 2d 659, 661 (S.D.N.Y. 2011) (concluding that, as an agency of the State of New York, OMH is an "arm[ ] of the state entitled to sovereign immunity.") (citation omitted). For all these reasons, the complaint should be dismissed against M.V.C.S. for lack of subject matter jurisdiction.

Plaintiff has also named several federal entities and/or programs as defendants, including the I.R.S., S.S.I., and Medicare. Notably, these defendants are not mentioned anywhere in the body of the complaint. Even if plaintiff had plausibly alleged any claims against these defendants (or, perhaps, claims for the benefits identified), they are barred by the principle of sovereign immunity. It is well-settled that the United States, its agencies, and federal officers in their official capacity, have sovereign immunity from suit and can only be sued with their consent and whatever terms Congress may impose. *Robinson v. Overseas Mil. Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994) ("Because an action against a federal agency or federal officers in their official capacities is essentially a suit against the United States, such suits are also barred under the doctrine of sovereign immunity, unless such immunity is waived."); *see Celauro v. United States IRS*, 411 F. Supp. 2d 257, 267 (E.D.N.Y. 2006), *aff'd*, 214 F. App'x 95 (2d Cir. 2007) ("Congress has not specifically authorized suit against the IRS. Therefore, it is not a suable entity."); *Narayanan v. Garland*, No. 22-CV-5661, 2023 WL 6307872, at *4 (E.D.N.Y. Sept. 28, 2023) ("[T]o the extent that Narayanan seeks money damages for the denial of his March 2018 SSI application, sovereign immunity bars that claim."). "Absent an unequivocally expressed statutory waiver, the United States, its agencies, and its employees (when functioning in their official capacities) are immune from suit based on the principle of sovereign immunity." *Vidurek v. Koskinen*, 789 F. App'x 889, 892-93 (2d Cir. 2019) (citing *Cnty. of Suffolk v. Sebelius*, 605 F.3d 135, 140 (2d Cir. 2010)). Plaintiff has not alleged any statutory waiver under which these defendants could be held liable in this court, and thus the complaint should be dismissed as against them.

Case 1:25-cv-01150-AJB-TWD    Document 4    Filed 10/20/25    Page 173 of 187

Holyoke v. S.S.I., Not Reported in Fed. Supp. (2024)

2024 WL 20726

Accordingly, the only named defendants over which this court might have subject matter jurisdiction are the City of Utica and Oneida County. In any event, any claims purportedly asserted against these defendants are subject to dismissal, due to the complaint's complete failure to meet the notice pleading requirements of Rule 8. The only reference to the city of Utica is plaintiff's allegation that he is "looking for a place to reside mainly in the skirts of the city of Utica, N.Y." (Compl. at 3). Plaintiff does not specifically reference Oneida County anywhere throughout the body of his complaint.[3] Moreover, nowhere in the complaint does plaintiff coherently describe what purported policy, practice or custom of these defendants has given rise to his federal claims. This alone is grounds for dismissal. *See Morgan v. City of Utica, New York,* No. 6:20-CV-1424 (MAD/ML), 2021 WL 2036680, at *2 (N.D.N.Y. May 21, 2021) (dismissing section 1983 claim against defendant municipality where plaintiff makes no meaningful reference to defendant throughout the complaint, and fails to allege any actionable policy or custom); *Crichlow v. Annucci,* 18-CV-3222, 2021 WL 5234522, at *2 (S.D.N.Y. Nov. 10, 2021) (dismissing, for failure to state a claim upon which relief may be granted, those claims against defendants who were identified in the caption of the third amended complaint but, "the Court [wa]s unable to find reference to them anywhere else in the pleading."); *Joseph v. Annucci,* 18-CV-7197, 2020 WL 409744, at *4 (S.D.N.Y. Jan. 23, 2020) (dismissing claims against defendants that were "named in the caption only" where "[t]he body of the Complaint does not contain any factual allegations naming them, or indicating that they violated the law or injured Plaintiff in some manner.").

[3]     Plaintiff has attached as exhibits to his complaint various documents concerning his receipt of temporary housing assistance from the Oneida County Department of Social Services. (Dkt. No. 1-1 at 1-5). These documents do not, on their own, establish a cause of action against Oneida County.

**\*6** Furthermore, plaintiff has failed to plausibly allege the violation of his constitutional rights by any actor, whether a named defendant or otherwise. In the context of section 1983 municipal liability, "the presence of an underlying constitutional violation remains a 'required predicate' even if the plaintiff elects not to name the directly responsible official(s) as defendants in the suit." *Carter v. Broome Cnty.,* 394 F. Supp. 3d 228, 239 (N.D.N.Y. 2019) (citing inter alia *Askins v. Doe No. 1,* 727 F.3d 248, 253 (2d Cir. 2013) ("In

fact, the plaintiff need not sue the individual tortfeasors at all, but may proceed solely against the municipality.")). Thus, "[e]stablishing the liability of the municipality requires a showing that the plaintiff suffered a tort in violation of federal law committed by the municipal actors and, in addition, that their commission of the tort resulted from a custom or policy of the municipality." *Askins v. Doe No. 1,* 727 F.3d 248, 253 (2d Cir. 2013) (citing *Monell,* 436 U.S. at 690-91). Because plaintiff has failed to allege both an underlying constitutional violation and the applicable custom or policy from which any purported violation stemmed, his complaint must be dismissed as against the City of Utica and Oneida County.

## V. Opportunity to Amend

Generally, before the court dismisses a pro se complaint or any part of the complaint sua sponte, the court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

With respect to defendants M.V.H.S., M.V.C.S., Medicare, S.S.I., and I.R.S., the court is recommending dismissal of the complaint for lack of subject matter jurisdiction. Thus, any dismissal must be without prejudice. *Hollander v. Garrett,* 710 F. App'x 35, 36 (2d Cir. 2018) ("[D]ismissal for subject matter jurisdiction must be without prejudice."). However, this court has serious doubts about whether plaintiff can amend to assert any form of federal jurisdiction over these defendants, based on the issues that plaintiff describes in his complaint. Moreover, plaintiff has not advanced any jurisdictional bases, statutory or otherwise, that would constitute a waiver of certain defendants' sovereign immunity from suit. As there appears no basis for plaintiff to raise his claims against these defendants in federal court, the court should not allow plaintiff to amend, notwithstanding a dismissal without prejudice. Because lack of subject matter jurisdiction is a substantive defect, *Deul v. Dalton,* No. 1:11-CV-0637(GTS/RFT), 2012 WL 235523, at *8 n.19 (N.D.N.Y. Jan. 25, 2012), the court recommends dismissal without leave to amend as to these defendants.

With respect to defendants City of Utica and Oneida County, while skeptical, this court is constrained to recommend affording the pro se plaintiff an opportunity to amend his complaint. *See Abbas v. Dixon,* 480 F.3d 636, 639 (2d

Holyoke v. S.S.I., Not Reported in Fed. Supp. (2024)

2024 WL 20726

Cir. 2007) (Finding that sua sponte dismissals by the court pursuant to sections 1915 and 1915A "must" accord the plaintiff an opportunity to amend the complaint "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim."); *Mojias v. Johnson*, 351 F.3d 606, 610-11 (2d Cir. 2003) ("[U]nless it is unmistakably clear that the court lacks jurisdiction, or that the complaint lacks merit or is otherwise defective, we believe it is bad practice for a district court to dismiss without affording a plaintiff the opportunity to be heard in opposition.") (quoting *Snider v. Melindez*, 199 F.3d 108, 113 (2d Cir. 1999)). Thus, the court recommends granting plaintiff the limited opportunity to amend his complaint to allege, if he can, that he suffered an underlying tort in violation of federal law committed by an individual municipal actor or actors, and that their commission of the tort resulted from a custom or policy of Oneida County or the City of Utica. If the court approves this recommendation and allows plaintiff to submit a proposed amended complaint, plaintiff should be warned that any amended complaint must be a ***complete and separate pleading***. Plaintiff must state all of his claims in the new pleading and may ***not*** incorporate by reference any part of his original complaint.

 **\*7** Plaintiff should also be aware that any opportunity afforded to amend his complaint in order to state a claim for relief is not an invitation to file another frivolous pleading. By this court's count, this is the third complaint plaintiff has filed in the Northern District in the past three years that has been dismissed for jurisdictional defects and/or the failure to state a claim. *See Holyoke I; Holyoke v. Holyoke et al.*, Case No. 6:21-CV-239 (DNH/TWD). Courts have always recognized that they may resort to restrictive measures when responding to vexatious litigants. *In re Martin-Trigona*, 9 F.3d 226, 228-29 (2d Cir. 1993) (noting that the Supreme Court and other Circuits have imposed restrictive measures). The Court has the obligation to protect the public and the efficient administration of justice from individuals who have a history of vexatious and harassing litigation because it imposes needless expense on the parties and an unnecessary burden on the court. *Lau v. Meddaugh*, 229 F.3d 121, 123 (2d Cir. 2000). In this context, courts have accepted the need for permanent injunctions as a result of extraordinary patterns of vexatious, harassing, and baffling litigation practices. *In re Aarismaa*, 233 B.R. 233, 247 (N.D.N.Y. 1999); *Toro v. Depository Trust Co.*, No. 97 Civ. 5383, 1997 WL 752729, at \*4 (S.D.N.Y. Dec. 4, 1997) (identifying the All Writs Act as

a legal basis to impose sanctions and enjoin a plaintiff who abuses the judicial process).

Under the All Writs Act, 28 U.S.C. § 1651, a court may sanction a vexatious litigant who abuses the judicial process by enjoining him from pursuing future litigation without leave of the court. *Malley v. New York City Bd. of Educ.*, 112 F.3d 69, 69-70 (2d Cir. 1997); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 250 (2d Cir. 2004). An enjoiner may be permanent or may impose the less drastic remedy of a "leave to file" requirement. *In re Sassower*, 20 F.3d 42, 44 (2d Cir. 1994) (noting the court's ability to levy a leave to file requirement); *Raffee v. John Doe*, 619 F. Supp. 891 (S.D.N.Y. 1985) (granting a permanent injunction restraining the plaintiff from filing any further actions); *In re Aarismaa*, 233 B.R. at 247 (observing that such "restrictive measure[s] have included foreclosing the filings of pleadings in a particular case or requiring that leave of court first be sought").

Before regulating a truculent and persistent litigant by restricting future access to the court, a court should consider

> (1) the litigant's history of the litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, and in particular whether the litigant has a good faith expectation of prevailing; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

*Toro v. Depository Trust Co.*, 1997 WL 752729, at \*4 (citing S*afir v. U.S. Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986)).

Plaintiff's frivolous filings to date suggest his propensity to engage in the same vexatious and duplicative litigation as described above, which among other things results in an unnecessary burden on the courts. Thus, plaintiff should be cautioned that further unmerited filings by him, whether in this action or otherwise in this district, may result in a referral

to the Chief Judge of the Northern District of New York to issue an Order to Show Cause why a Pre-Filing Order should not be issued against him, enjoining him from filing any future documents in this court as a pro se litigant without leave.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion to proceed IFP (Dkt. No. 2) be **GRANTED**, [4] and it is

[4]   Although his IFP Application has been granted, plaintiff will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

**RECOMMENDED**, that the district court **DISMISS** plaintiff's complaint (Dkt. No. 1) as against defendants S.S.I., Medicare, I.R.S., M.V.H.S., and M.V.C.S., without prejudice but without leave to amend, and it is

**\*8 RECOMMENDED,** that the district court **DISMISS** plaintiff's complaint (Dkt. No. 1) as against defendants City of Utica and Oneida County, without prejudice and with leave to amend, and it is

**RECOMMENDED**, that if the district court adopts this Order and Report-Recommendation, plaintiff be given forty-five (45) days to amend his complaint ONLY with respect to any potential claims against the City of Utica and/or Oneida County, including identifying the underlying actors/constitutional violations giving rise to the purported municipal liability, as discussed above. If plaintiff does file a proposed amended complaint, plaintiff should be warned that any amended complaint must be a ***complete and separate***

***pleading***. Plaintiff must state all of his claims in the new pleading and may not incorporate by reference any part of his original complaint, and it is

**RECOMMENDED**, that if the district court adopts this Order and Report-Recommendation, and plaintiff files a proposed amended complaint, such proposed amended complaint be returned to me for initial review, and it is

**RECOMMENDED,** that if the district court adopts this Order and Report-Recommendation, and plaintiff does not elect to file an amended complaint within the proposed deadline, or request an extension of time to do so, the Clerk enter judgment dismissing this action without further order of the court, and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Order and Report-Recommendation on plaintiff by regular mail.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Hum. Servs.,* 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

**All Citations**

Not Reported in Fed. Supp., 2024 WL 20726

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Holyoke v. S.S.I., Not Reported in Fed. Supp. (2024)

2024 WL 689117

Case 1:25-cv-01150-AJB-TWD    Document 4    Filed 10/20/25    Page 176 of 187

2024 WL 689117
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Gary Arthur HOLYOKE, Plaintiff,

v.

S.S.I., Medicare, I.R.S., Oneida County, N.Y.,
M.V.H.S., M.V.C.S., and Utica, Defendants.

6:23-CV-1557 (MAD/MJK)
|
Signed February 20, 2024

**Attorneys and Law Firms**

GARY ARTHUR HOLYOKE, 13 Lennon Place, Whitesboro,
New York 13492, Plaintiff, pro se.

**ORDER**

Mae A. D'Agostino, United States District Judge:

**\*1** On December 12, 2023, Plaintiff Gary Arthur Holyoke
commenced this action, *pro se*, by filing a complaint and a
motion to proceed *in forma pauperis* ("IFP"). *See* Dkt. Nos.
1, 2. On January 2, 2024, Magistrate Judge Andrew T. Baxter
issued an Order and Report-Recommendation granting
Plaintiff's IFP motion and recommending that Plaintiff's
complaint be dismissed without prejudice and with leave to
amend as to Defendants City of Utica and Oneida County.
*See* Dkt. No. 7. Magistrate Judge Baxter recommended
dismissing Plaintiff's complaint without prejudice but without
leave to amend as to all other Defendants. *See id.* Plaintiff
filed objections on February 12, 2024. [1] *See* Dkt. No. 14.
Plaintiff's objections are one page and state that he "object[s]
to dismissing the case." *Id.* Plaintiff filed a notice of change
of address and amended complaint on the same day. *See* Dkt.
Nos. 15, 16.

[1]    Multiple documents were returned to the Court as
undelivered including Magistrate Judge Baxter's
Order and Report-Recommendation. *See* Dkt. Nos.
6, 9, 11-3. After Plaintiff contacted the Clerk's
Office to notify the Court of his change of address,
the Court extended the time for him to file
objections. *See* Dkt. No. 10; *see also* Text Notice
01/29/2024.

"When only a *general* objection is made to a portion of a
magistrate judge's report-recommendation, the Court subjects
that portion of the report-recommendation to only a clear error
review." *Boice v. M+W U.S., Inc.*, 130 F. Supp. 3d 677, 684
(N.D.N.Y. 2015) (citing FED. R. CIV. P. 72(b)). After the
appropriate review, "the court may accept, reject, or modify,
in whole or in part, the findings or recommendations made by
the magistrate judge." 28 U.S.C. § 636(b)(1).

As Plaintiff is proceeding *pro se*, the Court must review
his complaint under a more lenient standard. *See Govan
v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2003).
The Court must "make reasonable allowances to protect *pro
se* litigants from inadvertent forfeiture of important rights
because of their lack of legal training." *Traguth v. Zuck*, 710
F.2d 90, 95 (2d Cir. 1983). Thus, "a document filed *pro se* is
'to be liberally construed,' and 'a *pro se* complaint, however
inartfully pleaded, must be held to less stringent standards
than formal pleadings drafted by lawyers.' " *Erickson v.
Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*,
429 U.S. 97, 106 (1976)). "Although the court has the duty
to show liberality towards pro se litigants, ... there is a
responsibility on the court to determine that a claim has some
arguable basis in law before permitting a plaintiff to proceed
with an action in forma pauperis." *Moreman v. Douglas*,
848 F. Supp. 332, 333-34 (N.D.N.Y. 1994) (internal citations
omitted).

Having reviewed the Order and Report-Recommendation,
Plaintiff's complaint, and the applicable law, the Court does
not discern any clear error in Magistrate Judge Baxter's
recommendations.

As Magistrate Judge Baxter explained, Plaintiff's complaint
is largely incoherent. *See* Dkt. No. 7 at 4-5. He appears to
be complaining about housing and medical care. *See* Dkt.
No. 1 However, as Magistrate Judge Baxter stated, to bring
a section 1983 claim, Plaintiff must plead state action. *See
Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546
F.3d 255, 257 (2d Cir. 2008). Insofar as Plaintiff names
"M.V.H.S." as a Defendant, Mohawk Valley Health System
is a private health care organization. *See* Dkt. No. 7 at 10
(citing, *inter alia*, *Holyoke v. Mohawk Valley Health Sys.*,
No. 6:22-CV-316, 2022 WL 1102414, \*3 (N.D.N.Y. Apr.
13, 2022), *report and recommendation adopted*, 2022 WL
16570433 (N.D.N.Y. Nov. 1, 2022), *aff'd*, No. 22-2771, 2023
WL 6342807 (2d Cir. Sept. 29, 2023)). Because Plaintiff did
not allege that M.V.H.S. is a state actor or engaged in any state
action, Magistrate Judge Baxter correctly concluded that the

Holyoke v. S.S.I., Not Reported in Fed. Supp. (2024)

2024 WL 689117

section 1983 claim against it must be dismissed. *See Schlein v. Milford Hosp., Inc.*, 561 F.2d 427, 427 (2d Cir. 1977). Similarly, as to "M.V.C.S." or Mohawk Valley Community Services, Plaintiff failed to allege state action such that the recommendation of dismissal is free of clear error. *See* Dkt. No. 7 at 11.

**\*2** Magistrate Judge Baxter considered that M.V.C.S. might be an extension of New York State's Office of Mental Health which would make it a state agency. *See id.* However, assuming that it is, Magistrate Judge Baxter correctly determined that state agencies are immune from suit under the Eleventh Amendment. *See id.*; *see also Burnette v. Carothers*, 192 F.3d 52, 56-57 (2d Cir. 1999). Likewise, Plaintiff's complaint against Defendants I.R.S., S.S.I., and Medicare, requires dismissal because federal agencies and their officers acting in an official capacity are entitled to sovereign immunity. *See Dotson v. Griesa*, 398 F.3d 156, 177 (2d Cir. 2005). Thus, the Court finds no clear error in Magistrate Judge Baxter's recommendation dismissing the claims against those entities on immunity grounds. *See* Dkt. No. 7 at 11-12.

Next, Plaintiff named the City of Utica and Oneida County as Defendants. *See* Dkt. No. 1 at 1. Magistrate Judge Baxter correctly stated that the body of the complaint is devoid of specific allegations regarding those entities or any purported injury that they caused Plaintiff. *See* Dkt. No. 7 at 12-13. This alone would support dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 8. *See Hanks v. City of Syracuse*, No. 5:21-CV-921, 2022 WL 4619877, \*3 (N.D.N.Y. Sept. 30, 2022), *aff'd*, No. 22-2819, 2023 WL 8889764 (2d Cir. Dec. 26, 2023). Nevertheless, Magistrate Judge Baxter proceeded to explain that, because the City of Utica and Oneida County are municipalities, in order to state a claim against them, Plaintiff would have to plead a constitutional violation and a policy or custom. *See* Dkt. No. 7 at 13-14; *see also Werkheiser v. Cnty. of Broome*, 655 F. Supp. 3d 88, 109 (N.D.N.Y. 2023); *Buari v. City of New York*, 530 F. Supp. 3d 356, 397 (S.D.N.Y. 2021). Plaintiff did not allege either. Thus, Magistrate Judge Baxter correctly concluded that dismissal of the complaint against Defendants City of Utica and Oneida County is warranted.

Concerning an opportunity to amend, Magistrate Judge Baxter recommended that Plaintiff not be given an opportunity to amend the claims against M.V.H.S., M.V.C.S., Medicare, S.S.I., and I.R.S. because Plaintiff has not set forth a plausible basis upon which he could bring such claims. *See* Dkt. No. 7; *see also Igartua v. Dep't of Homeless Servs.*, No. 15-CV-3806, 2015 WL 4656557, \*2 (E.D.N.Y. Aug. 5, 2015). The Court agrees and will deny Plaintiff leave to amend his complaint against those Defendants.

As to the City of Utica and Oneida County, Magistrate Judge Baxter recommended that Plaintiff be afforded an opportunity to amend his complaint given the Second Circuit's instructions concerning amendment of a *pro se* complaint. *See* Dkt. No. 7 (citing *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007); *Mojias v. Johnson*, 351 F.3d 606, 610-11 (2d Cir. 2003)). The Court agrees that because the Second Circuit instructs that "[d]istrict judges should, as a general matter, liberally permit pro se litigants to amend their pleadings," *Drew v. City of New York*, No. 21-1194, 2023 WL 3083188, \*2 (2d Cir. Apr. 26, 2023) (quotation omitted), leave to amend will be granted as to Defendants City of Utica and Oneida County. Plaintiff is informed that his amended complaint replaces the existing complaint and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Jeanty v. Sciortino*, No. 6:22-CV-319, 2023 WL 2931863, \*14 (N.D.N.Y. Apr. 13, 2023).

Finally, Magistrate Judge Baxter cautioned Plaintiff concerning his filing of numerous complaints in this Court which have been dismissed for jurisdictional defects and/or the failure to state a claim. *See* Dkt. No. 7 at 16. The Court finds no clear error in Magistrate Judge Baxter's assessment of the state of Plaintiff's filings and concurs in the conclusion that if Plaintiff engages in frivolous, duplicative, or vexatious filing in the future, he may be subject to an Order to Show Cause why a Pre-Filing Order should not be issued against him.

**\*3** Accordingly, the Court hereby

**ORDERS** that Magistrate Judge Baxter's Order and Report-Recommendation (Dkt. No. 7) is **ADOPTED** in its entirety for the reasons set forth herein; and the Court further

**ORDERS** that Plaintiff's complaint (Dkt. No. 1) against Defendants S.S.I., Medicare, I.R.S., M.V.H.S., and M.V.C.S. is **DISMISSED without prejudice but without leave to amend**; and the Court further

Holyoke v. S.S.I., Not Reported in Fed. Supp. (2024)

Case 1:25-cv-01150-AJB-TWD    Document 4    Filed 10/20/25    Page 178 of 187

2024 WL 689117

**ORDERS** that Plaintiff's complaint (Dkt. No. 1) against Defendants City of Utica and Oneida County is **DISMISSED without prejudice**; and the Court further

**ORDERS** that Plaintiff's amended complaint (Dkt. No. 16) is referred to Magistrate Judge Mitchell J. Katz for review pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A; and the Court further

**ORDERS** that the Clerk of the Court serve a copy of this Order upon Plaintiff in accordance with Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2024 WL 689117

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 4424128
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kenneth T. MEYERS, Plaintiff,

v.

Donna BECKER, et al., Defendants.

No. 1:23-CV-173 (DNH/CFH)
|
Signed May 31, 2023

**Attorneys and Law Firms**

Kenneth T. Meyers, 18604, Schoharie County Jail, P.O. Box 159, Howes Cave, New York 12902, Plaintiff pro se.

**REPORT-RECOMMENDATION AND ORDER**

Christian F. Hummel, United States Magistrate Judge

### I. Procedural Background

**\*1** Plaintiff pro se Kenneth T. Meyers ("plaintiff") commenced this action on February 8, 2023, by filing a complaint. See Dkt. No. 1 ("Compl."). On February 23, 2023, he filed an application to proceed in forma pauperis ("IFP"). See Dkt. No. 5. In a Report-Recommendation and Order dated April 5, 2023, the undersigned granted plaintiff's application to proceed IFP and recommended dismissing his complaint without prejudice and with leave to amend. See Dkt. No. 9. Plaintiff was informed that he had fourteen days to file objections to the Report-Recommendation and Order. See id. at 14. [1] Plaintiff did not file any objections but filed an amended complaint on April 20, 2023. See Dkt. No. 10 ("Am. Compl."). On April 25, 2023, District Judge David N. Hurd adopted the Report-Recommendation and Order in its entirety and referred the amended complaint to the undersigned for review. See Dkt. No. 11. Thus, presently before the Court is plaintiff's amended complaint for review pursuant to 28 U.S.C. § 1915. See Am. Compl.

[1]     Citations to the record are to the pagination generated by CM/ECF in the header of each page.

### II. Initial Review of Amended Complaint

#### A. Legal Standard

Section 1915 [2] of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). It is a court's responsibility to determine that a plaintiff may properly maintain his or her complaint before permitting him or her to proceed with the action.

[2]     The language of § 1915 suggests an intent to limit availability of IFP status to prison inmates. See 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. See, e.g., Fridman v. City of N.Y., 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

Where, as here, the "plaintiff proceeds pro se, the court must construe his [or her] submissions liberally and interpret them to raise the strongest arguments that they suggest." Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (citation and internal quotation marks omitted). This does not mean that the Court is required to accept unsupported allegations that are devoid of sufficient facts or claims. Pro se litigants are "not exempt ... from compliance with relevant rules of procedural and substantive law[.]" Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (citation omitted). Although detailed allegations are not required at the pleading stage, the complaint must still include enough facts to provide the defendants with notice of the claims against them and the grounds on which these claims are based. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007). Ultimately, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

Case 1:25-cv-01150-AJB-TWD    Document 4    Filed 10/20/25    Page 180 of 187

Meyers v. Becker, Not Reported in Fed. Supp. (2023)

2023 WL 4424128

defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation omitted).

**\*2** Pleading guidelines are set forth in the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). Specifically, Rule 8 provides that a pleading which sets forth a claim for relief shall contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (citations and internal quotation marks omitted). Rule 8 also requires the pleading to include "a short and plain statement of the grounds for the court's jurisdiction" and "a demand for the relief sought...." FED. R. CIV. P. 8(a)(1), (3). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." Id. at 8(d)(1).

Further, Rule 10 provides in pertinent part that:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 55 (citations and internal quotation marks omitted). A complaint that fails to comply with the pleading requirements "presents far too [ ] heavy [a] burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). The Second Circuit has held that "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the

complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (internal citation omitted). However, "[d]ismissal [ ] is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citation omitted). If dismissal is warranted and the plaintiff is pro se, the court generally affords the plaintiff leave to amend the complaint. See Simmons v. Abruzzo, 49 F.3d 83, 86-87 (2d Cir. 1995).

### B. Plaintiff's Amended Complaint

Plaintiff alleges that Bryanna Folk, his ex-girlfriend and the mother of his children, presented false accusations against him to the Department of Social Services ("DSS") "to receive welfare assistance and benefit[.]" Am. Compl. at 2-3. He also asserts that Donna Becker, who was the Commissioner of Schoharie County DSS at the time, verified the truth of Ms. Folk's lies and accusations. See id. at 3. Plaintiff alleges that Ms. Becker no longer works for DSS as of January or February 2023, because she resigned and "for reckless action." Id. a 3-4. Plaintiff alleges that Ms. Folk and Ms. Becker stated and verified that plaintiff was a violent person and used illegal substances. See id. at 4. Plaintiff states, "[t]here is 'no' criminal record of violence in criminal history or use of illegal substances[.]" Id. Ms. "Becker met with plaintiff [sic] girlfriend who" participated in an "elaborate scheme of falsely accusing the plaintiff of violence or illegal substances of any kind[.]" Id. Ms. Folk brought child neglect charges against plaintiff in family court, and she received an ex parte order of protection. See id. The order of protection prohibits plaintiff from seeing his children unless under Ms. Folk's supervision. See id.

**\*3** Plaintiff alleges First and Fourteenth Amendment violations of his "liberty interest in the custody control and management of his children, [and] his right of intimate association"; a municipal liability claim "against County Schoharie and defendant Donna Becker for improper training and supervision of County Employee at time of Employment"; malicious prosecution claims under the Fourth and Fourteenth Amendments and New York State law; a claim for interference with custody under New York State law; and a negligence claim. Id. at 5.

### C. Analysis

Case 1:25-cv-01150-AJB-TWD    Document 4    Filed 10/20/25    Page 181 of 187

Meyers v. Becker, Not Reported in Fed. Supp. (2023)

2023 WL 4424128

### 1. Bryanna Folk

As to Ms. Folk, state action is required to bring a claim under § 1983. See Sybalski v. Indep. Grp. Home Living Program, Inc., 546 F.3d 255, 257 (2d Cir. 2008) (per curiam) (citations and quotation marks omitted) (alterations in original) ("The Supreme Court has explained that [t]he purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails. Accordingly, ... [a] plaintiff pressing a claim of violation of his constitutional rights under § 1983 is [ ] required to show state action."). "State action requires a showing that the allegedly unconstitutional conduct is fairly attributable to the State." Momot v. Dziarcak, 208 F. Supp. 3d 450, 455 (N.D.N.Y. 2016) (citations and quotation marks omitted). "When a plaintiff contends that a private actor violated his rights, the plaintiff proves state action by demonstrating that there is such a close nexus between the State and the challenged action that seemingly private behavior 'may be fairly treated as that of the State itself.' Id. (quotation marks omitted) (quoting Grogan v. Blooming Grove Volunteer Ambulance Corps, 768 F.3d 259, 264 (2d Cir. 2014)).

Plaintiff has not alleged that Ms. Folk engaged in state action or in any function that is attributable to the State. See generally Am. Compl. Thus, it is recommended that the amended complaint be dismissed against Bryanna Folk. As plaintiff was already afforded an opportunity to cure this deficiency and there is no indication that he could plead state action in relation to Ms. Folk's conduct, it is recommended that the complaint be dismissed with prejudice as against Ms. Folk. See Coleman v. Olinski, No. 5:16-CV-0838 (MAD/DEP), 2016 WL 11265984, at *4 (N.D.N.Y. July 29, 2016) ("[The] plaintiff has failed to plead (and could not plead under any circumstances) ("[T]he requisite state action to support a claim under section 1983 against her attorneys. Since there does not appear to be any other federal right implicated by [the] plaintiff's allegations, I recommend that her section 1983 complaint be dismissed with prejudice...."), report and recommendation adopted, 2017 WL 752182 (N.D.N.Y. Feb. 27, 2017); Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993) (per curiam) ("Where it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend."); Syfert v. City of Rome, No. 6:17-CV-0578 (GTS/TWD), 2018 WL 3121611, at *8 (N.D.N.Y. Feb. 12, 2018) (internal citation omitted) ("Because [the p]laintiff has already been given the

opportunity to amend his complaint, and the allegations in his amended complaint, construed liberally, give no indication that a valid claim might be stated if [the p]laintiff were given another opportunity to amend, the Court recommends that the dismissal be with prejudice."), report and recommendation adopted, 2018 WL 2316681 (N.D.N.Y. May 22, 2018), aff'd, 768 F. App'x 66 (2d Cir. 2019). [3]

[3]    All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

### 2. Donna Becker

#### a. Failure to State a Claim

**\*4** As plaintiff acknowledges, a suit against Ms. Becker in her official capacity as the Commissioner of Schoharie County DSS is a suit against Schoharie County. See Am. Compl. at 6; see also Hines v. City of Albany, 542 F. Supp. 2d 218, 227 (N.D.N.Y. 2008) (citation omitted) ("[C]laims against a government employee in his official capacity are treated as a claim against the municipality[.]"). "A municipality 'may not be held liable under [§] 1983 unless the challenged action was performed pursuant to a municipal policy or custom.' " Durr v. Slator, 558 F. Supp. 3d 1, 35 (N.D.N.Y. 2021) (citation omitted); see also Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978). A municipal policy or custom can be alleged by stating:

> "(1) a formal policy, promulgated or adopted by the entity; or (2) that an official with policymaking authority took action or made a specific decision which caused the alleged violation of constitutional rights; or (3) the existence of an unlawful practice by subordinate officials that was so permanent or well settled so as to constitute a 'custom or usage,' and that the practice was so widespread as to imply the constructive acquiescence of policymaking officials."

Durr, 558 F. Supp. 3d at 35 (citation omitted). "[A] single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." Hillary v. St. Lawrence County, No. 8:17-CV-659 (GLS/DEP), 2019 WL 977876, at *7 (N.D.N.Y. Feb. 28, 2019) (quoting Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991)).

Case 1:25-cv-01150-AJB-TWD    Document 4    Filed 10/20/25    Page 182 of 187
Meyers v. Becker, Not Reported in Fed. Supp. (2023)
2023 WL 4424128

Plaintiff states that his constitutional deprivations are
"cause[d] by a government custom, polic[y] or usage of the
municipality or respondeat superior basis and the plaintiff
has shown municipal employee Donna Becker that act were
performed pursuant to a policy and custom[.]" Am. Compl.
at 6. This is insufficient to allege a claim for municipal
liability. Plaintiff does not state what Schoharie County's
alleged policy was or how it negatively impacted plaintiff.
See id. Plaintiff provides the case number for another case
in the Northern District of New York that was brought
against Schoharie County DSS and Donna Becker, among
other individuals. See id.; see also Guarneri v. Schoharie
Cnty. Dep't of Soc. Serv., No. 1:21-CV-0991 (TJM/ML),
2021 WL 6050305, at *6-7 (N.D.N.Y. Dec. 21, 2021),
report and recommendation adopted, 2022 WL 1472562
(N.D.N.Y. May 10, 2022). In Guarneri, the plaintiff alleged
that the defendants maintained a homeless shelter that had
poor conditions, plaintiff's Supplemental Nutrition Assistance
Program benefits were incorrect, and he paid more debt than
he was required, to the defendants. See 2021 WL 6050305, at
*7. The Court dismissed the claims against Schoharie County
because "[t]here is no indication that [the p]laintiff can assert
a policy or custom which would support municipal liability
based on these facts. In addition, none of [the p]laintiff's
allegations reflect a failure to train or 'deliberate indifference'
to the rights of persons who would come into contact with
[the d]efendants." Id. (citation omitted). Here, as plaintiff has
in no way stated a policy or custom and only alleged a single
incident with Ms. Becker, it is recommended that plaintiff's
complaint against Donna Becker in her official capacity be
dismissed with prejudice. See Hillary, 2019 WL 977876,
at *7; see also Ruffolo, 987 F.2d at 131; Syfert, 2018 WL
3121611, at *8. [4]

[4]     Plaintiff states that Ms. Becker no longer works
        for Schoharie County DSS. See Am. Compl. at
        3-4. Even if his claim against Ms. Becker in her
        official capacity could proceed, Federal Rule of
        Civil Procedure 25 states, "[a]n action does not
        abate when a public officer who is a party in
        an official capacity dies, resigns, or otherwise
        ceases to hold office while the action is pending.
        The officer's successor is automatically substituted
        as a party. Later proceedings should be in the
        substituted party's name, but any misnomer not
        affecting the parties' substantial rights must be
        disregarded. The court may order substitution
        at any time, but the absence of such an order
        does not affect the substitution." FED. R. CIV.

P. 25(d). As such, if the District Judge were to
disagree with the undersigned's recommendation
and the complaint were permitted to proceed, not
only would Schoharie County be the appropriate
defendant instead of the Commissioner, but Ms.
Becker's successor would need to be substituted for
Ms. Becker as to the official capacity claim.

*5  Finally, insofar as plaintiff seeks to sue Ms. Becker in
her individual capacity, he has failed to state a claim for a
violation of his constitutional rights. Plaintiff references the
First Amendment's "right of intimate association" and the
Fourteenth Amendment's procedural due process clause. Am.
Compl. at 5. First, as explained in the undersigned's April
5, 2023, Report-Recommendation and Order, a procedural
due process claim requires, in part, allegations concerning
the constitutional sufficiency of the relevant procedures.
See Meyers v. Becker, No. 1:23-CV-173 (DNH/CFH), 2023
WL 3079611, at *5 (N.D.N.Y. Apr. 5, 2023) (quoting
Phillips v. County of Orange, 894 F. Supp. 2d 345, 372
(S.D.N.Y. 2012)), report and recommendation adopted, 2023
WL 3073495 (N.D.N.Y. Apr. 25, 2023). [5] The Second Circuit
has explained that "before parents may be deprived of the
care, custody, or management of their children without their
consent, due process—ordinarily a court proceeding resulting
in an order permitting removal—must be accorded to them."
Southerland v. City of New York, 680 F.3d 127, 149 (2d
Cir. 2012) (citation and quotations marks omitted). "[I]n
emergency circumstances, a child may be taken into custody
by a responsible State official without court authorization or
parental consent." Id. (citation and quotation marks omitted).
"If the danger to the child is not so imminent that there is
reasonably sufficient time to seek prior judicial authorization,
ex parte or otherwise, for the child's removal, then the
circumstances are not emergent." Id. (citations and quotation
marks omitted).

[5]     As plaintiff was mailed a copy of the April 5,
        2023, Report-Recommendation and Order, and
        Judge Hurd's April 25, 2023, Order, copies of each
        have not been provided with the present Report-
        Recommendation and Order. See Dkt. Nos. 9, 11.

"Perjury by a [child service's] caseworker to effectuate an
otherwise improper removal may constitute a violation of
procedural due process." Green ex rel. T.C. v. Mattingly, No.
07-CV-1790 (ENV/CLP), 2010 WL 3824119, at *9 (E.D.N.Y.
Sept. 23, 2010) (collecting cases). "The question for the
Court ... is whether [the] alleged misrepresentations were
sufficiently material and serious to render the removal process

Case 1:25-cv-01150-AJB-TWD    Document 4    Filed 10/20/25    Page 183 of 187

Meyers v. Becker, Not Reported in Fed. Supp. (2023)

2023 WL 4424128

constitutionally defective." Id. (citing Cornejo v. Bell, 592 F.3d 121, 128 (2d Cir. 2010)); see also Yuan v. Rivera, 48 F. Supp. 2d 335, 346 (S.D.N.Y. 1999) (quoting Morrison v. Lefevre, 592 F. Supp. 1052, 1073 (S.D.N.Y. 1984)) ("The right to a fair tribunal includes the right to a proceeding free of perjury by state officials. 'The introduction of false evidence in itself violates the due process clause.' ").

Plaintiff attaches Ms. Becker's "Verification" to his complaint. Am. Compl. at 8; see also Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004) (explaining that the court may consider any written documents that are attached to a complaint, incorporated by reference, or are "integral" to it.). In her statement, Ms. Becker affirmed that she "is acquainted with the facts and circumstances of the above-entitled proceeding;" "she has read the foregoing petition and knows the contents thereof;" "the same is true to her own knowledge except as to those matters therein stated to be alleged upon information and belief, and that as to those matters she believes it to be true." Am. Compl. at 8. The matter is captioned "State of New York ss. County of Schoharie." Id. Plaintiff does not explain what the "above-titled proceeding" was, whether it was the family court neglect case or Ms. Folk's request for welfare assistance. Id. He also does not attach the petition to which Ms. Becker refers. See id. Plaintiff alleges that Ms. Becker stated, "that it is true that to her own knowledge that [plaintiff] is a violent person." Id. at 4. Plaintiff does not allege whether the substance abuse allegation was affirmed by Ms. Becker based on information and belief or as true to her own knowledge. See id.

Plaintiff does not allege whether Ms. Becker's verification was presented to the Family Court, what the Family Court's findings were, whether the drug and violence allegations impacted the Family Court's decision, or whether he is violent and uses illegal substances. See generally Am. Compl. Rather, plaintiff alleges that he does not have a criminal history or record for violent behavior or illegal drug usage, and that Ms. Folk's "accusation[s] and lies" resulted in her obtaining DSS welfare assistance. Id. at 3-4.

*6 Plaintiff's allegations are insufficient to allege a procedural due process claim concerning the Family Court's order that resulted in his visitation with his children being limited. Plaintiff has not explained whether he received notice of the child neglect charges, or whether there was a pre-deprivation hearing or prompt post-deprivation hearing. See Cornigans v. Mark Country Day Sch., No. 03-CV-1414, 2006 WL 3950335, at *5 (E.D.N.Y. July 12, 2006) ("[P]rocedural

due process generally requires a hearing prior to depriving a parent of custody or a prompt post-deprivation hearing if the child is removed under emergency circumstances."). Without this information and any allegations concerning the impact that the allegedly false statements had on the Family Court's findings, plaintiff has not stated a procedural due process claim sufficient to withstand initial review. See Smith v. Tkach, No. 3:17-CV-0286 (GTS/ML), 2019 WL 3975440, at *15 (N.D.N.Y. Aug. 22, 2019), aff'd, 844 F. App'x 414 (2d Cir. 2021) (summary order) ("To the extent that [the p]laintiff alleges that the proceedings were somehow deficient because the Family Court based its decision on false statements or testimony by Defendant Eaves in particular, [the p]laintiff has not provided any evidence to establish that the Family Court even had access to Defendant Eaves' statements in the relevant FASP, much less that there existed a causal nexus between those statements and the Family Court's ultimate decision."); Yuan, 48 F. Supp. 2d at 346-47 (denying summary judgment on procedural due process claim where the plaintiff alleged that the caseworker signed a petition, testified, and stated certain statements that she later admitted "she never believed"); Wright v. Szczur, No. 11-CV-140, 2012 WL 268283, at *7 (W.D.N.Y. Jan. 30, 2012) (concluding that "dismissal is unwarranted" where the plaintiffs "alleged the warrant application was procured through perjured testimony[,]" but dismissing the complaint against the Erie County Department of Social Services and Child Protection Services for failure to allege a policy or custom); Sulaymu-Bey v. City of New York, No. 17-CV-3563 (AMD/SJB), 2019 WL 1434597, at *5 (E.D.N.Y. Mar. 29, 2019) (allowing procedural due claim to procedure where the plaintiffs alleged that their children were removed without prior court authorization or parental consent and there was no emergency warranting the removal).

Additionally, insofar as plaintiff states that Ms. Becker's "investigation of the allegations against plaintiff was constitutionally and legally inadequate," Am. Compl. at 4, "[p]laintiff has no protected property or liberty interest in the initiation of a governmental investigation, or in the particular outcome of an investigation by DSS." Welch v. Fitzgerald, No. 5:18-CV-461 (MAD/ATB), 2018 WL 6173796, at *5 (N.D.N.Y. May 16, 2018) (citations omitted), report and recommendation adopted, 2018 WL 4795759 (N.D.N.Y. Oct. 4, 2018). As plaintiff has not alleged what procedures took place and how, if at all, Ms. Becker's verification impacted those procedures, it is recommended that his procedural due process claim be dismissed.

Case 1:25-cv-01150-AJB-TWD    Document 4    Filed 10/20/25    Page 184 of 187
Meyers v. Becker, Not Reported in Fed. Supp. (2023)
2023 WL 4424128

Next, plaintiff references the First Amendment's "right of intimate association." Am. Compl. at 5. "The right to intimate association protects the close ties between individuals from inappropriate interference by the power of the state." Chi Iota Colony of Alpha Epsilon Pi Fraternity v. City Univ. of New York, 502 F.3d 136, 143 (2d Cir. 2007) (citing Roberts v. U.S. Jaycees, 468 U.S. 609, 619 (1984)). The Second Circuit has noted the Supreme Court's two applications of the First Amendment to association claims: " 'choices to enter into and maintain certain intimate human relationships,' and 'associat[ion] for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion.' " New Hope Fam. Servs., Inc. v. Poole, 966 F.3d 145, 178 (2d Cir. 2020) (quoting Roberts v. U.S. Jaycees, 468 U.S. 609, 617-18 (1984)); see also Garten v. Hochman, No. 08-CV-425 (PGG), 2010 WL 2465479, at *3 (S.D.N.Y. June 16, 2010) (collecting cases) ("Courts in this circuit have acknowledged that a First Amendment right to intimate association is implicated '[w]here a plaintiff is allegedly retaliated against for the First Amendment activities of a family member.' "). "Where the intimate association right at issue is tied to familial relationships and is independent of First Amendment retaliation concerns, however, the Second Circuit has employed an analysis under the framework of the Fourteenth Amendment right to substantive due process." Garten, 2010 WL 2465479, at *4 (citing, inter alia, Patel v. Searles, 305 F.3d 130, 136-38 (2d Cir. 2002); Wilkinson v. Russell, 182 F.3d 89, 103-06 (2d Cir. 1999)); see also Gorman v. Rensselaer County, 910 F.3d 40, 47 (2d Cir. 2018) (citing Adler v. Pataki, 185 F.3d 35 (2d Cir. 1999)) ("[T]here is no allegation that [the plaintiff's] sister ... at any time exercised her right to free speech under the First Amendment; so [the plaintiff's] claim does not implicate the First Amendment retaliation concerns.... Accordingly, we consider the intent requirement within the framework of the Due Process Clause of the Fourteenth Amendment.").

**\*7** "The Fourteenth Amendment guarantees a substantive right under the Due Process Clause to intimate familial association[.]" Gorman, 910 F.3d at 47. "A claim for infringement of the right to familial association requires conduct so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection." Id. (quotation marks omitted) (quoting Anthony v. City of New York, 339 F.3d 129, 143 (2d Cir. 2003)). "[S]tate action that is merely 'incorrect or ill-advised' is insufficient to satisfy this standard; '[o]nly the most egregious official conduct can be said to

be arbitrary in the constitutional sense.' " Smith, 2019 WL 3975440, at *16 (second alteration in original) (quoting Cox v. Warwick Valley Cent. Sch. Dist., 654 F.3d 267, 275 (2d Cir. 2011)).

Plaintiff has not alleged that he was retaliated against for the exercise of any freedom by himself or a family member. Thus, he has not alleged a First Amendment claim. See Garten, 2010 WL 2465479, at *4 (dismissing First Amendment intimate association claim because the plaintiff "has not adequately alleged that [the d]efendants retaliated against him—for exercising his First Amendment rights—by interfering with his right to intimate association.").

Reviewing his claim under the Fourteenth Amendment substantive due process framework, plaintiff has not alleged facts sufficient to state a claim. The Court cannot say that Ms. Becker's conduct in verifying Ms. Folk's statements was so arbitrary and egregious where plaintiff alleges that Ms. Becker was informed by Ms. Folk and plaintiff's girlfriend that he was violent and used illegal substances. See Am. Compl. at 4; see also Trombley v. O'Neill, 929 F. Supp. 2d 81, 103 (N.D.N.Y. 2013) (dismissing substantive due process claim because "the removal of H and N from [the p]laintiff's custody was pursuant to an order of the Family Court based on, among other things, evidence that [the p]laintiff had subjected H and N to witnessing a domestic violence incident and that he had done so while having abused alcohol in their presence."); Roach v. Clark, No. 5:15-CV-0408 (LEK/ATB), 2015 WL 4067504, at *11 (N.D.N.Y. July 2, 2015) (dismissing substantive due process claim because "[o]ther than allegedly using a report that was ultimately determined to be 'unfounded,' [the] plaintiff makes no other allegations against [the] defendant [caseworker] or her supervisors."). Even assuming that Ms. Becker's verification was ill-advised or incorrect because Ms. Folk and/or plaintiff's girlfriend were not being truthful, plaintiff has not alleged facts sufficient to show that Ms. Becker's conduct was so shocking and arbitrary as to state a substance due process claim. See Gorman, 910 F.3d at 47. Thus, the undersigned recommends dismissing the complaint on this issue.

As to the due process claims against Ms. Becker in her individual capacity, in light of the special solicitude afforded to pro se plaintiffs, it is recommended that plaintiff be afforded another opportunity to amend his complaint to address the deficiencies outlined in his Report-Recommendation and Order. See Anthony v. Fein, Such & Crane, LLC, No. 5:15-CV-00452 (DNH/TWD), 2015 WL

Meyers v. Becker, Not Reported in Fed. Supp. (2023)

2023 WL 4424128

Case 1:25-cv-01150-AJB-TWD    Document 4    Filed 10/20/25    Page 185 of 187

7749894, at *5 (N.D.N.Y. Sept. 22, 2015) ("Given [the p]laintiff's pro se status and the inability to rule out completely the possibility that he could state a claim at this point, the Court recommends that he be granted one more opportunity to amend his complaint...."), report and recommendation adopted, 2015 WL 7738048 (N.D.N.Y. Dec. 1, 2015). Should the District Judge adopt the undersigned's recommendation, plaintiff is advised that an amended pleading will replace and supersede any prior pleading and must be a complete pleading. Plaintiff cannot incorporate a prior pleading by reference. See id. ("The Court further recommends that in the event [the p]laintiff is granted leave to amend, he be instructed that the amended complaint will take the place of and effectively invalidate [the p]laintiff's second amended complaint, and that the amended complaint must fully comply with Rules 8(a) and 10(a) and (b) of the Federal Rule of Civil Procedure.").

### b. Rooker-Feldman Doctrine

**\*8** Even if plaintiff had sufficiently stated a substantive or procedural due process claim against Ms. Becker, the claims are likely barred by the Rooker-Feldman doctrine. "The Rooker-Feldman doctrine effectively precludes lower federal courts 'from exercising appellate jurisdiction over final state-court judgments.' " DeMeo v. Kean, 754 F. Supp. 2d 435, 448 (N.D.N.Y. 2010) (quoting Lance v. Dennis, 546 U.S. 459, 463 (2006) (per curiam)). "The Supreme Court has cautioned that this doctrine must be applied narrowly and be 'confined to cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced.' " Id. (citation omitted). The Rooker-Feldman doctrine bars this Court's review of a state-court decision if "(1) the plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state court judgment; (3) the plaintiff requests the district court to review and reject the state court judgment; and (4) the state court judgment was rendered before the proceedings commenced in the district court." Id. (citing V.S. v. Muhammad, 595 F.3d 426, 430 (2d Cir. 2010)). "In order to assert an 'independent claim' that is not barred by Rooker-Feldman, a plaintiff must assert 'a claim based on an injury that was not caused by the state-court judgment.' " Wilson v. Emond, No. 3:10-CV-659 (VLB), 2011 WL 494777, at *8 (D. Conn. Feb. 5, 2011) (quoting McKithen v. Brown, 481 F.3d 89, 98 (2d Cir. 2007)). "The crucial inquiry in this analysis is whether 'the state-court judgment [is] the source of the injury.' " Id. (alteration in original) (quoting Hoblock v. Albany County

Bd. of Elections, 422 F.3d 77, 87 (2d Cir. 2005)). "Improper conduct by a third party, standing alone, is insufficient to state an 'independent claim' for Rooker-Feldman purposes if that third party's conduct did not cause an injury that was separate and distinct from that caused by the state court judgment itself." Id. (citing Buford v. Palisades Collection, LLC, 552 F. Supp. 2d 800, 805 (N.D. Ill. 2008)).

The Rooker-Feldman doctrine often bars review of family court orders even where the complaint does not specifically mention a family court or seeks to challenge conduct that occurred prior to the entering of the order. See, e.g., Cleveland v. Schenectady Cnty., Northeast Parent & Child Society, et al., No. 1:16-CV-1235 (NAM/DJS), 2018 WL 11540911, at *8 (N.D.N.Y. Mar. 15, 2018) ("[The p]laintiff's due process claims [against Schenectady County, Northeast Parent and Child Society, and the case worker] fall within the ... Rooker-Feldman doctrine, and therefore, must be dismissed for lack of subject matter jurisdiction."); Johnson v. Myers, No. 10-CV-1964 (JS/WDW), 2014 WL 2744624, at *8 (E.D.N.Y. June 16, 2014) ("[The p]laintiff's procedural due process claim [against a case worker and his supervisor] is traceable directly to the Family Court orders and that it improperly invites review and rejection of these orders. Thus, Rooker-Feldman divests this Court of jurisdiction over [the p]laintiff's procedural due process claim."), vacated and remanded on other grounds sub nom. Myers v. Patterson, 819 F.3d 625 (2d Cir. 2016); Phifer v. City of New York, 289 F.3d 49, 58 (2d Cir. 2002) (citation omitted) ("To the extent that [the plaintiff] alleges in her complaint that certain defendants who were associated with [the] case in the family court were motivated by racism in their recommendations, representations, or requests to the family court, we find that Rooker-Feldman bars these claims. The family court rejected [the] claims of racism, and thus this question was 'actually and necessarily decided' by a prior court."); In re Dayton, 786 F. Supp. 2d 809, 816-17 (S.D.N.Y. 2011) (citation omitted) (declining to review certain claims where the plaintiffs argued that they were not challenging the validity of the state court decision but the allegations and injuries arose from the Family Court judgment); Lomnicki v. Cardinal McCloskey Servs., No. 04-CV-4548 (KMK), 2007 WL 2176059, at *5 (S.D.N.Y. July 26, 2007) (citations omitted) ("[The p]laintiff attempts to contravene the Rooker-Feldman doctrine by not mentioning the Family Court.... She argues that she 'is not requesting the Federal Court herein to review the Family Court's determinations regarding custody, neglect and visitation of the children, but is seeking damages for a Civil Rights violation.' Her argument cannot succeed. The fact that

[the p]laintiff is alleging a new claim-discrimination-does not change the injury about which she complains. That injury-the removal of the children from her custody-was caused by the Family Court judgment."); Kaminski v. Comm'r of Oneida Cnty. Dept. of Soc. Servs., 804 F. Supp. 2d 100, 105-06 (N.D.N.Y. Aug. 5, 2011) (dismissing claim as barred by Rooker-Feldman doctrine where the plaintiff "argues her due process rights were violated by virtue of false evidence, contradicting statements, and perjured declarations submitted by [a counselor] in the underlying state court proceedings.").

**\*9** On the other hand, some courts have allowed claims to proceed where the plaintiff alleged an injury from conduct other than the state-court order. See Sung Cho v. City of New York, 910 F.3d 639, 647 (2d Cir. 2018) ("[W]here ... [the] plaintiffs bring claims alleging harm flowing from wrongful conduct leading to settlement terms and do not argue that the state courts committed any error in so-ordering the parties' agreements, the complaint attacks the conduct itself, and the claim does not function as a *de facto* appeal[ ]" from a state court order.); Toohey v. Portfolio Recovery Assocs., LLC, No. 15-CV-8098 (GBD), 2016 WL 4473016, at \*4 (S.D.N.Y. Aug. 22, 2016) ("Because [the plaintiff] does not seek to undo the state court judgment through this federal action, but merely seeks damages based on [the d]efendants' alleged independent wrongful conduct, the *Rooker-Feldman* doctrine does not apply....").

Here, plaintiff fails to state the relief he seeks. See generally Am. Compl. This is in contravention of Federal Rule of Civil Procedure 8, which requires a complaint to state "a demand for the relief sought, which may include relief in the alternative or different types of relief." FED. R. CIV. P. 8(a)(3). In his original complaint, plaintiff sought $100,000. See Dkt. No. 1 at 5. He did not restate this request for relief in his amended complaint. See generally Am. Compl. This complicates the undersigned's consideration of whether plaintiff's complaint is barred by the Rooker-Feldman doctrine. or whether he seeks to challenge only unrelated conduct. See Edem v. Spitzer, 204 F. App'x 95, 97 (2d Cir. 2006) (summary order) (citation omitted) ("In an effort to demonstrate that his claim is not barred by *Rooker-Feldman*, [the plaintiff] submits that he does not challenge the state judgment, but rather the defendant's failure to afford him 'adequate notice and an opportunity to be heard prior to the deprivation of his property rights,' thereby depriving him of due process. We are not convinced. The procedural defects that [the] plaintiff alleges are, in fact, inextricably intertwined with the substantive decisions of the

state court."). Insofar as plaintiff is alleging an injury by being prohibited "from contacting his children only allowing plaintiff limited interaction with his children[,]" that injury stems from the Family Court's ex parte court order. Am. Compl. at 4; see Voltaire v. Westchester Cnty. Dep't of Soc. Servs., No. 11-CV-8876 (CS), 2016 WL 4540837, at \*10 (S.D.N.Y. Aug. 29, 2016) (citation omitted) ("[The p]laintiff alleges that Westchester County submitted false evidence in opposing her efforts to maintain, and later restore, her parental rights, but *Rooker-Feldman* bars both [the p]laintiff's request to vacate the termination order as well as any due process claims related to [the d]efendant's conduct during or after the termination proceeding[.]"). The alleged injury does not appear to be independent of the state-court order; thus, the Court would likely be barred from considering the substantive and procedural due process claims against Ms. Becker under the Rooker-Feldman doctrine. See Wilson, 2011 WL 494777, at \*8; Johnson, 2014 WL 2744624, at \*8; Kaminski, 804 F. Supp. 2d at 105-06. [6]

6    Depending on the relief plaintiff seeks, abstention under the domestic-relations doctrine may also be warranted. See Shidagis v. Broome Cnty. D.S.S., No. 3:22-CV-1224 (BKS/ML), 2023 WL 2665461, at \*2 (N.D.N.Y. Mar. 28, 2023) (citations omitted) ("[W]hile the domestic relations exception is inapplicable as this case arises under § 1983 and thus involves a federal-question, the Court concludes that dismissal is nonetheless appropriate under the domestic relations abstention doctrine because [the p]laintiff's claims implicate state family court proceedings or determinations and there are no facts alleged suggesting that there is any 'obstacle to their full and fair determination in state courts.' "). Similarly, Younger abstention may apply should plaintiff seek the Court's intervention in on-going custody matters. See Shidagis v. Broome Cnty. Dep't of Soc. Servs., No. 3:22-CV-1299 (GTS/ML), 2023 WL 2245047, at \*2 (N.D.N.Y. Jan. 17, 2023) (collecting cases applying Younger abstention to complaints concerning custody orders) (citations omitted) (" '*Younger* abstention is required when three conditions are met: (1) there is an ongoing state proceeding; (2) an important state interest is implicated in that proceeding; and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims.' ... These allegations are based solely on the

Meyers v. Becker, Not Reported in Fed. Supp. (2023)

2023 WL 4424128

state custody proceedings and 'similarly involve the state's compelling interest in protecting the welfare of children,' and [the p]laintiff may raise these claims in the state proceedings."), report and recommendation adopted, 2023 WL 2242092 (N.D.N.Y. Feb. 27, 2023).

### III. Conclusion

**\*10** **WHEREFORE**, for the reasons set forth herein, it is hereby

**RECOMMENDED**, that plaintiff's amended complaint (Dkt. No. 10) against Donna Becker in her official capacity, and Bryanna Folk be **DISMISSED WITH PREJUDICE**; and it is further

**RECOMMENDED**, that plaintiff's amended complaint (Dkt. No. 10) against Donna Becker in her individual capacity be **DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND**; and it is further

**RECOMMENDED**, that in the event plaintiff is granted leave to amend, he be instructed that the amended complaint will take the place of and effectively invalidate plaintiff's amended complaint, and that the second amended complaint must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a). [7]

[7] If you are proceeding pro se and are served with this Report-Recommendation & Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(c).

**All Citations**

Not Reported in Fed. Supp., 2023 WL 4424128

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.